# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Civil Action No. 9:16-cv-80060-MARRA**

JINYAO LIU, BRANDON LEIDEL, and
MICHAEL WILSON, individually,
and on behalf of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a Florida corporation,
PAUL VERNON, an individual, and
LORIE ANN NETTLES, an individual,

    Defendants.
_____/

### PLAINTIFFS' EMERGENCY MOTION FOR APPOINTMENT OF JAMES D. SALLAH, ESQ. AS RECEIVER/CORPORATE MONITOR OVER DEFENDANT, PROJECT INVESTORS, INC. d/b/a CRYPTSY

Plaintiffs, JINYAO LIU, BRANDON LEIDEL, and MICHAEL WILSON, individually, and on behalf of all others similarly situated ("Plaintiffs"), by and through undersigned counsel and pursuant to Fed.R.Civ.P. 66 as well as this Court's inherent equitable powers, respectfully move for entry of an Order appointing James D. Sallah, Esq. ("Mr. Sallah") as Receiver/Corporate Monitor over Defendant PROJECT INVESTORS, INC. d/b/a Cryptsy, a Florida corporation. In support of their motion, Plaintiffs state the following:

### FACTUAL AND PROCEDURAL BACKGROUND

1. On January 13, 2016, this action was commenced against Defendants PROJECT INVESTORS, INC. d/b/a Cryptsy, a Florida corporation ("CRYPTSY"); and PAUL VERNON, an individual ("VERNON") (collectively "the CRYPTSY Defendants"), asserting causes of action for Negligence, Unjust Enrichment, Conversion, and Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See*, Docket Entry No. ("DE") 1.

2. On February 22, 2016, this action was amended by adding new Plaintiff representatives, by adding LORIE ANN NETTLES, an individual ("NETTLES") as a defendant, and by supplementing the earlier-stated causes of action with the following claims against NETTLES: Conversion, Fraudulent Conveyance, Preliminary and Permanent Injunctive Relief, and Civil Conspiracy. [DE 8]. The Amended Complaint also added causes of action against the CRYPTSY Defendants for Specific Performance, Preliminary and Permanent Injunctive Relief, Fraudulent Conveyance, and Civil Conspiracy.

3. This nationwide class action is brought by Plaintiffs, individually and on behalf of a class of similarly situated users (the "Class Members") of CRYPTSY. At all material times, the CRYPTSY Defendants operated an online business for general consumers and the public to exchange, invest, and trade in digital cryptocurrencies. Plaintiffs seek damages based upon the unlawful conduct of the CRYPTSY Defendants in denying account holders the ability to obtain funds in their accounts and in misappropriating funds held in the CRYPTSY accounts.

4. On January 15, 2016 -- a mere two days after this lawsuit was commenced and received media attention -- the CRYPTSY Defendants, in nothing less than a stunning confession, admitted on the CRYPTSY blog that:

- CRYPTSY has been insolvent since approximately Five Million Dollars ($5,000,000.00) in client assets "disappeared" in June 2014, and CRYPTSY has been actively concealing that fact from CRYPTSY's customers as well as from governmental and regulatory authorities,

- CRYPTSY lied to its customers about the nature of the problems that prevented CRYPTSY account holders from accessing their funds,

- CRYPTSY purposely refrained from filing with the government a Suspicious Activity Report relating to the "disappearance" of the $5 Million,

- CRYPTSY has essentially been operating a fraudulent financial scheme for nearly eighteen (18) months by which withdrawals from CRYPTSY accounts were not being funded from the assets purportedly safeguarded in each CRYPTSY account holders' account; rather, the funds that were withdrawn

    were purportedly being supplied by CRYPTSY itself from the profits in its own business operating account, and

- CRYPTSY plans to indefinitely suspend all trades and withdrawals from CRYPTSY accounts until the CRYPTSY Defendants can formulate their own brand of vigilante justice that would somehow resolve all of the crimes and misdeeds the CRYPTSY Defendants had perpetrated upon their customers.

Attached hereto as **Exhibit "A"** is a true and correct copy of the January 15, 2016 blog posting published at http://blog.cryptsy.com.

    5.    As a result of Defendants' bad faith and unfair and unlawful conduct, Plaintiffs and Class Members have been prevented from accessing their supposedly protected assets.

