UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, and
MICHAEL WILSON, individually,
and on behalf of all others similarly
situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC.,
d/b/a CRYPTSY, a Florida corporation,
PAUL VERNON, an individual, and
LORIE ANN NETTLES, an individual,

    Defendants.
_____/

### PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LORIE ANN NETTLES' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

    Plaintiffs Brandon Leidel and Michael Wilson, individually and on behalf of all others similarly situated ("Plaintiffs"), file this Response and Memorandum of Law in Opposition to Defendant Lorie Ann Nettles' Motion to Dismiss (D.E. 19) Amended Class Action Complaint.

    This Court should deny Defendant's Motion because Defendant's arguments, which center on Plaintiffs' purported failure to plead sufficient facts, misread and ignore Plaintiffs' detailed and well-pled allegations. Plaintiffs' Amended Class Action Complaint not only provides Defendant with basic notice of their claims, but sets forth such allegations in great detail. Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy") operated an online business for general consumers and the public to exchange, invest and trade in digital cryptocurrencies. Defendant Paul Vernon ("Vernon") was the founder, operator and Chief Executive Officer of

Cryptsy. At times relevant to this dispute, Vernon was married to Defendant Lorie Ann Nettles ("Nettles"); while during several other key events relevant to this dispute, Vernon and Nettles were in the process of dissolving, or had dissolved, their marriage. Vernon and Nettles used Cryptsy to further an unlawful scheme and further their own personal financial interests by misappropriating, converting and stealing approximately $5,000,000 from Plaintiffs and the potential Class Members. Defendants' unlawful practices give rise to Plaintiffs' and the potential Class Members' claims against Defendant Nettles for conversion, fraudulent conveyance and civil conspiracy, and corresponding injunctive relief. For these reasons, as set forth in detail below, the Court should deny Defendant Nettles' Motion.

## FACTUAL BACKGROUND

### A.   CRYPTOCURRENCY

Bitcoin is a virtual currency (a/k/a cryptocurrency) that can be traded on online exchanges for conventional currencies, including the U.S. dollar, or used to purchase goods and services online. *See* Amended Complaint (D.E. 8)("Amd. Cmplt.") at ¶17. Bitcoin has no single administrator or central authority or repository. *Id*.

### B.   CRYPTSY

Cryptsy is a company that solicited members of the public to register new accounts, deposit Bitcoin or other cryptocurrency with Cryptsy, and thereafter actively engage in the exchange and trade of Bitcoin as well as other (alternate) cryptocurrencies. Amd. Cmplt., ¶20. Starting in or about November 2015, certain Cryptsy users started having difficulties and inabilities withdrawing any and all forms of currency from their accounts. Amd. Cmplt., ¶24. For over two months, Cryptsy blamed the problems on a number of things including "server errors" and "denial of service attack." Amd. Cmplt., ¶¶25-31. Finally, on January 15, 2016 – two days

after this lawsuit was commenced – Cryptsy retracted its earlier published excuses and made the stunning confession that Cryptsy had "been insolvent since approximately Five Million Dollars ($5,000,000) in clients assets 'disappeared' in June 2014, and Cryptsy [had] actively been concealing that fact from Cryptsy's customers as well as from governmental and regulatory authorities." Amd. Cmplt., ¶32. Cryptsy further admitted that it had "lied to its customers about the nature of the problems that prevented Cryptsy account holders from accessing their funds." Amd. Cmplt., ¶32. Perhaps most notably, Cryptsy admitted to operating a fraudulent financial scheme for nearly eighteen (18) months by which withdrawals from Cryptsy accounts were not funded from the assets purportedly safeguarded in each Cryptsy account holders' account; rather the funds that were withdrawn were purportedly being supplied by Cryptsy itself from the profits on its own business operating account. Amd. Cmplt., ¶32. Finally, amidst all of the customer demands for access to their accounts and return of their deposited funds, Cryptsy stated that it planned to indefinitely suspend all trades and withdrawals from Cryptsy accounts until Cryptsy and Vernon(the "Cryptsy Defendants") could formulate their own brand of vigilante justice that would somehow resolve all of the crimes and misdeeds that Cryptsy Defendants had perpetrated upon their customers. Amd. Cmplt., ¶32.

