UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

    Defendants.
_____/

## RECEIVER'S MOTION TO COMPEL PUBLIC STORAGE TO PROVIDE IMMEDIATE ACCESS TO STORAGE UNITS

    James D. Sallah, Esq., not individually but solely in his capacity as the court-appointed Receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), hereby moves to compel non-party Public Storage to provide the Receiver with immediate access to certain storage units and states:

    1.    On April 4, 2016, the Court issued the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order").

    2.    Pursuant to the Appointment Order, the Receiver is authorized, among other things, to take possession and control of Cryptsy's assets and books and records. In addition, the Appointment Order requires the preservation of Cryptsy's assets and prevents the concealment of such.

    3.    The Receiver understands that there are at least two storage units associated with

Defendant Paul Vernon and/or Cryptsy. During Mr. Vernon's December 2015 deposition in his divorce case, he testified that there are two storage units at Public Storage, at least one of which is "rented by" Cryptsy. Copies of the relevant excerpted deposition testimony of pages 13-14 and 275 are attached as Composite Exhibit A.

4.  The Receiver has contacted Public Storage to attempt to gain access to, at a minimum, the storage unit associated with Cryptsy. The Receiver has also served a copy of the Appointment Order on Public Storage. However, Public Storage has refused to provide the Receiver with access to the storage units. A copy of the Receiver's initial demand letter (without the enclosure) is attached as Exhibit B. In addition, attempts have been made to resolve these issues with Pubic Storage's in-house counsel, similarly without success.

5.  As of this filing, Public Storage has refused to grant the Receiver access to any storage unit and has stated that the two storage units are rented by Mr. Vernon. Pubic Storage has not provided the Receiver with copies of the account opening documents or contracts for the storage units which would confirm who are the owners of the accounts.

6.  The Receiver understands that at least one of the storage units has a Cryptsy server which may have relevant information for the Receiver to access a specific Cryptsy cryptocurrency wallet of a significant value for the investors' benefit. That specific Cryptsy server, like all other Cryptsy servers, assets and books and records, is covered by the Appointment Order and is subject to immediate turnover to the Receiver.

7.  Therefore, at a minimum, the Receiver requests that he be granted immediate access to the storage units – even if they are in Mr. Vernon's name – to inspect, inventory and determine what is (and what is not) subject to the receivership.

8.  A proposed Order is attached as Exhibit C. Plaintiffs and Defendant Lorie Ann

Nettles have no objection to this Motion or the attached proposed Order. As of this filing, Defendant Paul Vernon has not appeared in this action.

9. As stated above, the Receiver has attempted to meet and confer with Public Storage in good faith to resolve these issues without the necessity of this Motion for quite some time. However, Public Storage has refused to provide the Receiver with access to the storage units.

10. In addition, these issues have been further complicated because Mr. Vernon has fled to China, has not been cooperating with the Receiver and has ignored the Receiver's April 2016 demand letter (including issues regarding the storage units).

11. The Receiver is concerned that the storage units may be abandoned by Mr. Vernon, which would likely result in Public Storage auctioning off the items in the storage units. Therefore, this Motion involves time-sensitive issues.

12. The Receiver has served this Motion on Public Storage through its designated in-house counsel.

WHEREFORE, the Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit C, permitting the Receiver to access any and all storage units at Public Storage in the names of or opened by Paul Vernon, Project Investors, Inc. or Cryptsy.

Dated: June 16, 2016.

Respectfully submitted,

**PAYTON & ASSOCIATES, LLC**
*Counsel for the Receiver*
2 South Biscayne Blvd., Suite 1600
Miami, Florida 33131
Telephone:  (305) 372-3500
Facsimile:   (305) 577-4895

By: Patrick J. Rengstl, Esq.
    Patrick J. Rengstl
    FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl<br>
Patrick J. Rengstl, Esq.

