UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

      Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

      Defendants.
_____/

## RECEIVER'S MOTION FOR AUTHORIZATION TO LIQUIDATE CERTAIN CRYPTOCURRENCIES SECURED BY THE RECEIVER

James D. Sallah, Esq., not individually but solely in his capacity as the Court-appointed Receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), hereby moves for authorization to liquidate certain cryptocurrencies[1] secured by the Receiver and states:

**A. Background**

    1.    On April 4, 2016, the Court issued the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order").

    2.    Pursuant to the Appointment Order, the Receiver is authorized, among other things, to take possession and control of Cryptsy's assets and books and records for the benefit of the receivership estate and Cryptsy's account holders (*i.e.*, users or customers).

---

[1] Cryptocurrencies are routinely referred to as coins in the digital context.

**PAYTON & RENGSTL, LLC**
One Biscayne Tower, 2 So. Biscayne Blvd., Suite 1600, Miami, FL 33131   305.372.3500

3. As a matter of background, this proceeding is a class action lawsuit filed by Cryptsy cryptocurrency account holders who had an account with Cryptsy when Cryptsy shut off access to customer accounts. Cryptsy was an online business for the public to purchase, exchange, invest, and trade cryptocurrencies.

4. The Plaintiffs, members of the Class of Cryptsy's account holders, have alleged, among other things, that (1) Cryptsy's managing principal, Defendant Paul Vernon, previously shut down Cryptsy's operations and fled to China; (2) at least $5 million of customer funds and cryptocurrencies have been missing and unaccounted for several months; and (3) account holders have been unable to access and use their Cryptsy accounts.

5. Given these allegations (and others), Plaintiffs moved for the appointment of a corporate monitor or receiver [DE 18], which the Court granted and appointed the Receiver in the Appointment Order on April 4, 2016.

### B. Cryptsy's Wallets of Cryptocurrencies

6. Cryptsy, through Defendant Vernon, controlled over 300 wallets (or accounts) in Cryptsy's name that each separately held different types of cryptocurrencies for the benefit of Cryptsy's account holders. In other words, each Cryptsy wallet was separated based on the type of digital coin.

7. For example, Cryptsy had a wallet for Bitcoin (generally the most well-known type of digital coin), which was separate from the Cryptsy wallet for Ethereum (a popular alternative coin), which was separate from any and all other Cryptsy wallets of other cryptocurrencies.

8. The Cryptsy wallets contained cryptocurrencies for the benefit of Cryptsy's account holders. Each Cryptsy wallet for each specific type of coin was commingled with the same types of coins for all the Cryptsy account holders who held such coins through a customer account at

Cryptsy. For example, when a Cryptsy account holder transferred Bitcoins through his/her Cryptsy account, the Bitcoins were exchanged and deposited into Bitcoins in the Cryptsy Bitcoin wallet in a pro rata amount for each account holder who had Bitcoins in a Cryptsy account. The same "pro rata" rule of thumb applied to transactions of the 300-plus other types of coins at Cryptsy.

9. Therefore, Cryptsy did not hold coins in each account holder's name in a segregated account or manner to trace the coins, or ownership of same, to that specific account holder, let alone any account holder. All coins deposited, exchanged, or otherwise used by account holders in Cryptsy accounts were commingled together by coin type in each Cryptsy wallet for that specific coin, and each Cryptsy wallet held a pro rata amount of coins for the benefit of each account holder who had that type of coin.

C. **The Receiver Secures Cryptsy's Servers**

10. Shortly after his appointment, the Receiver learned that a South Florida-based company called Vault Networks, Inc. held Cryptsy's servers at a location in Downtown Miami. The Receiver also learned that the servers would likely contain the wallets of whatever cryptocurrencies remained after Vernon had shut down Cryptsy's operations and left to China.

11. Initially, the Receiver did not obtain immediate access to the servers from Vault Networks, so the Receiver moved to compel Vault Networks to provide access [DE 43].

12. The Court immediately granted the Receiver access [DE 44], to which Vault Networks complied and provided the Receiver's counsel and computer forensics team access to the Cryptsy servers on May 6, 2016.

13. Two critical things occurred on May 6, 2016. First, the Receiver gained access to Cryptsy's servers and began the lengthy process of reviewing the many wallets on the servers to

determine what cryptocurrencies remain for the benefit of Cryptsy's account holders.[2]  Second, the Receiver learned that on April 4, 2016 (the date that the Court issued the Appointment Order), and literally hours after e-mail service of the Appointment Order on Defendant Vernon, Vernon or someone under his direction using his passcodes remotely logged into Cryptsy's servers and destroyed in three "shred" commands the database that contained, among other things, the number of, identity of and account balances of all Cryptsy's account holders.

