UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

    Defendants.
_____/

## RECEIVER'S UNOPPOSED FIRST APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF COSTS TO THE RECEIVER AND HIS PROFESSIONALS

Pursuant to Section XVII of the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order") entered April 4, 2016,[1] James D. Sallah, Esq., not individually, but solely in his capacity as the Court-appointed Receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), and his professionals (*i.e.*, legal counsel, Patrick J. Rengstl, Esq.,[2] and receivership consultant/deputy receiver, Robert G. Carey, Esq.) submit their First Application for allowance and payment of compensation and

---

[1] The Appointment Order in Section XVII requires the Receiver to file Fee Applications periodically based on the Receiver's discretion.

[2] Patrick J. Rengstl, Esq. has been the Receiver's counsel and recently changed firms to start his own practice, Patrick J. Rengstl, P.A., which recently appeared in this proceeding on the Receiver's behalf [DE 86]. This Fee Application covers time billed during counsel's tenure at his prior firm, Payton & Rengstl, LLC n/k/a Payton & Associates, LLC.

1
**PATRICK J. RENGSTL, P.A.**
11640 SW 61 Court, Pinecrest, FL 33156  305.904.8980

reimbursement of costs for the 6-month period from February 2016 through July 2016.[3] Undersigned counsel hereby certifies that he has conferred with counsel for Plaintiffs and counsel for Defendant Lorie Ann Nettles ("Nettles"), who have no objection to this First Fee Application. As of this filing, Defendant Paul Vernon ("Vernon") has not appeared in this action and continues to refuse to cooperate with the Receiver.

## PROCEDURAL BACKGROUND

As a matter of background, this proceeding is a class action lawsuit by Cryptsy cryptocurrency users/account holders who had an account with Cryptsy. Cryptsy was an online business for the public to exchange, invest, and trade cryptocurrencies or digital coins. The Plaintiffs, again class representatives of Cryptsy account holders, alleged, among other things, that (1) Cryptsy's principal, Defendant Vernon, shut down Cryptsy's operations and fled to China; (2) at least $5 million of account holders' funds and cryptocurrencies were missing and unaccounted for several months; (3) account holders were unable to access and use their Cryptsy accounts; and (4) Vernon and his now ex-wife, Defendant Nettles, purchased in March 2015 a luxurious home in Delray Beach for $1,374,881 in cash from Cryptsy-derived cryptocurrencies/funds and Nettles recently received the property in her divorce settlement from Vernon and was attempting to promptly sell it.

Given these allegations (and others), Plaintiffs moved for the appointment of a corporate monitor or receiver [DE 18], which the Court granted and appointed the Receiver in the Appointment Order on April 4, 2016. The Receiver immediately moved for Court-approval to retain Mr. Rengstl as legal counsel [DE 35, 36]. To minimize the day-to-day receivership expenses

---

[3] Although the Appointment Order is dated April 4, 2016, there were various tasks that the Receiver and his counsel performed before the Receiver's April appointment in February and March 2016.

(*i.e.*, the daily administration of the receivership), the Receiver moved for Court-approval to retain receivership consultant or deputy receiver, Robert G. Carey, Esq. [DE 54, 55].

Immediately upon his appointment, the Receiver began working diligently to secure wallet, account and bank information and records in Cryptsy's name or derived from Cryptsy and/or its account holders for the benefit of Cryptsy's account holders. The Receiver also began working on a tracing analysis to determine whether Cryptsy's wallets of cryptocurrencies funded the purchase of the $1.4 million Delray mansion. The Receiver served demand letters and document requests on Vernon and Nettles, and dozens of subpoenas on relevant nonparties regarding critical Cryptsy issues, and received and reviewed responsive information and documents.

There are former Cryptsy employees, some of whom the Receiver contacted and who are cooperating with and assisting the receivership. The Receiver hired one former employee as a receivership agent – Nicholas Mullesch, former Cryptsy Head of IT and Wallet Manager.[4]

The receivership has been a successful collaborative, joint effort with counsel for Plaintiffs, who have worked diligently with the Receiver and his professionals to identify and secure assets for the benefit of Cryptsy's many victims. Through everyone's combined efforts, and as further described below, significant assets have been identified, secured and liquidated (or will be liquidated in the coming months) for the benefit of the victims.

