**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No. 9:16-cv-80060-MARRA**

BRANDON LEIDEL, and
MICHAEL WILSON, individually,
and on behalf of All Others Similarly Situated,

       Plaintiffs,

                                            **JURY TRIAL DEMANDED**

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY,
a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC.,
a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

       Defendants.
_____/

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, BRANDON LEIDEL and MICHAEL WILSON, individually, and on behalf of

all others similarly situated ("Plaintiffs"), by and through undersigned counsel, hereby sue and

make the following allegations against Defendants PROJECT INVESTORS, INC. d/b/a Cryptsy,

a Florida corporation ("CRYPTSY"); PAUL VERNON, an individual ("VERNON")

(collectively "the CRYPTSY Defendants"), LORIE ANN NETTLES, an individual

("NETTLES"), RIDGEWOOD INVESTMENTS, INC., a New Jersey corporation, and

KAUSHAL MAJMUDAR ("KM"), individually.  In support thereof, Plaintiffs state as follows:

**NATURE OF THE CASE**

1.     This nationwide class action is brought by Plaintiffs, individually and on behalf of

a class of similarly situated users (the "Class Members") of PROJECT INVESTORS, INC. d/b/a

Cryptsy.  At all material times, the CRYPTSY Defendants operated an online business for general consumers and the public to exchange, invest, and trade in digital cryptocurrencies. Plaintiffs seek damages based upon the unlawful conduct of the CRYPTSY Defendants in denying account holders the ability to obtain funds in their accounts and in misappropriating funds held in the CRYPTSY accounts.

2.     On January 15, 2016 -- a mere two days after this lawsuit was commenced and received media attention -- the CRYPTSY Defendants, in nothing less than a stunning confession, admitted on the CRYPTSY blog that:

- CRYPTSY has been insolvent since approximately Five Million Dollars ($5,000,000.00) in client assets "disappeared" in June 2014, and CRYPTSY has been actively concealing that fact from CRYPTSY's customers as well as from governmental and regulatory authorities,

- CRYPTSY lied to its customers about the nature of the problems that prevented CRYPTSY account holders from accessing their funds,

- CRYPTSY purposely refrained from filing with the government a Suspicious Activity Report relating to the "disappearance" of the $5 Million,

- CRYPTSY has essentially been operating a fraudulent financial scheme for nearly eighteen (18) months by which withdrawals from CRYPTSY accounts were not being funded from the assets purportedly safeguarded in each CRYPTSY account holders' account; rather, the funds that were withdrawn were purportedly being supplied by CRYPTSY itself from the profits in its own business operating account, and

- CRYPTSY plans to indefinitely suspend all trades and withdrawals from CRYPTSY accounts until the CRYPTSY Defendants can formulate their own brand of vigilante justice that would somehow resolve all of the crimes and misdeeds the CRYPTSY Defendants had perpetrated upon their customers.

Attached hereto as **Exhibit "A"** is a true and correct copy of the January 15, 2016 blog posting published at http://blog.cryptsy.com.

3.     Upon information and belief, the millions of dollars in customer assets that "disappeared" in June 2014 are not missing; they were taken by the CRYPTSY Defendants and

converted to pay for their own business and personal expenses, including VERNON and NETTLES' all-cash-purchase of a $1,374,881 waterfront mansion in Palm Beach County, Florida in March 2015 -- just a few months after the CRYPTSY customer assets allegedly "disappeared." CRYPTSY has acknowledged it never reported the alleged "disappearance" of funds to any government agency, despite being required to do so.

4.     Moreover, within a few months of VERNON and NETTLES' cash purchase of the Palm Beach County mansion, she commenced marital dissolution proceedings against him -- proceedings that were concluded in less than four months with an arrangement under which NETTLES was granted ownership of the mansion.

5.     Upon information and belief, the Marital Settlement Agreement which VERNON and NETTLES devised to distribute between them their marital assets was, in whole or in part, a sham and was fabricated by VERNON and NETTLES as a means of unlawfully and improperly transferring to NETTLES many of the assets secreted away from the CRYPTSY customers.

6.     As a result of Defendants' bad faith and unfair and unlawful conduct, Plaintiffs and Class Members have been prevented from accessing their supposedly protected assets.

7.     Plaintiffs and Class Members seek compensatory damages, exemplary and punitive damages where appropriate and allowed, and an injunction enjoining the continuation of Defendants' unlawful conduct.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

## PARTIES

8.      Plaintiff BRANDON LEIDEL is an individual domiciled in Miami, Florida and is *sui juris*.

9.      Plaintiff MICHAEL WILSON is an individual domiciled in Sherwood, Oregon and is *sui juris*.

10.     CRYPTSY is a Florida corporation (Filing Document Number P13000010430; FEI/EIN 46-1916396) whose last known principal address and place of business is 160 Congress Park Drive - Suite 101, Delray Beach, FL 33445.

11.     VERNON is an individual domiciled in Delray Beach, Florida; is a citizen of the State of Florida; and is *sui juris*.  At all times material hereto, VERNON was the founder, operator, and Chief Executive Officer of CRYPTSY.  Under the corporate entity known as CRYPTSY, VERNON conducted business worldwide, including with customers in the State of Florida.  In essence, CRYPTSY and VERNON are one-and-the-same.  CRYPTSY is an "alter ego" of VERNON, who dominates and controls the corporate entity to further an unlawful scheme and to further VERNON's own personal financial interests.  At times material hereto, VERNON was married to NETTLES.

12.     NETTLES is an individual domiciled in Delray Beach, Florida; is a citizen of the State of Florida, and is *sui juris*.  At times material hereto, NETTLES was married to VERNON.

13.     RIDGEWOOD INVESTMENTS, INC., is a New Jersey corporation with its principal place of business in Essex County, New Jersey.

