Filing # 37229989 E-Filed 02/01/2016 10:49:38 AM

IN RE: THE MARRIAGE OF:

LORIE ANN NETTLES,
          Petitioner/Wife,

v.

PAUL EDWARD VERNON,
          Respondent/Husband,


v.

LORIE ANN NETTLES,
          Third-Party Plaintiff,

v.

PAUL EDWARD VERNON and CRYPTSY
INTERNATIONAL LTD.; PROJECT
INVESTORS,
INC.; HASHMAX USA, LLC; TERABOSS,
INC.
HASHMAX INC. and VERGENT DATA,
INC.

          Third-Party Defendants.

_____/

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 502015DR009881XXXXSBFZ

JUDGE: JESSICA TICKTIN

## NOTICE OF FILING MARITAL AGREEMENT

The Petitioner/Wife, LORIE ANN NETTLES, ("Wife"), by and through the undersigned counsel, hereby files with the Court, the Parties' Marital Agreement, consisting of Twenty-Nine (29) pages, entered into on January 29, 2016.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was furnished via ☒ Electronic service of the Florida Courts E-Filing Portal (HallTeam@KLeighLaw.com), and the following other means if selected ☐ U.S. Mail, ☐

BRINKLEY MORGAN | ATTORNEYS AT LAW

<span style="color:red">**EXHIBIT "B"**</span>

FILED: PALM BEACH COUNTY, SHARON R. BOCK, CLERK, 02/01/2016 10:49:38 AM

*Nettles v. Vernon*
*Notice of Filing Original Marital Agreement*
*Page 2 of 2*

Facsimile, ☐ hand-delivery on this 1ˢᵗ day of February, 2016, to: Andrew M. Hinkes, Esq., Berger Singerman, 350 East Las Olas Blvd. Suite 1000, Fort Lauderdale, FL 33301; Genevieve Hall, Esq., Attorney, Kenny Leigh & Associates, 2255 Glades Road Suite 238W, Boca Raton, FL 33431; Nathan E. Kohley, Esq., Attorney, Kenny Leigh & Associates, 2255 Glades Road Suite 238W, Boca Raton, FL 33431.

> **BRINKLEY MORGAN**
> Attorney for Petitioner/Wife
> 2255 Glades Road, Suite 340W
> Boca Raton, FL 33431
> Telephone: (561) 241-3113
> Facsimile: (561) 241-3226
>
>
> By: *s/ Yueh-Mei Kim Nutter*
>     YUEH-MEI KIM NUTTER
>     Florida Bar No.: 705829
>     JULIA WYDA
>     Florida Bar No.: 29833
> Primary: familylaw@brinkleymorgan.com
> Secondary: kim.nutter@brinkleymorgan.com
>     giselle.spallino@brinkleymorgan.com

[1188] 017529-15001

## MARITAL SETTLEMENT AGREEMENT

**LORIE ANN NETTLES**

and

**PAUL EDWARD VERNON**

**Circuit Court Case No.: 502015DR009881XXXXSBFZ**

## MARITAL SETTLEMENT AGREEMENT

**THIS MARITAL SETTLEMENT AGREEMENT**, made and entered into this 22nd day of January, 2016, by and between LORIE ANN NETTLES (hereinafter referred to as "Wife" or "Mother"), and PAUL EDWARD VERNON (hereinafter referred to as "Husband" or "Father," with Husband and Wife sometimes collectively referred to as the "Parties" or "Parents" and each individually as a "Party").

### WITNESSETH:

**WHEREAS**, the Parties were married on April 1, 1999, in Sierra Vista, Arizona; and,

**WHEREAS**, there are two (2) minor children born of this marriage, to-wit: W.V., born ▬▬▬▬▬▬; L.V., born ▬▬▬▬▬; and no additional children are contemplated nor expected of this marriage; and,

**WHEREAS**, the Parties are *sui juris* and have both been residents of the State of Florida for at least six (6) months prior to the initiation of this action; and,

**WHEREAS**, in consequence of the disputes and irreconcilable differences, the Parties desire, and it is their intention, that their relationship with respect to all of their property, their financial matters, and all matters that would relate thereto be finally fixed by this Agreement in order to settle and determine for all purposes his and her respective present and future property and financial rights, claims and demands, in such a manner that any action with respect to the rights and obligations, past, present and future of either of these Parties with respect to the other be fully, finally and conclusively settled and determined by this Agreement; and,

**WHEREAS**, in consequence of disputes and irreconcilable differences, an action for the dissolution of the Parties' marriage is pending in Palm Beach County, Florida under case number 502015DR009881XXXXSBFZ. This Agreement, in conjunction with the Parenting Plan that is

LAN                                                      PEV

Page 2

being entered into by the Parties, is intended to be a full resolution of (i) all issues now pending in the dissolution action, (ii) all issues, claims and rights of any other kind between the Husband and Wife, including, but not limited to, all issues relating to parental responsibility, timesharing, support (excluding any future child support or child support issues), alimony, financial obligations, and all property rights issues, including any and all issues involving the right which either the Husband or the Wife may have in the estate of the other, upon the death of the other, and (iii) all issues, claims, and rights of any other kind now existing between the Husband and the Wife; and

WHEREAS, the Parties have each been represented by legal counsel of his and her own selection in the negotiation of this Marital Settlement Agreement; and

WHEREAS, the Parties have provided each other with full and complete financial disclosure as to all of his and her respective assets and liabilities, both joint and individual, as well as his and her respective incomes and occupations; and

