# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Civil Action No. 9:16-cv-80060-MARRA

BRANDON LEIDEL, and
MICHAEL WILSON, individually,
and on behalf of all others similarly
situated,

      Plaintiffs,

                                                     **JURY TRIAL DEMANDED**

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY,
a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC.,
a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

      Defendants.

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF
THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL
AS CLASS COUNSEL, APPROVAL OF NOTICE TO CLASS MEMBERS,
SCHEDULING OF A FINAL APPROVAL HEARING,**

**AND**

**INCORPORATED MOTION TO APPROVE NOTICE OF
CLASS CERTIFICATION OF CLAIMS
AGAINST DEFENDANTS VERNON AND CRYPTSY**

Plaintiffs Brandon Liedel and Michael Wilson ("Class Representatives") hereby move this Court for: (1) preliminary approval of the settlement of this class action settlement as to Defendants Ridgewood Investments, Inc. and Kaushal Majmudar ("KM")(the "Settling Defendants"); (2) certification of the class for settlement purposes as to the claims against the Settling Defendants, (3) approval of the form and manner of notice to putative Class Members of the settlement with the Settling Defendants; (4) the scheduling of a hearing (the "Settlement Hearing") on final approval of the Settlement; and (5) approval of the form and manner of notice to the Class as to the claims certified against Defendants Vernon and Cryptsy.

## INTRODUCTION

Class Representatives and the Receiver have reached an agreement to settle this Class Action against the Settling Defendants, a copy of which is attached hereto as Exhibit A (the "Ridgewood Settlement" or the "Settlement"). The Settlement been entered into by and among the following: (i) Class Representatives on behalf of themselves and as representatives of the Class Members; (ii) James D. Sallah (the "Receiver"); and (iii) Defendants Ridgewood and KM.  The proposed settlement specifically excludes Defendants Paul Vernon and Cryptsy.

This Court previously certified a class asserting claims against the original defendants to this action, namely Cryptsy, Vernon and Nettles, and granted preliminary approval to the class action settlement agreement entered between the certified class and Defendant Nettles.  The instant proposed settlement serves to increase by two hundred and twenty thousand dollars ($220,000) the Settlement Fund created in the Nettles Settlement. Similarly, Class Representatives seek approval to provide notice to the class, and administration, of a single settlement that includes the relief obtained for the Class as set forth in the Nettles and Ridgewood Settlements.

The proposed Ridgewood Settlement provides a substantial monetary benefit to the Class, in that the Ridgewood Defendants will contribute $220,000 to the Settlement Fund in this action and, based on the investigation of Class Counsel and the representations of the Ridgewood Defendants, the Ridgewood Defendants received $160,000 from Cryptsy.

The Ridgewood Settlement, if approved, will resolve all claims asserted against the Settling Defendants in the Class Action, thereby providing partial relief to the Class Members while the Class Representatives and the Receiver continue to pursue their claims against the non-settling Defendants – namely Cryptsy and Vernon, and non-party Coinbase, Inc., against whom they have recently filed suit. *See Leidel et al., v. Coinbase, Inc*., In the United States District Court for the Southern District of Florida, Case No. 9:16-cv-81992-KAM.

The Settlement was reached at a time when the Settling Parties understood the strengths and weaknesses of their respective positions, and only after (i) the Class Representative and Receiver engaged in significant pre-suit discovery and (ii) extensive arm's length negotiations mediated by the Honorable Howard Tescher (ret.), a well-respected retired state court judge and mediator with over 10 years of experience mediating complex commercial cases, many involving financial services, banking and securities disputes.  Judge Tescher also mediated the settlement reached with Defendant Nettles.

Class Representatives and Class Counsel believe the proposed Ridgewood Settlement is an excellent result that is in the best interests of the Class, providing an immediate benefit to the Class. Here, the principal Defendant, Vernon, has fled the country, is presently believed to be residing in the Peoples Republic of China, and is believed to have hidden additional assets outside the United States. Accordingly, the Settlement must be considered in the context of the risk that protracted and costly litigation may be required to secure additional assets from the non-

settling Defendants that may result in a lesser recovery or no recovery at all.

