# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

      Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually,
LORIE ANN NETTLES, individually, RIDGEWOOD
INVESTMENTS, INC., a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

      Defendants.

_____/

## FIFTH REPORT OF RECEIVER JAMES D. SALLAH

      Pursuant to paragraph no. 39 of Section XVI of the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order") dated April 4, 2016, James D. Sallah, not individually but solely in his capacity as the Court-appointed receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), submits the following Fifth Report.[1]

---

[1]  Pursuant to paragraph no. 39, the Appointment Order requires a Fifth Report within ninety (90) days of the Fourth Report (*i.e.*, on or before May 1, 2017), and then additional reports every ninety (90) days thereafter.

1

## I.  Introduction and Significant Receivership Accomplishments

The purpose of this Fifth Report is to more specifically advise the Court, account holders, and other interested persons as to the material actions that I have taken since my January 30, 2017 Fourth Report [DE 99] during the last ninety (90) days (*i.e.*, from January 31, 2017 to the present).[2] Plaintiffs' counsel, my receivership team, and I have worked cooperatively together from the very start of the receivership proceeding to maximize assets and monetized recoveries for the benefit of the receivership estate and the Class.  I am pleased to report that many significant receivership tasks have been accomplished since my appointment approximately 13 months ago, which have been thoroughly discussed in my prior four Reports, such as:

i.      Confirming that Plaintiffs' allegations against Defendant Vernon are true, including that significant amounts of money and cryptocurrencies were missing and unaccounted for, and that account holders did not have access to their Cryptsy accounts;

ii.     Negotiating and signing a settlement agreement [DE 73-1, 77-1] with Defendant Nettles to deed over and to sell the Delray mansion previously purchased for approximately **$1.4 million**, which was the subject of a receivership motion to approve that was filed and granted [DE 77, 84];

---

[2]  As a matter of background and as a reminder to the Court, this proceeding is a class action lawsuit by Cryptsy cryptocurrency account holders who had an account with Cryptsy.  Cryptsy was an online business for the public to exchange, invest, and trade digital cryptocurrencies.  The Plaintiffs, class representatives of Cryptsy account holders, have alleged, among other things, that (1) Cryptsy's principal, Defendant Paul Vernon, previously shut down Cryptsy's operations and fled to China; (2) at least $5 million of account-holder funds and cryptocurrencies have been missing and unaccounted for many months; (3) account holders have been unable to access and use their Cryptsy accounts; and (4) Vernon and his now ex-wife, Defendant Lorie Ann Nettles, purchased in March 2015 a luxurious home in Delray Beach for $1,374,881 in cash from Cryptsy-derived funds and Nettles received the property in her divorce settlement from Vernon. Given these allegations (and others), Plaintiffs moved for the appointment of a corporate monitor or receiver [DE 18], which the Court granted and appointed me as Receiver in the Appointment Order on April 4, 2016.

iii.    Securing **hundreds of thousands of dollars**[3] of different types of coins from Cryptsy's wallets on Cryptsy's servers and from at least one currency exchange (Bittrex);

iv.    Filing a motion to liquidate several types of coins that are solely high liquidity coins [DE 70], which the Court granted [DE 71]; **more than $330,000** was recovered and deposited in the receivership estate account from this liquidation without material consequences to each coin's market value;

v.    Filing a motion to sell to three private buyers all remaining coins (the medium to low liquidity coins) [DE 103], which the Court granted [DE 105]; **$49,500** was recovered and deposited in the receivership estate account from these sales;

vi.    Negotiating and signing a settlement agreement with Defendant Nettles to, upon Court-approval, sell a Tiffany diamond ring previously purchased for over **$104,000**;

vii.    Negotiating and signing a settlement agreement with newly-added Defendants Kaushal Majmudar and his company Ridgewood Investments, Inc. for **$220,000** [DE 96];

viii.    Confirming that Vernon opened a personal Coinbase account in which it appears that he converted and misappropriated over $3.3 million in customer-derived coins that he converted into currency and deposited into his personal joint bank account;

ix.    Investigating, making demand on and/or suing potential targets, including Coinbase, Inc., for purposes of ancillary receivership or class litigation for the benefit of Cryptsy's account holders;

x.    Securing known servers and computerized files, thereby preserving as much as possible remaining electronic data for the duration of this proceeding and other potential proceedings. I transferred remaining files and computer data from prior Vernon-controlled storage units to receivership-controlled storage units for preservation of records; and

xi.    Assisting Plaintiffs' counsel in the development of a plan of allocation and distribution procedure for the benefit of the Class of Cryptsy's account holders who are deemed legitimate claimants as a result of the Settlement Agreements and non-settlement recoveries of assets, such as

---

[3]   The value of digital coins fluctuates daily and the market for these coins is, generally speaking, volatile.

the various coins secured; the Court has preliminarily granted the settlements as to the Class.

