# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No: 9:16-cv-80060-MARRA

BRANDON LEIDEL, and
MICHAEL WILSON, individually,
and on behalf of All Others Similarly
Situated,

       Plaintiffs,

v.

PROJECT INVESTORS, INC.,
d/b/a CRYPTSY, a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC.,
a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

      Defendants.

_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

## INTRODUCTION

Class counsel are proud to present for final approval a class action settlement (the "Settlement") against the Defendants Lorie Ann Nettles, Ridgewood Investments, Inc., and Kaushal Majmudar (collectively, the "Settling Defendants."). The Settling Defendants do not oppose the relief sought herein.[1]

Class Representatives, Class Counsel and the Receiver believe the proposed Settlement is an excellent result that is in the best interests of the Class. Here, the principal defendant, Paul Vernon ("Vernon") – the mastermind of the fraud and theft of the Class' cryptocurrency - has fled the country, is presently believed to be residing in the People's Republic of China, and is believed to have hidden assets outside the United States. Accordingly, the Settlement must be considered in the context of the risk that protracted and costly litigation would have been required to possibly secure additional assets from the non-settling Defendants, which may have resulted in a lesser recovery or no recovery at all.

The Settlement resolves all claims asserted against the Settling Defendants in the Class Action, thereby providing partial relief to the Class Members while the Class Representatives and the Receiver continue to pursue their claims against non-party Coinbase, Inc. – against whom they have recently filed suit. *See Leidel et al., v. Coinbase, Inc.*, United States District Court for the Southern District of Florida, Case No. 9:16-cv-81992-KAM. As this Settlement and its release specifically excludes Vernon, Plaintiffs intend to move for the entry of a final judgment against him, and may continue to pursue Vernon should additional evidence become available as to his whereabouts and the monies he stole from the Class.

---

[1] As noted below, while the Settling Defendants do not oppose the relief sought herein, two persons filed timely objections, and one untimely objection was filed on May 17, 2017. Plaintiffs and Class Counsel will address such objections briefly here (*see* p. 20) and in a separate memorandum.

The Court preliminary approved the settlement reached between Plaintiffs, Receiver, and Defendant Nettles (*i.e.*, the Nettles Settlement, to which this Court previously granted preliminary approval on October 27, 2016 (D.E. 74)), and the settlement reached between Plaintiffs, Receiver, and Defendants Ridgewood and KM (*i.e.*, the Ridgewood Settlement, to which this Court granted preliminary approval on January 31, 2017 (D.E. 100), and ordered that they shall be treated as one. Order at 3 (D.E. 100).

Plaintiffs respectfully request the Court grant final approval of the Settlement, as well as Plaintiffs' separately-filed motion for class representative incentive awards and Class Counsel's attorney's fees and expenses. However, Class Counsel suggests that the Court refrain from entering an Order that directs the distribution of any monies to the Class, Class Representatives, Class Counsel, or the Receiver, at this time because, as set forth in detail below, they are still in the process of liquidating the assets that comprise the Settlement Fund. Plaintiffs, Class Counsel and the Receiver respectfully suggest that the Court allow them until July 14, 2017 to complete the liquidation of the assets, at which time Plaintiffs will submit a supplemental motion detailing the proposed plan for the itemization and distribution of the Settlement Fund.

<u>**FACTUAL BACKGROUND**</u>

**1.      Defendants' Fraudulent and Deceptive Practices**

Defendants Vernon and Project Investors, Inc. d/b/a Cryptsy (collectively "the Cryptsy Defendants") operated an online business for general consumers and the public to exchange, invest, and trade in digital cryptocurrencies, including "Bitcoin" and "Litecoin," similar to a bank, but existing only in the "virtual" world. Cryptsy customers, including members of the Settlement Class, deposited their digital currency in accounts held at, and purportedly protected and managed by, Cryptsy. The Cryptsy Defendants acted unlawfully by denying account holders,

including the Settlement Class, the ability to withdraw or use the funds in their accounts and by stealing for the Cryptsy Defendants' own use and benefit the digital currency held in the Cryptsy customer accounts.

In total, the Cryptsy Defendants stole cryptocurrency from the Class which, as of November 2015, is believed to have been valued at approximately $8 million.

