UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually,
LORIE ANN NETTLES, individually, RIDGEWOOD
INVESTMENTS, INC., a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

    Defendants.
_____/

## RECEIVER'S UNOPPOSED FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF COSTS TO THE RECEIVER AND HIS PROFESSIONALS

Pursuant to Section XVII of the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order") dated April 4, 2016 and the recent Order Granting Plaintiffs' Unopposed Motion to Distribute Settlement Funds [DE 129] dated October 6, 2017, James D. Sallah, Esq., not individually, but solely in his capacity as the Court-appointed Receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), and his professionals (*i.e.*, legal counsel, Patrick J. Rengstl, P.A.,[1] and receivership consultant/deputy receiver, Robert G. Carey, Esq.) submit their Final Application for allowance

---

[1] This Fee Application covers time billed during counsel's tenure at his prior firm, Payton & Rengstl, LLC n/k/a Payton & Associates, LLC.

and payment of compensation and reimbursement of costs for the <u>15-month period from August 2016 through October 2017</u>.

### I.     Introduction

For this Final Fee Application of approximately 15 months of work, the total billed legal fees for both the Receiver, his counsel (Mr. Rengstl), and his receivership consultant/deputy receiver (Mr. Carey) total $168,780.00.  However, pursuant to, among other filings, the Unopposed Motion to Distribute Settlement Funds [DE 127] and the Order Granting Plaintiffs' Unopposed Motion to Distribute Settlement Funds [DE 129], $46,247.67 is the agreed-to, allotted, and capped total remaining amount of fees to be paid to the Receiver and his professionals (to be split pro rata among themselves), as a result of Class Counsel's and the Receiver's prior agreement to cap their combined total class and receivership fees at 33.33% of the previously-disclosed Settlement Fund of recoveries.  In other words, the Receiver and his legal professionals (Messrs. Rengstl and Carey) are not being compensated ***approximately 73%*** of the subject previously-billed fees for the benefit of the Class of many victims of the Cryptsy scheme.

### II.    Recent Procedural Background

On June 13, 2017, this Court entered its Final Order Approving Settlement, Approving Proposed Allocation of Settlement Funds, Approving Class Counsel's Application for Attorney's Fees, Expenses and Incentive Awards for Class Representatives, and Final Judgment [DE 118] ("Final Approval Order").

This Court's Final Approval Order provided that "[t]he Court will enter a separate order regarding the amount of Class Counsel's attorney's fees, as well as the distribution of the Net Settlement Fund, after the Receiver and Class Counsel complete the liquidation and sale of all assets that comprise the Settlement Fund.  Such orders shall in no way disturb or affect this Class

Judgment and shall be considered separate from this Class Judgment." (DE 118 at p. 16, ¶24.) In the Motion for Final Approval [DE 110] that preceded the Final Approval Order, Plaintiffs requested "that the Court refrain from entering an Order that directs the distribution of any monies to the Class, Class Representatives, Class Counsel, or the Receiver, at this time because, as set forth in detail below, they are still in the process of liquidating the assets that comprise the Settlement Fund." (DE 110 at p. 20.)

As stated in prior recent filings, the parties have since completed the liquidation and sale of all assets that comprise the Settlement Fund. As a result, the total Settlement Fund is $1,512,505.53, which includes the following:

| Asset/Item | Amount |
| --- | --- |
| Recovery of balance of legal fee retainer paid by Cryptsy to Gunster, Yoakley & Stewart, P.A. | $5,024.66 |
| All monies received from the sale of the cryptocurrency marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah [DE 60]. | $381,940.82 |
| All monies received from the sale of an Infiniti QX60, as detailed in the Receiver's Motion for Authority to Liquidate Infiniti QX60 (*see* DE 64). | $26,000.00 |
| Contribution by Defendant Ridgewood in resolution of claims. Ridgewood Settlement Agreement at Section III. | $220,000.00 |
| Real Property obtained from Defendant Nettles. Nettles Settlement Agreement at Sections II(A)(2) and III(B)-(I). | $832,830.05 |
| A Diamond Ring obtained from Defendant Nettles. Nettles Settlement Agreement at Sections II(A)(1) and III. | $45,000.00 |
| All monies received from the sale of personal property marshalled by the Receiver and as initially described in Second Report of Receiver James D. Sallah [DE 60]. | $1,710.00 |
| **TOTAL SETTLEMENT FUND** | **$1,512,505.53** |

