UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Civil Action No.: 9:16-cv-80060-MARRA**

BRANDON LEIDEL, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

PROJECT INVESTORS, INC., d/b/a CRYPTSY,
a Florida Corporation, PAUL VERNON, *et al*.,

    Defendants.
_____/

## RECEIVER'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AGAINST DEFENDANT PAUL VERNON

Plaintiff James D. Sallah, Esq., not individually, but solely in his capacity as the Court-appointed Receiver for Project Investors, Inc. d/b/a Cryptsy (hereinafter "Plaintiff" or the "Receiver"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65(b) as well as Section 10A of the Court's Administrative Procedures for Electronically Filing Documents, hereby respectfully requests that this Court enter without notice to Defendant PAUL VERNON, an individual ("VERNON"), a Temporary Restraining Order (TRO) against him freezing his assets -- including the Newly-Discovered Wallet Addresses and any Secondary Wallet Addresses (defined below) maintained by him, for him, or by any entity or unknown person acting in concert with and under his control.

The basis for this Emergency Motion, as set forth in detail below, is two-fold. First, VERNON's conversion and theft of bitcoin that is the Property of the victims of CRYPTSY. Second, VERNON has a history in this case of destroying evidence following the appearance on this Court's docket of motions and orders.

VERNON has not participated in any proceeding in this lawsuit despite repeated efforts, requests, and overtures by the Receiver and Class Counsel, all of which have been ignored. The undersigned do not have any information on VERNON's present whereabouts or contact information other than that we believe in good faith that VERNON remains at large outside of the United States (most likely in China) to avoid civil and criminal liability for the conduct at issue in and surrounding this lawsuit.

## BACKGROUND

This lawsuit is a certified class action lawsuit filed by cryptocurrency customers who had accounts at PROJECT INVESTORS, INC., d/b/a CRYPTSY ("CRYPTSY") -- an online business that allowed the public to exchange, invest, and trade cryptocurrencies. Similar to a bank, but existing only in the "virtual" world, CRYPTSY allowed its customers to deposit their digital currency in accounts held at, and purportedly protected and managed by, CRYPTSY. The defendants in this matter acted unlawfully by denying account holders the ability to withdraw or use the funds in their accounts and by stealing for the defendants' own use and benefit the digital currency held in the CRYPTSY accounts.

Plaintiff and the Class of CRYPTSY customers have demonstrated herein that, among other things: (1) VERNON, as CRYPTSY's then-controlling principal, abruptly shut down CRYPTSY's operations and fled to China in late-2015 to live with his girlfriend, Xiuxia Liu; (2) VERNON stole more than $8,000,000.00 of customer funds and cryptocurrencies (now valued at over $600,000,000.00), which have been missing and unaccounted for many years; and (3) CRYPTSY customers were unable to access and use their CRYPTSY accounts.

This Court appointed the Receiver in the April 4, 2016 Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy (the "Receivership Order"). [DE 33]. The Court appointed

the Receiver to gather and marshal assets for the Receivership Estate, which in this instance is synonymous with the Class. Ultimately, Plaintiffs and the Receiver obtained a settlement that secured and liquidated various assets in the total gross amount of more than $1,500,000.00 for purposes of making a first distribution to the class victims through a Court-approved class settlement and distribution process.

Additionally, Class Counsel obtained a Final Default Judgment against VERNON in the principal sum of $8,200,000.00 and other relief, including a requirement that VERNON return to the Class 11,325.0961 bitcoins (BTC) which were stolen from CRYPTSY customers on July 29, 2014. To date, Class Counsel have continued their efforts to obtain such bitcoin. However, since VERNON – who is believed to have in his possession, custody, or control the private keys to access such bitcoin -- remains at large in China and has declined all requests to participate in this proceeding and communicate with Class Counsel, such efforts have not been successful yet.

Class Counsel subsequently pursued on behalf of the CRYTPSY Class a class action against another cryptocurrency exchange known as Coinbase and recovered additional monies for the CRYPTSY Class through such class action, in which this Court approved the settlement. *Brandon Leidel v. Coinbase, Inc.*, U.S. Dist. Ct. - S.D. Fla. -- Case No. 9:16-cv-81992-MARRA at DE 153.

Class Counsel recently negotiated a conditional assignment of the VERNON judgment pursuant to which an international team of lawyers and experts are attempting to recover bitcoin that is subject to the VERNON judgment. DE 139. This Court approved such assignment. Insert. DE 142, 147.