    6.    Of equal concern is Plaintiffs' justifiable belief that the CRYPTSY Defendants will dissolve CRYPTSY's business operations and will dissipate all of their assets in an effort to make themselves "judgment proof." Plaintiffs' fear in this regard comes from multiple sources.

    7.    According to multiple recent media reports, CRYPTSY has vacated its Delray Beach, Florida physical office space without any indication where it would be relocating. According to additional published reports, CRYPTSY departed its office premises in December 2015 -- something that was reportedly confirmed by a CRYPTSY staffer in CRYPTSY's online chatroom as a planned measure aimed at "cutting expenses."

    8.    Furthermore, VERNON and NETTLES recently went through a formal marital dissolution proceeding in which they each fueled the belief that asset dissipation was imminent.

    9.    In October 2015, NETTLES filed a Petition for Dissolution of Marriage in the matter styled *In re: The Marriage of Lorie Ann Nettles v. Paul Edward Vernon*, Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida - Case No. 502015DR009881XXXXSBFZ (the "Divorce Proceedings").

    10.    According to filings made by NETTLES in the Divorce Proceedings:

    (a)  VERNON now lives in China with both his assets and his paramour,

(b) VERNON will not be returning to this jurisdiction in the immediate future[1],

(c) VERNON is believed to be in the process of shutting down CRYPTSY,

(d) several key CRYPTSY employees were looking for employment elsewhere (*i.e*., with employers other than CRYPTSY) in late-2015,

(e) CRYPTSY is under investigation by federal authorities including the Internal Revenue Service (IRS), the Criminal Investigation Division of the IRS, and the Securities and Exchange Commission, and

(f) VERNON is intentionally and willfully dissipating his own and possibly CRYPTSY's assets.

11.   NETTLES, in an October 28, 2015 filing in the Divorce Proceedings[2], explained and detailed her fears that VERNON and CRYPTSY are likely to dissipate assets:

> During the marriage, [VERNON] acquired business interests . . . including the following: Cryptsy International, Ltd.; Project Investors, Inc.; Hashmax USA, LLC; Teraboss, Inc.; HashMax Inc.; and Vergent Data, Inc. (collectively "the Defendant Entities"). In his Answer [to the Petition for Marital Dissolution], [VERNON] admitted that he has either sole or controlling interest in the Defendant Entities.
>
> \*            \*            \*
>
> The Defendant Entities' business relate to the mining, trading, and selling of virtual currencies, including, but not limited to, Bitcoin.
>
> The assets generated by the Defendant Entities, whether through mining or the collection of fees from customers, are collected in the form of Virtual Currencies, like Bitcoin.
>
> These Virtual Currencies, which are regulated domestically as commodities, exist as intangible assets (i.e., computer code), and can be copied onto a piece of portable media (like a flash drive, or an external hard drive), e-mailed from person to person, or stored online in cloud storage. Thus, this asset class is optimal for secretion out of the jurisdiction. Likewise, due to the inherent properties of virtual currencies, [VERNON] could transfer all of his virtual currency assets to a third party in a matter of minutes.
>
> \*            \*            \*

---

[1] On January 22, 2016, VERNON signed a "Marital Settlement Agreement" in the Divorce Proceedings that formalized the dissolution of his marriage to NETTLES and set forth, *inter alia*, the division of their marital estate. VERNON's signature on that document was witnessed by a Notary Public in the People's Republic of China - Municipality of Beijing.

[2] "[NETTLES'] Urgent Motion for Injunctive Relief to Prevent the Removal and/or Further Dissipation of Marital Assets and Income."