    **C.    VERNON STOLE PLAINTIFFS' AND THE CLASS' ASSETS, USED THE FUNDS TO PURCHASE A $1.375 MILLION HOME, AND THEN GAVE THE HOME TO NETTLES.**

Unfortunately, Cryptsy's self-described "temporary" suspension and loss of access to accounts has lasted several months, and users transactions and desires to withdraw their U.S. dollars or cryptocurrency are still being denied. Amd. Cmplt., ¶33. As a result of Cryptsy's continuing withdrawal issues, customers have not had full and complete access to their funds, causing immense hardship, including the inability to pay for other goods or services. Amd.

Cmplt., ¶34.

The millions of dollars in customer assets that purportedly "disappeared" in June 2014 are not missing at all. Amd. Cmplt., ¶3. Rather, it appears the virtual currency was taken by the Cryptsy Defendants, and some or all of those stolen funds were converted into U.S. dollars to pay for the Cryptsy Defendants' own business and personal expenses, including Vernon's all-cash-purchase of a $1,374,881 waterfront mansion (the "Property" or the "Mansion") in Delray Beach, Florida which was jointly titled in both Vernon's and Nettles' names. Amd. Cmplt., ¶¶4,5, 36-39.

Within just a few months of Vernon and Nettles' cash purchase of the Property, Nettles commenced marital dissolution proceedings that were concluded in less than four months with an arrangement memorialized as a Marital Settlement Agreement. Amd. Cmplt., ¶¶40-48. Under the Marital Settlement Agreement, Vernon transferred to Nettles sole ownership of the Property, the proceeds of any sale of the Property, another home the couple owned in Boynton Beach, Florida, and the proceeds of the sale of that home as well. *Id.*

Vernon and Nettles continued to own both the Property and their Boynton Beach home until January 29, 2016, when Nettles and Vernon sold the Boynton Beach home simultaneously with their execution of the Marital Settlement Agreement. Amd. Cmplt., ¶46, Exhibit B (the "Marital Settlement Agreement"). Therefore, they clearly did not use the proceeds of the January 2016 sale of the Boynton Beach home to pay for the Property, which had been purchased nearly a year earlier in March 2015.

According to Nettles' filings in the divorce proceedings, she did not work outside the home and earned no income for the family. Amd. Cmplt., Exh B. Rather, Vernon was the sole breadwinner. *Id.* It would therefore have been practically impossible for Nettles to have supplied

the cash used to acquire the Property, and she makes no such representation in the Marital Settlement Agreement. *Id*. Meanwhile, Nettles has benefitted from her former husband's fraud by accepting the transfer of the Mansion and the proceeds of the Boynton Beach home. Amd. Cmplt. ¶48, Exh B.

As a result of the foregoing scheme, the risk of asset dissipation and dispersion now falls squarely on Plaintiffs' and the potential class members' shoulders, while Nettles seeks to reap the benefits of her former husbands' fraud and theft.

## LEGAL STANDARD

A court must deny a motion to dismiss unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp.2d 1256, 1264 (S.D. Fla. 2004)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir.), cert. denied, 525 U.S. 1000 (1998)). In ruling on Defendant's Motion, the Court must assume all of Plaintiffs' allegations, as well as reasonable inferences therefrom, are true. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is … 'exceedingly low.'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)(citing *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir.1983). If, after viewing the allegations in the Amended Complaint in the light most favorable to Plaintiffs, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," only then may the court dismiss the Amended Complaint for failure to state a claim. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

## ARGUMENT AND MEMORANDUM OF LAW

Defendant Nettles' Motion should be denied because Plaintiffs' Amended Complaint properly pleads against her causes of action for conversion, fraudulent conveyance and civil conspiracy, and corresponding injunctive relief, by alleging that Nettles was a knowing and active participant in the transfer of misappropriated, converted, and stolen funds that were given to her with the intent to hinder, delay, or defraud Plaintiffs' and the potential Class Members' ability to recover the sums owed to them by Cryptsy and Vernon. Contrary to Defendant's arguments, all of which either misread Plaintiffs' allegations or misstate legal authority, Plaintiffs' Amended Complaint states all of the necessary elements of their claims. Thus, Defendant's Motion must be denied.