## SERVICE LIST

**David C. Silver, Esq.**
Silver Law Group
Counsel for Plaintiffs
11780 West Sample Road
Coral Springs, FL 33065
(Via CM/ECF)

**Marc Wites, Esq.**
Wites & Kapetan, P.A.
Co-counsel for Plaintiffs
4400 N Federal Hwy
Lighthouse Point, FL 33064
(Via CM/ECF)

**Mark A. Levy, Esq.**
**George J. Taylor, Esq.**
Brinkley Morgan
Counsel for Defendant Lorie Ann Nettles
200 E Las Olas Blvd Ste 1900
Fort Lauderdale, FL 33301
(Via CM/ECF)

**Paul Vernon**
(Via Email)

**Public Storage**
c/o Greta Katz, Esq.
(Via Email)

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 502015DR009881XXXXSBFZ

IN RE:   THE MARRIAGE OF:
LORIE ANN NETTLES,

       Petitioner/Wife,

-vs-

PAUL EDWARD VERNON,

       Respondent/Husband

LORIE ANN NETTLES,

   Third-Party Plaintiff,
-vs-

PAUL EDWARD VERNON and CRYPTSY
INTERNATIONAL LTD.; PROJECT
INVESTORS, INC.; HASHMAX USA,
LLC; TERABOSS, INC., HASHMAX,
INC. and VERGENT DATA, INC.,
   Third-Party Defendants.
_____/

DEPOSITION OF PAUL EDWARD VERNON
Volume 1 of 1
Pages 1 through 158

Tuesday, December 22, 2015
10:55 a.m. - 2:25 p.m.

BRINKLEY MORGAN
2255 Glades Road, Suite 304W
Boca Raton, Florida 33431

Stenographically Reported By:
MICHELE SCHULMAN, CRR, RMR, FPR
Certified Realtime Reporter
Registered Merit Reporter
Florida Professional Reporter

U.S. LEGAL SUPPORT
(813) 876-4722

EXHIBIT A

Page 10

1   2015 did have a residential, permanent residential
2   address in the United States --
3       A.  Yes.
4       Q.  -- but that you do not now have a permanent
5   address in the United States.  When did you stop having a
6   permanent address in the United States?
7       A.  The lease for the Boca place where I stayed at
8   ended in November.
9       Q.  So your testimony is that November of 2015 you
10  stopped having a permanent residence in the United
11  States?
12      A.  Correct, yes.
13      Q.  Have you ever used an e-mail address that ends
14  in eSnail.ca?
15      A.  Can you repeat that?
16      Q.  Sure.  E-S-N-A-I-L.C-A?
17      A.  Let me write that down.  E-S.
18      Q.  N-A-I-L.C-A?
19      A.  N-A-I-L, eSnail?
20      Q.  .ca?
21      A.  eSnail?  I have never used an e-mail address
22  for eSnail like it is some sort of service.
23      Q.  Do you recall having paid eSnail.ca for
24  services?
25      A.  eSnail, I believe, is a virtual mailing address

Page 11

1   service.
2       Q.  Is it used for marketing type of mailing?
3       A.  No, I believe it is used for if you want an
4   address in a place that you don't residence like a PO Box
5   type of service, that's what I believe eSnail is.
6       Q.  Have you ever used that service?
7       A.  I believe I have, yes.
8       Q.  For what purpose?
9       A.  To have a Canadian address.
10      Q.  What was the Canadian address that you were
11  provided from eSnail?
12      A.  I don't know.
13      Q.  What is your current telephone number?
14      A.  My phone number here in the States is
15  (redacted).
16      Q.  What is your phone number out of the U.S.?
17      A.  I don't know.  I would have to look it up.
18      Q.  Do you have your cell phone with you?
19      A.  I do.
20      Q.  Do you have that information in your cell
21  phone?
22      A.  I can look.
23      Q.  Please do.
24      A.  Let me see.  It is country code (redacted)
25  (redacted).

Page 12

1       Q.  What is Miss Liu's phone number in China?
2       A.  Country code (redacted).
3       Q.  What is the telephone number for Baulao
4   Technology Company Ltd.?
5       A.  I don't have that number.
6       Q.  Aren't you -- who owns Baulao Technology
7   Company Ltd.?
8       A.  Xiu Xia.
9       Q.  Xiu Xia being Miss Liu, your girlfriend?
10      A.  Yes.
11      Q.  We will come back to that.  Do you hold any
12  licenses issued by any governmental entity in the United
13  States?
14      A.  Licenses?
15          MS. HALL:  Objection to form.
16          MR. HINKES:  What's the problem with the
17      question?
18          MS. HALL:  It is not particular in the sense
19      that it is overbroad.
20          MR. HINKES:  No.  I'm asking him if he owns any
21      licenses.
22          MS. HALL:  Like a fishing license.
23          MR. HINKES:  Any license.
24          MS. HALL:  Objection.  Overbroad.
25  BY MR. HINKES:

Page 13

1       Q.  Do you own any business license?
2       A.  We have an occupational license with Delray
3   Beach.  I think that's really the only license we have.
4   We have a registration with FinCEN.
5       Q.  When you say "we" in that last answer, who do
6   you mean?
7       A.  The company.
8       Q.  Which company?
9       A.  Project Investors.
10      Q.  Okay.  And do you have any --
11      A.  I do not have any professional licenses, if
12  that's what you're asking.
13      Q.  Do you own or have rights to any storage unit
14  locations in South Florida?
15      A.  Yes.
16      Q.  Where are those locations?
17      A.  There is a storage unit that is rented by
18  Project Investors that is off of -- it is Public Storage
19  off of Congress and south of Woolbright but north of
20  Atlantic.  I don't know the address.
21      Q.  What's in that location?
22      A.  Contents of the home that was moved out in
23  November.
24      Q.  Do you have any other storage units?
25      A.  There's a storage unit that was rented

Page 14

1 personally for family household goods that's off of
2 Military Trail north of Gateway. That's Public Storage.
3    Q.  What's in that one?
4    A.  That is household goods for family.
5    Q.  Do any of the business entities that you own
6 operate, control or manage have any public storage or
7 have any storage lockers or storage units?
8    A.  The first one that I told you about is under
9 Project Investors.
10   Q.  Have you personally been sued by anyone besides
11 by your wife?
12   A.  Personally?
13   Q.  Right.
14   A.  Yes, I was included on a lawsuit that was
15 towards the business.
16   Q.  Do you recall who the parties are in that
17 lawsuit?
18   A.  No, I don't. I don't know the name. It was a
19 law firm in Fort Lauderdale. I don't remember. It was
20 initially a class action but there was only one person
21 who came forward.
22   Q.  Has Project Investors, Inc. been sued by anyone
23 besides the case you just mentioned?
24   A.  No.
25   Q.  What about Cryptsy?

Page 15

1    A.  Cryptsy is Project Investors. It is the same.
2 Cryptsy is a d/b/a.
3    Q.  So let's talk about your employment. Who is
4 your current employer?
5    A.  My current employer is Project Investors but
6 currently I am not salaried.
7    Q.  Have you ever been fired by Project Investors?
8    A.  I guess you could say that we did a termination
9 so that I could liquidate my 401(K).
10   Q.  Who is the "we" that you mentioned when you
11 said we did a termination?
12   A.  Project Investors. Project Investors did the
13 termination so I can put the reason for the liquidation
14 of the 401(K) as termination.
15   Q.  Why did you need to do that?
16   A.  Because that was one of the reasons that it
17 gave me when it came time to liquidate the 401(K).
18   Q.  Is it fair to say that, well, let me take a
19 half step back. Who manages and operates PII, I will
20 call it?
21   A.  I do.
22   Q.  You do?
23   A.  Yes.
24   Q.  So who made the decision to terminate you?
25   A.  I did.

Page 16

1    Q.  Were you subsequently rehired?
2    A.  No.
3    Q.  Do you recall executing a financial affidavit?
4    A.  I believe that's what we have been working on,
5 yes.
6        MR. HINKES: I will have this marked as
7    Exhibit 1.
8        (Petitioner/Wife's Exhibit 1, Financial
9 Affidavit of Paul E. Vernon, was marked for
10 identification.)
11 BY MR. HINKES:
12   Q.  Let me show this to the witness. Do you
13 recognize this document, sir?
14   A.  Yes.
15   Q.  Can you flip to the last page, please, and
16 indicate verbally for me when you're there.
17   A.  I'm at the last page.
18   Q.  Do you see your signature?
19   A.  I do.
20   Q.  Do you recognize that as your true and correct
21 signature or a copy of it?
22   A.  Yes.
23   Q.  Do you see a notary stamp on the bottom left
24 hand corner?
25   A.  Yes.