14.   The Receiver has attempted to restore the deleted information from the database, but it was not possible to do such as of this filing.  The Receiver also attempted to secure backups which would contain the information that had been deleted, but, again, it was not possible to do such as of this filing.

15.   In other words, as of this filing, it is impossible for the Receiver to determine or know from the Cryptsy servers: (1) what is currently owed to each Cryptsy account holder; (2) what cryptocurrencies, and amount of same, each account holder had in his/her Cryptsy account during Cryptsy's operations, including at the time Cryptsy shut off access to its account holders; and (3) the identity and contact information of Cryptsy's account holders.

16.   However, determining and confirming account-holder information is not completely a lost cause.  Other avenues exist from the account holders' end of the spectrum to potentially confirm the above account-holder information, such as account statements saved by the account holders; emails saved by the account holders; documents they received from Cryptsy; and sworn declarations attesting to their investment, transactions, coins held and balance owed.

---

[2]  A review of the servers to determine what coins remain has taken months and many hours of work.

### D. The Receiver Secures the Remaining Wallets and Cryptocurrencies

17. As stated above, the Receiver accessed Cryptsy's servers and began the lengthy and tedious review of the many wallets on the servers to determine what cryptocurrencies remain for the benefit of Cryptsy's account holders.

18. The Receiver is pleased to report that he has successfully secured from Cryptsy's servers, and are currently in protected receivership digital wallets, dozens of different types of cryptocurrencies for the benefit of Cryptsy's account holders.

19. In addition to securing such wallets from Cryptsy's servers, the Receiver has successfully secured additional coins traceable back to Cryptsy from at least one third party exchange company that had received transfers of Cryptsy-derived coins from Vernon or someone under his direction.

20. For example, Bittrex, LLC is a digital currency exchange that allows customers to buy and sell cryptocurrencies and digital tokens, especially alternative coins called "altcoins."

21. On Sunday, April 10, 2016, certain cryptocurrency activity took place at Bittrex which had been previously associated with Cryptsy. Knowledgeable experts in the industry who were aware of the receivership contacted Bittrex and the Receiver informing them of such activity.

22. On Monday morning, April 11, 2016, the Receiver served Bittrex with a demand letter and subpoena. In the demand letter, the Receiver requested that Bittrex freeze any accounts or wallets in Cryptsy's name or derived from Cryptsy. In the subpoena, the Receiver requested, among other things, documents regarding account activity associated with Cryptsy-derived coins.

23. Bittrex froze the subject coins in an abundance of caution and fully cooperated with the Receiver. After several verbal and written discussions with Bittrex, including the Receiver's providing comprehensive sets of tracing analyses regarding the coins that Bittrex had frozen,

Bittrex agreed to transfer the frozen coins, which included several types of coins that were traceable back to Cryptsy, to the Receiver.

24. Attached as Exhibit A is a chart of the cryptocurrencies that the Receiver has secured as of this filing. There are fifty (50) different types of coins. The chart lists, among other things, the types of coins and the number of coins secured. In addition, the types of coins listed on the chart is expected to continue to grow as the Receiver continues to search and load/sync wallets.

### E. The Recommended Way to Turn the Secured Cryptocurrencies with a *High Liquidation Value* into Monetary Value for the Benefit of Cryptsy's Account Holders: Liquidating through an Exchange

25. The Receiver cannot return or digitally transfer the secured coins to legitimate account holders for two basic reasons. First, and as stated above, Defendant Vernon destroyed the database which contained, among other things, each account holder's account balance, coins held and account activity. Second, and as also stated above, each secured Cryptsy wallet for each specific type of coin was commingled with the same types of coins for the benefit of the Cryptsy account holders who had such coins in his/her account at Cryptsy. Therefore, account holders who had a certain type of coin at Cryptsy had a pro rata interest in the Cryptsy wallet for that specific type of coin. Cryptsy did not hold coins in each account holder's name in a segregated account or manner to trace the coins, or ownership of same, to any specific account holder.[3]

26. Based on the above, it is not appropriate for the Receiver to return or transfer the secured coins to Cryptsy's account holders. Because the secured coins should not be transferred

---

[3] Even if Vernon had not destroyed the database and the Receiver knew the account holders' account balances, the Receiver could not recommend returning the secured coins to the account holders because the account holders had a pro rata interest in the commingled Cryptsy wallets of coins.

to account holders, they must be turned into monetary value in some way for the benefit of the account holders.[4]

27. From a liquidation point of value, there are two types of coins that the Receiver has secured. One type has a strong or high liquidation value, meaning if the coins are sold through a cryptocurrency exchange, the net remaining monetary value in all probability would be close to the market value of the coins.