## INTRODUCTION

The Receiver and his professionals have been involved in numerous federal court receiverships, either as Receiver or as receivership counsel. As more fully discussed in the First,

---

[4] In addition to Mr. Mullesch, the Receiver has hired a second agent, Patrick Paige of Computer Forensics LLC. Messrs. Paige and Mullesch's primary responsibilities are identifying and securing the remaining Cryptsy wallets of coins from Cryptsy's servers, identifying and securing the remaining information on the servers, and assisting the professionals on certain issues. The two agents are being paid as administrative expenses under Section XVII, para. 41 of the Appointment Order, not as professionals subject to fee applications.

Second and Third Receiver's Reports [DE 45, 60, 78], the Receiver has accomplished much for the benefit of Cryptsy's account holders – *i.e.*, the Class of account holders – since his appointment approximately eight (8) months ago, including the following:

i. Negotiating and signing a settlement agreement [DE 73-1, 77-1] with Defendant Nettles to, upon Court-approval, deed over and to sell the Delray mansion previously purchased for approximately **$1.4 million**, which is the subject of a receivership motion to approve that was filed and recently granted [DE 77, 84];

ii. Securing **hundreds of thousands of dollars**[5] of different types of coins from Cryptsy's wallets on Cryptsy's servers and from at least one currency exchange (Bittrex);

iii. Filing a motion to liquidate several types of coins that are solely high liquidity coins [DE 70], which the Court granted [DE 71]; **more than $320,000** was recently recovered and deposited in the Receiver's account from this liquidation without material consequences to each coin's market value;

iv. Negotiating and signing a settlement agreement with Defendant Nettles to, upon Court-approval, sell a Tiffany diamond ring previously purchased for over **$104,000**;

v. Confirming, through a very detailed and thorough tracing analysis of Cryptsy's wallets (and the coins therein), that the coins and their monetized currency deposited in Vernon's personal bank account, in fact, funded the purchase of the Delray mansion and the Tiffany ring. This receivership tracing analysis helped lead to a favorable settlement at mediation with Defendant Nettles because Nettles disputed whether the wallets of coins funded the purchase of the property and ring;

vi. Selecting the most appropriate companies to liquidate the high liquidity coins and convert the coins into fiat currency, and selecting the appropriate dates on which to do such in order to diminish material effects on each coin's market;

vii. Negotiating with potential buyers interested in purchasing the remaining low to medium liquidity coins and/or analyzing the alternative of filing a motion to conduct a sealed auction for such coins;

---

[5] The value of digital coins changes each day and during the day that is, generally speaking, similar to the stock market. Therefore, the market value of the coins can go up or down each day.

    viii.    Securing an Infiniti QX60 registered in Cryptsy's name that Vernon used as his daily driver at the Fort Lauderdale International Airport as a result of the Receiver's diligent efforts and investigation;

    ix.    Filing a motion to sell the secured Infiniti QX60 [DE 64], which the Court granted [DE 66];

    x.    Securing **$5,000.00** from a retainer amount in Cryptsy's name from a prior retention at a South Florida law firm; and

    xi.    Securing multiple storage units containing, among other things, numerous Cryptsy computer servers, corporate records, artwork and household furnishings. In the future, the Receiver intends to seek Court-approval to liquidate the personalty in a cost-efficient manner, while retaining the electronic and hard copy records.

In addition to the above assets which currently total seven figures, and as more fully discussed in the three Receiver's Reports, the Receiver and his professionals have accomplished other significant results, including, but not limited to:

    i.    Confirming that Plaintiffs' allegations against Vernon are true, including that significant amounts of money and cryptocurrencies were missing and unaccounted for, and that account holders did not have access to their Cryptsy accounts;

    ii.    Confirming that Vernon opened a personal Coinbase account in which it appears that he converted and misappropriated over $3.3 million in customer-derived coins that he converted into currency and deposited into his personal joint bank account;

    iii.    Securing access to Cryptsy's servers at Vault Networks and thereafter securing coins in Cryptsy's wallets located in the servers by transferring same to protected receivership wallets;

    iv.    Finding that Vernon apparently destroyed the database and backup database on the servers on April 4, 2016, the date of the Appointment Order and shortly after receiving notice of same. The database contained critical information regarding account holders' identification and current and prior balances of coins, as well as where coins had been improperly transferred pre-receivership;

    v.    Confirming that Vernon started a new exchange in China, called www.bitebi9.com, which went offline shortly before the Receiver

reported same in his Second Report;

vi. Freezing certain types of coins at the Bittrex exchange, confirming through very detailed and thorough tracing analyses that the coins were derived from Cryptsy's wallets and ensuring their turnover to the Receiver;