14.     KAUSHAL MAJMUDAR ("KM") is an individual domiciled in, and is a citizen and resident of, New Jersey, and is *sui juris*.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds Five Million Dollars ($5,000,000.00), exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendants.  *See* 28 U.S.C. § 1332(a) and 1332(d)(2)(A).  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 in that: (a) Defendants all reside in this judicial district, (b) a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, and (c) a substantial part of property that is the subject of the action is situated in this judicial district.

17.     This Court has personal jurisdiction over Defendants because: (a) the CRYPTSY Defendants are operating, present, and/or doing business within this jurisdiction, (b) Defendants all reside within this jurisdiction, and (c) Defendants' breaches and tortious activity occurred within this jurisdiction.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

18.     Bitcoin is a virtual currency that may be traded on online exchanges for conventional currencies, including the U.S. dollar, or used to purchase goods and services online. Bitcoin has no single administrator or central authority or repository.

19.     On or about January 31, 2013, VERNON (a/k/a Paul "Big Vern" Vernon) registered PROJECT INVESTORS INC. as a "for profit" corporation in the State of Florida; and VERNON, by and through the corporation (known as "CRYPTSY"), began operating a website at the following web address: http://www.cryptsy.com.

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

20.     CRYPTSY is registered with the Financial Crimes Enforcement Network ("FinCEN") -- a bureau of the United States Department of the Treasury -- as a Money Services Business.  CRYPTSY, as a Money Services Business, is obligated, *inter alia*, to keep certain financial records and allow free and unfettered access to consumer accounts.  As demonstrated below, CRYPTSY has failed to do that.

21.     CRYPTSY solicited members of the public to register new accounts, deposit Bitcoin or other cryptocurrency with CRYPTSY, and thereafter actively engage in the exchange and trade of Bitcoin as well as other (alternate) cryptocurrencies.

22.     After a new user created an account, the user was given a unique web address by CRYPTSY (referred to as a "Bitcoin wallet address") to which the user is supposed to send to CRYPTSY the user's Bitcoin or other cryptocurrency for safeguarding.

23.     A user's account, once populated with a cryptocurrency balance, could buy, sell, or trade in alternative cryptocurrencies.  All denominations of account balances for a user were listed in Bitcoin denominations, commonly styled as "BTC."   CRYPTSY, as payment for its services, took commissions on all transactions that traveled through its website.

24.     In May 2015 -- nearly a year after CRYPTSY had become aware that millions of dollars in customer funds had "disappeared" -- a media source reported that CRYPTSY was not fulfilling its obligation, as a FinCEN member, to comply with all laws applicable to a company operating a monetary exchange business.   In response thereto, the CRYPTSY Defendants adamantly denied that allegation, stating on the CRYPTSY blog:

> *We do . . . fully comply with our Federal [Money Services Business] requirements.  This includes filing SAR (Suspicious Activity Reports) and CTR (Currency Transaction Reports).  We also have one of the most extensive [Know Your Customer] programs in the industry, scrub accounts against the [Office of*

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

> *Foreign Assets Control] list, and perform Transaction Monitoring.*
> *At a federal level, we are compliant.*

As demonstrated below, the CRYPTSY Defendants' statement in that regard is false, as CRYPTSY purposefully refrained from ever filing a Suspicious Activity Report that would have alerted the proper authorities to the "disappearance" of the $5 Million of customer assets.

25.     Starting in or about November 2015, certain CRYPTSY users started having difficulties and inabilities withdrawing any and all forms of currency from their accounts.  Posts on social media and e-mails provided to different news sources including www.coindesk.com demonstrate that some users have had issues taking their money out of the CRYPTSY exchange since Fall 2015.  According to those news sources, the continued issues – and what some users said was a lack of clarity from CRYPTSY's management team – prompted some users, according to www.coindesk.com, to claim that the exchange was insolvent or was the target of regulatory scrutiny.

26.     On November 22, 2015, VERNON posted on his Twitter account that a server failure at CRYPTSY resulted in all exchange wallets being "paused."  VERNON reassured his followers that the wallets were safe and would go back online soon.

27.     On November 24, 2015, VERNON posted another tweet informing CRYPTSY users that the www.cryptsy.com website was offline.  VERNON blamed the downtime on a denial of service attack and assured CRYPTSY users that the CRYPTSY team was working to resolve the problem.

28.     On December 9, 2015, VERNON posted another tweet thanking CRYPTSY users for their patience and promised more frequent updates.

29.     On December 16, 2015, VERNON posted a tweet representing to CRYPTSY users that exchange wallets would be offline on Friday, December 18, 2015.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

30.    On January 5, 2016, a news source reported that CRYPTSY had suspended its cryptocurrency exchange trading and that on the homepage of www.cryptsy.com there appeared the following statement: "*Trade engine and withdrawals have been paused while we investigate . . . .*"  On January 6, 2015, that warning disappeared from the CRYPTSY homepage.

31.    On January 12, 2016, CryptoCoinsNews quoted a "high-level source" inside Cryptsy stating: "*Our site is [messed] up at the moment . . . .*"[1]

32.    On January 13, 2016, VERNON posted a tweet claiming that a phishing attempt was out that was not from CRYPTSY and that CRYPTSY users should not acknowledge it. While the excuses for the problems at CRYPTSY were changing, the two consistent facts were that CRYPTSY account holders were unable to withdraw their funds as they saw fit and customer confidence in CRYPTSY was waning.