NOW, THEREFORE, in consideration of the mutual promises, covenants, guaranties, indemnifications and undertakings herein contained, which the Parties acknowledge is adequate, and for other good and valuable consideration, the receipt of which is hereby acknowledged between the Parties, the Parties have agreed and do hereby agree as follows:

1.    **RECITALS**

1.1    The aforesaid recitals are true and correct and are hereby incorporated in their entirety by reference herein.

2.    **SEPARATION**

2.1    The Parties may and shall at all times hereafter live and continue to live separate and apart. Each shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were sole and unmarried. Each Party may reside at such place or

places as he or she may elect. Each Party may, for his or her separate use and benefit, conduct, carry on or engage in any business, profession or employment, which to him or her may seem advisable. This Agreement shall not be, and is not in any way or manner to be construed or interpreted as, an agreement for divorce or dissolution of the Parties' marriage but is for the specific purpose of determining and settling the rights of the Parties arising out of their marriage, and all other rights and claims that either party may have. This Agreement shall remain binding by and between the Parties and is enforceable by either of them against the other whether or not the marriage is dissolved.

### 3.   ALIMONY

3.1     Beginning February 1, 2016, and due on the first of each month thereafter, the Husband shall pay Two Thousand Dollars ($2,000.00), per month to the Wife until the "Marital Residence" as referenced below, is sold. This amount shall be paid in immediately clear funds, and shall be non-taxable to the Wife and non-deductible by the Husband for federal income tax purposes. Once the Marital Residence is sold, the Husband will then pay nominal alimony in the amount of One Hundred Dollars ($100.00) per month due on the first day of the month, immediately after the sale of the Marital Residence and each month thereafter until the alimony is recalculated twelve (12) months after the sale of the Marital Residence. This nominal alimony amount shall also be non-taxable to the Wife and non-deductible by the Husband. Twelve months from the sale of the Marital Residence, the Husband will automatically, without the need for Court Order, provide financial documents, including, but not limited to, his latest tax return; last twelve months of paystubs; and all documents showing any and all distributions to the Husband from any entities, whether owned by the Husband or not, so that the Husband's updated income from all sources can be determined, and the Parties can then determine the monthly durational alimony

LAN:

PEV

Page 4

amount to be paid to the Wife. The Wife's need will be determined based on the Wife's current financial affidavit filed in the instant dissolution of marriage action. The Wife's nominal alimony shall continue until an Order is entered by the Court on the amount of the durational alimony, even if it takes longer than the twelve (12) month period listed above for an Order to be entered recalculating alimony. Once the durational alimony amount is determined, it will be applied retroactive to twelve months after the sale of the Marital Residence and shall then be paid for no less than ten year. The Parties agree that the alimony payments shall be deductible by the Husband, and includable in the income to the Wife pursuant to Section 71(b)(1)(B) and Section 215, of the Internal Revenue Code.

3.2     The Husband shall make the above payments to the Wife via direct deposit or electronic transfer. Wife shall provide all necessary account information to the Husband within Five (5) days of the Effective Date of this Agreement.

3.3     It is understood and agreed that these payments of alimony are for the support of the Wife, therefore, anything hereinbefore to the contrary notwithstanding, the Husband's obligation to make the payments of the alimony set forth herein to the Wife shall terminate upon the occurrence of the first of the following events:

1.  The Wife remarries; or

2.  The Wife dies; or

3.  The Husband dies, as Life Insurance is provided herein.

3.4     It is further understood and agreed that, anything hereinbefore to the contrary notwithstanding, the Husband's obligation to make the payments of the alimony set forth herein

LAN

PEV

to the Wife shall either terminate or be modified upon the Wife entering into a supportive relationship as defined in Fla. Stat. 61.14(1)(b)1 and applicable case law.

**4.**     **HUSBAND'S WAIVER OF ALIMONY**

4.1     The Husband waives any and all claims which he has to permanent, durational, rehabilitative, bridge-the-gap, or lump sum alimony, or any other support from the Wife.

4.2     The Husband acknowledges that this waiver is final, irrevocable and non-modifiable and that there is no circumstance and no possible change in circumstance or change in the law that would permit him to obtain alimony or any other form of support or maintenance from the Wife at any time in the future, no matter how the financial circumstances of either Party changes.

**5.**     **CHILD SUPPORT**

5.1     The Husband shall pay to the Wife for support of the minor children the sum of Two Thousand and Five Hundred Dollars ($2,500.00) per month, payable on the first (1st) day of each and every month by immediately available funds, commencing February 1, 2016, and continuing on the same day of each and every month thereafter until termination as set forth below. It is understood that the child support payments contemplate and are calculated based upon the Husband's compliance with the alimony provisions set forth above. It is also understood that the child support payments are based on the Husband making an income of $100,000 gross per year and the Wife not having any yearly income.

5.2     The Parties hereby agree that there is good cause to waive the requirement that the Husband pay the child support and alimony directly to the Florida State Disbursement Unit ("FLSDU"). If, however, the Husband is thirty (30) days in arrearage on the child support or alimony obligation, the Wife, by the filing of an Affidavit indicating the arrearages, shall be

LAN               Page 6               PEV

entitled to an order obligating the Husband to pay the child support and alimony directly through the FLSDU.  The Husband shall pay all fees associated with the payment of child support and alimony through the FLSDU.