At the Settlement Hearing, Class Representatives will submit detailed papers supporting the proposed Settlement, and will ask the Court to determine whether the Settlement is fair, reasonable and adequate. At this time, however, Class Representatives request only that the Court certify the settlement class and grant preliminary approval of the Ridgewood Settlement so that notice may be provided to the Class.

## BACKGROUND OF THE CASE

1.      On January 13, 2016, Plaintiffs initiated this class action. [DE 1].

2.      On February 22, 2016, Plaintiffs filed an Amended Complaint, asserting claims for conversion, negligence, unjust enrichment, specific performance, violation of Florida's Deceptive and Unfair Trade Practices Act, preliminary and permanent injunction, fraudulent conveyance and conspiracy. [DE 8].

3.      On March 24, 2016, a Clerk's Default was entered against Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy") for Cryptsy's "failure to appear, answer, or otherwise plead to the complaint filed herein within the time required by law." [DE 25].

4.      On April 4, 2016, the Court granted Plaintiffs' Motion to Appoint Receiver and appointed James D. Sallah, Esq. as the Receiver/Corporate Monitor over Defendant Cryptsy. [DE 33].

5.      On May 20, 2016, a Clerk's Default was entered against Defendant Paul Vernon ("Vernon") for his "failure to appear, answer, or otherwise plead to the complaint filed herein within the time required by law." [DE 51].

6.      On July 27, 2016, Plaintiffs filed an Unopposed Motion for Class Certification. [DE 59]. On August 25, 2016, the Court granted the Motion for Class Certification, certifying

the following class:

> All CRYPTSY account owners who held Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at CRYPTSY as of November 1, 2015 to the present. Excluded from the Class are: (1) employees of CRYPTSY, including its shareholders, officers and directors and members of their immediate families; (2) any judge to whom this action is assigned and the judge's immediate family; and (3) persons who timely and validly opt to exclude themselves from the Class.

[DE 65]. The Court also appointed Brandon Liedel and Michael Wilson as Class Representatives and appointed Marc A. Wites and Wites & Kapetan, P.A. and Scott L. Silver and David C. Silver of Silver Law Group as Class Counsel. *Id.*

      7.     On August 15, 2016, Class Representatives, the Receiver, and Defendant Nettles attended mediation before Judge Howard Tescher (ret.), at which they reached an agreement to resolve Plaintiffs' and Receiver's claims against Defendant Nettles. That agreement was subsequently documented by the Nettles Settlement Agreement.

      8.     On October 27, 2016, the Court entered an order granting preliminary approval of the Nettles Settlement Agreement.  [DE 74].

      9.     On November 17, 2016, Plaintiffs and the Receiver attended a second mediation before Judge Howard Tescher (ret.) with two parties that Plaintiffs intended to add, but had not yet added, to the case, *to wit*: Ridgewood Investments, Inc. ("Ridgewood") and Kaushal ("Ken") Majmudar ("KM").  At the mediation, the parties reached a settlement to resolve the claims of Plaintiffs and the Class, and the Receiver, against Ridgewood and KM.  That agreement was subsequently documented by the Ridgewood Settlement Agreement, which has now been fully executed, with the last signatory signing the document on January 4, 2017.[1]

      10.    Pursuant to Section III(B) of the Ridgewood Settlement Agreement, Plaintiffs

---

[1]     At the November 22, 2016 Status Conference [D.E. 83], Class Counsel and the Receiver advised the Court of the Ridgewood Settlement Agreement.

sought leave to file a Second Amended Complaint. D.E. 89. The Court granted the motion on January 9, 2017, and Plaintiffs filed their Second Amended Complaint on this same date.  D.E. 94. The Second Amended Complaint names Ridgewood and KM as defendants, and adds one additional count for unjust enrichment which is plead against only Ridgewood and KM.

11.    As detailed in the Ridgewood Settlement Agreement, Plaintiffs file this motion for preliminary approval of the Ridgewood Settlement Agreement, which will seek to combine the class action settlement approval process for both the Nettles Settlement Agreement and the Ridgewood Settlement Agreement. The Ridgewood Settlement Agreement serves to add an additional $220,000 to the Settlement Fund initially established through the Nettles Settlement Agreement. *See* Ridgewood Settlement Agreement at Pages 18 - 22.