## II.  Receivership Assets

### A.  The Delray Mansion

Nettles and Vernon (her husband at that time) purchased the property located at 16832 Charles River Drive, Delray Beach, Florida 33446 in March 2015 for $1,374,881 in cash. Nettles received the property from Vernon in their divorce settlement in early 2016. The property was fully purchased with coins/funds misappropriated by Vernon from Cryptsy and its account holders. I forensically and cryptographically traced the source of a vast majority of the coins converted through Vernon's personal Coinbase account back to Cryptsy wallets and its account holders, meaning that the source of funds to purchase the Delray mansion were the coins in Cryptsy's wallets, thus rendering the property a receivership asset for the benefit of Cryptsy's account holders.

As stated in prior filings, the parties agreed at mediation[4] to settle the receivership's and Plaintiffs' interests in the Delray mansion, the future sale of which is anticipated to generate more than $1 million in net sales proceeds for the benefit of Cryptsy's victims/the Class.[5]

---

[4]   The mediator was retired Circuit Court Judge, the Honorable Howard Tescher, who has significant experience mediating receivership matters in Florida and around the Country. The resolution as to the receivership was pre-suit, meaning a large amount of receivership fees and expenses have been saved as a result of the settlement now, rather than later after significant litigation (and the resulting significant expenses). Finally, the resolution avoided, naturally, the risk inherent in all litigation. Given these circumstances, the resolution was a huge success for the receivership and the Class.

[5]   My interest and Plaintiffs' interest were aligned because the property would ultimately be monetized for the benefit of Cryptsy's victims/account holders – i.e., the Class

I filed a receivership motion to approve the Nettles' settlement, which the Court granted [DE 77, 84].[6] I also drafted a receivership deed to take ownership of the property, which Nettles signed and was recorded in public records.

I have hired a realtor with prior experience in marketing and selling receivership properties for the purpose of marketing and selling the subject property. I also hired three appraisers to independently appraise the value of the property and have received the three appraisal reports. The appraisals are necessary for my future motion for confirmation of the proposed sale to a buyer and complying with the federal receivership statute on selling receivership property (28 U.S.C. § 2001). The property is currently on the market with a list price of $1,375,000.[7] I intend to find a qualified buyer as soon as possible. The sale to a buyer will be subject to an upcoming motion under 28 U.S.C. § 2001 and Court Order for the benefit of Cryptsy's victims/the Class.

---

[6] Through the date of closing the sale of the property, Nettles will continue to maintain the property, and will be responsible and pay for all expenses to maintain the property, including, but not limited to, real estate taxes, adequate homeowner's and hurricane insurances, homeowner's association fees, pool care, lawn and landscaping, and all other expenses for maintaining the property. At closing, Nettles will receive $250,000.00, less any amounts that Nettles is obligated to pay but has failed to pay, such as further encumbering the property, taxes, insurances, association fees, other fees or other monies due on or for the property before or on the date of the closing. The remaining sales funds net of closing costs, realtor fees and other closing-related expenses and also net of Nettles' $250,000.00 agreed-to amount will be held in escrow by me for the benefit of approved Cryptsy account holders/the Class, pending final approval of Plaintiffs' separately-filed motion for approval of the Settlement Agreement regarding the many class protocols and procedures, including the plan of allocation/distribution, claims procedures, notice form, claim form, objection/appeal periods, payment of fees and expenses, etc. Such class protocols and procedures are incorporated as part of the Nettles Settlement Agreement because the underlying case is a class action lawsuit, and it is required and standard for such protocols and procedures to be expressly incorporated in class settlement agreements (such as the subject Settlement Agreement) with class defendants (such as Nettles).

[7] In order to maximize a sale as soon as possible, I recently reduced the list price. The surrounding area has many homes, including brand new developer homes, for sale, which has naturally increased the supply of homes currently on the market and has consequently increased the time to market the property.

## B.  The Coins/Wallets

As stated in my prior Reports, my team successfully secured from Cryptsy's servers, and transferred to protected receivership digital wallets, dozens upon dozens of Cryptsy wallets of different types of cryptocurrencies.  The most lucrative and most liquid coins were secured as soon as possible and took a significant amount of time to accomplish.  The less lucrative and less liquid coins were then secured, which also took a significant amount of time.