### 2.     The *Nettles* Litigation

On January 13, 2016, Plaintiffs initiated this nationwide class action on behalf of themselves and the Settlement Class against Defendants Cryptsy, Vernon, and Nettles. (D.E. 1.) Plaintiffs later moved the Court to appoint a Receiver to take over the operations and marshal the assets of Defendant Cryptsy because Vernon had fled the jurisdiction and the resulting imminent threat that Defendants were dissipating and/or spiriting away assets. (D.E. 9).

On April 4, 2016, the Court granted Plaintiffs' Motion to Appoint Receiver and appointed James D. Sallah, Esq., as the Receiver/Corporate Monitor over Defendant Cryptsy. (D.E. 33.) Upon his appointment, the Receiver engaged the services of Patrick Rengstl, Esq. as counsel for the Receiver and immediately began efforts to secure and marshal Cryptsy's assets. By that time, defendants Cryptsy and Vernon, who had been properly served (*see* Orders at D.E. 25, 51) had each defaulted.

On July 27, 2016, Plaintiffs filed a Motion for Class Certification. (D.E. 59). On August 25, 2016, the Court granted the Motion for Class Certification (D.E. 65). In so doing, the Court also appointed Brandon Leidel and Michael Wilson as Class Representatives, and Marc A. Wites, Esq. and Wites & Kapetan, P.A., and Scott L. Silver, Esq., and David C. Silver, Esq. of Silver Law Group as Class Counsel. *Id.*

On August 15, 2016, Class Representatives, the Receiver and Defendant Nettles attended

mediation before Judge Howard Tescher (ret.), where they reached an agreement to resolve Plaintiffs' and Receiver's claims against Defendant Nettles. That agreement was subsequently documented by the Nettles Settlement Agreement.  On October 27, 2016, the Court entered an order granting preliminary approval of the Nettles Settlement Agreement.  (D.E. 74).

     3.     **The Ridgewood Litigation**

On November 17, 2016, Plaintiffs and the Receiver attended a second mediation before Judge Howard Tescher (ret.) with two parties that Plaintiffs intended to add, but had not yet added, to the case, *to wit*: Ridgewood Investments, Inc., and Kaushal Majmudar ("Defendants Ridgewood and KM"). At the mediation, the parties reached a settlement to resolve the claims of Plaintiffs and the Class, and the Receiver, against Ridgewood and KM. That agreement was subsequently documented by the Ridgewood Settlement Agreement.

Pursuant to Section III(B) of the Ridgewood Settlement Agreement, Plaintiffs sought leave to file a Second Amended Complaint. (D.E. 89). The Court granted the motion on January 9, 2017 (D.E. 90), and Plaintiffs filed their Second Amended Complaint on this same date. (D.E. 94). The Second Amended Complaint names Ridgewood and KM as defendants and adds one additional count for unjust enrichment which is plead against only Ridgewood and KM.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (as to the Ridgewood Settlement) on January 17, 2017 (D.E. 96) and their Unopposed Supplement to such motion on January 23, 2017. (D.E. 98).

On January 31, 2017, the Court entered its Order Certifying Class for Settlement Purposes, Granting Motion for Preliminary Approval of Class Action Settlement, Directing the Issuance of Class Notice, Scheduling a Final Approval Hearing, and Directing the Issuance of Notice of Certification of the Class as to Defendants Cryptsy and Vernon. (D.E. 100). That Order

consolidated both settlement agreements to create a singular Settlement Class created by the Nettles and Ridgewood Settlements, a single Settlement Fund, and the resulting notice and claims administration process. *Id.*

### 4.    The Settlement Terms and Agreement

### A.    *The Class*

The Settlement provides relief to all Cryptsy account owners who held Bitcoins, alternative cryptocurrencies, or any other form of monies or currency at Cryptsy as of November 1, 2015, through June 2, 2017, and who are unable to access their crypto currency. Excluded from the Class are: (1) employees of Cryptsy, including its shareholders, officers and directors and members of their immediate families; (2) any judge to whom this action is assigned and the judge's immediate family; and (3) persons who timely and validly opt to exclude themselves from the Class. (D.E. 65).

### B.    *Monetary Relief*

The Settlement Fund includes the following assets that have been liquidated, or are in the process of liquidation, or which will be liquidated if the Court grants final approval to the Settlement:

1.  A Diamond Ring obtained from Defendant Nettles. Nettles Settlement Agreement at Sections II(A)(1) and III.[2]  The estimated value of the ring is $35,000.