Plaintiffs then moved that this Court authorize Plaintiffs' Counsel to distribute the Settlement Fund in according with the parties Settlement Agreements' Plan of Allocation and this Court's Final Approval Order, and explained that the distribution would be as follows:

| DESCRIPTION | AMOUNT |
| --- | --- |
| Settlement Fund | $1,512,505.53 |
| Class Counsel's Attorney's Fees (33.33% of the Settlement Fund, less the amount of attorney's fees that will have been paid to the Receiver through the conclusion of this matter,[2] which is ($1,512,505.56 x 33.33%) – ($168,056.17) = $336,061.92 | $336,061.92 |
| Class Counsel's Expenses | $20,250.85 |
| Receiver's Final Submission for Attorney's Fees (this filing) | $46,247.67 |
| Receivership Expenses, including advertisement, appraisal fees, computer forensics, storage, etc.[3] | $103,035.73 |
| Expense Reserve for professional accountant fees to be incurred by Receiver to prepare Receivership estate's tax filings | $25,000.00 |
| Notice and Claims Administration Expenses to be Paid to Angeion Group | $61,313.72 |
| **NET SETTLEMENT FUND** for Distribution to the Settlement Class | $920,595.64 |
| **EXPECTED BALANCE** | **$0.00** |

### III. Significant Receivership Accomplishments

As a matter of background and as a reminder to this Court, this proceeding is a class action

---

[2] This amount includes all attorneys' fees for which this Court has authorized payment to the Receiver and his counsel in the First Fee Application (which was $121,808.50), as well as such amounts the Receiver and his professionals are seeking in this Final Fee Application, which will total $168,056.17 (*i.e.*, $121,808.50 + $46,247.67 = $168,056.17).

[3] Nearly all of the receivership expenses were administrative expenses paid pursuant to the Receiver's previously-granted, self-executing authority under the Appointment Order. The receivership's legal expenses are the only expenses that the Receiver has sought and will seek authority to pay in his Fee Applications (which total less than 2% of the above total expense amount).

4
**PATRICK J. RENGSTL, P.A.**
7695 SW 104th Street, Suite 210, Miami, FL 33156

lawsuit by Cryptsy cryptocurrency account holders who had an account with Cryptsy. Cryptsy was an online business for the public to exchange, invest, and trade digital cryptocurrencies. The Plaintiffs, class representatives of Cryptsy account holders, have alleged, among other things, that (1) Cryptsy's principal, Defendant Paul Vernon, previously shut down Cryptsy's operations and fled to China; (2) at least $5 million of account-holder funds and cryptocurrencies have been missing and unaccounted for many months; (3) account holders have been unable to access and use their Cryptsy accounts; and (4) Vernon and his now ex-wife, Defendant Lorie Ann Nettles, purchased in March 2015 a luxurious home in Delray Beach for $1,374,881 in cash from Cryptsy-derived funds and Nettles received the property in her divorce settlement from Vernon. Given these allegations (and others), Plaintiffs moved for the appointment of a corporate monitor or receiver [DE 18], which this Court granted and appointed the Receiver in the Appointment Order on April 4, 2016.

The Receiver and his professionals have been involved in numerous Federal Court receiverships, either as Receiver or as receivership counsel. The Receiver immediately moved for Court-approval to retain Mr. Rengstl as legal counsel [DE 35, 36]. To minimize the day-to-day receivership expenses (*i.e.*, the daily administration of the receivership), the Receiver moved for Court-approval to retain Mr. Carey as his receivership consultant/deputy receiver [DE 54, 55].