Most recently, the Receiver, working in conjunction with the undersigned lawyers who are both court-appointed counsel for the Receiver and for the CRYPTSY Class, brought a claw-back

action against VERNON's girlfriend, Xiuxia Liu, and recovered approximately $880,000.00.  See *James D. Sallah, Esq., not individually, but solely in his capacity as the Court-appointed Receiver for Project Investors, Inc., d/b/a Cryptsy. v. Xiuxia Liu*, U.S. Dist. Ct. - S.D. Fla. -- Case No. 9:20-cv-81041-MARRA at DE 38, 49, 50.  The Receiver and Class Counsel will soon move the Court to distribute such funds to the CRYPTSY Class.

## FACTS SUPPORTING INSTANT REQUEST FOR INJUNCTIVE RELIEF

Since the commencement of this case and the identification of the bitcoin VERNON stole from the Class which became subject to the Final Default Judgment against VERNON, Class Counsel has continuously monitored blockchain records to determine if any bitcoin subject to the VERNON judgment, or otherwise belonging to CRYPTSY, has been transferred.  Such movement would reflect efforts by VERNON, or presumably others acting at his behest or perhaps even unrelated persons attempting to obtain access to such assets, to steal and liquidate bitcoin now subject to the judgment or otherwise belonging to CRYPTSY.

Since this action began in 2015, cryptocurrency and bitcoin-related technology have made significant advancements.  The ability to track and trace movement of bitcoin on blockchain ledgers, by way of example and at issue here, has improved substantially. To this end, Class Counsel's analytics team recently made two significant discoveries that warrant the Court entering the equitable relief sought herein.

First, the 11,325 BTC that are subject to the VERNON judgment were thought to be held in twelve (12) cryptocurrency wallet addresses. While this remains true, it was recently discovered that there are **ten (10) additional addresses** (the "Newly-Discovered Wallet Addresses") that

contain[ed] approximately **500 bitcoin** derived from CRYPTSY that are properly subject to the VERNON judgment, *to wit*:

| # | Newly-Discovered Wallet Address | Date and Time of Transfer (UTC) | Transfer Amount (in BTC) |
|---|---|---|---|
| 1 | 1BjRLELf3xX5Tz8c43H36nkmNwqnPuuVAv | 2014-07-29 08:54 | 0.010265 |
| 2 | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 2014-07-29 08:54 | 100 |
| 3 | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 2014-07-29 08:54 | 100 |
| 4 | 19TbZFeHjTx76yKnwGTqehTh1VLHLxx9km | 2014-07-29 08:54 | 0.010659 |
| 5 | 159m8sYcDJwPfJaVpLeKJitkQTiPKevnY4 | 2014-07-29 08:54 | 100 |
| 6 | 1JhoQ1Zs2EqjXh1GzjwtQethAbNG6bNGTW | 2014-07-29 08:54 | 0.010021 |
| 7 | 1AA8YJ2DeYr99BS1PrsFKWC1p9hXT28dup | 2014-07-29 08:54 | 100 |
| 8 | 1ABpMg9prfa6dtZqTqpcmN5cAsjj1Cx77V | 2014-07-29 08:54 | 0.010393 |
| 9 | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 2014-07-29 08:54 | 100 |
| 10 | 19mkygdiY9Ay7dL2LLmASZzi2bXEp9NwLj | 2014-07-29 08:54 | 0.010981 |
|  |  | **TOTAL** | **500.052319** |

Filed in support hereof, and attached hereto as Exhibit A, is an Expert Witness Report of Pawel Aleksander of cryptographic tracing company Coinfirm, explaining how the Newly-Discovered Wallet Addresses are believed to house assets that are subject to the VERNON judgment. Also coincident with the filing of this motion, the undersigned is filing a motion to amend the VERNON judgment to include such newly discovered bitcoin.

<u>Second</u>, and most importantly for purposes of the instant motion, the assets held in the Newly-Discovered Wallet Addresses recently began moving, which means that some of the bitcoin

have been transfer from the Newly-Discovered Wallet Addresses to the Secondary Wallet Addresses (defined and identified in Mr. Aleksander's report) in what appears to be an attempt to take and liquidate such bitcoin, which are property of the CRYPTSY Class. Thus, a Temporary Restraining Order/injunctive relief is necessary to allow the Receiver and Class Counsel to halt any further movement of those assets while the Receiver and counsel identify the person(s) involved, locate the bitcoin, and attempt to secure it for the benefit of the Class.