- 4 -

SILVER LAW GROUP
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

Civil Action No. 9:16-cv-80060-MARRA

> An article . . . has been published regarding about one of the Husband's companies, Cryptsy. Cryptsy (incorporated as Cryptsy International Ltd., a Belizean entity, owned and operated by Husband through Project Investors, Inc., which is incorporated in the State of Florida) operates a series of virtual currency exchange websites where users of virtual currencies of various types including bitcoin and others (i.e. "alt-coins") may store their virtual currency holdings, and/or exchange those virtual currencies for virtual currencies of other types, and whereby Cryptsy has derived revenue at various times from either fees paid upon exchange and/or fees paid upon withdrawal. The article attached alleges that Cryptsy is experiencing liquidity issues delaying customers' ability to withdraw virtual currencies, is subject to law enforcement investigation for multiple violations of regulatory and criminal law, which could result in the imposition of significant fines and/or seizures of assets, and alleges that Cryptsy is about to go "full Mt. Gox," an allusion to the Mt. Gox failed bitcoin storage and trading web site wherein users of virtual currency lots millions of dollars in virtual currency assets due to what some believe to be technical error and others suspect may be fraud.
>
> Further reports detail in depth the extent of the investigation of the Cryptsy trading platform, Cryptsy International Ltd. and Project Investors Inc., by federal authorities, including the IRS, the Criminal Investigation Division of the IRS and the SEC, among others, related to Cryptsy's involvement with GAW Miners and Joshua Garza. Reports allege that the company utilized automated trading software on a platform that directly benefitted Crypsty staff members, that a key Cryptsy staff member performed fraudulent transactions related to the movement of PayCoin by Mr. Garza, who himself is alleged to have engaged in fraudulent transfers and market manipulation. Further allegations suggest that Cryptsy failed to obtain licenses to operate, subjecting them to substantial fines. Finally, the article suggests that Cryptsy was used to launder money for terrorists.
>
> Even more concerning, the Wife has learned that multiple developers currently employed by Cryptsy to implement and maintain the virtual currency trading platform have recently submitted resumes to other technology companies in South Florida, seeking alternative employment.
>
> \*        \*        \*
>
> In addition . . . the Wife is deeply concerned that, given the existence of a criminal law enforcement investigation into Cryptsy, the allegations of service interruptions and key employees seeking work, that the Husband will not only flee to China, but will also shut down Cryptsy and or secret its assets.
>
> It is highly probable that the Husband may abscond with whatever funds he has from his remaining Defendant Entities . . . .

12.    VERNON himself stated in a sworn affidavit filed on December 22, 2015 in the

Divorce Proceedings that he "expect[s] [CRYPTSY] to dissolve due to economic conditions."

- 5 -

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

13. Plaintiffs now request the appointment of a Receiver/Corporate Monitor for Defendant CRYPTSY. The principal advantage of such an appointment is that the Court will thereby have the ability to ensure that CRYPTSY fulfills its obligations as a Money Services Business and that CRYPTSY does not dissipate its assets in a manner that would destroy its business and prevent Plaintiffs from ever getting access to their funds.

14. The Court possesses broad equitable powers to appoint receivers. *See*, Fed.R.Civ.P. 66; *S.E.C. v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992); *Liberte Capital Group, LLC v. Capwell*, 462 F.3d 543, 551 (6th Cir. 2006). Such authority includes the power to prohibit withdrawal, transfer, removal, dissipation of disputed assets.

15. Exercise of this inherent equitable power is particularly appropriate in this case. From at least May 2014 through the present date -- according to CRYPTSY's own admissions -- CRYPTSY has been insolvent and has been operating a fraudulent financial scheme. Millions of dollars of customer assets have allegedly "disappeared," and CRYPTSY has actively concealed that fact from CRYPTSY's customers as well as from governmental and regulatory authorities.

16. At the present time, CRYPTSY account holders' assets are not being properly safeguarded, presuming they exist at all and have not already been entirely dissipated.

17. As time advances and the cryptocurrency public's faith in CRYPTSY wanes, the value of Plaintiffs' holdings at CRYPTSY will diminish. Plaintiffs seek to avoid the reduction or destruction of the value of their cryptocurrency holdings -- something that can only be achieved if a Receiver/Corporate Monitor is installed who can steady the course of CRYPTSY's business dealings and restore faith in the viability of both CRYPTSY itself and the future of cryptocurrency as an alternative to traditional currencies used around the world.

SILVER LAW GROUP
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

18.  Plaintiffs submit the following attached information concerning the qualifications of proposed Receiver/Corporate Monitor **James D. Sallah, Esq.**, a former SEC enforcement attorney, who is partners with Jeffrey Cox, Esq., a former Assistant United States Attorney.  *See*, **Exhibit "B"** hereto.  Mr. Sallah has expressed his willingness to serve as Receiver/Corporate Monitor in this matter.

19.  Judicial action is required to prevent the further withdrawal, transfer, removal, dissipation, or disposal of funds, assets, or other property to which Plaintiffs and the Class have a legitimate claim (*i.e.*, the funds they deposited for safekeeping with CRYPTSY).