### I. PLAINTIFFS' COUNT VI ALLEGES ALL OF THE ELEMENTS TO OBTAIN A PRELIMINARY AND PERMANENT INJUNCTION

Defendant does not, because it cannot, argue that Plaintiffs have failed to sufficiently allege all of the elements required to obtain injunctive relief. Rather, Defendant erroneously claims that Plaintiffs' cause of action for a preliminary and permanent injunction must fail because an injunction is not a cause of action but a remedy. Florida's state courts generally recognize and allow independent causes of action for temporary injunction. *See*, *e.g.*, , *Colucci v. Kar Kare Auto. Group, Inc.*, 918 So.2d 431, 438 (Fla. 4th DCA 2006); *City of Miami Beach v. Swedore*, 788 So.2d 404, 405 (Fla. 3d DCA 2001). Of course, this is not to suggest that in Florida's federal courts, as in Florida's state courts, a request for a temporary injunction need not be grounded in at least one cause of action that is independent - and forms the basis - of the injunctive relief sought. *See*, *e.g.*, *Pronman v. Styles*, 2015 WL 58629, *11 (S.D. Fla. 2015)(Marra, J.).

Florida's federal courts have recognized that to obtain injunctive relief, a plaintiff must allege – and later demonstrate through evidence and argument - (1) that the plaintiff will suffer an irreparable harm; (2) a substantial likelihood of success on the merits; (3) lack of adequate remedy at law; and (4) that the requested injunction will serve the public interest. *See*, *e.g.*, *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d. 767, 774; 2015 WL 8999502, *3, n. 16 (11th Cir. Dec. 16, 2015); *Palmer v. McDonald*, 624 Fed.Appx. 699, 704; 2015 WL 4978778, *4 (11th Cir. Sept. 4, 2015); *Great American Ins. Co. v. Fountain Eng'g, Inc.*, 2015 WL 6395283, *2 (S.D. Fla. Oct. 22, 2015); *Telestrata, LLC v. NetTALK.com, Inc.*, 2015 WL 4943591,*3 (S.D. Fla. 2015). Moreover, courts have routinely held that an injunction is proper in circumstances such as this, where a defendant has possession of specific identifiable funds and is refusing to turn them over. *See Gruder v. Gruder,* 433 So.2d 23 (Fla. 4th DCA 1983)(injunction proper where appellee has been unable to get what he considers to be a reliable accounting of the whereabouts or disposition of a substantial portion of trust's liquid assets and he is concerned with further removal, concealment and misspending); *Georgia Banking Co. v. GMC Lending & Mortg. Servs. Corp.,* 923 So.2d 1224 (Fla. 3d DCA 2006)(injunctive relief appropriate to prevent dissipation of funds held in a specific identifiable trust fund).

Here, Plaintiffs have clearly alleged all of the elements to obtain injunctive relief. An injunction is necessary to ensure that Plaintiffs and the Class do not suffer irreparable harm by enjoining the sale of the Mansion, and any subsequent dissipation of the proceeds of that sale, as any such sale and asset dissipation would allow Defendants to succeed in placing the funds stolen from Cryptsy account holders beyond the reach of Plaintiffs and the Class. Amd. Cmplt., ¶133. Plaintiffs also generally allege that they will suffer irreparable harm if Cryptsy does not honor its obligation to permit its customers to withdraw their funds upon demand, since

cryptocurrencies are commodities whose value fluctuates over time; and those members of the proposed Class whose funds at Cryptsy consist, in whole or in part, of cryptocurrencies will almost certainly suffer a dramatic devaluation of their financial holdings if Cryptsy continues to hold those funds hostage and refuse client demands for withdrawals. Amd. Cmplt., ¶131.

Plaintiffs allege that they have a substantial likelihood of success on the merits (Amd. Cmplt., ¶137), which is demonstrated by Plaintiffs' detailed and well-pled facts and claims as to Defendant Nettles, and all Defendants in general.

Plaintiffs allege that there is no adequate remedy at law. If the Mansion is sold, Defendant Nettles will be permitted to retain for herself the net proceeds from the sale of that Property – a property that was purchased by Defendant Nettles and Vernon with funds stolen from Cryptsy account holders. Amd. Cmplt., ¶136. Thus, an injunction also serves to preserve the status quo. Amd. Cmplt., ¶140.

Finally, Plaintiffs also allege that the requested injunction would serve the public interest, both generally and as to Defendant Nettles. In general, an injunction would preserve the integrity of the Money Services Business, preserve and stabilize the worldwide use of cryptocurrency, and promote the objectives of FinCEN (a division of the U.S. Department of the Treasury), of which Cryptsy is a member. Amd. Cmplt., ¶141. As to Defendant Nettles, an injunction serves the public interest by ensuring that monies that rightfully belong to Plaintiffs and the Class, and which were used to purchase the Mansion, are preserved and made available to provide relief to the Class. Amd. Cmplt., ¶140.