Page 17

1    Q.  Do you recall executing this document on
2 December 21st, 2015?
3    A.  Yes.
4    Q.  Can you point out anything in this document
5 that is untrue?
6    A.  No.
7    Q.  Do you see on the first page there is an item
8 that says B, employed by Project Investors, Inc.?
9    A.  Yes.
10   Q.  Did you in this document affirm under oath that
11 you're employed by Project Investors, Inc.?
12   A.  Yes.
13   Q.  Let's flip to the last page. Do you see the
14 date of this document?
15   A.  Yes.
16   Q.  What is it?
17   A.  December 21st, 2015.
18   Q.  So when is that? Is that yesterday?
19   A.  Yes.
20   Q.  Do you see the notarization or, I'm sorry, do
21 you see, I will stop there.
22       So are you or are you not employed by Project
23 Investors, Inc.?
24   A.  I am not a paid employee.
25   Q.  So now you're employed but not receiving

```
 1        IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
              IN AND FOR PALM BEACH COUNTY, FLORIDA
 2
            CASE NO.   502015DR009881XXXXSBFZ
 3

 4     _____

 5   IN RE:   THE MARRIAGE OF:

 6   LORI ANN NETTLES,

 7            Petitioner/Wife,

 8   and

 9   PAUL EDWARD VERNON,

10            Respondent/Husband.

11   _____

12

13

14            C-O-N-T-I-N-U-A-T-I-O-N

15        DEPOSITION OF PAUL EDWARD VERNON
                  Volume 2 of 2
16              Pages 198 through 350

17

18

19        Tuesday, December 29, 2015
            10:00 a.m. - 4:50 p.m.
20             2255 Glades Road
                 Suite 340W
21         Boca Raton, Florida   33431

22

23
          Stenographically Reported By:
24         Karen S. Morris, RMR, FPR
           Registered Merit Reporter
25        Florida Professional Reporter
```

Page 275

1  Q. You don't know? Do you know what that purchase
2  was or what that transfer was for?
3  A. I don't recall. The name looks familiar but I
4  don't -- I'm not sure who it is.
5  Q. You testified previously that you purchased items
6  for the house that was rented and paid for by you for
7  your girlfriend and her daughter; correct?
8  A. Yes.
9  Q. Where are those items right now?
10 A. They're mostly in a storage unit that is paid for
11 by the company.
12 Q. So where is that storage unit?
13 A. It's Congress, south of Woolbright, north of Lake
14 Ida.
15 Q. And who's paying for that?
16 A. Project Investors.
17 Q. Project Investors?
18 A. Yes. The unit was originally opened and used by
19 Project Investors.
20 Q. Turn to page 11 of 15. You've got an electronic
21 payment to Incapsulain. Is it your testimony that every
22 time we see a charge for Incapsulain, it's a charge for
23 the company?
24 A. Yes.
25 Q. Go to page 12 of 15, please. Do you recall going

Page 276

1  to the San Francisco Bitcoin conference in May?
2  A. No.
3  Q. Okay. Draw your attention to the transfer on
4  5/12. Do you recall being in San Francisco on 5/12?
5  A. I must have been in San Francisco.
6  Q. Who else was taking out money on that date from
7  the San Francisco airport if not you?
8  A. It would have been me.
9  Q. Okay. What were you doing in San Francisco in
10 May?
11 A. Well, I see an entry MediaBistro which indicates
12 a conference, Bitcoin conference.
13 Q. Is MediaBistro Moe's company?
14 A. No.
15 Q. No?
16 A. Who owns MediaBistro? I don't remember the guy's
17 name but it's not Moe.
18     MR. HINKES: Can you read back the prior
19     question, please.
20     (Question referred to above was read back.)
21 A. It must have been a conference.
22 Q. Do you recall who you traveled with to that
23 conference?
24 A. I believe I traveled alone.
25 Q. Okay. 5/12, MediaBistro Events, 371, that

Page 277

1  indicates a conference?
2  A. Yes.
3  Q. On 5/12, we have an iTunes charge, 125.98. Does
4  that indicate a video game purchase --
5  A. Most likely.
6  Q. -- that you testified about previously?
7  A. Yes.
8  Q. If you go to the bottom of 13 of 15, you see a
9  debit withdrawal in the amount of 13,053.24.
10    Do you recall what that very peculiar number was
11 for?
12 A. No.
13 Q. Then you have a wire transfer outgoing to
14 Innosilicon Technology Limited, 71,500. Do you recall
15 what that was for?
16 A. That was purchasing mining equipment.
17 Q. Why were you purchasing mining equipment in April
18 of 2015?
19 A. Because we were still setting up Mintsy. We were
20 still running Mintsy at that time.
21 Q. When did you agree with the Australian company to
22 do Mintsy?
23 A. Actually this purchase for -- it was for
24 personal. The idea was I was going to run these
25 machines personally.