28. The Receiver has analyzed, with the assistance of his cryptocurrency forensics team, which coins have a strong or high liquidation value. The secured coins that the Receiver believes have a strong or high liquidation value are the following: Ethereum, Ethereum Classic, Bitcoin, Dash, Dodge, Litecoin, Namecoin, Startcoin, Novacoin, Peercoin, Vericoin, Rubycoin, Digibyte, Earthcoin, and I/Ocoin. Attached as Exhibit B is a chart of these specific cryptocurrencies.

29. On the other hand, the Receiver has secured many other types of coins that have a low to medium liquidation value, meaning that if the coins are sold through a cryptocurrency exchange, the net remaining monetary value would be significantly less than the market value of the coins.

30. Therefore, and as of this time, those types of coins should not be sold through an exchange, but should be sold in a different type of procedure, such as an auction, where their value can be maximized as much as possible. As such, and only for the secured coins with a low to medium liquidation value, the Receiver will be separately filing in the near future a motion for authorization to conduct an auction.

---

[4] Any future claims procedure and/or procedure for returning funds or making distributions to legitimate Cryptsy account holders will be the subject of separate motion(s) in the future.

31. Similarly, the Receiver has secured certain coins that total a large share of the market for that type of coin, meaning, again, that if the coins are sold through a cryptocurrency exchange, the net remaining monetary value would be significantly less than the market value of the coins. Therefore, those types of coins should not be sold through an exchange, but likewise should be sold in an auction procedure and will be the subject of the Receiver's upcoming motion for authorization to conduct an auction.

32. There is no reason to auction coins with a strong or high liquidation value because the winning auction bid for such coins would likely be less, and possibly significantly less, than the net amount realized upon sale through an exchange.

33. For example, if the Receiver were to auction Ethereum (a coin with a high liquidation value), the winning bid in all probability would be, at best, 67-80% market value, whereas liquidating/selling the Ethereum through an exchange in all probability would yield a higher value/amount net of the required exchange or associated fees.

34. In other words, an auction would not yield the greatest return for the coins with a strong or high liquidation value.

35. As stated above, the coins that the Receiver has secured that the Receiver believes have a strong or high liquidation value are: Ethereum, Ethereum Classic, Bitcoin, Dash, Dodge, Litecoin, Namecoin, Startcoin, Novacoin, Peercoin, Vericoin, Rubycoin, Digibyte, Earthcoin and I/Ocoin.

36. The Receiver requests authorization to liquidate/sell these coins through an exchange of his choice. The Receiver would use his best efforts in (1) choosing the actual date to sell the subject coins to maximize their value and (2) choosing an exchange which results in an

appropriate return net of exchange fees and other associated expenses.[5]

### F. Requested Exemption from 28 U.S.C. § 2001 and 28 U.S.C. § 2004

37.     Regarding the sale of personalty subject to a receivership proceeding, 28 U.S.C. § 2004 states that a receiver should follow the requirements of 28 U.S.C. § 2001 "unless the court orders otherwise." Specifically, 28 U.S.C. § 2001 requires, among other things, that: (1) three disinterested appraisers appraise the items sold; (2) the sale be at least two-thirds of the appraised value; (3) the terms of the sale be published in a newspaper of general circulation at least ten (10) days before confirmation of the sale; and (4) no confirmation of the sale if a bona fide offer is made of at least ten (10) percent above the offered price.

38.     Requiring the Receiver to comply with 28 U.S.C. § 2001 is not the best alternative under the above-discussed circumstances. Therefore, the Receiver respectfully requests that he not be required to sell the subject coins pursuant to 28 U.S.C. § 2001 and/or 28 U.S.C. § 2004.

39.     A proposed Order granting this Motion is attached as Exhibit C. Plaintiffs and Defendant Lorie Ann Nettles have no objection to this Motion. As of this filing, Defendant Paul Vernon has not appeared in this action and continues to refuse to cooperate with the Receiver.

WHEREFORE, the Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit C, seeking authorization from the Court to liquidate the coins listed in Exhibit B through exchange(s) and on date(s) of the Receiver's choice.

---

[5] The Receiver intends to attempt to negotiate with exchanges for a reduction in exchange fees and associated expenses.

Dated: September 16, 2016.