vii. Investigating the nature and maintenance of Cryptsy's wallets of coins by type of coin, and confirming the commingled nature therein;

viii. Securing known servers and computerized files, thereby preserving as much as possible remaining electronic data for the duration of this proceeding and other potential proceedings. The Receiver transferred remaining files and computer data from prior Vernon-controlled storage units to receivership-controlled storage units for preservation of records;

ix. Contacting former Cryptsy employees regarding various issues and retaining one important former employee to assist in administering the estate, including assistance with securing remaining coins and the tracing of Cryptsy's wallets of coins to the purchase of the Delray mansion;

x. Serving several demand letters, document requests and dozens of subpoenas on the parties (Vernon and Nettles) and dozens of nonparties (such as various coin exchanges, banks and other third parties with relevant information and/or documents);

xi. Analyzing the productions consisting of thousands of pages of documents from the demand letters and subpoenas, including tracking funds and assets to which the Receiver would have an entitlement;

xii. Communicating with countless account holders regarding the status of the proceeding, including creating a receivership website for registration by account holders and important updates to account holders and the public;

xiii. Assisting Plaintiffs' counsel in the development of a plan of allocation and distribution procedure for the benefit of the Class of Cryptsy's account holders who are deemed legitimate claimants as a result of the Settlement Agreement with Nettles and non-settlement recoveries of assets, such as the various coins secured [DE 73]; the Court has preliminarily granted the settlement as to the Class [DE 74];

xiv. Investigating the purported hack from July 29, 2014, confirming it, indeed, occurred and confirming that over $6 million in Bitcoins is still sitting at a specific coin address from the hack date;

xv.  Investigating the prior two premises that Cryptsy and Vernon had vacated; and

xvi. Investigating potential targets for purposes of ancillary receivership or class litigation for the benefit of Cryptsy's account holders.

This receivership has been one of the most challenging – if not the most challenging – receiverships that the Receiver and his professionals have ever worked for several reasons. First, this receivership involves the digital world of cryptocurrencies. Second, Defendant Vernon has refused to cooperate with the Receiver and his team, and has apparently fled the Country. Third, Vernon or someone with access to his passcodes deleted the database and the backup servers with three "shred" commands hours after Vernon received electronic service of the Appointment Order, leading to a total loss – from the Cryptsy end of the spectrum – of, among other things, what is owed to Cryptsy's account holders and who they are.[6]

The Receiver respectfully requests that this Court appreciate the difficulty, challenge and magnitude of the various tasks that the Receiver and his professionals have been confronted with and the time-pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records. In addition, much of the receivership's anticipated legal fees will be part of this First Fee Application, meaning this First Fee Application – like most receivership first fee applications – is front-loaded.

<u>Certain receivership fees, namely the Receiver's legal counsel's fees, have been discounted for purposes of this First Fee Application by approximately 20% of counsel's billed time as a</u>

---

[6] However, determining and confirming account-holder information is not completely a lost cause. Other avenues exist from the account holders' end of the spectrum to potentially confirm account-holder information, such as screen shots taken by the account holders; emails saved by the account holders; documents they received from Cryptsy; and sworn declarations attesting to their investment, transactions, coins held and balance owed.

courtesy to Cryptsy's victims. The Receiver respectfully requests that this Court appreciate the fact that absolutely no fees/costs have yet been paid/reimbursed in this private-party receivership proceeding and the large amount of risk undertaken by the Receiver and his team because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team.

**DESCRIPTION OF SERVICES**

### I.    The Receiver

For the most part, the Receiver has staffed the day-to-day activities of this case using the services of Mr. Robert G. Carey, a lawyer with a business background (*i.e.*, an MBA, a Masters Degree in Accountancy, a Masters Degree in Real Estate Finance, and an LLM). Mr. Carey has acted as a receivership consultant or deputy receiver in this matter at a lower billing to save the estate and victims as much as possible in billed fees.

The professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Exhibit A attached hereto. Exhibit A, which was prepared based upon the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his approved hourly rate. Privileged and work product entries have been redacted.

Exhibit A reflects that the Receiver has expended a total of 13.70 hours, at an approved hourly rate of $400.00 in Section XVII, para. 42 of the Appointment Order, for a total of $5,480.00. The Receiver has also incurred costs of $16.36 during the applicable period, therefore bringing the current total due the Receiver to $5,496.36. The ordinary and usual hourly rate of the Receiver in private-party receiverships such as this case is at least $400.00.