33.    On January 15, 2016 -- two days after this lawsuit was commenced -- VERNON posted a new tweet directing interested persons to CRYPTSY's blog, on which the CRYPTSY Defendants retracted their earlier published excuses and made the stunning admissions that:

- CRYPTSY has been insolvent since approximately Five Million Dollars ($5,000,000.00) in client assets "disappeared" in June 2014, and CRYPTSY has been actively concealing that fact from CRYPTSY's customers as well as from governmental and regulatory authorities (including FinCEN),

- CRYPTSY lied to its customers about the nature of the problems that prevented CRYPTSY account holders from accessing their funds,

- CRYPTSY purposely refrained from filing with the government a Suspicious Activity Report relating to the "disappearance" of the $5 Million;

- CRYPTSY has essentially been operating a fraudulent financial scheme for nearly eighteen (18) months by which withdrawals from CRYPTSY accounts were not being funded from the assets purportedly safeguarded in each CRYPTSY account holders' account; rather, the funds that were withdrawn

---

[1] *See*, https://www.cryptocoinsnews.com/cryptsy-site-messed-moment.

were purportedly being supplied by CRYPTSY itself from the profits in its own business operating account, and

- CRYPTSY plans to indefinitely suspend all trades and withdrawals from CRYPTSY accounts until the CRYPTSY Defendants can formulate their own brand of vigilante justice that would somehow resolve all of the crimes and misdeeds the CRYPTSY Defendants had perpetrated upon their customers.

*See*, **Exhibit "A"** hereto.

34.    Unfortunately, CRYPTSY's self-described "temporary" suspension and loss of access to accounts has lasted for several months, and users' transactions and desires to withdraw either U.S. dollars or cryptocurrency are being denied.

35.    During the time that CRYPTSY user withdrawal issues have persisted, customers have not had full and complete access to their funds, causing immense hardship, including the inability to pay for other goods and services.

36.    Adding to the concern over the admissions of misdoings at CRYPTSY is the information contained in multiple recent media reports that CRYPTSY has vacated its Delray Beach, Florida physical office space without any indication where it would be relocating. According to published reports, CRYPTSY departed its office premises in December 2015 -- something that was reportedly confirmed by a CRYPTSY staffer in CRYPTSY's online chatroom as a planned measure aimed at "cutting expenses."

## VERNON AND NETTLES PURCHASE A $1.4 MILLION HOUSE WITH CASH IN MARCH 2015

37.    While CRYPTSY was purportedly scrambling to cover up the "disappearance" of $5 Million of customer funds and was looking to "cut[ ] [its] expenses," VERNON appears to have simultaneously and inexplicably obtained a large amount of cash that he and his wife used to purchase a luxury home.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

38.    In March 2015, VERNON and NETTLES closed on an all-cash-purchase of a $1,374,881 mansion in Delray Beach, Florida (the "Delray Beach Mansion").

39.    According to public records, VERNON affirmed under penalty of perjury that the Delray Beach Mansion was purchased with lawfully obtained funds.

40.    Upon information and belief, the funds used to purchase the Delray Beach Mansion were not lawfully obtained and were actually derived from funds converted by the CRYPTSY Defendants from CRYPTSY account holders.

## VERNON AND NETTLES' DIVORCE PROCEEDINGS COMMENCE IN OCTOBER 2015 AND CONCLUDE SHORTLY THEREAFTER

41.    Amidst all of the problems going on at CRYPTSY during its self-admitted insolvency, VERNON and NETTLES were going through a formal marital dissolution proceeding.

42.    In October 2015, NETTLES filed a Petition for Dissolution of Marriage in the matter styled *In re: The Marriage of Lorie Ann Nettles v. Paul Edward Vernon*, Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida - Case No. 502015DR009881XXXXSBFZ (the "Divorce Proceedings").

43.    According to filings made by NETTLES in the Divorce Proceedings:

(a) VERNON now lives in China with both his assets and his paramour,

(b) VERNON will not be returning to this jurisdiction in the immediate future,

(c) VERNON is believed to be in the process of shutting down CRYPTSY,

(d) several key CRYPTSY employees were looking for employment elsewhere (*i.e.*, with employers other than CRYPTSY) in late-2015,

(e) CRYPTSY is under investigation by federal authorities including the Internal Revenue Service (IRS), the Criminal Investigation Division of the IRS, and the Securities and Exchange Commission, and

SILVER LAW GROUP
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

      (f)  VERNON is intentionally and willfully dissipating his own and possibly CRYPTSY's assets.

44.     VERNON himself stated in a sworn affidavit filed on December 22, 2015 in the Divorce Proceedings that he "expect[s] [CRYPTSY] to dissolve due to economic conditions."

45.     VERNON also stated in that December 22, 2015 affidavit that the Delray Beach Mansion represents approximately eighty five percent (85%) of his personal net worth.

46.     As a means of formalizing the dissolution of their marriage, VERNON and NETTLES entered into a Marital Settlement Agreement (Dated: January 22, 2016) under which, *inter alia*:

      (a)  VERNON relinquished to NETTLES any and all claims of ownership to the Delray Beach Mansion;

      (b)  NETTLES agreed that she would list the Delray Beach Mansion for sale within thirty (30) days from the date of entry of the Final Judgment of Dissolution of Marriage;

      (c)  Upon sale of the Delray Beach Mansion, NETTLES is entitled to all net proceeds from the sale; and

      (d)  VERNON likewise relinquished to NETTLES any and all claims to the net proceeds from the sale of the real property they jointly owned in Boynton Beach, Florida ("the Boynton Beach Property"), which they mutually listed for sale and which was scheduled to be sold on January 29, 2016.

Attached hereto as **Exhibit "B"** is a redacted copy of the Marital Settlement Agreement.

47.     According to public records, the Boynton Beach Property was indeed sold by VERNON and NETTLES on January 29, 2016 to Allison Poquette for $285,000.00.

48.     Also according to public records, a Final Judgment of Dissolution of Marriage was filed in the Divorce Proceedings on February 3, 2016.  Attached hereto as **Exhibit "C"** is a redacted copy of the Final Judgment.  As set forth therein, the Marital Settlement Agreement was incorporated into the Final Judgment.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

49.     Plaintiffs and several similarly situated members of the Class readily fear that if the Delray Beach Mansion is sold and NETTLES is permitted to retain all net proceeds from that sale -- after she already retained the net proceeds from the sale of the Boynton Beach Property -- Plaintiffs and their fellow aggrieved CRYPSTY customers will have been further victimized; as VERNON would thereby have been permitted to furtively transfer approximately ninety percent (90%) of his personal assets to NETTLES under the auspices of a Marital Settlement Agreement entered into during the pendency of this lawsuit with the actual intent to hinder, delay, or defraud Plaintiffs and the Class.