    5.3    The Husband's obligation to pay the child support set forth above shall cease upon youngest child attaining the age of 18, marrying, dying, becoming self-supporting, or otherwise becoming legally emancipated, whichever first occurs, except that if such child is attending high school at the age of 18 and working in good faith with a reasonable expectation of graduation, child support shall continue for that child until that child graduates from high school or reaches the age of 19, whichever first occurs.

    **6.**    **DEPENDENCY EXEMPTION**

    6.1    It is hereby agreed that the Wife shall claim the dependency exemptions for both minor children.  This may be reevaluated by the Parties in the future when the alimony payment to the Wife is recalculated by the Parties.  The Husband agrees to execute any and all documents required by the Internal Revenue Service to afford the Wife the ability to claim the dependency exemption for the minor children child as provided for herein.

    **7.**    **LIFE INSURANCE TO SECURE ALIMONY AND CHILD SUPPORT**

    7.1    It is hereby agreed that the Husband shall maintain and pay his current  20-year term life insurance policy with a minimum death benefit amount of One Million Dollars ($1,000,000.00) as and for the security for the payment of alimony, child support, and related children's expenses. The Husband also agrees to maintain waiver of premium riders on any and

LAN

Page 7

PEV

all insurance required under the terms of this Agreement. The Husband will execute all documents necessary so the Wife can become the owner of the life insurance policy.

7.2    The current life insurance premiums are approximately $100/month and the Husband will pay same by adding the $100/mo to the monthly child support obligation.

7.3    The insurance proceeds shall be paid to an insurance trust for the benefit of the Wife and the minor children who shall be designated as the beneficiaries in an amount equal to his outstanding child support and alimony obligations.

7.4    The Wife shall be named as the sole trustee of the trust. The proceeds from the life insurance shall be placed in the trust and the alimony, child support and the Husband's share of related children's expenses shall be payable from the trust in accordance with this Agreement. The Husband shall be required to maintain this life insurance policy until such time as his obligation to pay alimony and child support ceases as provided above. The Husband certifies that the life insurance policies securing the alimony and child support obligations shall not be encumbered in any fashion whatsoever.

7.5    The Husband will not, during the time in which the Wife and minor children shall hold a beneficial interest under the policy, as provided in this Agreement, sign, encumber, collateralize, or in any way attempt to utilize the policies or otherwise diminish the death benefit value below that which he is required to maintain, as set forth above.

8.    **MEDICAL INSURANCE**

8.1    The Husband shall maintain and provide payment of cleared funds to the Wife no less than seven (7) calendar days before the monthly premiums are due for the current medical insurance policy for the Wife and minor children. The amount paid shall be non-taxable to the Wife and paid until each child graduates from an undergraduate degree. The Wife is to provide

LAN

PEV

the Husband with all premium notices.

8.2     Each Party shall be responsible for all of his and her own non-covered medical or dental expenses and co-pays that are currently owed or incurred in the future.

### 9.    DIVISION OF MARITAL PROPERTY

9.1     In settlement of all claims and rights to property acquired during the course of the Parties' marriage, the Parties agree to the distribution of his and her respective property interests, after full and adequate disclosure of the nature and extent of the property interests held jointly or separately by the Parties. All assets distributed to a Party solely, shall become the separate property of that Party. Except as provided herein, all property shall be transferred, if necessary, within thirty (30) days of the Effective Date of this Agreement. The cost of deed preparation, if necessary, as well as all documentary stamp taxes or other similar taxes and recording fees, if applicable, shall be the paid by the receiving Party. All utility deposits currently existing on the Parties' real property shall become the property of the recipient of that real property.

9.2     Except as otherwise provided herein, after distribution of all assets and liabilities, each Party relinquishes any and all rights to the other Party's assets or responsibility for the other Party's liabilities, and each Party shall assume and pay all costs related to the ownership of his and her respective assets.

9.3     If any of the assets addressed herein are divided equally, then the division shall occur as of the date of the actual division of the account and shall be divided so that the Parties have as equal a tax basis as possible. The amounts and dates stated herein are intended only to give an estimate or approximate value. Both Parties shall assume and shall share in the risk of any increase or decrease in the accounts based upon market fluctuations until division. Except as otherwise expressly set forth herein, each Party shall indemnify and hold the other harmless with

_LAN_

_PBV_

respect to all assets received and liabilities assumed pursuant to this Agreement. Except as otherwise set forth herein, each Party shall be responsible for all tax liability associated with his or her individual receipt or transfer of property, as well as the individual income tax liability associated therewith.

10.     **REAL PROPERTY**

10.1    ***MARITAL RESIDENCE.*** The Parties currently jointly own, as tenants by the entireties, the real property located at 16832 Charles River Drive, Delray Beach, Florida 33446 ("Marital Residence"). The Husband hereby acknowledges and affirms under penalty of perjury that the Marital Residence was purchased with lawfully obtained funds. It is hereby agreed that the Marital Residence shall become the sole and separate property of the Wife, and the Husband shall relinquish any and all claims he has to the Marital Residence. The Husband shall execute a Quit Claim Deed transferring title to Marital Residence to the Wife within ten (10) days of the Wife presenting him with same. The Parties agree that from and after the date of the Effective Date of this Agreement, the Wife shall be solely responsible for the payment of all expenses and for all liabilities attendant to the Marital Residence and other expenses incident to the Marital Residence, except that the Husband shall pay the real estate taxes due on the Marital Residence in the approximate amount of $20,000, as well as the approximate $2,000 currently due for insurance on the Marital Residence. The Husband shall pay the real estate taxes and the amount due for homeowners insurance within thirty (30) days of the Effective Date of this Agreement. The Husband hereby acknowledges that the funds used to pay the real estate taxes and insurance shall be lawfully obtained funds.