12.    On November 28, 2016, the Court entered an order setting the date for the final approval hearing as to the Nettles Settlement Agreement for April 21, 2017 (D.E. 85), and Class Counsel are working towards completing a schedule that will allow for the final approval hearing as to both settlement agreements to occur on that date.

## ARGUMENT

### I.    The Settlement Class Satisfies the Requirements of Rule 23

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litiq.,* No. 09–MD–02036–JLK, 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011);

Fed.R.Civ.P. 23(e)(2), (e)(1).

Pursuant to Rule 23(a) and (b)(3), Fed.R.Civ.P., Plaintiffs seek the certification of a class that assert claims for unjust enrichment against the Settling Defendants, defined as follows:

> All CRYPTSY account owners who held Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at CRYPTSY as of November 1, 2015 to the present.  Excluded from the Class are: (1) employees of CRYPTSY, including its shareholders, officers and directors and members of their immediate families; (2) any judge to whom this action is assigned and the judge's immediate family; and (3) persons who timely and validly opt to exclude themselves from the Class.

This class definition mirrors the class certified by the Court as to the Class' claims against Defendants Cryptsy, Vernon and Nettles, thereby combining the two classes.

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied.  *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors. Thus, the Court should certify the settlement class.

This Court previously granted class certification for the same Class as to the claims asserted against Defendants Cryptsy, Vernon and Nettles.  *See* D.E. 65.  Because the Rule 23 analysis here is virtually identical to that presented in Class Representatives previous motion for class certification (*see* Plaintiffs' July 27, 2016 Motion to Certify Class at D.E. 59), Class Representatives present below largely the same argument and evidence.  To the extent not specifically detailed below, Plaintiffs incorporate by reference all of the arguments and evidence submitted in their 2016 Motion for Class Certification. To that end, all references to exhibits in this Section I of the instant motion refer to exhibits in Plaintiffs' 2016 Motion for Class Certification.

A.         <u>Numerosity</u>.

The Class satisfies Rule 23(a)(1), which requires the class to be so numerous that joinder of individual class members is impracticable. The general rule is that a class of at least 40 persons satisfies the numerosity requirement, and depending on the circumstances as few as 22 class members may be sufficient. *Hirsch v. Jupiter Golf Club, Inc*., 2015 WL 2254471, * 2 (S.D. Fla. 2016)(citation omitted). Plaintiffs have been unable to obtain discovery from Defendants *in this proceeding* about numerosity because Defendants CRYPTSY and VERNON have defaulted and are otherwise not participating in this proceeding or communicating with Plaintiffs. Further, on April 1, 2016, Defendant VERNON deleted the data in the database of Defendant CRYPTSY that Plaintiff has thus far identified, thereby destroying the evidence of the number of Class Members that presumably was available there. *See* Declaration of Receiver James D. Sallah, Exh. C.  Plaintiffs, however, have compiled the following evidence which more than satisfies the numerosity requirement (and the ascertainability requirement).

<u>First</u>, 107 CRYPTSY account holders have submitted sworn declarations in support of the instant motion that establish their membership in the Class. Of these Class Member Declarations: (i) 72 of the Declarations include screen shots showing the Class Members' holdings at CRYPTSY (s*ee* Exh. A1); (ii) 20 Declarations are based on testimony that such persons are CRYPTSY account holders who were unable to capture such information prior to Defendants shutting down CRYPSTY's systems but possess other evidence that establishes their membership in the Class, such as emails and other records received from Defendant CRYPTSY (s*ee* Exh. A2); and  (iii) 15 submitted Declarations attesting to their membership in the class. *See* Exh. A3. These declarations, along with the previously submitted declarations of the named

plaintiffs and the 6 class members who submitted declarations in support of Plaintiff's Motion for Preliminary Injunction (D.E. 23), establish that the Class includes at least 113 persons.[2]

Second, Receiver James Sallah, through his investigation in this case, which includes forensic examination of CRYPTSY's computer systems and interviews with former CRYPTSY employees, has determined that tens of thousands of CRYPTSY account holders are unable to access their cryptocurrencies due to Defendants' actions. *See* Sallah Dec. at ¶¶3 and 7, Exh. C.