Below is a summary of the time-consuming process that my computer forensics team faced to secure the coins from Cryptsy's servers: (i) Cryptsy had an entire array of servers running the wallets and syncing block chains, as well as a team of employees that maintained smooth operation of the wallets; (ii) there are numerous wallets containing different alternative coins that are under my control; (iii) each alternative coin wallet requires its own unique software to run its own block chain; (iv) the receivership estate has billions of individual alternate coins under its control, each coin has its own block chain, and the entire block chain history needs to be linked with the recovered wallets in order to verify the current balance of coins in that wallet; and (v) due to the fact that Cryptsy was an exchange, each wallet contains hundreds of thousands of entries for transactions, and in many cases, the wallets have become corrupted, clogged and unresponsive requiring more time and effort to recover remaining coins in that wallet.

### 1.  Liquidation of the High Liquidity Coins

As stated in prior filings, there are two types of coins that I secured.  One type has a strong or high liquidation value, meaning if the coins are sold through a cryptocurrency exchange, the net remaining monetary value in all probability would be close to market value.  Moreover, they are easily monetized given the demand for such coins.  I analyzed, with the assistance of my

cryptocurrency forensics team, which coins have a strong or high liquidation value, including, but not limited to, Bitcoin, Ethereum, Ethereum Classic, Dash, Dodge, and Litecoin

Pursuant to the self-executing Order [DE 71] granting my motion for authorization to liquidate/sell the high liquidity coins [DE 70], I liquidated the majority of the high liquidity coins. The liquidation was accomplished with minimal market effects and at values at or close to market value on the dates of liquidation. I accomplished this overall result by closely monitoring the different markets for each specific coin on a daily basis over a two to three-week period in October 2016 of more than 2,000 individual trades in this liquidation process to maximize recoveries. I recovered from the liquidation of the high liquidity cryptocurrency a total monetized amount of more than $330,000 for the benefit of the receivership estate and the Class.[8]

### 2. The Remaining Low to Medium Liquidity Coins

On the other hand, I secured many other types of coins that have a low to medium liquidation value, meaning that if the coins are sold through a cryptocurrency exchange, the net remaining monetary value would be significantly less than the market value of the coins. Given the lack of market demand, generally and objectively speaking, an attempt to liquidate any significant amount of such would adversely impact the market price.

Since the receivership began last year, I have discussed selling some or all the low to medium liquidity coins to private buyers. I considered the pros and cons of selling the coins to private buyers or, alternatively, in an auction.

After thoroughly and carefully evaluating various options relating to the markets for these coins for many months, I ultimately came to the conclusion that an auction would not maximize

---

[8]  The high liquidity alternative coins were liquidated into Bitcoins and the Bitcoins were then liquidated and monetized into currency. This amount includes 3.5 Bitcoins that were also recovered from a Cryptsy wallet and liquidated during this process.

the monetary return of the remaining coins.  In my opinion, there was simply not enough market interest to have a successful, worthwhile auction for the remaining coins.  An auction, in all probability, would not result in selling all or most of the remaining coins, would only further delay monetizing the remaining coins and would create additional and potentially significant receivership expenses to effectuate.

Coming to this recent conclusion, I recently ramped up negotiations with a few interested buyers to purchase all the remaining coins in the receivership estate.  I identified and negotiated separately with three private buyers who would purchase the inventory of the remaining coins. The buyers and I negotiated and signed three Asset Purchase Agreements, which include the breakdown of the specific coins that each buyer agreed to purchase.  I moved for authorization to sell the remaining coins to these buyers [DE 103], which the Court granted [DE 105].[9]

Collectively, the buyers agreed to buy the remaining coins for a total amount of $49,500.00, as follows: (i) buyer #1 ($28,000.00); (ii) buyer #2 ($16,500.00); and (iii) buyer #3 ($5,000.00).[10] Pursuant to the terms of the three Asset Purchase Agreements, all three buyers transferred the total purchase funds upon signing the agreements.

The total purchase price of $49,500.00 was reasonable.  In an abundance of caution, and to further confirm the reasonableness of the total purchase price, I employed an independent coin consultant (Darrell Duane of DC Blockchain), who confirmed same.[11]

---

[9]  The Asset Purchase Agreements were attached as Composite Exhibit 1 to the motion.

[10]  The buyers requested that their individual identities be kept confidential in this proceeding, to which I had no objection.   Therefore, their identities were redacted in the Asset Purchase Agreements.

[11]  Requiring the Receiver to comply with 28 U.S.C. § 2001 for selling the coins was not the best alternative under the above-discussed circumstances.  Therefore, I also requested that I not be required to sell the subject coins pursuant to 28 U.S.C. § 2001 and/or 28 U.S.C. § 2004, with which the Court agreed [DE 105].