2.  Real Property obtained from Defendant Nettles. Nettles Settlement Agreement at Sections II(A)(2) and III(B)-(I). As to the Property, the primary component of the Settlement Fund, it is currently under contract for $1,150,000, in a sale administered by the Receiver. The anticipated closing date is July 14, 2017, and Class Counsel and

---

[2]  The Nettles Settlement Agreement provides that the ring can be sold upon final approval of the Settlement. *See* Settlement Agreement at IIIA.

Receiver expect that after the payment of all related expenses and required distributions, the sale will yield approximately $800,000 that will become part of the Settlement Fund.

3. All monies received from the sale of the cryptocurrency marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah (D.E. 60), which totals $394,500. Nettles Settlement Agreement at Section II(A)(3).

4. All monies received from the sale of personal property marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah (D.E. 60), which is expected to total $4,000. Nettles Settlement Agreement at Section II(A)(4).

5. All monies received from the sale of an Infiniti QX60, as detailed in the Receiver's Motion for Authority to Liquidate Infiniti QX60 (*see* D.E. 64), which totals $27,000. Nettles Settlement Agreement at Section II(A)(5).

6. Two hundred and twenty thousand dollars ($220,000) contributed by Defendant Ridgewood. Ridgewood Settlement Agreement at Section III.

After all of the items that comprise the Settlement Fund are liquidated, Class Counsel expects that the gross amount of the Settlement Fund will total include approximately $1,500,000. Declaration of Marc A. Wites ("Wites Dec.") at ¶12; Declaration of David C. Silver ("Silver Dec.") at ¶9.

**C.**     ***Release of Claims against The Settling Defendants***

In exchange for the relief provided by the Settlement, members of the Settlement Class will release and discharge only the Settling Defendants from all claims, defenses, obligations, or damages that were or could have been sought in this litigation or that relate, concern, arise from or pertain in any way to Defendants' conduct, policies, or practices concerning or associating

with the Cryptsy Defendants during the Class Period. Nettles Settlement Agreement at Section VIII and Ridgewood Settlement Agreement at Section VIII. The Settlement specifically excludes the Cryptsy Defendants.

**D.     *Class Counsel Fees and Expenses and Named Plaintiff Incentive Award***

Class Counsel have committed that while the Settlement allows for an application for attorney's fees of up to 33.33% of the Settlement, Class Counsel will reduce their fee application so that the total amount of attorney's fees awarded to Class Counsel, the Receiver and Receiver's Counsel does not exceed 33.33%. Class Counsel estimate that the attorney's fees they will seek will constitute approximately 22% of the common fund and represent 69% of their total lodestar (*i.e.,* meaning that Class Counsel's attorney's fees will be less than their total lodestar). Wites Dec. at ¶¶16-25; Silver Dec. at ¶¶11-19.

**5.     Preliminary Approval and Settlement Administration**

The Court preliminarily approved the settlement and certified the proposed Settlement Class on January 31, 2017. (D.E. 100). The Court approved all terms and ordered the parties to mail the Notice, Claim Instructions, and Claim Form to all class members. *Id.* at ¶ 21.

The Settlement Administrator, Angeion Group ("Angeion"), completed all aspects of notice and claims administration required to date, including sending 61,592 notices and claim forms via email, sending the required CAFA notice to the Attorney General of each state, causing notice to be published in www.coindesk.com and www.CoinJournal.com, and publishing and maintaining the settlement website at www.cryptsysettlement.com. Wites Dec. at Exh. 3 (Declaration of Claims Administrator Angeion Group).

As of May 17, 2017, the settlement website had received 38,793 unique visitors. *Id*.

As of May 17, 2017, the Claims Administrator had received 1,614 claims. *Id*.

The deadline for opt-outs was April 17, 2017, and the deadline for objections was May 3, 2017.  Two exclusions and two objections were timely received, and one untimely objection was received on May 17, 2017. *Id*.; Wites Dec. at ¶¶13-14.

## LEGAL ARGUMENT

### I.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

#### A.  Legal Standard

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" T*urner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006)(citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)(citation omitted).

Negotiated resolution of complex class action litigation is favored public policy, and such settlements contribute to the efficient use of judicial resources and the speedy resolution of justice. *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315, at *26 (S.D. Fla. Apr. 13, 2016)(internal citation and quotations omitted); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)("Complex litigation—like the instant [class action] case— can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements."). Therefore, "[t]here exists an overriding public interest in favor of settlement, particularly in class actions that have the

well-deserved reputation as being most complex." *Montoya*, 2016 U.S. Dist. LEXIS 50315, at

*26-27; *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th

Cir. 1984)("[Settlements [of class actions] are 'highly favored in the law and will be upheld

whenever possible.'").