The Receiver began working diligently to secure wallet, account and bank information and records in Cryptsy's name or derived from Cryptsy and/or its account holders for the benefit of Cryptsy's account holders. The Receiver also began working on a tracing analysis to determine whether Cryptsy's wallets of cryptocurrencies funded the purchase of the $1.4 million Delray mansion. The Receiver served demand letters and document requests on Vernon and Nettles, and dozens of subpoenas on relevant nonparties regarding critical Cryptsy issues, and received and

reviewed responsive information and documents.

There were former Cryptsy employees, some of whom the Receiver contacted and who cooperated with and assisted the receivership. The Receiver hired one former employee as a receivership agent – Nicholas Mullesch, former Cryptsy Head of IT and Wallet Manager.[4]

The receivership has been a successful, collaborative, joint effort with counsel for Plaintiffs, who have worked diligently with the Receiver and his professionals to identify and secure assets for the benefit of Cryptsy's many victims. Through everyone's combined efforts, and as further described below, significant assets were identified, secured and liquidated for the benefit of the Receivership Estate and the Class. The Receiver is pleased to report that many significant receivership tasks have been accomplished since his appointment approximately 19 months ago, such as:

i. Confirming that Plaintiffs' allegations against Defendant Vernon are true, including that significant amounts of money and cryptocurrencies were missing and unaccounted for, and that account holders did not have access to their Cryptsy accounts;

ii. Negotiating and signing a settlement agreement [DE 73-1, 77-1] with Defendant Nettles to deed over and to sell the Delray mansion previously purchased for approximately **$1.4 million**, which was the subject of a receivership motion to approve that was filed and granted [DE 77, 84];

iii. Securing a buyer for the Delray mansion, moving to confirm the sale [DE 112] (which this Court granted [DE 116]), and closing on the sale of the mansion on July 7, 2017 for **$1,150,000**[5];

---

[4] In addition to Mr. Mullesch, the Receiver hired a second agent, Patrick Paige of Computer Forensics LLC. Messrs. Paige and Mullesch's primary responsibilities were identifying and securing the remaining Cryptsy wallets of coins from Cryptsy's servers, identifying and securing the remaining information on the servers, and assisting the professionals on certain issues. The two agents were paid as administrative expenses under Section XVII, para. 41 of the Appointment Order, not as professionals subject to fee applications.

[5] The market value of the property decreased since its purchase a few years ago.

iv. Securing **hundreds of thousands of dollars**[6] of different types of coins from Cryptsy's wallets on Cryptsy's servers and from at least one currency exchange (Bittrex);

v. Filing a motion to liquidate several types of coins that are solely high liquidity coins [DE 70], which this Court granted [DE 71]; **more than $330,000** was recovered and deposited in the receivership estate account from this liquidation without material consequences to each coin's market value;

vi. Filing a motion to sell to three private buyers all remaining coins (the medium to low liquidity coins) [DE 103], which this Court granted [DE 105]; **$49,500** was recovered and deposited in the receivership estate account from these sales;

vii. Negotiating and signing a settlement agreement with Defendant Nettles to, upon Court-approval, sell a Tiffany diamond ring previously purchased for over **$104,000**;

viii. Securing a buyer for the Tiffany ring (which was Tiffany & Co.), moving for approval of the sale [DE 121] (which this Court granted [DE 122]), and effectuating the sale for **$45,000**[7];

ix. Negotiating and signing a settlement agreement with newly-added Defendants Kaushal Majmudar and his company Ridgewood Investments, Inc. for **$220,000** [DE 96];

x. Filing a motion to sell the secured Infiniti QX60 [DE 64], which this Court granted [DE 66] and the Receiver sold for **$26,000**;

xi. Securing **$5,000** from a retainer amount in Cryptsy's name from a prior retention at a South Florida law firm;

xii. Securing multiple storage units containing, among other things, personalty which the Receiver moved to liquidate in a cost-efficient manner for **$1,710** [DE 124, 126];

xiii. Finding that Vernon apparently destroyed the database and backup database on the servers on April 4, 2016, the date of the Appointment Order and shortly after receiving notice of same. The database

---

[6] The value of digital coins fluctuates daily and the market for these coins is, generally speaking, volatile.