## LEGAL ARGUMENT

**I.  Rule 65 Permits Entry of a Temporary Restraining Order Without Notice**

1. Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition."[1] Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required."[2]

2. As to the first prong of Rule 65(b)(1), the expert witness report of Mr. Aleksander, summarized and cited above, shows the likelihood of immediate and irreparable injury or loss. The CRYPTSY Class was clearly victimized by VERNON and is a judgment creditor as to bitcoin VERNON converted from the CRYPTSY Class.

3. By freezing VERNON's assets -- including those in the Newly-Discovered Wallet Addresses and any Secondary Wallet Addresses to which VERNON transferred any portion of the funds stolen from the CRYPTSY Class -- the Receiver will have a foothold in his continuing and

---

[1] Fed.R.Civ.P. 65(b)(1)(A).

[2] Fed.R.Civ.P. 65(b)(1)(B). *See also*, *Sun Commodities, Inc. v. Miami Produce Int'l Imp. & Exp., Corp.*, 2008 U.S. Dist. LEXIS 85192 (S.D. Fla. Oct. 7, 2008).

arduous climb to recover the stolen cryptocurrency before VERNON can further transfer it beyond their reach.

4. With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to VERNON. Despite repeated good faith efforts by the Receiver and undesigned counsel to enlist VERNON's cooperation and response, VERNON has declined all requests to participate in this proceeding and communicate with Class Counsel. Thus, it is apparent that any notice provided to VERNON at his last known address would be futile; and delaying by even a few days entry of the equitable relief sought by this motion would afford VERNON more than adequate time to dissipate the assets in the Newly-Discovery Wallet Addresses and/or Secondary Wallet Addresses and render moot the relief sought herein.

5. The Receiver certifies a deep concern that with each passing hour, VERNON will dissipate any traceable funds, either into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

6. Receiver's concerns are based in part on both the recent movement of the cryptocurrency at issue, as well as VERNON's prior conduct in the case in destroying evidence. As the Receiver reported to this Court in his August 2, 2016 Second Report of Receiver James D. Sallah (D.E. 60 at pgs. 4-5):

> I learned that on April 4, 2016 (the date that the Court issued the Appointment Order), and literally hours after e-mail service of same on Vernon, Vernon or someone under his direction using his password remotely logged into Cryptsy's servers and destroyed in three attempts the database that contained, among other things, the number of, identity of and account balances of all of Cryptsy's account holders. I know this because Vernon's name was on the screen-shot with three repeated "shred" commands when the database was powered up.

For these reasons, and those set forth below, Receiver seeks an immediate injunction.

**II.     The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief**

7. Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also*, *In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

8. Here, the relief sought by the Receiver to maintain the *status quo* is deeply entwined with the already-existing VERNON judgment and, as the related motion to amend the judgment demonstrates, essentially is an extension of the judgment itself. The Receiver needs the Court to restrain the further dissipation by VERNON of any additional CRYPTSY assets so the proposed amendment to the VERNON judgment is not made ineffectual.

9. Accordingly, the Receiver is entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, the Receiver is entitled to such relief.

**III.   A Temporary Restraining Order Is Appropriate to Prevent Immediate and Irreparable Harm**

10.   In considering a Temporary Restraining Order, the Court must consider the following: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) the threatened injury to the petitioner outweighs the possible harm to the respondent; and (5) a temporary injunction will not disserve the public interest. *City of Miami Beach v. Kuoni Destination Mgmt., Inc.*, 81 So. 3d 530, 532 (Fla. 3d DCA 2012); *see also Siegel v. LePore,* 234 F.3d 1163, 1179 (11th Cir. 2000), *cert. denied*, 531 U.S. 1005, 121 S. Ct. 510, 148 L. Ed. 2d 478 (2000) (citations omitted).  As shown below, the Receiver satisfies each element of that standard.

**IV.   The Receiver Has a Substantial Likelihood of Success on the Merits of His Claims**

11.   The harms alleged in the Complaint, as well as the facts set forth in the Aleksander report, make clear that the Plaintiff Class was victimized by VERNON who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained the CRYPTSY Class' cryptocurrency, which in equity and good conscience VERNON should not be permitted to hold.

12.   Moreover, any and all cryptocurrency assets held in the Newly-Discovery Wallet Addresses and any Secondary Wallet Addresses to which VERNON transferred any portion of the funds stolen from the Plaintiff Class must be held in a constructive trust for the Class' benefit, as VERNON is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from the Class.