## LEGAL ANALYSIS

20.  The Court possesses broad equitable powers to appoint receivers.  *See*, Fed.R.Civ.P. 66; *S.E.C. v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992); *Liberte Capital Group, LLC v. Capwell*, 462 F.3d 543, 551 (6th Cir. 2006).  Such authority includes the power to prohibit withdrawal, transfer, removal, dissipation of disputed assets.

21.  Although no precise formula exists for determining when a court should resort to appointing a receiver, several factors should be considered: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5) availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good.  *See*, *e.g.*, *Clough Marketing Servs., Inc. v. Main Line Corp.*, 2007 WL 496739, at *2 (N.D. Ga. Feb. 13, 2007) (citing *Bookout v. Atlas Fin. Corp.*, 395 F. Supp. 1338, 1341 (N.D. Ga. 1974), *aff'd*, 514 F.2d 757 (5th Cir. 1975)).[3]

---

[3] The Fifth Circuit's affirmance in *Bookout v. Atlas Financial Corporation*, *supra.*, stands as binding precedent in the Eleventh Circuit.  *See*, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (Fifth Circuit decisions rendered before September 30, 1981 are binding precedent in the Eleventh Circuit.).

22. The validity of Plaintiffs' claims are borne out by CRYPTSY's own admission of wrongdoing and fraud on its blog.

23. Clearly, it appears that investors' assets are being lost and diminished in value as CRYPTSY scrambles to figure out how it will satisfy all of its customers' withdrawal demands without destroying the value of the very cryptocurrencies those customers are seeking to regain.

24. Legal remedies, *i.e.*, damages, will not likely be available give the current state of CRYPTSY's affairs and VERNON's apparent relocation to China. Any remedies for Plaintiffs and the Class will most likely come from recovery of assets from the defendants and those to whom the CRYPTSY account holders' assets were fraudulently transferred.

25. The availability of a less severe equitable remedy would do little to help preserve the status quo and to recover investors' money.

26. The only "harm" a Receiver/Corporate Monitor is likely to do in this instance is to prevent those who received assets from the defendants from wasting investor assets and effectively stop any further violations of the federal securities and banking laws.

## CONCLUSION

WHEREFORE, Plaintiffs, JINYAO LIU, BRANDON LEIDEL, and MICHAEL WILSON, individually, and on behalf of all others similarly situated, for the reasons stated above, respectfully move for entry of an Order:

(a) Prohibiting any defendant from withdrawing, transferring, dissipating, alienating, or converting any funds contained in any CRYPTSY customer account or in any other account associated with CRYPTSY or VERNON;

(b) Appointing James D. Sallah, Esq. as Receiver/Corporate Monitor over CRYPTSY to take, marshal, investigate, and liquidate assets to further protect defrauded investors; and

(c) Award such further relief as the Court deems necessary and appropriate under the circumstances.

Civil Action No. 9:16-cv-80060-MARRA

Respectfully submitted,

**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:    (954) 755-4799
Facsimile:    (954) 755-4684

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail:  SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@silverlaw.com

- and -

**WITES & KAPETAN, P.A**.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Telephone:    (954) 570-8989
Facsimile:    (954) 354-0205
MARC A. WITES
Florida Bar No. 024783
E-mail: mwites@wklawyers.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this __22nd__ day of February 2016 by using the CM/ECF system and that a true and correct copy will be served in accordance with the Federal Rules of Civil Procedure and/or the District's Local Rules and procedures to: **PROJECT INVESTORS, INC. d/b/a Cryptsy c/o Paul Vernon, President and Registered Agent**, P.O. Box 7646, Delray Beach, FL 33482**; PAUL VERNON**, **individually**, P.O. Box 7646, Delray Beach, FL 33482; and **LORIE ANN NETTLES**, 16832 Charles River Drive, Delray Beach, FL 33446.

**I FURTHER CERTIFY** that a copy of the foregoing will be served via electronic mail to: **JAMES D. SALLAH, ESQ.**, SALLAH ASTARITA & COX, LLC, 2255 Glades Road - Suite 300e, Boca Raton, FL 33431; E-mail: jds@SallahLaw.com.

_____
DAVID C. SILVER