Ultimately, Plaintiffs' injunctive relief claim is not brought in the abstract. Rather, Plaintiffs seek injunctive relief based on their substantial likelihood of success on all of the legal claims alleged in the Amended Complaint, and the underlying facts that support those claims and

the entry of an injunction. Plaintiffs recognize that unlike in Florida's state courts, where independent claims for injunctive relief are commonly recognized, some Florida District Courts have found that injunctive relief is a remedy and not an independent stand alone cause of action. *See*, *e.g.*, *Pronman v. Styles*, 2015 WL 58629, *11 (S.D. Fla. 2015)(Marra, K.). Thus, if the Court is inclined to dismiss Plaintiffs' "cause of action" for injunctive relief, Plaintiffs request that the Court: (i) treat Plaintiffs' count for injunctive relief as the recitation of their entitlement to the remedy of a temporary injunction as to all of the counts plead, and (ii) grant Plaintiffs leave to (a) amend their pleading by interlineation to this effect, or (b) amend their pleading to add a general prayer of relief as to all counts that includes a request for injunctive relief.

## II. PLAINTIFFS' COUNT VII STATES A CAUSE OF ACTION FOR CONVERSION

Conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.,* 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984)(citing *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 160 Fla. 130, 33 So.2d 858 (Fla.1948)). Under Florida law, "an action for conversion of money consists of three elements: specific and identifiable money, a deprivation of money belonging to another, and an unauthorized act which deprives another of his money." *Navid v. Ulterwyk Corp.,* 130 B.R. 595, 595 (M.D. Fla. 1991). Moreover, "where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." *Senfeld,* 450 So.2d at 1161.

Defendant first argues that Plaintiffs have failed to allege that "specific and identifiable" money was taken from them by Defendant. For money to be specific and identifiable, "each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the

specific money in question, so that such money can be identified." *Belford Trucking Co., v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1971). Likewise, a transfer of funds involves "specific and identifiable" money when the two accounts involved in the alleged conversion are "separate ascertainable amounts and accounts." *Allen v. Gordon,* 429 So.2d 369 (Fla. 1st DCA 1983)(allowing a conversion action for a specific sum of money improperly transferred from one bank account to another).

Plaintiffs' Amended Complaint more than adequately identifies "specific and identifiable" money. Plaintiffs allege that each Cryptsy user created an account and that each account had a unique web address (referred to as a "Bitcoin wallet address") to which the user was supposed to send to Cryptsy the user's Bitcoin or other cryptocurrency. Amd. Cmplt., ¶21. Moreover, Plaintiffs allege that once the funds were placed in their respective individual accounts, Cryptsy was responsible for "safeguarding" such funds. Amd. Cmplt., ¶21. Thus, each Plaintiff was given a separate account that was identifiable by reference to that Plaintiff's "Bitcoin wallet address"; and Cryptsy had an obligation to keep these accounts intact and act according to Plaintiffs' instruction, including delivering the funds back to Plaintiffs should they request a withdrawal.

Defendant next argues that despite the clear case of conversion established by Plaintiffs, they fail to allege that Defendant possesses their cryptocurrency or funds of any type. However, there is no requirement that a plaintiff allege that a particular defendant is still in possession of the converted funds. The conversion was complete when Plaintiffs demanded the return of their funds and Defendants refused. Whether Defendant still possesses such funds or disposed of them is irrelevant to determining whether Plaintiffs have sufficiently stated a cause of action for conversion. In the Amended Complaint, Plaintiffs allege that they have made numerous

requests to withdraw money from their accounts, all of which were subsequently refused or ignored by Cryptsy. Amd. Cmplt., ¶¶51-55, ¶¶60-63, ¶¶66-68. Given that Plaintiffs have requested the return of their money -- requests that have still gone without fulfillment -- it is clear that Plaintiffs have pled the requisite elements of conversion; and Defendant's motion must be denied.