Page 278

1  Q. I got to ask you some questions about that.
2  A. Okay.
3  Q. What does Innosilicon Technology make?
4  A. They make scrypt mining machines.
5  Q. Are they making chips or cards?
6  A. The entire machine.
7  Q. Is this like one of these fluid immersion style
8  ones?
9  A. It looks just like a computer.
10 Q. So it looks like a server and a rack?
11 A. Yes.
12 Q. Where is Innosilicon based?
13 A. China.
14 Q. And where was the delivery to be?
15 A. Delivery was sent to Canada.
16 Q. Okay. And who was to receive the Innosilicon
17 Technology Limited machines?
18 A. There was a hosting company for these machines up
19 in Canada. Marshall was setting up the hosting, but I
20 think the machines ended up in Washington state.
21 Q. Why?
22 A. Because some issue with the guy in Canada, so it
23 was sent to Washington to be hosted there instead.
24 Q. Who was your contact with Innosilicon Technology
25 Limited?



PATRICK J. RENGSTL
 305.372.3500 ext 123 | F 305.577.4895 | rengstl@payton-law.com

PAYTON & ASSOCIATES, LLC
One Biscayne Tower, 2 South Biscayne Blvd., Suite 1600
Miami, Florida 33131

May 13, 2016

<u>Via Facsimile (561.731.1456)</u>

Tiffany Stevens
Public Storage
3400 S Congress Ave
Boynton Beach, FL 33426

   RE: **Leidel, etc. v. Cryptsy, Paul Vernon, and Lorie Ann Nettles -- USDC - SD Fla. - Case No. 9:16-cv-80060-MARRA**

Dear Tiffany:

  It was nice speaking with you this morning. Enclosed for purposes of service on Public Storage is a copy of a Federal Court Order dated April 4, 2016, that placed company Project Investors, Inc., d/b/a Cryptsy, into receivership for allegedly running a fraud scheme. I am legal counsel to the Receiver, James D. Sallah. Please include me on all correspondence or communications.

  We understand that Project Investors had a storage space in its name at your location at 3400 S Congress Ave, Boynton Beach, FL 33426. The enclosed Order gives the Receiver the right to access the storage space. Please advise whether the storage space is still active or whether Public Storage has locked the space and/or removed/auctioned/disposed of the contents for nonpayment. If an auction or disposal of contents occurred, we will need to know the details, including the date and inventory of contents auctioned or disposed of. If the space is still there, we will need to coordinate accessing the storage space as soon as possible.

  Please contact me as soon as possible regarding these issues. My number is 305.372.3500 ext. 123, and my email is rengstl@payton-law.com. The enclosed Order requires prompt cooperation with the Receiver. Thank you.

            Sincerely,

            Patrick J. Rengstl, Esq.

Encl.
cc: James D. Sallah, Receiver
   Robert Carey

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

      Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

      Defendants.
_____/

## ORDER GRANTING RECEIVER'S MOTION TO COMPEL PUBLIC STORAGE TO PROVIDE IMMEDIATE ACCESS TO STORAGE UNITS

THIS MATTER is before the Court upon the Receiver's Motion to Compel Public Storage to Provide Immediate Access to Storage Units [DE 56]. The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

**ORDERED AND ADJUDGED** that the Motion [DE 56] is **GRANTED**. Public Storage is ordered to provide the Receiver with immediate access to any and all storage units at Public Storage in the names of or opened by Paul Vernon, Project Investors, Inc. or Cryptsy. In addition, the Receiver is authorized to remove from the storage units and take control of any items in the storage units that are subject to the receivership Appointment Order [DE 33], such as Cryptsy



servers, assets and books and records.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this _____ day of June, 2016.

_____
KENNETH A. MARRA
UNITED STATES DISTRICT COURT JUDGE

Copies to:      Counsel and parties of record