Respectfully submitted,

**PAYTON & RENGSTL, LLC**
*Counsel for the Receiver*
2 South Biscayne Blvd., Suite 1600
Miami, Florida 33131
Telephone:	(305) 372-3500
Facsimile:	(305) 577-4895

By: <u>Patrick J. Rengstl, Esq.</u>
　　Patrick J. Rengstl
　　FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

## SERVICE LIST

**David C. Silver, Esq.**
Silver Law Group
Counsel for Plaintiffs
11780 West Sample Road
Coral Springs, FL 33065
(Via CM/ECF)

**Marc Wites, Esq.**
Wites & Kapetan, P.A.
Co-counsel for Plaintiffs
4400 N Federal Hwy
Lighthouse Point, FL 33064
(Via CM/ECF)

**Mark A. Levy, Esq.**
**George J. Taylor, Esq.**
Brinkley Morgan
Counsel for Defendant Lorie Ann Nettles
200 E Las Olas Blvd Ste 1900
Fort Lauderdale, FL 33301
(Via CM/ECF)

**Paul Vernon**
(Via Email)

| COINS | # OF COINS |
|---|---|
| Ethereum | 5,000.17458 |
| Ethereum Classic | 5,000.17458 |
| Dash | 1,052.90 |
| Anoncoin | 159,759.7615 |
| 42 Coin | 6.9 |
| Auroracoin | 639,159.97 |
| Cryptobullion | 124,649.17 |
| Feathercoin | 6,132,660.1 |
| Quarkcoin | 7,527,236 |
| Megacoin | 347,998 |
| Bitcoin | 3.55106959 |
| Unbreakablecoin | 794,790.7498 |
| Bitbar | 8,489.939453 |
| Unobtanium | 15,080.11 |
| Dogecoin | 5,194,474.311 |
| Litecoin | 100 |
| Goldcoin | 8,148,476.5 |
| Paycoin | 810,628.65 |
| Novacoin | 173.398 |
| Digibyte | 210,190,328.4 |
| Startcoin | 340,102.4437 |
| Monacoin | 71,754.81743 |
| Earthcoin | 63,464,031.34 |
| Vertcoin | 49 |
| Peercoin | 31.94 |
| Vericoin | 80 |
| Zetacoin | 937.9111733 |
| Boostcoin | 421,473.5773 |
| Securecoin | 75,036.53846 |
| DNotes | 317,124.39 |
| Rubycoin | 18,278.782 |
| Devcoin | 324,855,328 |
| SyncCoin | 15.91507359 |
| Namecoin | 75,110.08 |
| Silkcoin | 1,064,204.5 |
| Cloackcoin | 471.767933 |
| Archcoin | 16,254.79 |
| Urocoin | 3,999.98 |
| Netcoin | 1,541,860.385 |



EXHIBIT A

| Whitecoin | 7,414,340.255 |
|---|---|
| Bitbean | 18,222,603.31 |
| Bitcoindark | 20.71135045 |
| Truckcoin | 203,581.2319 |
| Ratecoin | 264,722.2715 |
| Reddcoin | 80,479.5318 |
| I/Ocoin | 63,677.12 |
| TEKcoin | 381,053.9199 |
| Stealthcoin | 442,473.9643 |
| WildBeastCoin | 12,504.65369 |
| Ambercoin | 11,697.92475 |

| COINS | # OF COINS |
|---|---|
| Ethereum | 5,000.17458 |
| Ethereum Classic | 5,000.17458 |
| Dash | 1,052.90 |
| Bitcoin | 3.55106959 |
| Dogecoin | 5,194,474.311 |
| Litecoin | 100 |
| Namecoin | 75,110.08 |
| Startcoin | 340,102.4437 |
| Novacoin | 173.398 |
| Peercoin | 31.94 |
| Vericoin | 80 |
| Rubycoin | 18,278.782 |
| Digibyte | 210,190,328.4 |
| Earthcoin | 63,464,031.34 |
| I/Ocoin | 63,677.12 |



EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

    Defendants.
_____/

### ORDER GRANTING RECEIVER'S MOTION FOR AUTHORIZATION TO LIQUIDATE CERTAIN CRYPTOCURRENCIES SECURED BY THE RECEIVER

THIS MATTER is before the Court upon the Receiver's Motion for Authorization to Liquidate Certain Cryptocurrencies Secured by the Receiver (the "Motion") [DE 70]. The Court has carefully reviewed the Motion, the entire court file and is otherwise fully advised in the premises.

**ORDERED AND ADJUDGED** that the Motion [DE 70] is **GRANTED**. The Receiver is authorized to liquidate and sell the secured cryptocurrencies listed in Exhibit B of the Motion through an exchange of the Receiver's choice. The Receiver is authorized to choose the actual date(s) to sell the subject cryptocurrencies and to choose the exchange(s) to sell the subject



cryptocurrencies. The Receiver is not required to sell the subject cryptocurrencies pursuant to 28 U.S.C. § 2001 and/or 28 U.S.C. § 2004.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this _____ day of _____, 2016.

                                                        _____
                                                        **KENNETH A. MARRA**
                                                        **UNITED STATES DISTRICT COURT JUDGE**

Copies to:    Counsel and parties of record