Exhibit B hereto is a description of the professional services rendered by Mr. Robert G. Carey (the receivership consultant/deputy receiver). The Receiver retained Mr. Carey, who bills

at a lower, approved hourly billing rate of $285.00, early in the receivership proceeding as a receivership consultant or deputy receiver to minimize expenses and to handle a large amount of the day-to-day receivership and administrative functions. Exhibit B also includes a daily description of Mr. Carey's services, the hours expended and his approved hourly rate, which were prepared based upon Mr. Carey's contemporaneous daily time records. Privileged and work product entries have been redacted. Exhibit B reflects that Mr. Carey expended a total of 102.10 hours, at an approved hourly rate of $285.00, for a total of $29,098.50.

For the Court's convenience, the following is an aggregate tabular summary for the fees and costs of the Receiver and Mr. Carey:

| Receiver and His Staff | Hourly Rate | Time Expended | Total Amount |
|---|---|---|---|
| **James D. Sallah, Receiver** | $400.00 | 13.70 hours | $5,480.00 |
| **Robert G. Carey, Receivership Consultant/ Deputy Receiver** | $285.00 | 102.10 hours | $29,098.50 |
| **Receiver's Total:** | | | **$34,578.50** |

## II. The Receiver's Counsel

As a courtesy to Cryptsy's victims, the Receiver's counsel has agreed to discount his fees for purposes of this First Fee Application. The discount is approximately 20%, or a reduction from counsel's approved $400.00 hourly billing rate [DE 35, 36], to a reduced hourly rate of $325.00, for this First Fee Application. The discount equates to a savings of more than $20,000 for the benefit of the victims. In addition, certain billed time by counsel was not charged for more savings.

The professional services rendered by the Receiver's counsel and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Exhibit C attached hereto. Exhibit C, which was prepared based upon

9
**PATRICK J. RENGSTL, P.A.**
11640 SW 61 Court, Pinecrest, FL 33156   305.904.8980

the Receiver's counsel's contemporaneous daily time records, includes a daily description of the services rendered, the hours expended, and the Receiver's counsel's hourly rate. Counsel's prior firm's billing is always by ABA-associated activity codes (*i.e.*, L110, L120, etc.) and by chronological date for each activity code. Exhibit C reflects that the Receiver's counsel has charged a total of 268.40 hours, at a reduced/discounted hourly rate of $325.00, for a total of $87,230.00. The following is an aggregate tabular summary for the Receiver's counsel.

| **Name of Attorney** | ***Reduced* Rate** | **Time Expended** | **Total Amount** |
|---|---|---|---|
| Patrick J. Rengstl | $325.00 | 268.40 hours | $87,230.00[7] |

Exhibit C hereto is consistent with the tabular summary provided above. Exhibit C also reflects that the Receiver's counsel has incurred costs of $886.08 during the applicable period, therefore bringing the current total due the Receiver's counsel to $88,116.08.

## MEMORANDUM OF LAW

**I.      Summary of Services Rendered by the Receiver and his Professionals**

The professional services rendered by the Receiver and his professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Exhibits A through C attached hereto. The Receiver and his professionals have gone to great lengths to eliminate all block-billing from their respective time entries and to provide as detailed time entries as possible without revealing information protected by the attorney-client privilege, work product doctrine or other confidential matters.[8] The attached records set forth in narrative form the detailed nature and extent of the professional services rendered by the Receiver and his professionals. These recitals, however, constitute only a

---

[7]  Additional time was billed, but was not charged.

[8]  Certain time entries with privileged or work product information have been redacted.

summary of the time spent. It must be recognized that a mere reading of the time summaries attached hereto cannot completely reflect the full range of services rendered by the Receiver and his professionals, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his professionals in connection with this case.

The schedules of disbursements for incurred costs, which are also part of the attached exhibits, are those actual and necessary cost items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various costs incurred in connection with this matter. All of these cost items would typically be billed by the Receiver and his professionals to their general commercial clients.

The Receiver and his professionals have not been paid any compensation in connection with the services and costs set forth herein.

## II.      Applicable Legal Standard and Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.  The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application.  The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far.  The Receiver and his professionals believe they have played a significant role during the course of this proceeding and will continue to do so in the future.  The time and labor of receivership tasks are supported by the Receiver's First, Second and Third Reports.

### B.  The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure receivership assets and to carry out the Receiver's duties. The novelty and difficulty of receivership tasks are also supported by the Receiver's three Reports.