## FACTS SPECIFIC TO PLAINTIFFS

### PLAINTIFF LEIDEL

50.     Plaintiff LEIDEL, on August 13, 2014, deposited 3.9409 BTC to initially fund his CRYPTSY account.  The value of that deposit was approximately $2,112.32.[2]

51.     Over the course of time, through and including January 7, 2016, Plaintiff LEIDEL made several additional deposits of BTC into his CRYPTSY account.  Attached hereto as **Exhibit "D"** is a spreadsheet memorializing each of Plaintiff LEIDEL's deposits.

52.     As of January 15, 2016, Plaintiff LEIDEL held approximately 95.2305 BTC ($40,752.47) in his CRYPTSY account.

53.     In December 2015, Plaintiff LEIDEL requested to withdraw Bitcoin from his CRYPTSY account and have it transferred to another account owned and controlled by Plaintiff LEIDEL.  CRYPTSY did not honor the request, and that transaction is still pending as of the date of this pleading.

54.     In January 2015, Plaintiff LEIDEL made additional requests to withdraw Bitcoin from his CRYPTSY account and have it transferred to another account owned and controlled by

---

[2] Price of BTC is historically sourced at www.coinbase.com.

**SILVER LAW GROUP**
11780 West Sample Road ◊ Coral Springs, Florida 33065 ◊ Telephone (954) 755-4799 ◊ Facsimile (954) 755-4684
www.silverlaw.com

Plaintiff LEIDEL. CRYPTSY did not honor the request, and that transaction is still pending as of the date of this pleading.

55.     Plaintiff LEIDEL attempted to communicate with CRYPTSY regarding the "pending" withdrawals but, as of the date of this pleading, has not received a response.

56.     To date, Plaintiff LEIDEL is not able to access his funds through CRYPTSY.

**PLAINTIFF WILSON**

57.     Plaintiff WILSON, on November 18, 2015, deposited 8.653 BTC to initially fund his CRYPTSY account. The value of that deposit was approximately $2,907.41.

58.     Following his initial deposit, Plaintiff WILSON's holdings at CRYPTSY were converted to cash in U.S. Dollars.

59.     On November 21, 2015, Plaintiff WILSON requested to withdraw $2,748.48 in cash from his CRYPTSY account and have it transferred to another account owned and controlled by Plaintiff WILSON. CRYPTSY did not honor the request, and that transaction is still pending as of the date of this pleading.

60.     Following his initial November 21, 2015 withdrawal demand, Plaintiff WILSON made additional requests to withdraw cash from his CRYPTSY account and have it transferred to another account owned and controlled by Plaintiff WILSON. CRYPTSY did not honor the request, and that transaction is still pending as of the date of this pleading.

61.     Plaintiff WILSON attempted to communicate with CRYPTSY regarding the demand for cash withdrawal but, as of the date of this pleading, has not received a response.

62.     As of the date of this filing, Plaintiff WILSON still has $2,748.48 in his CRYPTSY account.

63.     To date, Plaintiff WILSON is not able to access his funds through CRYPTSY.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

64.     Plaintiffs' experience with CRYPTSY is not unique.  CRYPTSY has refused to honor requests of other members of the Class, who have likewise requested to liquidate or transfer their account balances to other Money Service Businesses, only to have those requests met with silence.

65.     Indeed, as of the filing of this lawsuit [DE 1], CRYPTSY's website displays a message confirming that account owners cannot withdraw or otherwise access their funds:



## CLASS ALLEGATIONS

66.     A class action is the proper form to bring Plaintiffs' and the Class Members' claims under FRCP 23.  The potential class is so large that joinder of all members would be impractical.  Additionally, there are questions of law or fact common to the class, the claims or

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

67.     Plaintiffs bring this nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all members of the following class:

> **All CRYPTSY account owners who deposited Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at CRYPTSY and have been denied access to their accounts and funds between May 22, 2014 and the present date.**

68.     This action satisfies all of the requirements of Federal Rules of Civil Procedure, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

69.     **Numerosity**: Members of the Class are so numerous that joinder of all members is impractical.  While the exact number of class members remains unknown at this time, upon information and belief, there are at least hundreds if not thousands of putative Class members. Again, while the exact number is not known at this time, it is easily and generally ascertainable by appropriate discovery.

70.     **Commonality and Predominance:** There are many common questions of law and fact involving and affecting the parties to be represented.  These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

> (a) Whether the CRYPTSY Defendants have refused Plaintiffs and the Class access to their funds;
>
> (b) Whether Defendants have converted the funds belonging to Plaintiffs and the Class;
>
> (c) Whether the CRYPTSY Defendants owed duties to Plaintiffs and the Class, the scope of those duties, and whether the CRYPTSY Defendants breached those duties;
>
> (d) Whether Defendants' conduct was unfair or unlawful;

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

(e)  Whether the CRYPTSY Defendants breached their contracts with Plaintiffs and the Class;

(f)  Whether Defendants have been unjustly enriched;

(g)  Whether Plaintiffs and the Class have sustained damages as a result of Defendants' conduct; and

(h)  Whether Plaintiffs and the Class are entitled to injunctive relief.

71.    **Typicality:** Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct.

72.    Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

73.    **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class.

74.    Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class, and the infringement of the rights and the damages they have each suffered are typical of other Class members.

75.    Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

76.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved herein.

77.    Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; as it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require.

78.     Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a corporate defendant.

79.     Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

80.     The nature of this action and the nature of laws available to Plaintiffs make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because:

     (a) Defendants would necessarily gain an unconscionable advantage if they were allowed to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources;

     (b) The costs of individual suits could unreasonably consume the amounts that would be recovered;

     (c) Proof of a common course of conduct to which Plaintiffs were each exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and

     (d) Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

81.     Numerous putative Class Members have attempted to communicate with CRYPTSY regarding the interminable delays they have experienced and their inability to access their funds but, as of the date of this pleading, have not received a response from CRYPTSY and have not been able to access or withdraw their funds.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

82.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend, or create proposed subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

83.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

84.     Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

85.     As a result of the foregoing, Plaintiffs and the Class Members have been damaged in an amount that will be proven at trial.