10.2    The Parties acknowledge herein that the Wife is a bona fide purchaser of the marital home, that Wife lacks any cause to believe the marital home is subject to any impairment,

PEV

forfeiture, or other claim, whether superior or inferior, and that it is her homestead property pursuant to Ch. 196, Fla. Stat., and will continue to be used as her homestead, subject to all exemptions found in Ch. 196, Fla. Stat., and otherwise as recognized by law. The Wife agrees to list the Marital Residence for sale within thirty (30) days from the date of entry of the Final Judgment of Dissolution of Marriage.

10.3    Upon sale of the Marital Residence, the Wife is entitled to all net proceeds from the sale. The Husband waives all interest, claim, and/or right to any proceeds from the sale of the Marital Residence.    The Parties shall execute all documents to ensure the Wife is paid the full amount of the net proceeds from the sale.  Net proceeds, for purposes of this Agreement, shall be defined as the gross sales proceeds derived from the sale of the Marital Residence, less all customary real estate broker commissions; customary attorney's fees for closing; seller's title expenses; cost of title insurance; cost of city, county and state revenue stamps; and costs of discharging the existing mortgage(s).

10.4    The Wife shall be responsible for any tax liability associated with her receipt of the proceeds from the sale of the Marital Residence.

10.5    *BOYNTON BEACH PROPERTY.*   The Parties also currently jointly own, as tenants by the entireties, the real property located at 8656 Tourmaline Boulevard, Boynton Beach, FL 33472 ("Boynton Beach Property").  The Husband hereby acknowledges and affirms under penalty of perjury that the Boynton Beach Property was purchased with lawfully obtained funds. Husband further acknowledges under penalty of perjury that Wife has no independent knowledge of the source of funds used to purchase the Boynton Beach Property except for the representations provided to her by Husband at the time of its purchase.  It is hereby agreed that the Boynton Beach Property is to be sold by the Parties.  The Parties have mutually agreed and have listed the Boynton

LAN

PEV

Beach Property for sale.  There is currently a Contract for Sale in place, and a closing date is scheduled for January 29, 2016.

10.6    Upon sale of the Boynton Beach Property, the Wife will be entitled to receive all of the net proceeds from the sale of the Boynton Beach Property. The Husband waives all interest, claim, and/or right to any proceeds from the sale of the Boynton Beach Property.    The Parties shall execute all documents to ensure the Wife is paid the full amount of the net proceeds from the sale.  Net proceeds, for purposes of this Agreement, shall be defined as the gross sales proceeds derived from the sale of the Boynton Beach Property, less all customary real estate broker commissions; customary attorney's fees for closing; seller's title expenses; cost of title insurance; cost of city, county and state revenue stamps; and costs of discharging the existing mortgage(s). Any escrow accounts related to any mortgage on the Boynton Beach Property shall also be provided solely to the Wife.

10.7    The Wife shall be responsible for the payment of any tax liability associated with her receipt of the net proceeds from the sale of the Boynton Beach Property.

## 11.    VEHICLES

11.1    The 2015 Infiniti QX80 shall become the sole and separate property of the Wife. The Wife shall be solely responsible for any and all expenses relating thereto, inclusive of insurance, maintenance and repairs.  The Wife indemnifies and holds the Husband harmless for any and all liabilities associated with this vehicle.

11.2    The 2014 Infiniti QX60 shall become the sole and separate property of the Husband.  The Husband shall be solely responsible for any and all expenses relating thereto, inclusive of insurance, maintenance and repairs.  The Husband indemnifies and holds the Wife harmless for any and all liabilities associated with this vehicle.

LAN                                                    PEV

Page 12

**12.** **BANK ACCOUNTS**

12.1   The following accounts shall become the sole and separate property of the Husband. The Wife hereby relinquishes all rights associated with these accounts.  The Husband shall be responsible for any liabilities, including but not limited to any tax liabilities associated with them:

     12.1.1      Bank of Dalian account ending in       ';

     12.1.2      Hang Seng Bank account ending in        ;

     12.1.3      TD Savings Account ending in       (closed); and

     12.1.4      ICBC Bank Account ending in

12.2   The following accounts shall become the sole and separate property of the Wife. The Husband hereby relinquishes all rights associated with these accounts.  The Wife shall be responsible for any tax liabilities associated with them:

     12.2.1      TD Checking account ending in        ' (closed);

     12.2.2      USAA Savings Account ending in

     12.2.3      Edward Jones account ending in

     12.2.4      Edward Jones Account ending in        (UTMA);

     12.2.5      Edward Jones Account ending in        (UTMA); and

     12.2.6      Bank of America Account ending in

12.3   The Parties acknowledge herein that the TD joint bank account ending in        was closed and the proceeds used during the pendency of the instant dissolution of marriage action.

**13.** **STOCK**

13.1   The Husband shall receive all of the approximately 37,728 Shares of DIGITALFX, also known as DIGITALBTC, traded on the Australian Securities Exchange, as his sole and separate property. The Wife waives any and all claim to, right to and/or interest in these shares of

JN
LAN

PBV

stock. The Husband agrees to indemnify and hold the Wife harmless with respect thereto, inclusive

of any and all tax liabilities associated with same.