Third, Defendant Vernon testified on December 29, 2015, in his divorce proceeding, that as of that date Defendant CRYPTSY had more than 50,000 users that had cryptocurrency deposits at CRYPTSY. *See* Vernon Deposition Transcript, dated 12/29/15 at 102, 7-25, Exh. B2.

Fourth, CRYPTSY employee Stacey West Taylor, in an email dated February 12, 2014, provided Defendant VERNON with a list of all CRYPSTY account holders by state. *See* Taylor Email, Exh. D.  The list identifies a total of 55,303 account holders, including 3,083 in Florida alone. *Id.*

Thus, Plaintiffs have presented evidence that the Class includes at least 114 class members and, according to Defendants, at least 50,000 persons. Whether at either end of this spectrum, or anywhere in between, Plaintiffs have satisfied the numerosity requirement.

**B.**          **Commonality.**

The commonality requirement is met if there is at least one question of law or fact common to the members of the Class. Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained, commonality means that the class members "have suffered the same injury" that is "capable of class-wide resolution." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011). "Generally,

---

[2]     The Declarations of Class Members that presented evidence of their CRYPTSY account ownership and account holdings, along with those of the named plaintiffs, are enough, standing alone, to satisfy the numerosity (and ascertainabilty) requirement.  *See* Exhs. A1and A2.

the commonality requirement is met if the allegations involve a common course of conduct by the defendant." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015). The Rule 23(a) requirement of commonality is a "low hurdle," and even a single common question can be sufficient to satisfy this element. *Diakos*, 2015 WL 5921585 at *4. The primary issue in such an analysis is whether there are issues in the case that are "susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *Sarris*, 311 F.R.D. at 695.  The commonality requirement is met here because Plaintiffs' and the Class' claims all center on whether the Settling Defendants were unjustly enrichments as a result of monies they received from Defendant Cryptsy.

**C.**       **Typicality.**

Rule 23(a)(3)'s typicality requirement ensures that the class representative has the same interests as the other members of the class. That is, "[t]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby*, 513 F.3d at 1322; *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Typicality is met here, as Plaintiffs and the proposed Class assert precisely the same claims, which arise from the same course of conduct: Defendants' unjust enrichment resulting from monies received from Defendant Cryptsy.

**D.**       **Adequacy.**

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. This Court has already found that the proposed Class Representatives and proposed Class Counsel are adequate and, as set forth above, Plaintiffs incorporate by reference the arguments set forth in

their 2016 Motion for Class Certification. Accordingly, the adequacy of representation requirement is satisfied.

      **E.**       **<u>Predominance and Superiority</u>.**

Plaintiffs also satisfy the requirements of Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. As set forth below, this action meets the criteria set forth in Rule 23(b)(3).

      **1.**   **<u>Predominance</u>**

Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole. *E.g.,* *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Thus, in deciding whether common questions predominate under Rule 23(b)(3), the focus is generally on whether there are common liability issues that may be resolved on a class-wide basis. *See*, *e.g.*, *Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004).

The predominant issue here for each of the plaintiffs is whether the Settling Defendants were unjustly enriched at the expenses of the Class as a result of monies the Settling Defendants received from Defendant Cryptsy. Indeed, the only issue on which Class Members differ is the amount of their damages. However, the law is well settled that differences in the calculation of damages are not a bar to finding common issues predominate. *E.g., Brown v. Electrolux Home Prods., Inc.*, 26 Fla. L. Weekly Fed. C 144, 2016 WL 1085517 *9 (11th Cir. March 21, 2016). For these reasons, the common issues to be resolved in this matter that apply to all class members predominate over any individualized questions that may arise.

## 2. A Class Action Is Superior to Other Available Methods of Adjudicating the Issues Raised

Rule 23(b)(3) lists four factors that the Court should consider in evaluating whether a class action is superior to other methods for adjudicating this action: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 318 (S.D. Fla. 2001); *See also, Amchem*, 521 U.S. at 617 (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (same).

At the outset, Class Counsel are unaware of any other action pending against any of the defendants named in this action arising out of or related to the operations of Defendant Crypsty. For this reason, as set forth below, the Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification.

First, Defendants would necessarily gain an unconscionable advantage if they were allowed to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources. Second, the costs of individual suits could unreasonably consume the amounts that would be recovered. For example, numerous Class Members have very small claims, having been denied access to virtual currency valued at less than $500. Third, proof of a common course of conduct to which Plaintiffs were each exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged.