### C.  The Tiffany Ring

In addition to the Delray mansion, Nettles has turned over to me a Tiffany diamond ring purchased by Vernon for over $104,000 (in cash) that was derived from Cryptsy wallets of coins/funds.  I am holding the ring in escrow until final approval of Plaintiffs' motion for approval of the Nettles Settlement Agreement (set for June 2, 2017, as discussed in Section III, *infra*).  Upon final approval by the Court, I shall market and sell the diamond ring to a buyer, subject to a separately-filed motion in the future and Court-approval of that motion.  The Tiffany ring will obviously generate additional proceeds on top of the Delray mansion.

### D.  Storage Items

As stated in prior filings, I moved to compel Public Storage to provide immediate access to the storage units – even if they are in Vernon's name – to inspect, inventory and determine what is (and what is not) subject to the receivership [DE 56].  The Court thereafter granted the motion [DE 57].  I promptly coordinated a date and time for accessing and inspecting the storage units with Public Storage's in-house counsel, who cooperated and complied.  I also requested and received from Public Storage relevant documents regarding the storage units.

On July 14, 2016, Mr. Carey (my deputy receiver and receivership consultant), my team and law enforcement accessed three – as opposed to two – storage units at Public Storage associated with Cryptsy and/or Vernon.  New locks were placed on the units to prevent theft.

In the storage units were numerous computer servers, computers, hard drives, thumb drives, boxes of business documents, a gold/diamond ring, high-end women's clothing, household furnishings, and furniture.  The secured computer and electronic equipment were imaged and forensically analyzed to the extent possible.  From the office items in storage compared to the office items I understand Cryptsy had, it appears that a large amount of Cryptsy office equipment

and furniture were disposed of pre-receivership by Vernon.  This is also consistent with reports from third parties.

It is my position that most – if not all – of the items secured in the storage units are receivership property.  For example, the storage units contained Vernon's girlfriend's household items and clothing, but most – if not all – of those items were purchased with funds derived, and misappropriated, from Cryptsy and its account holders.  Vernon had relocated his girlfriend from China to Boca Raton and financed, again with Cryptsy-derived money, her life in South Florida.

In the near future, and excluding the computer and electronic equipment, I intend to file a motion regarding the disposition of the secured personal property from the storage units.  This will also reduce expenses to the receivership estate, because I will be able to cancel rental of the storage units.

I am in the process of obtaining an estimate or appraisal of the storage items, after which I will file a motion to approve my recommended sale or disposition of same.  Until then, the secured storage items will continue to be preserved under my supervision at new receivership storage units.[12]

### III.  Class Procedures, Including Claims Procedure

Plaintiffs filed a motion for approval of the Nettles' Settlement Agreement as to the proposed class protocols and procedures [DE 73], which the Court preliminarily granted [DE 74].  Plaintiffs then targeted and settled at a pre-suit mediation with Ridgewood Investments, Inc. ("Ridgewood") and Kaushal ("Ken") Majmudar ("KM"), the settlement of which is further discussed in Section V.A, *infra*.

---

[12] The computer and electronic equipment will continue to be held by me and/or turned over to the appropriate authorities.

10

Plaintiffs filed a motion for preliminary approval of the Ridgewood Settlement Agreement [DE 96], which sought to combine the class action settlement approval process for both the Nettles Settlement Agreement and the Ridgewood Settlement Agreement. The Court preliminarily granted it [DE 100], which effectively allows for the Final Approval (or Fairness) Hearing as to both settlement agreements to occur on the same date. The preliminary approval also approved the proposed notice to claimants that addresses both the Nettles and Ridgewood settlements. The Court has set the date for the Final Approval Hearing as to the Nettles and Ridgewood Settlement Agreements for June 2, 2017, at 10 a.m. Plaintiffs also filed a motion for approval of manner of notice and claim form [DE 101], which the Court granted [DE 102].

The claims procedure, as well as several other class-related protocols and procedures, including the plan of allocation/distribution, notice form, claim form, objection/appeal periods, payment of fees and expenses, etc., were expressly listed and incorporated as part of the Settlement Agreements because the underlying case is a class action lawsuit, in which such protocols and procedures are expressly incorporated in class settlement agreements. In summary, the claims procedure will repay approved claimants a pro rata distribution amount based on the monetized value of their coin holdings at Cryptsy as of November 1, 2015 to the present.