Approval of a class action settlement "is committed to the sound discretion of the district

court." *U.S. Oil & Gas*, 967 F.2d at 493. However, "the Court must not try the case on the

merits." *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV-MOORE, 2002 U.S. Dist.

LEXIS 28975, at *12 (S.D. Fla. May 7, 2002)(citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th

Cir. 1977)). Rather, courts give counsel's judgment significant weight, as absent fraud, collusion,

or the like, a court "should be hesitant to substitute its own judgment for that of counsel." *Id.*; *see*

*also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347

(11th Cir. 1989)(affording "great weight to the recommendations of counsel for the parties, given

their considerable experience in this type of litigation").

Further, in evaluating fairness, the Court should consider that "compromise is the essence

of a settlement. The trial court should not make a proponent of a proposed settlement justify each

term of settlement against a hypothetical or speculative measure of what concessions might be

gained." *Morgan*, 2016 U.S. Dist. LEXIS 54937, at *16 (S.D. Fla. Mar. 9, 2016). "Above all, the

court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning

of highest hopes." *Id.*

To approve a settlement under Rule 23(e), a district court must determine that: "there is

no fraud or collusion in reaching the settlement" and that "the settlement is fair, adequate and

reasonable." *Warren*, 693 F. Supp. at 1054. In making this two-part determination, the Eleventh

Circuit has identified six factors to be considered in the evaluation:

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*In re Checking Account*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011)(citing *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)); *accord, Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015). Analysis of these factors here compels the conclusion that the Court should approve the proposed Settlement.

**B.      THE SIX FACTORS FAVOR APPROVAL OF THE SETTLEMENT**

**1.      The Consolidated Nettles and Ridgewood Settlements Are the Product of Good Faith, Informed, and Arm's-Length Negotiations Among Experienced Counsel.**

At the outset, the Court must consider whether the Settlement was obtained in good faith. Courts begin with a presumption of good faith in the negotiating process. *See Montoya*, 2016 U.S. Dist. LEXIS 50315, at *28 ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"); *Newberg on Class Actions*, § 11.51 at 11.88 (4th ed. 1992). Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *Id.* (quoting *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)).

In granting preliminary approval, this Court found that the Settlement was "of informed, good faith, arm's-length negotiations between the Parties and their capable and experienced counsel," [D.E. 100 at 3]. The settlements were completed with the assistance of Hon. Howard Tescher, a well-respected retired state court judge and an experienced mediator with over 10 years of experience mediating complex commercial cases, with particular expertise in complex commercial and financial disputes. *Id.* The very fact of his involvement weighs in favor of

approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006)(use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004)(fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable discovery. The parties also negotiated counsel fees only after reaching terms of a class settlement, and counsel also agreed that fees are not a material term of the Settlement so that even if the Court approves a different amount, the Settlement remains undisturbed. Settlement Agreement at Section V(D). This is the definition of a non-collusive settlement.

### 2. The Issues Presented Were Highly Complex, and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.

The case involves complex and novel legal claims and defenses. Litigating these claims further would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. The Court should consider the significant burden this case would have imposed if it went to trial. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992).

Had this case continued, Defendants would have also vigorously opposed liability, as Defendant Nettles and the Ridgewood Defendants contend that they were not involved in Vernon's fraud and theft of the Class Members' cryptocurrency or the day-to-day operations of Cryptsy. Assuming Plaintiffs prevailed, the parties would have incurred additional expense in completing discovery, filing motions for summary judgment, and preparing for trial. Even if Plaintiffs ultimately prevailed, that success would likely have borne fruit for the Class only after

years of trial and appellate proceedings and the expenditure of millions of dollars by both sides. *Lipuma,* 406 F.Supp.2d at 1324)("settlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing."); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014)("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second [] factor weighs strongly in favor of granting final approval to the Settlement Agreement."). By contrast, the Settlement provides immediate and meaningful relief to the Settlement Class.