[7] The value was less than the original purchase price because the ring was used, and thus significantly depreciated in value after the initial sale.

xiii. [continued] contained critical information regarding account holders' identification and current and prior balances of coins, as well as where coins had been improperly transferred pre-receivership;

xiv. Confirming that Vernon opened a personal Coinbase account in which it appears that he converted and misappropriated over $3.3 million in customer-derived coins that he converted into currency and deposited into his personal joint bank account;

xv. Confirming, through a very detailed and thorough tracing analysis of Cryptsy's wallets (and the coins therein), that the coins and their monetized currency deposited in Vernon's personal bank account, in fact, funded the purchase of the Delray mansion and the Tiffany ring. This receivership tracing analysis helped lead to a favorable settlement at mediation with Defendant Nettles because Nettles disputed whether the wallets of coins funded the purchase of the property and ring;

xvi. Confirming that Vernon started a new exchange in China, called www.bitebi9.com, which went offline shortly before the Receiver reported same in his Second Report;

xvii. Freezing certain types of coins at the Bittrex exchange, confirming through very detailed and thorough tracing analyses that the coins were derived from Cryptsy's wallets and ensuring their turnover to the Receiver;

xviii. Investigating the nature and maintenance of Cryptsy's wallets of coins by type of coin, and confirming the commingled nature therein;

xix. Contacting former Cryptsy employees regarding various issues and retaining one important former employee to assist in administering the estate, including assistance with securing remaining coins and the tracing of Cryptsy's wallets of coins to the purchase of the Delray mansion;

xx. Serving several demand letters, document requests and dozens of subpoenas on the parties (Vernon and Nettles) and dozens of nonparties (such as various coin exchanges, banks and other third parties with relevant information and/or documents);

xxi. Analyzing the productions consisting of thousands of pages of documents from the demand letters and subpoenas, including tracking funds and assets to which the Receiver would have an entitlement;

xxii. Communicating with countless account holders regarding the status of the proceeding, including creating a receivership website for

8
**PATRICK J. RENGSTL, P.A.**
7695 SW 104th Street, Suite 210, Miami, FL 33156

      registration by account holders and important updates to account holders and the public;

xxiii.  Investigating the purported hack from July 29, 2014, confirming it, indeed, occurred and confirming that millions of dollars in Bitcoins is still sitting at a specific coin address from the hack date;

xxiv.  Investigating the prior two premises that Cryptsy and Vernon had vacated;

xxv.  Selecting the most appropriate companies to liquidate the high liquidity coins and convert the coins into fiat currency, and selecting the appropriate dates on which to do such in order to diminish material effects on each coin's market;

xxvi.  Negotiating with potential buyers interested in purchasing the remaining low to medium liquidity coins;

xxvii.  Investigating, making demand on and/or assisting in suing potential targets, including Coinbase, Inc., for purposes of ancillary receivership or class litigation for the benefit of Cryptsy's account holders;

xxviii.  Securing known servers and computerized files, thereby preserving as much as possible remaining electronic data for the duration of this proceeding and other potential proceedings.  The Receiver transferred remaining files and computer data from prior Vernon-controlled storage units to receivership-controlled storage units for preservation of records; and

xxix.  Assisting Plaintiffs' counsel in the development of a plan of allocation and distribution procedure for the benefit of the Class of Cryptsy's account holders who are deemed legitimate claimants as a result of the Settlement Agreements and non-settlement recoveries of assets, such as the various coins secured; this Court preliminarily and granted final approval of the settlements as to the Class [DE 118].