13.   In light of the foregoing, there is a high likelihood that the Receiver will succeed on his claims.

14.   As for the Receiver's request that a constructive trust be applied, Florida law provides that a constructive trust is appropriately imposed as follows:

> [A] court of equity will raise a constructive trust and compel restoration where one through actual fraud, abuse of confidence reposed and accepted, or through order questionable means gains something for himself which equity and good conscience he should not be permitted to hold.

*Quinn v. Phipps*, 93 Fla. 803, 113 So. 419, 422 (Fla. 1930) (citations omitted).  A constructive trust is "created by law to do equity under the circumstances without regard to intent." *Palmland Villas I Condo. Ass'n, Inc. v. Taylor*, 390 So.2d 123, 125 (Fla. 4th DCA 1980).  A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003) (applying Florida law).

15. As such, success on the merits of the Receiver's common law claims is very likely.

## V. The Receiver Will Suffer Irreparable Harm if Vernon Is Not Enjoined

16. There is a significant risk that VERNON may dissipate the assets in the Newly-Discovery Wallet Addresses and Secondary Wallet Addresses -- assets stolen from CRYPTSY accountholders -- or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

17. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze VERNON's assets, including those in the Newly-Discovery Wallet Addresses and Secondary Wallet Addresses, to maintain the *status quo* to avoid dissipation of the money illegally taken from the Class.

18. In fact, the Receiver has discovered through Mr. Aleksander and Coinfirm's efforts that from the Newly-Discovery Wallet Addresses, 119.52 BTC have been transferred by VERNON or someone believed to be acting at his behest to 182 Secondary Wallet Addresses which are identified in Section 7.2 and Appendices 2 and 3 of Mr. Aleksander's report.  The

Secondary Wallet Addresses are neither identified in the VERNON judgment nor were previously identified as a cryptocurrency wallet under VERNON's control, which further emphasizes the ease with which VERNON is transferring the stolen assets and the difficulty with which the Receiver is faced in tracking down those stolen assets.

**VI.     There Is Little Prejudice to Vernon If the Temporary Restraining Order Is Entered**

19.     While the Receiver would be severely prejudiced if VERNON dissipates the funds wrongfully taken from the CRYPTSY Class and the Receivership, VERNON faces no such prejudice. An order forbidding VERNON from moving these assets will, at worst, delay VERNON from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for the Receiver to recover the valuable assets illegally obtained from the Class members' accounts at CRYPTSY.

**VII.    The Receiver Has No Adequate Remedy at Law**

20.     The Receiver's only remedy to recover the funds fraudulently taken from his is through his right to equitable relief in the form of enjoining asset dissipation by VERNON, beginning with imposition of a constructive trust to prevent the further dissipation of Receivership assets. A legal remedy for monetary relief alone will not adequately protect the Receiver's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

**VIII.   Entering a Temporary Restraining Order Is In the Public Interest**

21.     The public interest strongly supports entry of a Temporary Restraining Order here.

22.     Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect

investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that this Court find that the Receiver has satisfied the elements of his claim for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice to Defendant PAUL VERNON, freezing his assets -- including the Newly-Discovery Wallet Addresses and any Secondary Wallet Addresses to which VERNON transferred any portion of the funds stolen from the Class and the Receivership -- to preserve the *status quo ante* pending the full adjudication of the claims herein.

## EMERGENCY MOTION CERTIFICATION

Pursuant to Local Rule 7.1(d)(1), S.D.Fla.L.R., after reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

May 17, 2021

Respectfully submitted,

By: */s/ Marc A. Wites*
**WITES LAW FIRM**
MARC A. WITES
Florida Bar No. 24783
E-mail: mwites@witeslaw.com
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Telephone: (954) 933-4400

> **SILVER MILLER**
> DAVID C. SILVER
> Florida Bar No. 572764
> E-mail: DSilver@SilverMillerLaw.com
> JASON S. MILLER
> Florida Bar No. 072206
> E-mail: JMiller@SilverMillerLaw.com
> 11780 W. Sample Road
> Coral Springs, Florida 33065
> Telephone:   (954) 516-6000
>
> *Special Litigation Counsel for the Receiver and Class Counsel*

## CERTIFICATE OF SERVICE

Pursuant to Rule 5(d)(1)(B), the foregoing will be served on all counsel of record through the Court's electronic filing system.

>     */s/ Marc A. Wites*
>     MARC A. WITES