### III.   PLAINTIFFS' COUNT VIII STATES A CAUSE OF ACTION FOR FRAUDULENT CONVEYANCE

Pursuant to Chapter 726.105(1)(a) of Florida's Uniform Fraudulent Transfer Act, a transfer by a debtor "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made if the debtor made the transfer ... with actual intent to hinder delay, or defraud any creditor of the debtor...." Section 726.105(1)(a), Fla.Stat. In quantifying this statutory rule, Florida courts require plaintiffs to demonstrate that: (1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) conveyance of property that would have been applicable to payment of the debt due. *Huntsman Packaging Corp. v. Kerry Packaging Corp.,* 992 F.Supp. 1439 (M.D. Fla. 1998), *affirmed* 172 F.3d 882. Contrary to Defendant's argument, Plaintiffs pled each of the elements of their claim.

Defendant's argument that Plaintiffs fail to identify the transfer at issue rings hollow, since Plaintiffs clearly allege two fraudulent transfers: (1) the transfer from Vernon to Defendant of a substantial portion of funds stolen from Plaintiffs; and (2) the transfer from Vernon to Defendant of the Mansion. Amd. Cmplt., ¶45, ¶48, ¶153, ¶¶155-156. Moreover, Plaintiffs have alleged that in making such transfers, both Vernon and Defendant possessed the requisite intent to defraud because they sought to hinder, delay or prevent Plaintiffs' and the potential Class Members' ability to recover the sums owed to them by Cryptsy. Amd. Cmplt., ¶160. Plaintiffs

further allege that Defendant and Vernon made the transfers knowing they would leave Cryptsy with insufficient funds to satisfy their obligations to Plaintiffs and the potential Class Members. Amd. Cmplt.. ¶158.

Ironically, Defendant follows its argument that Plaintiffs failed to identify the allegedly fraudulent transfer by claiming that the Mansion is exempt under Florida law and thus cannot be the subject of a fraudulent transfer. *See*, Motion at ¶¶ 13-14. This argument, of course, cannot be addressed on a motion to dismiss, where all of Plaintiffs' allegations must be accepted as true. Thus, while Plaintiffs could argue here, for example, that such property did not have homestead status at the time of purchase, and that based on the facts of this case any homestead exemption – whether at the time of the purchase or subsequent to it – does not apply, Plaintiffs will refrain from doing so here.[1] Nevertheless, Plaintiffs are compelled to address at least some of Defendant's arguments.

Defendant first attempts to argue that the Mansion is exempt by virtue of its status as homestead. *Id*. This argument ignores the well-established law in Florida that when a homestead is purchased with fraudulently obtained funds, the homestead exemption from forced sale does not apply to either spouse, even if one spouse is innocent or ignorant of the wrongdoing. *Hirchert Family Trust v. Hirchert,* 65 So.3d 548, 552 (Fla. 5th DCA 2011); *Spikes v. OneWest Bank FSB,* 106 So.3d 475, 479 (Fla. 4th DCA 2012).

In the alternative, Defendant asserts that the Mansion is exempt by virtue of tenancy by the entirety. *See*, Motion at ¶¶ 13-14. However, like the exception to the Homestead exemption discussed above, the traditional protection afforded to property held as tenancy by the entireties

---

[1] Plaintiffs explain why the property at issue is not a protected homestead in their Motion for Temporary Restraining Order (D.E. 23).

does not apply when the property was obtained with fraudulently acquired funds. *Beal Bank, SSB v. Almand and Assocs.,* 780 So.2d 45, 59 (Fla. 2001); *Dowling v. Davis,* 2007 WL 1839555, at *3 (M.D. Fla. June 26, 2007).

Because Plaintiffs' Amended Complaint pleads all the necessary elements of a fraudulent transfer, and because none of exemptions relied on by Defendant are applicable, Defendant's motion to dismiss must be denied.

### IV. PLAINTIFFS' COUNT IX STATES A CAUSE OF ACTION FOR CIVIL CONSPIRACY

Under Florida law, the elements of a civil conspiracy are: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in pursuance of the conspiracy and (4) damage to the plaintiff as a result of the act." *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.,* 590 F.Supp.2d 1364, 1368 (M.D. Fla.2008)(citing *Walters v. Blankenship,* 931 So.2d 137, 140 (Fla. 5th DCA 2006)). Defendant argues that Plaintiffs' claim for civil conspiracy must be dismissed because they have failed to state a cause of action for fraudulent transfer and therefore there is no independent tort to serve as the underlying "unlawful act."