### C.  The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of receivership and commercial law and litigation were required of the Receiver and his professionals.  The Receiver is acutely aware of the financial considerations arising in receiverships such as this.  Accordingly, as the Court may gather from the attached exhibits hereto, the Receiver has sought to incur the most necessary of legal expenses in this proceeding.

### D. The Preclusion of Other Employment Due to This Case

Although the Receiver and his professionals were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner. Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters, including matters in which clients pay their bills each month.

### E. The Customary Fee

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is, given the proposed discount, lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, including private-party receiverships. Similar rates have been confirmed and approved in other matters in which the Receiver and his professionals have been involved.

### F. Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his professionals in this matter is subject to the approval of this Court, and the Receiver and his professionals have not received any compensation for their services rendered to date. The above factors should be taken into consideration by the Court, and the compensation should reflect, as stated above, the assumption of the risk of non-payment and that the delay in payment has been and will continue to be borne in future applications.

### G. The Time Limitations Imposed

This case imposed time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

### H. The Experience, Reputation, and Ability of the Professionals

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships and litigation.

### I. The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his professionals have been privileged to participate in this proceeding.

### J. The Nature and Length of Professional Relationship

The Receiver and his professionals have had no prior relationship with the Receivership Entity (Cryptsy) or the Defendants prior to this case.

### K. Awards in Similar Cases

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity. In fact, they are very reasonable considering the discounted billing for counsel in this private-party receivership case. The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. The hourly rates requested by the Receiver and his professionals are, given the discount, lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to their ordinary clients, notwithstanding the risks associated with this case.

### L. The Source of Payment for the Amounts Sought Hereunder

The amounts for which payment is authorized hereunder will be paid from monetized receivership assets under Section XVII of the Appointment Order and Section V of the Settlement Agreement [DE 73-1]. The receivership assets consist of the assets presently held or in the future to be held by the Receiver and the monetized funds from same, including, but not limited to, the

high liquidity coins that the Receiver has liquidated and monetized, the Delray mansion subject to the Nettles Settlement Agreement, the Infiniti QX60 vehicle, the low to medium liquidity coins that the Receiver intends to sell to private buyer(s) or through auction, the Tiffany ring subject to the Nettles Settlement Agreement, and recoveries from ancillary receivership lawsuits.

As of this filing, there is approximately $271,000 in the receivership estate (primarily from the liquidation and monetization of the high liquidity coins).[9] Therefore, there is sufficient funding to cover payment of all amounts in this First Fee Application and also to cover a reserve of appropriate funds for class-related notice and claims expenses associated with the Plaintiff's motion to approve Settlement Agreement [DE 73] and the Order preliminarily granting same [DE 74]. In other words, granting this First Fee Application will not affect upcoming expenses associated with the various class procedures. Finally, payment of this First Fee Application is consistent with the Receiver's and Plaintiffs' counsel's agreement not to receive combined attorneys' fees which collectively exceed 1/3 of the total recovered and liquidated assets derived from the Cryptsy debacle.

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that counsel for Plaintiffs and counsel for Defendant Nettles do not object to this First Fee Application. Defendant Vernon has not appeared in this action and continues to refuse to cooperate with the Receiver. A proposed Order granting this First Fee Application is attached as Exhibit D.

WHEREFORE, the Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit D, approving this First Fee Application and payment and reimbursement of the

---

[9] The receivership agents, Messrs. Paige and Mullesch, have been paid through August as administrative expenses.

requested fees and costs.

Dated: December 7, 2016.

Respectfully submitted,

**PATRICK J. RENGSTL, P.A.**
*Counsel for Receiver*
11640 SW 61 Ct
Pinecrest, Florida 33156
Telephone: (305) 904-8980
pjr@rengstl-law.com

By: Patrick J. Rengstl, Esq.
Patrick J. Rengstl
FL Bar No. 0581631

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

## SERVICE LIST

**David C. Silver, Esq.**
Silver Law Group
Counsel for Plaintiffs
11780 West Sample Road
Coral Springs, FL 33065
(Via CM/ECF)

**Marc Wites, Esq.**
Wites & Kapetan, P.A.
Co-counsel for Plaintiffs
4400 N Federal Hwy
Lighthouse Point, FL 33064
(Via CM/ECF)

**Mark A. Levy, Esq.**
**George J. Taylor, Esq.**
Brinkley Morgan
Counsel for Defendant Lorie Ann Nettles
200 E Las Olas Blvd Ste 1900
Fort Lauderdale, FL 33301
(Via CM/ECF)

**Paul Vernon**
(Via Email)