86.     Plaintiffs have duly performed all of their duties and obligations, and any conditions precedent to Plaintiffs bringing this action have occurred, have been performed, or else have been excused or waived.

87.     To enforce their rights, Plaintiffs have retained undersigned counsel and are obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith, pursuant to Fla. Stat. §§ 501.211(1) and 501.2105, and otherwise.

## COUNT I – CONVERSION
### (against Defendant VERNON and Defendant CRYPTSY)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

88.     Plaintiffs and each proposed Class Member deposited valuable cryptocurrency into their CRYPTSY accounts.

89.     The CRYPTSY Defendants knowingly and intentionally exercised control over the funds belonging to Plaintiffs and the proposed Class Members, restraining and denying Plaintiffs and proposed Class Members access to their funds.

SILVER LAW GROUP
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

90.     Because of the unlawful restraint and retention of funds imposed by VERNON and CRYPTSY, the rights of Plaintiffs and proposed Class Members to their funds has been interfered with; and their funds are not accessible and presumed stolen. VERNON and CRYPTSY have converted those funds for their own personal and corporate use and distribution.

91.     VERNON and CRYPTSY have denied Plaintiffs and potential Class Members the use and control over their own property.

92.     As a result of the foregoing actions of VERNON and CRYPTSY, Plaintiffs and the proposed Class members have been damaged in an amount to be proven at trial.

**COUNT II – NEGLIGENCE**
**(against Defendant CRYPTSY)**

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

93.     CRYPTSY owed duties to Plaintiffs and the proposed Class, as CRYPTSY account users and paying customers, to use reasonable care to protect and secure Plaintiffs' and the Class Members' funds and to provide them access to those monies.

94.     CRYPTSY breached its duties to Plaintiffs and the proposed Class by failing to provide Plaintiffs and the Class Members access to their CRYPTSY account funds for a prolonged period of time, causing hardship to Plaintiffs and the proposed Class.

95.     CRYPTSY failed to use reasonable care in communicating to Plaintiffs and the members of the proposed Class the necessary, material information about the CRYPTSY exchange, including the alleged "disappearance" of $5 Million in supposedly secure customer funds, CRYPTSY system failures, and truth behind the restriction on access to customer funds, as well as the safety and security of account funds.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

96.    Plaintiffs and the proposed Class justifiably relied upon the information supplied and representations made by CRYPTSY; and, as a result, engaged in business with CRYPTSY and lost money.

97.    As a direct and proximate result of CRYPTSY's negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

### COUNT III – UNJUST ENRICHMENT
### (against Defendant CRYPTSY)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

98.    Plaintiffs and the proposed Class conferred a benefit upon CRYPTSY by depositing valuable cryptocurrency into CRYPTSY's care, which did not perform as promised and which did not have the attributes and benefits promised by CRYPTSY.

99.    By CRYPTSY's unfair, misleading, and unlawful conduct alleged herein, CRYPTSY has unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including the funds deposited by Plaintiffs and the proposed Class.

100.    Under principles of equity and good conscience, CRYPTSY should not be permitted to retain valuable funds belonging to Plaintiffs and the proposed Class that they unjustly received as result of CRYPTSY's unfair, misleading, and unlawful conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

101.    Plaintiffs and the proposed Class have suffered financial loss as a direct and proximate result of CRYPTSY's conduct.

102.    Plaintiffs and proposed Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

obtained by CRYPTSY and for such other relief that this Court deems proper, as a result of CRYPTSY's unfair, misleading, and unlawful conduct.

## COUNT IV - SPECIFIC PERFORMANCE
### (against Defendant CRYPTSY)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

103.    Plaintiffs and the proposed Class Members entered into an agreement with CRYPTSY by which Plaintiffs and the proposed Class Members, as account holders at CRYPTSY, deposited funds and assets of value with CRYPTSY for safeguarding and for ready access whenever Plaintiffs and the proposed Class Members wanted access to those funds and assets.

104.    CRYPTSY received consideration from its relationship with Plaintiffs and the proposed Class Members in the form of fees charged on customer transactions as well as the overall volume of customer assets maintained under CRYPTSY's control.

105.    Despite Plaintiffs and the proposed Class Members having performed all of their obligations as account holders at CRYPTSY, CRYPTSY has failed to perform its own obligations under its relationship with Plaintiffs and the proposed Class Members.

106.    As a result of CRYPTSY's failure to satisfy its obligations as set forth herein, Plaintiffs and the potential Class Members have been damaged by, among other things, losing their money and assets and essentially being precluded from accessing their funds upon demand and receiving a positive return on their investments.

107.    Unless and until CRYPTSY is compelled to fulfill its obligations to Plaintiffs and the potential Class Members, their damages will continue.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

## COUNT V - VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 – 501.213) ["FDUTPA"]
### (against Defendant CRYPTSY)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

108.    Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiffs in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

109.    Plaintiffs and proposed Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

110.    CRYPTSY engaged in trade and commerce within the meaning of Fla. Stat. § 501.203(8).

111.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms.  The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

112.    CRYPTSY failed to inform Plaintiffs and the proposed Class Members that:

(a)  Their accounts were not secured and free from security breaches;

(b)  CRYPTSY's systems were subject to computer development issues due to a lack of experience in coding and debugging; and

(c)  CRYPTSY would not protect their assets.

113.    Additionally, after diligent efforts by Plaintiffs and the proposed Class Members to regain control over their cryptocurrency, CRYPTSY failed to return Plaintiffs' and the

- 22 -

proposed Class Members' property which CRYPTSY allegedly held for Plaintiffs' and the proposed Class Members' benefit.