### 14.    BUSINESS INTERESTS/ENTITIES

14.1    The Parties currently have full or partial interests in the following business entities:

      14.1.1    Cryptsy (USA, Canada and China)

      14.1.2    Project Investors, Inc.

      14.1.3    Brawnco

      14.1.4    Vergent Data, Inc.

      14.1.5    Hashmax USA, LLC

      14.1.6    Teraboss, Inc.

      14.1.7    Hashmax Inc.

collectively referred to as "Business Entities".

14.2    The Parties agree that the Husband shall retain as his sole and separate property all

stock, equity, and interest in the Business Entities and their subsidiaries, including assets,

liabilities, real properties, bank accounts, brokerage accounts, all right to receive a distribution or

compensation from the Business Entities, as well as any personal or enterprise goodwill. The Wife

hereby relinquishes all her right, title and interest in the foregoing Business Entities. The Husband

acknowledges, attests and affirms under penalty of perjury that he was and is the owner and

operator of the foregoing Business Entities and that the Wife was never an officer, director,

employee or agent of any of the foregoing Business Entities. The Husband acknowledges, attests

and affirms under penalty of perjury that Wife was at all times a "stay at home mother," had no

involvement, knowledge or participation in the operation, conduct, supervision or actions of the

Business Entities at any time, and had no knowledge of Husband's business dealings. The

Husband agrees to indemnify and hold the Wife harmless from all liabilities associated with the Business Entities, inclusive of any and all tax liabilities related thereto.

**15.   OTHER ASSETS**

15.1   Unless otherwise stated herein, the Wife is entitled to retain all furniture and furnishing currently in her possession.

15.2   The Wife shall retain as her sole and separate property all of her jewelry, including, but not limited to, her wedding ring.

15.3   The Husband shall retain as his sole and separate property all of his jewelry, including, but not limited to, his wedding ring.

15.4   The Parties already divided all personal property, household furniture and furnishings.

15.5   The Husband and Wife shall each be entitled to retain any and all reward points/miles/credits ("Credit Card Rewards"), on his and her credit cards respectively as of the Effective Date of this Agreement and thereafter.

**16.   INCOME TAX**

16.1   <u>Filing Separate Returns</u>.  The Parties agree to file separate federal income tax returns for 2015 and for all years thereafter. The Parties agree to file, if any are required, separate state income tax returns or foreign income tax returns for 2015 and for all years thereafter.

16.2   <u>Payment of Taxes Required With Respect to Joint Federal Income Tax Returns</u>. For any year in which the Parties filed a joint federal income tax return, each Party shall be responsible for and shall pay their proportionate share of all federal, state or foreign income taxes (including any penalties and interest) from their separate property.  The proportionate share of each Party's tax liability shall be calculated based upon the amount of income tax that would be

due on or attributable to the property and income of each Party as if they had filed separate tax returns. Thus, the calculation would take into account the respective tax incidents of each Party's property and income, including, but not limited to, income, capital assets, deductions, depreciation, depletion and credits. Each Party shall indemnify and hold harmless the other Party for his or her proportionate share of tax liability, including penalties and interest, as provided for in this Marital Settlement Agreement. If one Party fails to abide by the provisions of this Section 16.2, the other Party shall have a claim for reimbursement against the defaulting Party or his or her separate property. The reimbursement shall include the costs of suit, reasonable attorney's fees incurred in the prosecution of any claim and any and all fees, including legal and accounting fees, incurred with respect to any audit or review of any joint federal income tax return. Any tax refund paid to the Parties shall be divided between them in accordance with the same proportion used to divide the tax liability for the tax in question.

  16.3 <u>Notification of Audit or Review of Joint Tax Return</u>. If either Party receives any written notification of any audit or review of any joint tax return filed by the Parties, the Party receiving such notification shall provide the other Party with a copy of such notification within five (5) days of its receipt.

  16.4 <u>No Knowledge of Tax Liability</u>. Both Parties represent, warrant and agree to their knowledge that there is no known tax liability with respect to any tax return previously filed by the Parties nor is there any current tax liability, including any penalties or interest, owing as of the date this Marital Settlement Agreement was signed.

  16.5 <u>Innocent Spouse</u>. Notwithstanding the foregoing, either Party shall have the right to request "innocent spouse" relief under Code Section 6015 of the Internal Revenue Code of 1986, as amended, with respect to any year in which a joint tax return was filed and to provide a copy of

LAN

PEV

this Marital Settlement Agreement to the Internal Revenue Service.

**17.**   **PROFESSIONAL FEES AND COURT COSTS**

17.1   Each Party shall exchange their outstanding attorney's and professional fees.  The Husband shall pay the following respective amounts to counsel in this matter:  To Brinkley Morgan, the amount of Fifteen Thousand Dollars ($15,000.00) within forty – five (45) days of the Effective Date of this Agreement.  After the payment of these sums, each Party shall be solely responsible for the payment of his or her own attorney's fees and costs in connection with the dissolution of marriage of the Parties and in connection with the preparation and execution of this Agreement.  In the event that either Party seeks the assistance of the Court to enforce any and all provisions in this Agreement, the prevailing Party shall be awarded reasonable attorney's fees and costs arising out of the lawsuit to enforce, whether the same be incurred in mediation, trial court, the post-judgment proceedings or any appellate court.

**18.**   **EXECUTION OF SUBSEQUENT DOCUMENTS**

18.1   Any conveyance of real estate or any interest therein from one spouse to the other required hereby shall be done by Quit Claim Deed, unless otherwise specifically provided for in this Marital Settlement Agreement.