11

Finally, individual actions – to the extent any are filed - would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation. It is neither economically feasible, nor judicially efficient, for the hundreds, if not more than a thousand, Class members to pursue their claims against Defendants on an individual basis, especially where there are limited known assets available to satisfy the Class members' claims. There simply is no other practical method of adjudicating these claims.

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should preliminarily certify the settlement class.

## II.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged. *See Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (there is a "strong judicial policy that favors settlements."); *see also Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) (determining that "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "Determining the fairness of the settlement is left to the sound discretion of the trial court...." *See Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). The Court's exercise of discretion in this regard should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007). The law has long been settled in this Circuit that, "[i]n determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the

parties." *Id.* at 1379 (citing *Cotton*, 559 F.2d at 1330).

Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing. *Smith v. Wm. Wrigley Jr. Co.,* No. 09-60646, 2010 WL 2401149, at \*2 (S.D. Fla. June 15, 2010). During this first-step, a court must consider whether the settlement warrants preliminary approval, providing notice to the proposed class and the scheduling of a final settlement hearing. *Id.* In the second-step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "final approval." *Id.* at 6.[3]

Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. *Almanzar v. Select Portfolio Servicing, Inc.*, Case No. 14-22586-FAM, 2015 WL 10857401 \*1 (S.D. Fla. Oct. 15, 2015). At the preliminary-approval step, the Court is required to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 WL 2330895, at \*4 (S.D. Fla. May 14, 2007).

The terms of the proposed Settlement here are clearly "within the range of reasonableness." *In re Checking Account Overdraft Lit.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

---

[3]  A final approval determination is based on an analysis of six factors established in *Bennett v. Behring Corp.*,  737 F.2d 982, 986 (11th Cir.1984). The Bennett factors are: 1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See Id.*  at 986.

Although Class Representatives and Class Counsel believe that the claims asserted in the Litigation against the Settling Defendants are meritorious, continued litigation poses the real risk that, following contested motions, a trial or further appeals, a lesser recovery (or no recovery at all) would result.

Indeed, it is unlikely that additional litigation, even if successful, would result in any significant additional net recovery against the Settling Defendants.  This is because the Settling Defendants were minority shareholders of Defendant Cryptsy, and maintain that they were not involved in the day-to-day operations of the company, were unaware of and had no knowledge of the fraud committed by Cryptsy and Vernon, and that they did not receive more than $160,000 in remuneration from Cryptsy.

The Ridgewood Settlement adds $220,000 to the Settlement Fund established in the Nettles Settlement, which includes the following assets that Class Counsel and the Receiver obtained in the settlement from Defendant Nettles and from Cryptsy through the powers of the Receiver:

1. A Diamond Ring. *See* Nettles Settlement Agreement at Sections II(A)(1) and III.

2. The Property.  *See* Nettles Settlement Agreement at Sections II(A)(2) and III(B)-(I).

3. All monies received from the sale of the cryptocurrency marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah (D.E. 60). *See* Nettles Settlement Agreement at Section II(A)(3).

4. All monies received from the sale of personal property marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah (D.E. 60). *See* Nettles Settlement Agreement at Section II(A)(4).

5. All monies received from the sale of an Infiniti QX60, as detailed in the Receiver's Motion for Authority to Liquidate Infiniti QX60 (*see* D.E. 64). *See* Nettles Settlement Agreement at Section II(A)(5).

6. Any other assets and monies obtained by Plaintiffs' Lead Counsel or Receiver for the benefit of the Settlement Class. *See* Nettles Settlement Agreement at Section II(A)(6).

As it relates to attorney's fees, Class Counsel have committed that while the Settlement Agreement allows for an application for attorney's fees of up to 33.33% of the Settlement, Class Counsel will reduce their fee application so that the total amount of attorney's fees awarded to Class Counsel, the Receiver and Receiver's Counsel does not exceed 33.33%.

Therefore, the Settlement, when viewed in the context of these risks and the uncertainties involved with any litigation, makes the Settlement a strong result for the Class. The Settlement was negotiated at arm's length, by counsels who are well-informed of the issues in the Litigation, and are experienced in complex securities litigation. The Litigation was actively prosecuted in the Southern District of Florida.