To minimize and essentially eliminate significant estimated receivership fees in a class claims procedure, Plaintiffs' counsel selected Angeion Group (www.angeiongroup.com), which provided the most competitive quote, as the claims administrator for this proceeding. Angeion Group will take the lead in the claims procedure, including sending notices to potential claimants (which were recently sent out) and reviewing and approving or rejecting claim forms. The cost savings through a claims administrator in this class action context should be significant for the victims' benefit. There is also a separate claims/settlement website (www.cryptsysettlement.com),

11

which recently went "live," and a toll-free phone number (1-888-868-4936) through the claims administrator to facilitate the claims procedure.   A copy of the "home" page of the claims/settlement website (www.cryptsysettlement.com) is attached as Exhibit A for the Court's easy reference.   The receivership website (www.cryptsyreceivership.com) has also continued to be updated regarding the claims procedure.

Some important dates for potential claimants are:

**April 17, 2017** – Deadline to Request Exclusion (must be postmarked);

**May 3, 2017** – Deadline to Object (must be postmarked);

**May 17, 2017** – Deadline to Submit a Claim Form (must be submitted online or postmarked); and

**June 2, 2017, at 10 a.m.** – Final Approval/Fairness Hearing.

Once and assuming the Court enters the Order of final approval, the settlement terms will become fully effective in the class context.

### IV.   It Appears That Vernon Is Continuing to Misappropriate Coins and Funds from Cryptsy and Its Account Holders Post-Receivership

It appears that Vernon has transferred on his own, or sold to third parties on the black market, to new addresses beyond my control after my appointment a large amount of Cryptsy-derived coins to which he had access as Cryptsy's president and/or to which he had sole access through encrypted passcodes.  This is a classic violation of the Appointment Order which requires Vernon and any third parties who have Cryptsy-derived coins to return same to me.

I have been able to confirm this movement of coins post-receivership from my team's analysis of the wallets on Cryptsy's servers.  I do not have the ability to know where these coins are currently located, whether at a third party exchange or in a private wallet.  The coins transferred after my appointment that are traceable back to Cryptsy include, but are not limited to, Earthcoin,

Ethereum, Vertcoin, Worldcoin, Primecoin, Mooncoin, T#tcoin, Potcoin, Huntercoin and Ripple. The majority of these coins were likely transferred through overseas exchanges.

I have sent several demand letters, demand emails and other requests to overseas exchanges which may have these Cryptsy-derived coins, such as localbitcoins.com, alcurEX, BTC38 and BTER, but nearly all such exchanges have not responded to me or my agents because they are overseas and apparently do not feel compelled to respond to the Appointment Order.

I traced some of the misappropriated coins to two U.S.-based exchanges, Bittrex and Poloniex, which apparently have accounts holding some of these coins. I have been working with Bittrex and Poloniex on these issues, which have represented that they have frozen the subject accounts.

## V.   Receivership and Class Targets

Plaintiffs and I, through my special receivership litigation counsel, have evaluated and continue to evaluate individuals and entities that bear responsibility for the Cryptsy debacle, as well as those who improperly received money or assets derived from Cryptsy, for the benefit of the account holders.

### A.  Kaushal ("Ken") Majmudar and Ridgewood Investments, Inc.

On November 17, 2016, Plaintiffs and I attended a second mediation before Judge Howard Tescher (ret.) with two parties that Plaintiffs intended to add, but had not yet added, to the case, *to wit*: Ridgewood Investments, Inc. ("Ridgewood") and Kaushal ("Ken") Majmudar ("KM"). At the mediation, the parties reached a settlement to resolve the claims of Plaintiffs and the Class, and the Receiver, against Ridgewood and KM. That agreement was subsequently documented by the Ridgewood Settlement Agreement. The Ridgewood Settlement Agreement serves to add an

additional $220,000.00 to the settlement fund initially established through the Nettles Settlement Agreement.

The Ridgewood Settlement Agreement has been fully executed, with the last signatory signing the document on January 4, 2017. Pursuant to Section III(B) of the Ridgewood Settlement Agreement, Plaintiffs filed a motion for leave to file the second amended complaint [DE 89], which the Court granted [DE 90]. The Second Amended Complaint names Ridgewood and KM as defendants, and adds one additional count for unjust enrichment which is pled against only Ridgewood and KM.

In the Ridgewood Settlement Agreement, Ridgewood and KM consented to the filing of the Second Amended Complaint, which Plaintiffs have filed [DE 91, 94]. As detailed in the Ridgewood Settlement Agreement, upon the entry of the Court's Order granting the motion for leave (which occurred), Plaintiffs would file and, indeed, have filed a motion for preliminary approval of the Ridgewood Settlement Agreement [DE 96], which sought to combine the class action settlement approval process for both the Nettles Settlement Agreement and the Ridgewood Settlement Agreement. The Court preliminarily approved the Ridgewood Settlement Agreement [DE 100], which therefore, among other things, combined the class action settlement approval process for both the Nettles and the Ridgewood Settlement Agreements and set the date for the Final Approval Hearing as to both settlements for June 2, 2017, at 10 a.m.