These benefits come without the expense, uncertainty, and delay of continued and indefinite litigation. In light of the costs, uncertainties, and delays of litigating through trial -- to say nothing of appeal -- "the benefits to the class of the present settlement become all the more apparent." *See Ressler*, 822 F. Supp. at 1555; *see also Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 U.S. Dist. LEXIS 189397, at *15 (S.D. Fla. Oct. 4, 2013) (noting risk in that "Plaintiff has advanced a novel claim with little jurisprudence."); *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *19 (S.D. Fla. Jan. 16, 2009) (approving settlement, noting the risk of litigating "unsettled elements in the construction of the [Driver's Privacy Protection Act]"). This factor thus supports approval of the Settlement.

### 3.  The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.

The purpose of considering the stage of the proceedings is to ensure that Plaintiffs had sufficient information to evaluate the case. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 544 (S.D. Fla. 1988); *see also Morgan*, 2016 U.S. Dist. LEXIS 54937, at *21.  While *some* discovery is favored, it is not necessary, however, to complete all fact discovery prior to

settlement. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required. . . ." *Ressler*, 822 F. Supp. at 1555; *Checking Account*, 830 F. Supp. 2d at 1349; *see also Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, No. 16-80028-CIV, 2016 U.S. Dist. LEXIS 147252, at *5-6 (S.D. Fla. Oct. 21, 2016). "Indeed, vast formal discovery need not be taken." *Wilson v. EverBank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751, at *26 (S.D. Fla. Feb. 3, 2016).

Prior to filing the case, and the during the litigation that pre-dated the Nettles Settlement, Class Counsel along with the Receiver familiarized themselves thoroughly with the mechanics of Cryptsy's business and cryptocurrency, and conducted party and non-party discovery. Counsel investigated the details of Defendants' fraudulent and deceptive acts, the class affected, and the amount at stake, as well as the likelihood of recovery against the Settling Defendants and Vernon, the non-settling Defendant, to ensure that the Settlement was fair and to confirm the value of the relief made available to the class. This information allowed Class Counsel to not only confirmed the terms and value of the Settlement, but also provided additional insight into the strengths and weaknesses of the parties' claims and defenses, and to analyze thoroughly the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.

In sum, Plaintiffs have a strong understanding of the strengths and weaknesses of their case, and thus have an ample basis for making an informed judgment that the Settlement is fair, adequate, and reasonable. Thus, this factor favors approval of the Settlement. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1332 (S.D. Fla. 2001) (because the "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his

factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### 4.    Plaintiffs Faced Significant Obstacles to Obtaining Relief

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007). Although Class Representatives and Class Counsel believe that the claims asserted in the litigation against the Settling Defendants are meritorious, continued litigation posed the real risk that, following contested motions, a trial or further appeals, a lesser recovery (or no recovery at all) would result. Had litigation continued without settlement, Plaintiffs and class members would have faced the risk of not prevailing on their claims.

The risk of proceeding without the Settlement is particularly problematic here because the non-settling Defendant Vernon has fled to the People's Republic of China and appears to have secreted his remaining assets. Moreover, based on the information available to Class Counsel and the Receiver, any additional assets Vernon may possess are likely to be in the form of virtual currencies that are extremely difficult to track and seize. As a result, even though a Default has been entered against Vernon, recovering any relief from him will likely require extensive, costly and time-consuming post-judgment litigation to locate and secure assets, even assuming such assets could ever be located, seized and converted into US Dollars.

Moreover, and importantly, the Settling Defendants claimed to have no knowledge of Vernon's fraud, and claim that they were not involved in the operation of Cryptsy. If the Settling Defendants were able to successfully defend the claims asserted against them, the likelihood of the Class Members receiving a recovery greater than the Settlement would be virtually eliminated.

Indeed, it is unlikely that additional litigation, even if successful, would result in any significant additional net recovery against the Settling Defendants because they were minority shareholders of Cryptsy and maintain that they were not involved in the day-to-day operations of the company.

Approval of the parties' settlement would save Plaintiffs and the Class from facing those obstacles and eliminate the very real risk that they would recover nothing at all after several more years of litigation and appeal. As such, the Settlement should be viewed as a fair compromise. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and the amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confer[red] … to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991)(noting "very real potential that the [c]lass could come away from a long expensive trial with nothing," and rejecting notion "that the Class should get more"). Had the parties continued to litigate, Plaintiffs could have stood to recover nothing at all on behalf of a nationwide class.