      This receivership has been one of the most challenging – if not the most challenging – receiverships that the Receiver and his professionals have ever worked for several reasons.  First, this receivership involves the digital world of cryptocurrencies.  Second, Defendant Vernon has refused to cooperate with the Receiver and his team, and has apparently fled the Country.  Third, Vernon or someone with access to his passcodes deleted the database and the backup servers with

three "shred" commands hours after Vernon received electronic service of the Appointment Order, leading to a total loss – from the Cryptsy end of the spectrum – of, among other things, what is owed to Cryptsy's account holders and who they are.[8]

The Receiver respectfully requests that this Court appreciate the difficulty, challenge, and magnitude of the various tasks that the Receiver and his professionals have been confronted with and the time-pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records.

<u>As stated above, approximately 73% of the remaining receivership fees are not being paid pursuant to the agreement to cap all class counsel **and** receivership fees at 33.33% of the recoveries, as a courtesy to the Class of Cryptsy's many victims.</u>  The Receiver respectfully requests that this Court appreciate this fact in this private-party, non-governmental receivership proceeding and the large amount of risk undertaken by the Receiver and his team from the very start because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team.

## DESCRIPTION OF SERVICES

### I.     The Receiver

For the most part, the Receiver has staffed the day-to-day activities of this case using the services of Mr. Robert G. Carey, a receivership lawyer with a significant business background (*i.e.*, an MBA, a Masters Degree in Accountancy, a Masters Degree in Real Estate Finance, and an LLM) who has served as receiver's counsel and/or deputy receiver in many prior Federal

---

[8] However, determining and confirming account-holder information is not completely a lost cause. Other avenues exist from the account holders' end of the spectrum to potentially confirm account-holder information, such as screen shots taken by the account holders; emails saved by the account holders; documents they received from Cryptsy; and sworn declarations attesting to their investment, transactions, coins held and balance owed.

receivership cases and who has been appointed receiver in one Federal receivership case. Mr. Carey has acted as a receivership consultant or deputy receiver in this matter at a lower billing to save the estate and victims as much as possible in billed fees.

The professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Exhibit A attached hereto. Exhibit A, which was prepared based upon the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his approved hourly rate. Privileged and work product entries have been redacted.

Exhibit A reflects that the Receiver has expended a total of 51.00 hours, at an approved hourly rate of $400.00 in Section XVII, para. 42 of the Appointment Order, for a total of $20,250.00.[9] The Receiver has also incurred costs of $101.25[10] during the applicable period, therefore bringing the current total due the Receiver to $20,351.25. The ordinary and usual hourly rate of the Receiver in private-party receiverships such as this case is at least $400.00.

Exhibit B hereto is a description of the professional services rendered by Mr. Robert G. Carey (the receivership consultant/deputy receiver). The Receiver retained Mr. Carey, who bills at a lower, approved hourly billing rate of $285.00, early in the receivership proceeding as a receivership consultant or deputy receiver to minimize expenses and to handle a large amount of the day-to-day receivership and administrative functions. Exhibit B also includes a daily description of Mr. Carey's services, the hours expended and his approved hourly rate, which were prepared based upon Mr. Carey's contemporaneous daily time records. Privileged and work product entries have been redacted. Exhibit B reflects that Mr. Carey expended a total of 222.50 hours, at an approved hourly rate of $285.00, for a total of $63,412.50.

---

[9] 0.5 hours of paralegal time at $100.00 per hour was billed according to Exhibit A.

[10] These expenses will be paid in full.

For this Court's convenience, the following is an aggregate tabular summary for the fees and costs of the Receiver and Mr. Carey:

| Receiver and His Staff | Hourly Rate | Time Expended | Total Amount |
|---|---|---|---|
| James D. Sallah, Receiver | $400.00 | 51.00 hours | $20,250.00 |
| Robert G. Carey, Receivership Consultant/ Deputy Receiver | $285.00 | 222.50 hours | $63,412.50 |
| **Receiver's Total:** | | | **$83,662.50** |

## II.   The Receiver's Counsel

As a courtesy to Cryptsy's victims, the Receiver's counsel agreed to discount his fees for purposes of this Final Fee Application (as well as the prior First Fee Application) from counsel's approved $400.00 hourly billing rate [DE 35, 36], to a reduced hourly rate of $325.00. In addition, a significant amount of time was not charged for additional savings.