As is discussed above, Plaintiffs have indeed alleged in detail all the elements necessary to make a *prima facie* case that Defendants committed a fraudulent transfer. Amd. Cmplt., ¶¶151-161. Furthermore, Plaintiffs have alleged that Defendants conspired to commit the fraudulent transfer and have provided a detailed accounting of the transfer, including the specifics of the Defendants' agreement and description of what property was transferred. In particular, Plaintiffs allege that Defendants Nettles and Vernon "conspired with one another to perpetrate an unlawful act upon Plaintiffs and the potential Class Members or to perpetrate a

lawful act by unlawful means, to *wit:* they fabricated a Marital Settlement Agreement during the pendency of this lawsuit in an effort to secrete away the vast bulk of Vernon's assets in the form of the Mansion and Boynton Beach Property so that Vernon would not have sufficient assets upon which Plaintiffs and the potential Class Members could execute any potential judgment." Amd. Cmplt., ¶162.

Such detailed allegations are more than sufficient to allege a cause of action for civil conspiracy; and therefore, Defendant's motion to dismiss must be denied.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint should be denied. In the event the Court should grant in whole or in part Defendant's Motion, Plaintiffs request leave to amend to correct any pleading or other deficiencies in their Amended Complaint.

In making this alternative request for leave to amend, Plaintiffs are not suggesting that their complaint is not adequately pled. However, since the filing of Plaintiffs' Amended Complaint (which Plaintiffs filed pursuant to Rule 21(a)(1)(A), Fed.R.Civ.P., prior to the time that Defendant Nettles first moved to dismiss), Plaintiffs, through counsel, have learned additional facts that further support the claims alleged in the Amended Complaint. These additional facts are set forth, in part, in Plaintiffs pending Motion for Temporary Restraining Order (D.E. 23). Moreover, on March 25, 2016, Defendant Nettles' counsel provided the undersigned with additional evidence and information, including but not limited to the transcript of Vernon's December 2015 deposition taken in the Vernon/Nettles marital dissolution proceeding, which further supports the claims against Nettles as well as those against Vernon and Cryptsy. Thus, while Plaintiffs' Amended Complaint is adequately pled, Plaintiffs -- in an

abundance of caution -- respectfully request leave to amend to correct any pleading deficiencies noted by the Court. *See*, *e.g.*, *Morales ex rel. Soto v. Palm Beach County Sherriff's Office*, 2012 WL 2414300,*3 (S.D. Fla. 2012)(Marra, J.)(noting that this Court's usual practice is to allow leave to amend when granting a motion to dismiss as Rule 15(a), Fed.R.Civ.P., provides that leave to amend "shall be freely granted when justice so requires.").

        Respectfully submitted,

        **SILVER LAW GROUP**
        11780 W. Sample Road
        Coral Springs, Florida 33065
        Phone: (954) 755-4799/Fax: (954) 755-4684

        By:  */s/ David C. Silver*
        DAVID C. SILVER
        Florida Bar No. 572764
        E-mail:   DSilver@silverlaw.com
        SCOTT L. SILVER
        Florida Bar No. 095631
        E-mail:   SSilver@silverlaw.com
        JASON S. MILLER
        Florida Bar No. 072206
        E-mail: JMiller@silverlaw.com

          - and -

        */s/ Marc A. Wites*
        MARC A. WITES
        Florida Bar No. 024783
        E-mail: mwites@wklawyers.com
        **WITES & KAPETAN, P.A**.
        4400 N. Federal Highway
        Lighthouse Point, Florida 33064
        Phone: (954) 570-8989/Fax: (954) 354-0205

        *Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this 4th day of April 2016 by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participant(s): **MARK A. LEVY, ESQ.**, BRINKLEY MORGAN, *Counsel for Defendant Lorie Ann Nettles*, 200 East Las Olas Blvd. - 19th Floor, Fort Lauderdale, FL 33301; E-mail: Mark.Levy@brinkleymorgan.com.

**I FURTHER CERTIFY** that a true and correct copy of the foregoing will be served in accordance with the Federal Rules of Civil Procedure and/or the District's Local Rules and procedures, and this Court's Orders to: **PROJECT INVESTORS, INC. d/b/a Cryptsy c/o Paul Vernon, President and Registered Agent**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: support@cryptsy.com; and **PAUL VERNON**, **individually**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: PaulEVernon@yahoo.com.

*/s/ Marc A. Wites*
Marc A. Wites