114.    During a period of time in which approximately $5 Million of funds were "missing" from CRYPTSY customer accounts, CRYPTSY actively concealed that fact from CRYPTSY's customers as well as from governmental and regulatory authorities; and CRYPTSY lied to its customers about the nature of the problems that prevented CRYPTSY account holders from accessing their funds.

115.    Moreover, CRYPTSY operated what amounts to a surreptitious fraudulent financial scheme for nearly eighteen (18) months by which withdrawals from CRYPTSY accounts were not being funded from the assets purportedly safeguarded in each CRYPTSY account holders' account; rather, the funds that were withdrawn were purportedly being supplied by CRYPTSY itself from the profits in its own business operating account.

116.    Had Plaintiffs and their fellow Class members known what was really going on at CRYPTSY, they would not have deposited any new funds at CRYPTSY and would have withdrawn without delay any funds that were being held by CRYPTSY to best protect and preserve those funds.

117.    As a result of CRYPTSY's deceptive trade practices, Plaintiffs and the proposed Class Members were deceived into transferring money and property to CRYPTSY, deceived into believing that Plaintiffs' and the potential Class Members' assets were safe; and deceived into maintaining assets with CRYPTSY when Plaintiffs and the proposed Class Members would have otherwise been able to protect and preserve their assets – thus causing significant economic damage to Plaintiffs and proposed Class Members.

SILVER LAW GROUP
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

118.     The materially false statements and omissions as described above; and the fact that CRYPTSY perpetrated upon Plaintiffs and potential Class Members restricted transactions and an indefinite refusal to release funds; are unfair, unconscionable, and deceptive practices perpetrated on Plaintiffs and the potential Class Members which would have likely deceived a reasonable person under the circumstances.

119.     CRYPTSY was on notice at all relevant times that the false representations of material facts described above were being communicated to prospective customers (such as Plaintiffs and the potential Class Members) through public solicitation on CRYPTSY's website (http://www.cryptsy.com).

120.     As a result of the false representations described above, Plaintiffs and the potential Class Members have been damaged by, among other things, losing their money and assets and essentially being precluded from receiving a positive return on their investments.

121.     Plaintiffs and the potential Class Members have also been damaged in other and further ways subject to proof at trial.

122.     Therefore, CRYPTSY engaged in unfair and deceptive trade practices in violation of section 501.201 *et seq*., Fla. Stat.

123.     Pursuant to §§ 501.211(1) and 501.2105, Fla. Stat., Plaintiffs are entitled to recover from CRYPTSY the reasonable amount of attorneys' fees Plaintiffs have incurred in representing their interests, as well as the Class's interests, in this matter.

## COUNT VI - PRELIMINARY AND PERMANENT INJUNCTION
### (against Defendant CRYPTSY, Defendant VERNON, and Defendant NETTLES)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

124.    Plaintiffs and the proposed Class Members will suffer immediate and irreparable harm if CRYPTSY does not honor its obligation to permit its customers to withdraw their funds upon demand.   Cryptocurrencies (Bitcoin, Dogecoin, Litecoin, etc.) are commodities whose value fluctuates over time; and those members of the proposed Class whose funds at CRYPTSY consist, in whole or in part, of cryptocurrencies will almost certainly suffer a dramatic devaluation of their financial holdings if CRYPTSY continues to hold hostage its account holders' funds and refuse client demands for withdrawals.   Upon information and belief, CRYTPSY's own misdoings are likely to have a negative global impact on the value of cryptocurrencies and will thus continue to further devalue each of its account holders' assets the longer CRYPTSY fails to satisfy its customers' demands and fails to honor its obligations as a Money Services Business and as a FinCEN member.

125.    Plaintiffs and the proposed Class Members will further suffer irreparable harm to the extent that they are users and promoters of the use of cryptocurrencies as an alternative to traditional currencies.   If the faith and trustworthiness that CRYPTSY has dishonored serves as a disruption in the worldwide use of cryptocurrencies, Plaintiffs and the proposed Class Members could be forced to abandon their use of cryptocurrencies as their chosen funding source -- something for which there is no adequate remedy at law.

126.    In addition, Plaintiffs and the proposed Class Members will suffer irreparable harm if VERNON and NETTLES are permitted to go forward with their transfer of the Delray Beach Mansion from VERNON to NETTLES, and NETTLES subsequently sells the house and keeps for herself all net proceeds of that sale.   If the Delray Beach Mansion is sold in that manner, VERNON and NETTLES will have successfully put the CRYTPSY account holders' stolen funds beyond Plaintiffs and the potential Class Members' reach -- funds that would have

been available to Plaintiffs and the potential Class Members at some point in time but for VERNON and NETTLES' fraudulent conveyance.

127.    Plaintiffs and the proposed Class Members are in need of injunctive relief to return the parties to the status quo ante and allow Plaintiffs and the proposed Class Members to access their accounts, regain control over their funds, and withdraw funds as they have demanded, without interference or refusal from CRYPTSY.

128.    Plaintiffs and the proposed Class Members also have no adequate remedy of law that would serve to immediately compel CRYPTSY to honor its obligations as a Money Services Business and to honor the account holders' demands for withdrawal of their funds.

129.    Similarly, Plaintiffs and the proposed Class Members will have no adequate remedy of law if the Delray Beach Mansion is sold and NETTLES is permitted to retain for herself the net proceeds of the sale of that property -- a property that VERNON and NETTLES purchased with funds stolen from CRYPTSY account holders.

130.    Plaintiffs and the proposed Class Members have a substantial likelihood of success on the merits of their claims.  The funds they have at CRYPTSY are inaccessible due to CRYPTSY's own mismanagement and fraud; and Plaintiffs and the proposed Class Members will not be able to access their funds unless CRYPTSY is compelled to provide proper access and satisfy each CRYPTSY account holder's request for withdrawal of funds.  Moreover, following the commencement of this lawsuit, CRYPTSY admitted on its own blog that it has defrauded its account holders, has been insolvent for over 18 months, and has been operating a fraudulent financial scheme which it purposely hid from its account holders as well as from governmental and regulatory authorities.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

131.     Moreover, at all relevant times, NETTLES filed joint tax returns with VERNON. Those tax returns demonstrate that VERNON and NETTLES purchased the Delray Beach Mansion in 2014 utilizing funds that did not belong to either VERNON or NETTLES.