18.2   In the event either Party shall hereafter sell or convey any real property now owned or hereafter acquired by either of them individually, and if in such sale or conveyance it shall be required that the other Party who owns no actual present interest therein, join in the execution of the deed, the respective Parties agree that they will, upon request, join in the execution of such deed or deeds, without any payment or consideration besides the consideration for this Marital Settlement Agreement, which is expressly agreed to be good and sufficient consideration. All


LAN

Page 17

PEV

transfers of property called for pursuant to this Marital Settlement Agreement are intended to be and are contemporaneous exchanges for the value provided to each party hereunder.

18.3    Each of the Parties hereto covenants and agrees that at the request of the other Party, or in the event of his or her death, at the request of his or her executor, administrator, or other legal representatives, he or she will execute and deliver any and all necessary or proper instruments to carry out the purposes and intent of this Agreement.  The Party requesting an instrument shall be responsible for its preparation.

18.4    Within a reasonable time after written demand, each Party shall execute, acknowledge and deliver all documents or instruments required to carry out the provisions of this Agreement.  If a Party fails on demand to comply with this provision, he or she shall pay to the other all attorney's fees and costs and other expenses reasonably incurred as a result of that failure.

19.    **GENERAL AND MUTUAL RELEASE**.

19.1    Except as otherwise provided in this Agreement, each Party hereto forever renounces and relinquishes all claims of whatsoever kind, up to the Effective date of this Martial Settlement Agreement, thereafter, in or to any property or estate of whatsoever kind, whether real or personal, tangible or intangible, causes in action, and any other property of which he or she is now or at any time hereafter may be seized or possessed, including, without limitation, the right to take as a beneficiary of any retirement plan, life insurance policy, life insurance trust, or annuity, it being the intention of the Parties hereto that this Martial Settlement Agreement constitutes a complete, general and mutual release of all such claims or interests whatsoever.

19.2    Except as specifically set forth hereinabove, it is the intention of the Parties that under no circumstances shall either Party receive any benefit, including any death benefit or proceeds, pursuant to a retirement plan, life insurance policy or annuity, as it may or may not be

PEV

amended, owned by the other Party. If, either Party fails to remove the other Party as a designated beneficiary of any retirement plan, life insurance policy, life insurance trust, or annuity, then upon the death of the Party who owns the retirement plan, life insurance policy or annuity, the other Party shall execute documents reasonably requested to reflect that the other Party no longer has any entitlement to receive any such benefit or proceeds of the life insurance or retirement. Failure to execute the document(s) shall permit the deceased Party's estate to construe that the noncompliant Party pre-deceased the other Party.

19.3    Each Party waives, releases and relinquishes all rights that he or she may now have or may hereafter acquire as the other Party's spouse under the present or future laws of any jurisdiction:

19.3.1    To elect to take against any Will or Codicil of the other Party now or hereafter in force;

19.3.2    To share in or make a claim against the other Party's estate except for any claim arising out of a right set forth in this Agreement, and

19.3.3    To act as the personal representative of the other Party's estate, and

19.3.4    To any pre-dissolution designation in the other Parties' retirement or life insurance, including all interest, expectancy, rights, and benefits to the policy, including the death benefits or proceeds.

19.3.5    To act as pre-need guardian, guardian of the person or property of the other, attorney in fact for other, or in any other capacity for or on behalf of the other party, unless a legally binding document authorizing such action is executed by the Parties subsequent to the Effective Date of this Agreement.

LAN                                                                      PEV

19.4    Each Party shall henceforth hold, possess and enjoy for his or her sole and separate use and free from interference and control by the other, all of the real and personal estate, chooses in action and other property of which he or she is or at any time hereafter may be seized or possessed.  Without affecting the generality of the foregoing, each Party waives, releases and bars himself and herself of all right of spouse's share, spouse's elective share, dower or curtesy, as the case may be, in any real or personal property which either Party now has or may hereafter acquire, and each will, upon request execute good and sufficient releases of spouse's share, spouse's elective share, dower or curtesy to the other, or to his or her heirs, executors, personal representatives, personal representatives, administrators or assigns, or will join, at the request of the other, in executing any deed or other instrument affecting such real or personal property; provided, however, that nothing contained herein shall in any way constitute a waiver of the right of either Party to a full and complete performance of the terms of this Agreement by the other.

19.5    Except as otherwise specifically provided in this Agreement, each Party releases the other from all cause or causes of action, claims, rights or demands, whatsoever, in law or in equity, that either of the Parties ever had, or now has, against the other including, without limitation, property conveyed by one Party to the other Party pursuant to this Agreement, property held by tenancies by the entireties, all causes of action for any and all torts or other injuries to the person or to property, except any or all cause or causes of action for dissolution of marriage, whether such action is presently pending or is instituted in the future.

20.    **REPRESENTATIONS**

20.1    Each Party has had independent legal advice by counsel of his or her own selection in the negotiation of this Agreement.  The Wife has been represented by Yueh-Mei Kim Nutter, Esq. of Brinkley Morgan, and the Husband has been represented by Genevieve Hall, Esq. of Kenny

Leigh & Associates. Each Party fully understands the facts of this Marital Settlement Agreement, and each is signing this Agreement freely and voluntarily, intending to be bound by it. Each agrees that the terms and provisions of this Agreement are fair and equitable.

### 21.   DISCLOSURES

21.1   Each has made a full disclosure to the other of his or her current financial condition and each has had the full and unfettered opportunity to obtain from the other any additional information or explanation of any matter constituting the financial circumstances of the Parties, or any information the Parties have relied in negotiating and reaching this Agreement.