Moreover, the Settlement was achieved with the assistance of Howard Tescher, an experienced mediator. These factors further support approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Accordingly, Class Representatives respectfully submit that the Court should preliminarily approve the Settlement.

### III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND PROOF OF CLAIM FORM FOR THE NETTLES AND RIDGEWOOD SETTLEMENT

Federal Rule of Civil Procedure 23(e) provides that "notice of the proposed dismissal or compromise . . . shall be given to all members of the class in such manner as the court directs." The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).

Accordingly, the notice provided to the settlement class must fairly inform class members of the terms of the proposed settlement and their options. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950); *Twigg v. Sears Roebuck & Co.,* 153 F.3d 1222, 1226 (11th Cir. 1998). The Notice need provide "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Rule 23(c)(2), Fed. R. Civ. P.

The instant proposed notice addresses both the Nettles and Ridgewood Settlements. The court has already approved a very similar form of notice as to the Nettles Settlement (*see* Order Granting Preliminary Approval, D.E. 74). The proposed notice presented to the Court with the Ridgewood Settlement incorporates and combines both the Nettles and Ridgewood Settlements (and, as set forth below, notice of the certification of the claims against Defendants Vernon and Cryptsy).  The proposed notice and claim form are attached to the Ridgewood Settlement Agreement as Exhibits A and B.  Since that time, Class Counsel has been working with the Administrator to finalize the proposed notice and claim form, and copies of the current drafts are

attached hereto as Exhibits B (the Notice) and C (the Claim Form). [4]

The content of the proposed Notice and Proof of Claim Form satisfies the Rule 23 standard. Rule 23(c)(2)(B) requires the notice to fairly describe the litigation and the proposed settlement and its legal significance. The Parties' proposed Class Notice describes, in plain terms, a description of the case, a definition of the class, the reasons for the settlement, the amount of attorneys' fees and expenses that Class Representatives' counsel will seek to recover, the Settlement Class Members' legal rights and options, the manner and deadlines for filing objections to or exclusion from the settlement, the consequences of opting out of the class settlement, the date and significance of the fairness hearing and where the class can get additional information about the settlement.

The Notice also satisfies Rule 23(c)(2)(B) because it will be sent by email and/or first-class mail to all potential class members whose contact information has already been provided to Class Counsel or can be reasonably identified from Cryptsy's available records. Notice will also be published as web-based banner ads on at least two websites that are amongst the highest ranking websites for cryptocurrency investors. Notice will also be posted on Class Counsel's websites and at Cryptsy's URL. The Claims Administrator[5] will also establish a website containing the Notice, making the Proof of Claim form available for download, and providing other relevant Claims information and documentation. Accordingly, the Parties' proposed notice

---

[4]     To the extent the parties make any further changes to the proposed notice and claim form prior to the oral argument requested herein, or to the dissemination of such notice and claim form, the parties will notify the Court and seek appropriate approval. At a minimum, the notice and class form will change in format when they are prepared for printing by the Claims Administrator.

[5]     Plaintiffs' Counsel interviewed and obtained quotes from three potential claims administrators to, *inter alia*, handle the tasks of notice, claims administration, and the CAFA notice requirement. Plaintiffs' Counsel retained Angeion Group (http://www.angeiongroup.com/), which provided the most competitive quote.

to the Settlement Class Members is reasonably calculated to notify the Class of the Parties' settlement, provides the Class with the best notice practicable under the circumstances, and otherwise satisfies Due Process. *See Wilson v. Everbank, N.A.*, Case No. 14-22264, 2015 WL 10857344 *3 (S.D. Fla. Aug. 31, 2015); *Fresco v. Auto Data Direct, Inc.*, Case No. 03-61063, 2007 WL 2330895 *7 (S.D. Fla. May 14, 2007).