### B.  Coinbase, Inc.

On December 13, 2016, Plaintiffs and I, through my special receivership counsel, filed a federal nationwide class action lawsuit in the United States District Court for the Southern District of Florida (Case No. 9:16-cv-81992), against Coinbase, Inc., a Delaware corporation doing business as Global Digital Asset Exchange ("Coinbase"). Coinbase operated an online business

for general consumers and the public to exchange, invest, and trade in digital cryptocurrencies. The Complaint seeks damages based upon Coinbase's alleged failure to properly monitor customer accounts that held investors' money and for allegedly ignoring its duty to investigate suspicious activities under U.S. anti-money laundering rules. From 2014 through 2016, Cryptsy and Vernon transferred enough Bitcoin through Coinbase (approximately $8,300,000.00 USD) to rank among Coinbase's top liquidators of Bitcoin. As alleged in the Complaint, the $8.3M worth of Bitcoin liquidated by Coinbase were not the product of legitimately generated revenues. Instead, those Bitcoin were stolen from Cryptsy users in a long-running fraudulent scheme.

On March 2, 2017, Coinbase and I, in my capacity as Receiver, agreed that Cryptsy should dismiss its claims without prejudice so that I, in my capacity as Receiver, can instead pursue those claims against Coinbase in arbitration. The claims asserted by the putative class of plaintiffs in that action remain unaffected by the decision to shift Cryptsy's claims to an arbitral forum.

### C.  Other Targets

Plaintiffs and I will continue to evaluate those that bear responsibility for the Cryptsy debacle, as well as those who improperly received money or assets derived from Cryptsy, for the benefit of the account holders. Plaintiffs and I will also continue to make the appropriate pre-suit demands and/or file the appropriate lawsuits for the benefit of the account holders.

### VI.    Receivership Website

My team and I continue to correspond and speak with account holders, who are estimated to number in the tens of thousands, and continue to update the receivership website with relevant filings and other material information at www.cryptsyreceivership.com. The website informs account holders regarding important updates, relevant court filings (such as reports and motions affecting account holders), and the general progress of the receivership proceeding. The website

also has a registration link for account holders to complete, so I can keep track of their names, contact information, investment history and other relevant information to provide to Plaintiffs' counsel and the claims administrator for the claims procedure. The website is the best way for me to communicate with the many account holders who lost money. As stated above, the receivership website has posted and will continue to post updates on the claims procedure and will direct inquiries to the claims administrator.

### VII.    Conclusion

My overall investigation will continue. I am pleased to report significant progress regarding recovery of assets, in light of the dire circumstances that existed before and at the time of my appointment. I will continue to: (i) search for and attempt to secure assets, funds, cryptocurrencies, accounts and wallets in Cryptsy's name or derived from Cryptsy; (ii) market and liquidate receivership assets, such as the secured coins, Delray mansion and Tiffany ring, all pursuant to Court Order; (iii) assist in the class procedures; (iv) investigate, make demand on and/or sue appropriate third parties; and (v) communicate with and update account holders.

I will supplement this Report with my Sixth Report within ninety (90) days from today.


James D. Sallah,
Receiver

Dated: May 1, 2017

# EXHIBIT A

# Cryptsy Cryptocurrency Settlement

Case No.: 9:16-cv-80060

HOME / SUBMIT A CLAIM / IMPORTANT DOCUMENTS / FAQS / CONTACT US

If you are a CRYPTSY account holder and are unable to access your CRYPTOCURRENCY, you could get money from two different class action settlements, and an ongoing class action lawsuit may affect your rights. PLEASE READ THE NOTICE CAREFULLY.

## Important Dates

**April 17, 2017** - Deadline to Request Exclusion (must be postmarked by this date)

**May 3, 2017** - Deadline to Object (must be postmarked by this date)

**May 17, 2017** - Deadline to submit a Claim Form (must be submitted online by or postmarked by this date)

**June 2, 2017 at 10:00 A.M.** - Fairness Hearing

## OVERVIEW

The **Notice** describes two partial settlements of a lawsuit and how you can get money from those settlements or exclude yourself from one or both of them. The **Notice** also describes the portion of the lawsuit that is continuing and how you can continue in that lawsuit or exclude yourself from that lawsuit.

## BACKGROUND

On August 25, 2016, the Honorable Kenneth A. Marra of the United States District Court for the Southern District of Florida entered an order certifying a class of Cryptsy account holders who are unable to access their cryptocurrency in a class action lawsuit.