5.    **The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.**

The fifth factor requires the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma*, 406

F. Supp. 2d at 1322. The Court must evaluate the settlement "in light of the attendant risks with litigation." *Checking Account*, 830 F. Supp. 2d at 1350. Courts emphasize that settlement is compromise and requires "an abandoning of highest hopes." *Id.* While the instant settlement does not provide complete relief to the claimants, it is an excellent recovery in light of the instant facts, and far exceeds the standards established by this and other courts. *See, e.g., Behrens*, 118 F.R.D. at 542 ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is fair and inadequate ... A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)("the very essence of settlement is...a yielding of absolutes and an abandoning of highest hopes")(internal quotations and citation omitted).

For example, in *LiPuma v. American Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005), this Court found that a settlement that recovered 8.1% of the possible damages was fair, adequate and reasonable. When valuing the total recovery obtained, this Court included the cash fund, the proposed value of the injunctive relief, and the costs of notice and administration. *Id.* at 1322. The Court focused on "the possible recovery at trial" and evaluated the settlement in its "totality" and not on a "claim-by-claim" or "dollar-by-dollar" basis. *Id.* Further, the presence of "strong defenses to the claims" makes lower recoveries more reasonable. *Id.*; *see also Checking Account Overdraft Litig.*, 2011 WL 5873389, at *10 ("standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."). "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road,

settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)(citation and internal quotations omitted).

Here, the settlement class fares far better than in *LiPuma*. Since the non-settling Defendant Vernon has fled the country and appears to have secreted his remaining assets, no monies have been recovered from him, leaving only Defendants Nettles, Ridgewood and KM to cover the cryptocurrencies that Defendant Vernon stole from the Class.

This Settlement provides a fair and meaningful monetary benefit to the Class. Class Counsel and the Receiver were able to secure an agreement that includes the sale of the Property, which they contend was purchased with funds from the Cryptsy fraud, that results in the substantial majority of the proceeds of such sale inuring to the benefit of the Class, leaving Defendant Nettles with only $250,000 after the sale of the Property (D.E. 73-1). The Settlement also includes Nettles' diamond ring and a vehicle, as well as the proceeds from the liquidation of cryptocurrency recovered from Cryptsy by the Receiver. Finally, the Settlement includes $220,000 paid by the Ridgewood Defendants, who claimed to have received only $160,000 from Cryptsy and that they were not involved in the Cryptsy fraud. (D.E. 96).

In short, Plaintiffs and the class faced significant hurdles in litigating their claims to resolution. The recovery secured by the Settlement falls well within the range of reasonableness.

6.     **The Opinions of Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.**

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). Class Counsel and the Receiver have each been litigating class actions and investment fraud cases for more than twenty years (with a combined total among all associated lawyers of more than 100 years). Based on this experience, it is Class Counsel's

- 17 -

informed opinion – as well as that of the Receiver - that the Settlement is fair, reasonable, adequate, and in the best interests of the Class.

Since Vernon destroyed Cryptsy's records, the exact number of Class Members is unknown. Class Counsel and the Receiver located amongst Cryptsy's records a list of email addresses, but it is unknown whether or when such persons held Cryptsy accounts or whether the list was for marketing or other purposes. To that end, because Vernon destroyed virtually all of Cryptsy's electronic and physical records, it is unknown whether any of such persons were Cryptsy account holders during the Class Period. In an abundance of caution, Class Counsel directed the Claims Administrator to send the Class Notice and Claim form via email to such persons. For this reason, and because the community of persons that trade in cryptocurrencies is relatively small and since this class action lawsuit and settlement has received significant coverage in the cryptocurrency media, Class Counsel believe that the vast majority of class members are aware of this settlement, whether based on their receipt of email, viewing of publication notice, or news media.

Tellingly, only two persons have timely filed objections, and two have opted out, which by any measure is an extremely small percentage of the Class. This overwhelming support of the class for the settlement is evidence of its fairness. *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004)(affirming settlement with 45 objections out of 90,000 notices sent); *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009)("A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement."); *LiPuma*, 406 F. Supp. 2d at 1324 ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL

1956267, at *6 (S.D.N.Y. May 1, 2008)("Of approximately 175,000 class members, only 22 (0.0126%) have chosen to opt out of the class, and only 45 have voiced objections. The small number of opt-outs and objections relative to the size of the class in this case supports approval of the Settlement.").

While Plaintiffs will respond to the objections in a separate memorandum, Plaintiffs note here that the thrust of the objections are two-fold. Objections at D.E. 107-109. First, the objectors are disappointed that the recovery is not greater and that distributions to the Class will be made in U.S. Dollars rather than cryptocurrency. Second, the objectors complain that a different valuation date should be used for the purposes of valuing each claim because the value of cryptocurrencies has risen since Vernon stole their coins and shut down Cryptsy. Plaintiffs, Class Counsel and the Receiver certainly understand these frustrations, and will briefly respond here.