The professional services rendered by the Receiver's counsel and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Composite Exhibit C attached hereto (time includes counsel's time while still at Payton & Rengstl, LLC, n/k/a Payton & Associates, LLC, and counsel's subsequent time at Patrick J. Rengstl, P.A.). Exhibit C, which was prepared based upon the Receiver's counsel's contemporaneous daily time records, includes a daily description of the services rendered, the hours expended, and the Receiver's counsel's hourly rate. Counsel's prior firm's billing is always by ABA-associated billing codes (*i.e.*, L110, L120, etc.) and by chronological date for each activity code. The following is an aggregate tabular summary for the Receiver's counsel.

| Name of Attorney | Rate | Time Expended | Total Amount |
|---|---|---|---|
| Patrick J. Rengstl | $325.00 | 190.70 hours | $61,977.50[11] |
|  | $325.00 | 71.20 hours | $23,140.00[12] |
| **Counsel's Total:** |  |  | $85,117.50 |

Exhibit C hereto is consistent with the tabular summary provided above. Exhibit C also reflects that the Receiver's counsel has incurred costs of $865.06 ($858.65 at Payton & Rengstl, LLC and $6.41 at Patrick J. Rengstl, P.A.)[13] during the applicable period, therefore bringing the current total due the Receiver's counsel to $85,982.56.

## MEMORANDUM OF LAW

**I.   Summary of Services Rendered by the Receiver and his Professionals**

The professional services rendered by the Receiver and his professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail on Exhibits A through C attached hereto. The Receiver and his professionals have gone to great lengths to eliminate all block-billing from their respective time entries and to provide as detailed time entries as possible without revealing information protected by the attorney-client privilege, work product doctrine or other confidential matters.[14] The attached records set forth in narrative form the detailed nature and extent of the professional services rendered by the Receiver and his professionals. These recitals, however, constitute only

---

[11] This is counsel's time at Payton & Rengstl, LLC, n/k/a Payton & Associates, LLC. Additional time was not charged for an additional savings of nearly $13,000.

[12] This is counsel's time at Patrick J. Rengstl, P.A.

[13] These expenses will be paid in full.

[14] As stated above, certain time entries with privileged or work product information have been redacted.

a summary of the time spent.  It must be recognized that a mere reading of the time summaries attached hereto cannot completely reflect the full range of services rendered by the Receiver and his professionals, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his professionals in connection with this case.

The schedules of disbursements for incurred costs, which are also part of the attached exhibits, are those actual and necessary cost items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various costs incurred in connection with this matter.  All of these cost items would typically be billed by the Receiver and his professionals to their general commercial clients.

The Receiver and his professionals have not been paid any compensation in connection with the services and costs set forth herein.

## II.     Applicable Legal Standard and Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974).  *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context).  The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A. The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application. The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far. The Receiver and his professionals believe they have played a significant role during the course of this proceeding. The time and labor of receivership tasks are supported by the six Receiver's Reports.

### B. The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure receivership assets and to carry out the Receiver's duties. The novelty and difficulty of receivership tasks are also supported by the Receiver's Reports.

### C. The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of receivership and commercial law and litigation were required of the Receiver and his professionals. The Receiver is acutely aware of the financial considerations arising in receiverships such as this. Accordingly, as this Court may gather from the attached exhibits hereto, the Receiver has sought to incur the most necessary of legal expenses in this proceeding.

### D. The Preclusion of Other Employment Due to This Case

Although the Receiver and his professionals were not explicitly precluded as a result of

this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner. Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters, including matters in which clients pay their bills each month.

E. **The Customary Fee**

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is, given the proposed discount, lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, including private-party receiverships. Similar rates have been confirmed and approved in other matters in which the Receiver and his professionals have been involved.