132.     Returning the parties to the status quo ante would not prejudice Defendants, as the CRYPTSY Defendants would merely be compelled to fulfill their obligations as a Money Services Businesses; and VERNON and NETTLES would merely be compelled to forestall any potential sale of the Delray Beach Mansion -- a property that, according to the Marital Settlement Agreement, has not even been placed on the market for sale yet.

133.     The equities favor injunctive relief.  Failure to enter an injunction returning the parties to the status quo ante, and allowing the CRYPTSY Defendants to refuse account holders' demands for access to, and withdrawals from, their CRYPTSY accounts will severely prejudice Plaintiffs and the proposed Class Members and will result in continued irreparable harm. Likewise, failing to forestall any potential future sale of the Delray Beach Mansion would place out of reach the proceeds of any such sale -- funds that would have been available to Plaintiffs and the potential Class Members at some point in time but for VERNON and NETTLES' fraudulent conveyance.

134.     Entering a temporary and permanent injunction would serve the public interest by preserving the integrity of Money Services Businesses, preserving and stabilizing the worldwide use of cryptocurrencies, and promoting the objectives of FinCEN (a division of the U.S. Department of the Treasury).

135.     CRYPTSY is an "alter ego" of VERNON, who dominates and controls the corporate entity to further an unlawful scheme and to further VERNON's own personal financial interests.  Therefore, any injunctive relief imposed against CRYPTSY should likewise be

imposed with equal force against VERNON, as VERNON engineers all actions taken by CRYPTSY -- including those set forth herein.

136.    Plaintiffs and the proposed Class Members have a clear legal right to the relief sought herein.

## COUNT VII – CONVERSION
### (against Defendant NETTLES)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

137.    Plaintiffs and each proposed Class Member deposited valuable cryptocurrency into their CRYPTSY accounts.

138.    The CRYPTSY Defendants knowingly and intentionally exercised control over the funds belonging to Plaintiffs and the proposed Class Members, restraining and denying Plaintiffs and proposed Class Members access to their funds.

139.    NETTLES -- through a fraudulent Marital Settlement Agreement she formulated with VERNON and otherwise -- subsequently knowingly and intentionally exercised control over the funds belonging to Plaintiffs and the proposed Class Members, restraining and denying Plaintiffs and proposed Class Members access to their funds.

140.    At all relevant times, NETTLES filed joint tax returns with VERNON.  Those tax returns demonstrate that the calculations included in the Marital Settlement Agreement were formulated reflecting funds that did not belong to either VERNON or NETTLES.

141.    Because of the unlawful restraint and retention of funds imposed by NETTLES, the rights of Plaintiffs and proposed Class Members to their funds has been interfered with; and their funds are not accessible and presumed stolen. NETTLES has converted those funds for her own personal use and distribution.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

142.   NETTLES has denied Plaintiffs and potential Class Members the use and control over their own property.

143.   As a result of the foregoing actions of NETTLES, Plaintiffs and the proposed Class members have been damaged in an amount to be proven at trial.

## COUNT VIII – FRAUDULENT CONVEYANCE
### (against Defendant VERNON and Defendant NETTLES)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

144.   This is a cause of action under Florida's Uniform Fraudulent Transfer Act ("UFTA"), Fla. Stat. §§ 726.101, *et seq*.

145.   As noted above, approximately $5,000,000 was wrongly misappropriated, converted, and stolen from Plaintiffs and the potential Class Members by the CRYPTSY Defendants.

146.   After misappropriating, converting, and stealing those funds from Plaintiffs and the potential Class Members, VERNON transferred a substantial portion of those funds to his then-wife, NETTLES, with the actual intent to hinder, delay, or defraud Plaintiffs and the potential Class Members and Plaintiffs and the potential Class Members' ability to recover the sums owed to them by CRYPTSY and VERNON.

147.   NETTLES received from VERNON the stolen funds knowing that she did not provide VERNON a reasonably equivalent value in exchange for the transfer.

148.   Upon information and belief, VERNON and NETTLES used the stolen funds to purchase the Delray Beach Mansion.

149.   Upon further information and belief, VERNON and NETTLES entered into the Marital Settlement Agreement after this lawsuit had commenced, knowing that transferring

nearly all of VERNON's assets to NETTLES would leave the CRYPTSY Defendants with insufficient funds for them to satisfy their obligations to Plaintiffs and the potential Class Members.

150. According to VERNON's own sworn financial affidavit in the Divorce Proceedings, VERNON (as of a date approximately three weeks before this lawsuit was commenced) has no monthly income, has monthly expenses of more than $6,600, and anticipated that Plaintiffs and the potential Class Members would pursue him and CRYPTSY for the financial harm the members of the potential Class have suffered.

151. By VERNON transferring, and NETTLES receiving, the funds referenced above, they knowingly and willingly put those funds beyond Plaintiffs and the potential Class Members' reach -- funds that would have been available to Plaintiffs and the potential Class Members at some point in time but for the conveyance.

152. Moreover, at all relevant times, NETTLES filed joint tax returns with VERNON. Those tax returns demonstrate that the calculations included in the Marital Settlement Agreement were formulated reflecting funds that did not belong to either VERNON or NETTLES.

153. NETTLES participated in the fraudulent conveyance both before and after this lawsuit had commenced, knowing and intending that doing so would defraud, delay, or hinder Plaintiffs and the potential Class Members and their ability to recover the sums owed to them by the CRYPTSY Defendants.