21.2   Each Party is aware of the law of Florida with respect to the power of courts under certain conditions, to modify the terms of this Agreement and the effect of the waiver of that right.

### 22.   UNDISCLOSED ASSETS

22.1   Both Parties have made a complete disclosure of his or her martial assets. Each Party has relied upon the other Party's financial affidavit filed in the case in the identification of all marital assets. If in the future any other marital assets are discovered that were not disclosed, those marital assets shall be divided equally by the Parties.

### 23.   WIFE'S WARRANTIES

23.1   The Wife warrants that there is no existing indebtedness, contract, charge or liability whatsoever which she has individually incurred for which the Husband, his legal representatives, heirs, assigns, property or estate shall or may become liable. The Wife warrants that she will not, at any time hereafter, contract any debt, charge or liability whatsoever for which the Husband, his legal representatives, heirs, assigns, property or estate shall or may become liable.


LAN


PEV

### 24.  HUSBAND'S WARRANTIES

24.1   The Husband warrants that there is no existing indebtedness, contract, charge or liability whatsoever which he has individually incurred for which the Wife, her legal representatives, heirs, assigns, property or estate shall or may become liable.  The Husband warrants that he will not, at any time hereafter, contract any debt, charge or liability whatsoever for which the Wife, her legal representatives, heirs, assigns, property or estate shall or may become liable.

### 25.  SUBSEQUENT DISSOLUTION OF MARRIAGE

25.1   Nothing contained in this Agreement shall be construed to prevent either Party from instituting an action for dissolution of marriage subject to the following:

25.1.1   The Wife and the Husband shall make no claim, except in accordance with the provisions of this Agreement.

25.1.2   This Agreement shall be offered in evidence by either Party in any dissolution action and, if acceptable to the Court, shall be incorporated by reference in the judgment that may be rendered.  However, notwithstanding incorporation in the judgment, this Agreement shall not be merged in it, but shall survive the judgment and shall be binding on the Parties for all time.  The Parties agree that the Court shall retain jurisdiction for purposes of enforcing this Agreement.

### 26.  RECONCILIATION

26.1   Reconciliation shall not affect the provisions of this Agreement and shall not affect the validity and enforceability of this Agreement in any future proceedings, dissolution or otherwise, regardless of when those proceedings are instituted or commenced.  Both Parties waive any defense of reconciliation to any future enforcement of this Agreement.  The Parties intend this

LAN

PEV

paragraph to be an explicit understanding that any executory provisions of this Agreement remaining at any time of reconciliation regarding the distribution of property interests, shall not be affected or abrogated by reconciliation and that those provisions shall survive and be binding upon the Parties nonetheless.

### 27.  TAX ADVICE

27.1   Both Parties hereto hereby acknowledge and agree that each has had the opportunity to retain his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Marital Settlement Agreement.  Further, both Parties hereby acknowledge that neither has relied upon the tax implications of this Marital Settlement Agreement.  Further, the Parties acknowledge and agree that their signatures to this Marital Settlement Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.

### 28.  BINDING NATURE

28.1   This Agreement shall be binding on the Parties hereto as of its Effective Date and shall remain binding thereafter unless, by mutual agreement in writing, it is subsequently modified or abandoned.

28.2   Except as otherwise specifically provided herein, this Agreement shall be binding upon the heirs, legatees, devisees, administrators and executors of the Parties hereto, and in the event of the death of either of the Parties to this Agreement while it is in force and effect, the estate of said deceased Party shall be responsible for the performance of the obligations and conditions of this Agreement.


LAN.

PEV

Page 23

**29.**   **EXECUTION**

29.1   This Agreement is executed in duplicate.  Each of such executed duplicates shall be deemed to be an original and shall have the same force and effect as if it alone has been executed by the Parties.

**30.**   **AMENDMENT OR MODIFICATION**

30.1   The Parties agree that no modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formalities as this Agreement or except by a court of competent jurisdiction pursuant to the laws of Florida and the terms of this Agreement.  The provisions of this Agreement which are designated as non-modifiable are intended to remain so, notwithstanding this provision.  The failure of either Party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement on the part of the other Party to be performed shall not be construed as a waiver or relinquishment for the future of any such term or provision, and the same shall continue in full force and effect.

**31.**   **ENTIRE AGREEMENT**

31.1   This Agreement contains the entire agreement of the Parties.  There are no representations, promises or undertakings other than those expressly set forth herein.

**32.**   **INTERPRETATION**

32.1   The Paragraph headings of this Agreement are for the convenience of reference only and shall not affect the interpretation of any provision hereof.

**33.**   **LAW**

33.1   This Agreement shall be interpreted and governed by the laws of the State of Florida.

LAN                                                                PEV

**34.**   **INDEMNIFY AND HOLD HARMLESS**

34.1    In any instance in which either Party is required to indemnify or hold harmless the other under this Agreement, such hold harmless or indemnification shall include all demands, claims or damages against the indemnified Party resulting, directly or indirectly, from the matter or thing indemnified against.   The indemnification and hold harmless shall include, without limitation, the following items incurred in defending any such claims, demands or damages: taxable court costs, other related but non-taxable costs and expenses, reasonable professional fees and attorney's fees necessarily required from the time any litigation or other dispute resolution proceeding is commenced until appeals are final, if any.   This provision shall apply whether the litigation or other dispute resolution proceeding seeks a declaration of rights, reformation, damages for default, damages for misrepresentation, indemnification, contribution, subrogation or other legal or equitable remedy.