### IV.   THE FINAL APPROVAL HEARING

On April 28, 2016, this Court entered an order scheduling the final approval hearing for the Nettles Settlement Agreement on April 21, 2017 at 10:00 a.m. As explained here, Plaintiffs seek to combine the Nettles and Ridgewood Settlement Agreements and, therefore, request that the Court consider both settlements at the April 21, 2017 hearing. Plaintiffs note that the deadline for the submission of claims is ninety (90) days after the dissemination of notice to the class (*see* Ridgewood Settlement Agreement at Section IG), such that the claims deadline may fall sometime[6] after April 21, 2017, which is now ninety-four (94) days away as of the date of the filing of this Motion. Thus, if the Court wishes for the Final Approval Hearing to occur after the claims deadline, the Court may wish to continue the Final Approval Hearing Date until a date on or after May 15, 2017.

### V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE OF CERTIFICATION OF THE CLAIMS AGAINST CRYPTSY AND VERNON

Rule 23(c)(2)(B), Fed.R.Civ.P., requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to the class members the best notices that is practicable under the circumstances, including individual notice to all class members who can be identified through

---

[6]    Plaintiffs expect to complete the dissemination of notice within approximately 10 business days of the date of the Court's entry of an order grating preliminary approval to the Ridgewood Settlement.

reasonable effort."  Class Representatives proposed notice to the Class as to the claims certified against Defendants Vernon and Cryptsy (*see* Order Certifying Class at D.E. 65) is incorporated within the proposed notice attached as Exhibit B to the Ridgewood Settlement Agreement.  *See* Ridgewood Settlement at Exhibit B, at pages 52 - 59. This proposed notice satisfies all of the requirements of Rule 23(c)(2)(B)(i)-(vii), and will be distributed to the class as part of the notice of Nettles and Ridgewood Settlements.

## CONCLUSION

Class Representatives and the Settling Defendant, request that the Court: (i) certify the settlement class; (ii) preliminarily approve the Settlement Agreement among the Parties; (iii) approve for the Nettles and Ridgewood Settlement Agreements (a) the Class Notice for mailing and publication and (b) Proof of Claim Form; (iv) schedule a Final Approval Hearing; and (v) approve the notice of certification of the claims against Defendants Cryptsy and Vernon.

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(a)(3), S.D.Fla.L.R., the undersigned counsel hereby certifies that they conferred with counsel for the Settling Defendants by sending them a copy of this Motion prior to filing it, and then conferring by phone and email and, pursuant to the Ridgewood Settlement Agreement and such communications, the undersigned counsel is authorized to represent that the Settling Defendants do not oppose the relief sought herein.  The undersigned counsel likewise conferred with counsel for Defendant Nettles in the same fashion, who also authorized the undersigned to represent that Defendant Nettles does not oppose the relief sought herein.

Respectfully submitted,

**/s/ Marc A. Wites**
MARC A. WITES
Florida Bar No. 24783
E-mail: mwites@wklawyers.com
WITES & KAPETAN, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Phone: (954) 570-8989/Fax: (954) 354-0205
**Attorneys for Plaintiffs and the Class**

SILVER LAW GROUP
11780 W. Sample Road
Coral Springs, Florida 33065
Phone: (954) 755-4799/Fax: (954) 755-4684

- and -

By: **/s/ David C. Silver**
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail: SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@silverlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this 17th day of January, 2017, using the CM/ECF system, and that a true and correct copy will be served in accordance with the Federal Rules of Civil Procedure and/or the District's Local Rules and procedures to: **PROJECT INVESTORS, INC. d/b/a Cryptsy c/o Paul Vernon, President and Registered Agent**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: support@cryptsy.com**; PAUL VERNON**, **individually**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: PaulEVernon@yahoo.com; **MARK A. LEVY, ESQ.**, BRINKLEY MORGAN, *Counsel for Defendant Lorie Ann Nettles*, 200 East Las Olas Blvd. - 19th Floor, Fort Lauderdale, FL 33301; E-mail: Mark.Levy@brinkleymorgan.com; **PATRICK RENGSTL, ESQ.**, Payton & Rengstl, LLC, Counsel for the Receiver, 2 South Biscayne Blvd. Suite 1600, Miami, FL 33131; and Jose G. Sepulveda, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Counsel for Defendants Ridgewood Investments, Inc., and Kaushal Majmudar, 150 W. Flagler Street, Suite 2200, Miami, FL 33130; E-mail: JSepulveda@stearnsweaver.com.

*/s/ Marc A. Wites*
Marc A. Wites

21