The class action lawsuit claims that:

(1) Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy") and Paul Vernon ("Vernon") stole and converted for their own use the cryptocurrencies of the Cryptsy account holders;

(2) Defendant Lori Ann Nettles ("Nettles") was unjustly enriched as a result of assets that she received that were purchased with the proceeds of cryptocurrency taken from the Cryptsy account holders during her marriage to, and in her divorce from, Vernon; and

(3) Defendants Ridgewood Investments, Inc. ("Ridgewood") and Kaushal Majmudar ("KM") were unjustly enriched as a result of consulting fees they received from Cryptsy.

On April 24, 2016, the Court also appointed James D. Sallah, not individually but solely in his capacity as the Court-appointed Receiver, to act as the Receiver in this matter. The Receiver took control of Cryptsy, and worked with the lawyers for the plaintiffs in this class action to recover monies and assets for the Cryptsy account holders, which are part of the Settlements.

Certain of the defendants have settled, and the litigation is proceeding against the remaining defendants. **The purpose of the notice is to advise you of your rights with respect to (A) the settlement with certain defendants and (B) the continuing litigation against the remaining defendants.**

If you are a Class Member, you have a right to participate in the settlements, and you have a right to participate as a class member in the continuing lawsuit against the remaining defendants. You do not have to choose between the settlement and the continuing litigation, and your rights with respect to each are independent.

This is not a lawsuit against you. Your participation in this lawsuit or acceptance of money from either or both of the settlements will not affect your employment status or compensation in any way.

Please read the **Notice** carefully. **The Notice explains your legal rights and options—and the deadlines to exercise them.** Your legal rights will be affected whether you act or don't act, and you have choices to make now.

The **Notice** is divided into two parts: The first part discusses the proposed settlement with certain defendants; the second part discusses the continuing litigation against the remaining defendants. Please read both parts of the Notice carefully.

The Settlement with Certain Defendants

Two settlements, (1) a settlement with Defendant Nettles, and (2) a settlement with Defendants Ridgewood and KM (Ridgewood and KM are referred to collectively herein as Ridgewood), have been reached in partial settlement of the class action lawsuit. Nettles and Ridgewood deny that they violated any laws or engaged in any wrongdoing. For purposes of this notice, Nettles and Ridgewood are referred to collectively as the "Settling Defendants."

**You are a Class Member if you are a Cryptsy account owner who held Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at Cryptsy as of November 1, 2015, through June 2, 2017, and are unable to access your cryptocurrency. Excluded from the Class are all employees of Cryptsy, including its shareholders, officers and directors and members of their immediate families.**

The Court in charge of this case still has to approve the settlements with the Settling Defendants. Payments will be made if the Court approves the settlements and orders that the settlement funds be distributed, and if any appeals of the Court's approval of these settlements are resolved in Plaintiffs' favor. Please be patient.

All references are to "settlements" in the plural. However, understand that the two settlements are independent and separate. The Court may approve one or both of the two settlements. Moreover, you may opt out of, comment on, or object to one or both settlements.

## SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS WITH RESPECT TO THE SETTLING DEFENDANTS

| | |
|---|---|
| DO NOTHING | **Get no payment from the Settling Defendants.** Give up your rights to ever recover from the Settling Defendants for the legal claims in this case if the settlements are approved.<br><br>You will remain a Class Member in the lawsuit against Cryptsy and Vernon, which are referred to collectively as the "Non-Settling Defendants," and retain the possibility of getting money or other benefits from the Non-Settling Defendants that may come from trial or settlement. |
| EXCLUDE YOURSELF FROM EITHER OR BOTH OF THE SETTLEMENTS | **Get no payment from the settlements.** This is the only way that you can file your own lawsuit or ever be part of any other lawsuit about the legal claims in this case against any of the Settling Defendants. You may exclude yourself from one or both settlements.<br><br>Even if you exclude yourself from one or both of the settlements, you will remain in the Class for purposes of the continuing lawsuit against the Non-Settling Defendants and will be bound by the outcome unless you submit a written exclusion request.<br><br>Click **here** for more information about excluding yourself. |
| SUBMIT A CLAIM FORM FOR YOUR SHARES OF THE SETTLEMENTS | **The only way to receive money from the settlements when the funds are distributed is by submitting a claim form by May 17, 2017.**<br><br>Click **here** to submit your Claim online or click **here** to download a Claim Form. |
| OBJECT TO OR COMMENT ON THE SETTLEMENTS | **Write to the Court about why you like or do not like the settlements by no later than May 3, 2017.** You may also ask to speak to the Court about your written comments or objections about the fairness of either or both of the settlements at the "Fairness Hearing" on **June 2, 2017**, though you do not have to do so. To comment on or object to either or both settlements and request to speak at the "Fairness Hearing," you must act before **May 3, 2017**.<br><br>Click **here** for more information about objecting to the settlement. |
| GO TO THE COURT'S FAIRNESS HEARING ABOUT THE SETTLEMENTS | If you would like, you may ask to speak in Court about the fairness of one or both of the settlements. You do not need to speak to the Court to receive benefits under the settlements.<br><br>Click **here** for instructions about speaking at the hearing. |

## The Continuing Litigation Against the Non-Settling Defendants

The lawsuit is continuing against Cryptsy and Vernon, which are referred to as the "Non-Settling Defendants."