First, the recovery obtained is the best possible recovery because, as detailed above, Vernon fled the country and has stolen (and then likely hidden or spent) the Class' cryptocurrencies. The vast majority of Settlement Fund is comprised of assets obtained in negotiated settlements with Vernon's ex-wife and a minority shareholder of Cryptsy. Thus, the fact that there is any Settlement Fund at all demonstrates that the result here is more than fair and reasonable. Further, because Vernon absconded with virtually all of the cryptocurrencies, and since the cryptocurrencies recovered could not be traced to any individual account holder, the only possible means to distribute monies to class members is through the liquidation of all assets and through payments to the Class in U.S. Dollars.

Second, it is true that the value of cryptocurrencies has risen since 2015. However, as it relates to this settlement, such increase is of no import for at least two reasons. First, Class Counsel expects the total value of all claims to exceed the net amount of the Settlement Fund

(*i.e.,* after the payment of attorneys fees and expenses), and it may exceed the total Settlement Fund. As a result, whatever the valuation date, Class Members with valid claims will likely receive a diminished pro rata recovery, and thus the key factor is the type and quantity of cryptocurrency held, and not the valuation date. Second, it is easy to say in hind sight that a different valuation date should have been used. However, if the market had gone the other way, with valuations declining, objectors would then be without an argument.

Ultimately, the result here is fair and reasonable, if not excellent, under the facts and circumstances of this very unique case. Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate.

## CONCLUSION

Plaintiffs respectfully request the Court grant final approval of the Settlement, as well as their separately-filed application for class counsel's attorney's fees and expenses, and the representative plaintiffs' incentive awards. Plaintiffs request that this Court defer enter a ruling authoring the distribution of any Settlement Funds until after such time that Class Counsel and the Receiver have completed the liquidation of all assets, at which time they will present to the Court supplemental memoranda detailing their proposal for the itemization and distribution of the Settlement Fund.

Respectfully submitted,

**/s/ Marc A. Wites**
MARC A. WITES
Florida Bar No. 24783
E-mail: mwites@wklawyers.com
WITES & KAPETAN, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Phone: (954) 570-8989/Fax: (954) 354-0205
**Attorneys for Plaintiffs and the Class**

- and -

SILVER LAW GROUP
11780 W. Sample Road
Coral Springs, Florida 33065
Phone: (954) 755-4799/Fax: (954) 755-4684

By: **/s/ David C. Silver**
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail: SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@silverlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this 19th day of May, 2017, using the CM/ECF system, and that a true and correct copy will be served in accordance with the Federal Rules of Civil Procedure and/or the District's Local Rules and procedures to: **PROJECT INVESTORS, INC. d/b/a Cryptsy c/o Paul Vernon, President and Registered Agent**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: support@cryptsy.com**; PAUL VERNON**, **individually**, P.O. Box 7646, Delray Beach, FL 33482, E-mail: PaulEVernon@yahoo.com; **MARK A. LEVY, ESQ.**, BRINKLEY MORGAN, *Counsel for Defendant Lorie Ann Nettles*, 200 East Las Olas Blvd. - 19th Floor, Fort Lauderdale, FL 33301; E-mail: Mark.Levy@brinkleymorgan.com; **PATRICK J. RENGSTL, ESQ.**, PATRICK J. RENGSTL, P.A., *Counsel for the Receiver*, 7695 SW 104th Street - Suite 210, Miami, FL 33156; E-mail: pjr@rengstl-law.com; and **JOSE G. SEPULVEDA, ESQ.**, STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A., *Counsel for Defendants Ridgewood Investments, Inc., and Kaushal Majmudar*, 150 W. Flagler Street, Suite 2200, Miami, FL 33130; E-mail: JSepulveda@stearnsweaver.com; and Objector Joel Bevacqua, 850 2d Street, Apt. 108, Santa Monica, CA 90403, buda@deadlybuda.com; Objector Atul Nair, 3735 N. Christiana Ave., Apt. 2, Chicago, IL 60618, atulnair@gmail.com; and Objector Luka Tomljanovic, Albinijeva 2, 10010 Zagreb, Hrvatska, Croatia.

*/s/ Marc A. Wites*
Marc A. Wites