F. **Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his professionals in this matter is subject to the approval of this Court, and the Receiver and his professionals have not received any compensation for their services rendered to date. The above factors should be taken into consideration by this Court, and the compensation should reflect, as stated above, the assumption of the risk of non-payment and that the delay in payment has been and will continue to be borne in future applications.

G. **The Time Limitations Imposed**

This case imposed time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

H. **The Experience, Reputation, and Ability of the Professionals**

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships and litigation.

I.      The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his professionals have been privileged to participate in this proceeding.

J.      The Nature and Length of Professional Relationship

The Receiver and his professionals have had no prior relationship with the Receivership Entity (Cryptsy) or the Defendants prior to this case.

K.      Awards in Similar Cases

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity. In fact, they are very reasonable considering the discounted billing and the 73% non-payment in this private-party receivership case. The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. The hourly rates requested by the Receiver and his professionals are significantly lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to their ordinary clients, notwithstanding the risks associated with this case.

L.      The Source of Payment for the Amounts Sought Hereunder

The amounts for which payment is authorized hereunder will be paid from monetized receivership assets under, among other docket entries, Section XVII of the Appointment Order [DE 33] and Section V of the Settlement Agreement [DE 73-1]. The receivership assets consist of the assets presently held by the Receiver and the monetized funds from same.

As stated above, the amounts owed to the Receiver, his counsel and deputy receiver will not be paid in full. Rather, approximately 27.4% of the requested fees will be paid and all expenses will be reimbursed in accordance with the chart in Section II, *supra*. Specifically, and assuming

this Court grants this Final Fee Application, $46,247.67 in total will be paid for receivership fees and $966.31 in total will be paid for receivership expenses. If this Final Fee Application is granted, a pro rata amount based on the above-discussed 27.4% will be equally applied to the fees billed by the Receiver, his counsel, and deputy receiver.

## CERTIFICATION OF GOOD FAITH

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), Plaintiffs and Defendant Lorie Ann Nettles have no objection to this Motion. Defendants Kaushal Majmudar and Ridgewood Investments, Inc. take no position. As of this filing, Defendant Paul Vernon has not appeared in this action and continues to refuse to cooperate with the Receiver.

A proposed Order granting this Final Fee Application is attached as Exhibit D.

WHEREFORE, the Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit D, approving this Final Fee Application and payment and reimbursement of the fees and costs discussed above.

Dated: November 3, 2017

Respectfully submitted,

**PATRICK J. RENGSTL, P.A.**
*Counsel for the Receiver*
7695 SW 104th Street, Suite 210
Miami, Florida 33156
Telephone:    (305) 904-8980
Facsimile:    (305) 668-0003

By: Patrick J. Rengstl, Esq.
    Patrick J. Rengstl
    FL Bar No. 0581631

## CERTIFICATE OF SERVICE

      I hereby certify that on November 3, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                s:/Patrick J. Rengstl
                                                                Patrick J. Rengstl, Esq.

**PATRICK J. RENGSTL, P.A.**
7695 SW 104th Street, Suite 210, Miami, FL 33156

## SERVICE LIST

**David C. Silver, Esq.**
**Jason Miller, Esq.**
Silver Miller
Counsel for Plaintiffs
11780 West Sample Road
Coral Springs, FL 33065
(Via CM/ECF)

**Marc Wites, Esq.**
Wites & Kapetan, P.A.
Co-counsel for Plaintiffs
4400 N Federal Hwy
Lighthouse Point, FL 33064
(Via CM/ECF)

**Mark A. Levy, Esq.**
**George J. Taylor, Esq.**
Brinkley Morgan
Counsel for Defendant Lorie Ann Nettles
200 E Las Olas Blvd Ste 1900
Fort Lauderdale, FL 33301
(Via CM/ECF)

**Jose G. Sepulveda, Esq.**
**Samuel O. Patmore, Esq.**
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Counsel for Defendants Ridgewood Investments, Inc. and Kaushal Majmudar
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130
(Via CM/ECF)

**Paul Vernon**
(Via Email)