154. As a direct and proximate result of the fraudulent transfer and receipt between VERNON and NETTLES, Plaintiffs and the potential Class Members have suffered damage in an amount to be proven at trial.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

## COUNT IX – CIVIL CONSPIRACY
### (against Defendant VERNON and Defendant NETTLES)

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

155.    VERNON and NETTLES have conspired with one another to perpetrate an unlawful act upon Plaintiffs and the potential Class Members or to perpetrate a lawful act by unlawful means, *to wit*: they fabricated a Marital Settlement Agreement during the pendency of this lawsuit in an effort to secrete away the vast bulk of VERNON's assets in the form of the Delray Beach Mansion and the Boynton Beach Property so that VERNON would not have sufficient assets upon which Plaintiffs and the potential Class Members could execute any potential judgment for the wrongdoing VERNON essentially admitted on the CRYPTSY blog after this lawsuit had been commenced.

156.    VERNON and NETTLES were each aware of the likelihood that CRYPTSY account holders would pursue VERNON and CRYPTSY for the financial harm the members of the potential Class have suffered, yet VERNON and NETTLES still agreed to the transfer of nearly all of VERNON's assets.

157.    VERNON and NETTLES were each aware of, and consented to, the sham financial distribution set forth in their Marital Settlement Agreement.

158.    At all relevant times, NETTLES filed joint tax returns with VERNON.  Those tax returns demonstrate that the calculations included in the Marital Settlement Agreement were formulated reflecting funds that did not belong to either VERNON or NETTLES.

159.    VERNON and NETTLES, by their entry into and execution of the Marital Settlement Agreement, each undertook an overt act in furtherance of their conspiracy.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

160.    As a direct and proximate result of VERNON and NETTLES' conspiracy, Plaintiffs and the potential Class Members have suffered damage in an amount to be proven at trial.

**COUNT X – UNJUST ENRICHMENT**
**(against Defendants RIDGEWOOD AND KM)**

Plaintiffs repeat, re-allege, and incorporate by reference allegations set forth above in Paragraphs 1-87 as though fully set forth herein, and further allege:

161.    Defendant KM, individually and/or through Defendant Ridgewood, is a minority shareholder of Defendant Cryptsy.

162.    Defendants Ridgewood and KM received consulting fees and other remuneration from Defendant Cryptsy.  The source of the consulting fees and remuneration was the gross revenues of Defendant Cryptsy which, as detailed above, resulted from the Cryptsy Defendants' theft and conversion of the cyrptocurrencies and monies of Plaintiffs and the Class.

163.    Plaintiffs and the Class conferred benefits upon Defendants Ridgewood and KM.

164.    Defendants Ridgewood and KM have knowledge of the benefits.

165.    Defendants Ridgewood and KM accepted and retained the benefits conferred upon them by Plaintiffs and the Class.

166.    The circumstances are such that it would be inequitable for Defendants Ridgewood and KM to retain the benefits without returning and paying the benefits to Plaintiffs and the Class.

167.    As a direct and proximate result of Defendants Ridgewood and KM's acceptance of improper and inequitable benefits conferred upon them by the Class, Plaintiffs and the potential Class Members have suffered damage in an amount to be proven at trial.

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, demand trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiffs, on behalf of themselves and all others similarly situated, reserve the right to further amend this Amended Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, BRANDON LEIDEL and MICHAEL WILSON, individually, and on behalf of all others similarly situated, prays for relief as follows:

(a) A declaration from this Court that this action is a proper class action, including certification of the proposed Class, appointment of Plaintiffs as class representatives, and appointment of Plaintiffs' counsel as class counsel;

(b) A judgment awarding Plaintiffs and the Class Members restitution, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and unlawful business practices and conduct;

(c) Preliminary and permanent injunctive relief compelling CRYPTSY to honor its account holders' demands for withdrawal of funds -- whether they be in the form of cryptocurrencies or in the form of cash -- from their respective CRYPTSY accounts;

(d) A judgment awarding Plaintiffs and the Class Members actual compensatory damages;

(e) Avoidance of the transfer of the Boynton Beach Property and the transfer of the Delray Beach Mansion from VERNON to NETTLES, and an order of attachment against the Delray Beach Mansion;

(f) Imposition of a constructive trust over the proceeds of the sale of the Boynton Beach Property and any sale of the Delray Beach Mansion;

(g) An injunction preventing NETTLES from disposing of the Delray Beach Mansion and the proceeds of any sale thereof;

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com

(h) A judgment awarding Plaintiffs and the Class Members exemplary and punitive damages for CRYPTSY and VERNON's knowing, willful, and intentional conduct;

(i) Pre-judgment and post-judgment interest;

(j) Attorneys' fees, expenses, and the costs of this action; and

(k) All other and further relief as this Court deems necessary, just, and proper.

Respectfully submitted,

**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:     (954) 755-4799
Facsimile:     (954) 755-4684

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail:  SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@silverlaw.com

  - and -

**WITES & KAPETAN, P.A**.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Telephone:     (954) 570-8989
Facsimile:     (954) 354-0205
MARC A. WITES
Florida Bar No. 024783
E-mail: mwites@wklawyers.com

*Attorneys for Plaintiffs*

Civil Action No. 9:16-cv-80060-MARRA
Second Class Action Complaint

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this 9th day of January 2017 by using the CM/ECF system and that a true and correct copy will be served in accordance with the Federal Rules of Civil Procedure and/or the District's Local Rules and procedures to: **PROJECT INVESTORS, INC. d/b/a Cryptsy c/o Paul Vernon, President and Registered Agent**, P.O. Box 7646, Delray Beach, FL 33482; **PAUL VERNON**, **individually**, P.O. Box 7646, Delray Beach, FL 33482; and **LORIE ANN NETTLES**, 16832 Charles River Drive, Delray Beach, FL 33446.

/s/ David C. Silver
DAVID C. SILVER

**SILVER LAW GROUP**
11780 West Sample Road $ Coral Springs, Florida 33065 $ Telephone (954) 755-4799 $ Facsimile (954) 755-4684
www.silverlaw.com