**35.**   **NOTICE CLAUSE**

35.1    Unless otherwise specifically provided herein, all notices to be given hereunder shall be in writing and shall be personally delivered, emailed, or sent to the Parties at the following addresses:

Wife's Mailing and Email Addresses:

16832 Charles River Drive
Delray Beach, Florida 33446
███████████

Husband's Mailing and Email Addresses: █████████████████████
P.O. Box 7646
Delray Beach, FL 33482

35.2    Such Party may change the place to which any Party hereto is entitled to receive any notice by giving notice thereof in accordance with the foregoing provisions.

LAN                                                              PEV

Page 25

35.3    The effective date of any notice shall be the date upon which it is actually personally delivered to the Husband or the Wife, or the date received via facsimile, email, or, in the event sent by certified mail, return receipt requested, postage prepaid, upon the date received by the Wife or the Husband; provided, however, if the Wife or the Husband shall refuse to accept any such certified mail, then any such notice sent by certified mail, return receipt requested, postage prepaid, shall be deemed to have been received within seven (7) days after it was deposited in the United States mail.

36.    **SEVERABILITY**

36.1    If any particular provision, or part thereof, of this Agreement is deemed or declared to be invalid, void or unenforceable by any court of competent jurisdiction, the other provisions, or parts thereof, of this Agreement shall continue in full force and effect and shall be valid and enforceable according to their terms.  However, the Court which declares any provision void, invalid or unenforceable shall make such awards that in its discretion are fair and equitable to compensate either or both Parties for any loss or expense associated with the void, invalid or unenforceable provision.

37.    **EFFECTIVE DATE**

37.1    The effective date of this Agreement shall be the last date on which either of the Parties signs it.

38.    **BANKRUPTCY**

38.1    The bankruptcy or the filing of any petition in bankruptcy under any of the provisions of the existing or any future bankruptcy law, whether state or federal, by the Husband shall not operate to discharge any of the Husband's obligations hereunder.  Husband acknowledges that the obligations included in this agreement constitute Domestic Support Obligations within the

LAN                                                                PEV

Page 26

meaning of 11 USC § 523 (a)(5), and/or a debt within the meaning of 11 USC § 523 (a)(15), and therefore are not dischargeable in bankruptcy, and that Husband is estopped from asserting otherwise at any time If, for any reason, such obligations are held to be discharged irrespective of the provisions of this Article and the existing bankruptcy law then the Husband specifically acknowledges and agrees that such discharge would constitute a substantial change in circumstances which would give the Wife the right to seek the modification of this Agreement.

**39.    PERFORMANCE**

39.1    From and after the Effective Date of this Agreement, neither Party will take any action that would prohibit, inhibit or diminish in any way, the ability of any Party nor any entity related to that Party to perform the obligations of this Agreement.  Further, it is the intent of this Agreement that neither Party will take any action that will cause any damage to the other or to any entity related to that Party.

**40.    FAIRNESS OF AGREEMENT**.  The Parties declare and acknowledge that the terms contained in this Agreement are equitable, fair and just, and that this Agreement is commensurate with the financial means and social positions of both Parties.

**41.    CONFIDENTIALITY**

41.1    Both Parties are privy to confidential personal and financial information about the other Party.  After the Effective Date of this Agreement, neither Party shall, under any circumstances whatsoever, use information nor divulge nor supply said information to any third Party, other than family members, absent Court Order or Subpoena.  If it is determined that either Party violated this provision, said Party shall be solely responsible for any damages caused to the other Party, including, but not limited to, all reasonable attorney's fees and costs.

LAN                                                                                                    PEV

Page 27

## 42.   AUTHORSHIP

42.1   In the event that it becomes necessary for any reason to construe this Agreement as permitted by the Rules of Evidence of the State of Florida, this Agreement will be construed as being jointly prepared and written by all Parties hereto.


**THIS SPACE INTENTIONALLY LEFT BLANK**

<u>LAN</u>

<u>PEV</u>

**IN WITNESS WHEREOF**, the Parties have hereunto, under penalty of perjury, set their hands and seals as of this day and year first above written.

Signed, sealed and delivered in the presence of:

_____
Witness as to Wife

_____
Witness as to Wife

_____
Witness as to Husband

_____
Witness as to Husband

_____
LORIE ANN NETTLES, Wife

_____
PAUL EDWARD VERNON, Husband

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 29 day of January, 2016, by LORIE ANN NETTLES, who is personally known to me or who has produced her _____ driver's license as identification.

WITNESS my hand and official seal this 29 day of January, 2016.

ANNMARIE LAMARTINA
MY COMMISSION # FF 199483
EXPIRES: February 19, 2019
Bonded Thru Notary Public Underwriters

_____
Notary Public - State of Florida

My Commission Expires:

People's Republic of China )
Municipality of Beijing )
STATE OF _____ Embassy of the United )SS:
COUNTY OF _____ States of America )

The foregoing instrument was acknowledged before me this ____ day of 22 JAN 2016, 2016, by PAUL EDWARD VERNON, who is personally known to me or who has produced his US passport driver's license as identification.

WITNESS my hand and official seal this ____ day of _____, 2016.
22 JAN 2016

_____
Notary Public - State of

American Embassy
Beijing, People's Republic of China

PRESIDENTIAL COMMISSIONS DO NOT EXPIRE

My Commission Expires:

Mary Swartz
Vice Consul

LAN

PEV

Page 29