You are a Class Member if you are a Cryptsy account owner who held Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at Cryptsy as of November 1, 2015, through June 2, 2017, and are unable to access your crypto currency. Excluded from the Class are all employees of Cryptsy, including its shareholders, officers and directors and members of their immediate families.

**The outcome of the class action lawsuit against the Non-Settling Defendants is not yet known. The Non-Settling Defendants have failed and refused to respond to the lawsuit, the Court has entered a default against them, and Vernon has fled to China. Thus, it may be unlikely that any additional cryptocurrency or monies will be obtained from the Non-Settling Defendants. You will be notified if money or benefits are obtained from any of the Non-Settling Defendants through settlements or trial. Please be patient.**

You have the right to exclude yourself from the continuing lawsuit against the Non-Settling Defendants. If you choose to do so, you must exercise your right by **April 17, 2017**. Instructions on how to opt out are set forth in response to Question 21. You can receive the benefits of one or both of the settlements with the Settling Defendants even if you opt-out of the continuing lawsuit against the Non-Settling Defendants.

This Class Action is separate and distinct from the class action lawsuit filed on December 13, 2016 against **COINBASE, INC.**, in which Plaintiffs and the Receiver in this Class Action are attempting to recover additional monies for the same class certified by the Court in this Action. **Accordingly, your rights or claims in the Coinbase Class Action will not be impacted by this Action.**

## SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS WITH RESPECT TO THE NON-SETTLING DEFENDANTS

| | |
|---|---|
| DO NOTHING | If you do nothing, you will remain a Class Member in the lawsuit against the Non-Settling Defendants and retain the possibility of getting money or other benefits from the Non-Settling Defendants that may come from trial or settlement. By remaining in the Class, you will be bound by the outcome of the continuing lawsuit with the Non-Settling Defendants and will give up your right to file your own lawsuit. There is no money available now from Cryptsy or Vernon, and no guarantee that there will be. The outcome of the continuing class action lawsuit against these Non-Settling Defendants is not yet known. If additional money or benefits are obtained from the Non-Settling Defendants, you will be notified again. |
| EXCLUDE YOURSELF FROM THE ONGOING LAWSUIT | **If you exclude yourself from the ongoing lawsuit, you will receive no payment from any Non-Settling Defendants even if any monies are collected as the result of a trial or settlement, but you will retain the right to file your own lawsuit.** You will remain in the Class on whose behalf the lawsuit will continue against the Non-Settling Defendants unless you submit a written request to exclude yourself from it as described in the response to Question 21. You must submit a timely written request to exclude yourself from the Class, if you wish to do so, by **April 17, 2017**. This is the only way that you can file your own lawsuit or ever be part of any other lawsuit about the legal claims in this case against any of the Non-Settling Defendants. |

**Detailed Information**

The above is a summary of the lawsuits against the Settling and Non-Settling Defendants. The **Notice** is designed to provide more information to help you evaluate your options and answer any questions that you may have.

## GETTING MORE INFORMATION

• Visit the Receivership website at www.cryptsyreceivership.com

• Visit the Public Access to Court Electronic Records ("PACER") website: www.pacer.gov to review the Settlement Agreements by clicking on the "Find a Case" option and searching by Case Number for 9:16-cv-80060

• Contact Co-Lead Class Counsel at:

  Marc A. Wites
  Wites & Kapetan, P.A.
  4400 N. Federal Highway
  Lighthouse Point, Florida 33064
  (954) 570-8989

• Contact the Claims Administrator at:

  Cryptsy Cryptocurrency Administrator
  1801 Market Street, Suite 660
  Philadelphia, PA 19103
  Email: info@cryptsysettlement.com
  Toll-Free: 1-888-868-4936
  Facsimile: 1-215-525-0209

**PLEASE DO NOT CONTACT THE COURT. YOU SHOULD DIRECT ANY QUESTIONS YOU MAY HAVE TO THE NOTICE AND CLAIMS ADMINISTRATOR AND/OR TO PLAINTIFFS' COUNSEL.**
You may also seek the advice and counsel of your own attorney at your own expense, if you desire.

Copyright © 2017

Privacy Policy