```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                    WEST PALM BEACH DIVISION
                      CASE NO. 16-CV-80060-KAM
 3

 4   JINYAO LIU, BRANDON LEIDEL and       West Palm Beach, Florida
     MICHAEL WILSON,
 5
                      Plaintiffs,         May 26, 2021
 6
              vs.                         2:05 p.m. - 2:47 p.m.
 7
     PROJECT INVESTORS, INC., et al.,
 8
                      Defendants.         Pages 1 to 38
 9   _____

10

11                    PRELIMINARY INJUNCTION HEARING
               BEFORE THE HONORABLE KENNETH A. MARRA
12                    UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14

15   FOR THE PLAINTIFFS:          MARC A. WITES, ESQ.
                                  WITES LAW FIRM
16                                4400 North Federal Highway
                                  Lighthouse Point, Florida 33064
17
                                  DAVID C. SILVER, ESQ.
18                                SILVER MILLER
                                  11780 W. Sample Road
19                                Lighthouse Point, Florida 33064

20   STENOGRAPHICALLY REPORTED BY:

21                                ILONA LUPOWITZ, CRR, RPR, RMR
                                  Official Court Reporter
22                                United States District Court
                                  400 North Miami Avenue
23                                8th Floor
                                  Miami, Florida 33128
24                                (305) 523-5634

25
```

```
1    (Appearances via teleconference.)

2    FOR THE PLAINTIFFS:              SAMUEL LEWIS, ESQ.
                                      JOHN SULLIVAN, ESQ.
3                                     KARA KAPP, ESQ.
                                      COZEN O'CONNOR
4                                     200 S. Biscayne Boulevard Suite
                                      3000 Miami Florida 33131
5
     FOR THE RECEIVER:                JAMES D. SALLAH, ESQ.
6                                     SALLAH, ASTARITA & COX, LLC
                                      2255 Glades Road, Suite 300-E
7                                     Boca Raton, Florida 33431

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                         I N D E X

2    WITNESS                                        PAGE

3    PAWEL ALEKSANDER

4    DIRECT EXAMINATION BY MR. SILVER:              15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Call to the Order of the Court.)

 2         THE COURT:  We are here in the case of Liu v. Project

 3    Investors, Inc., et al.; case number, 16-80060-CIV-MARRA.

 4         May I have counsel state their appearances, please.

 5         MR. WITES:  Good afternoon, Your Honor.  Marc Wites,

 6    from the Wites Law Firm, along with David Silver, of Silver

 7    Miller, on behalf of the Plaintiff, Brandon Leidel and the

 8    certified class, and the receiver, James Sallah.

 9         THE COURT:  Good afternoon.

10         MR. SILVER:  Good afternoon, Your Honor.

11         THE COURT:  And we have some individuals appearing by

12    phone.  Would you state your appearances for the record,

13    please.

14         MR. LEWIS:  Yes.  Thank you, Your Honor.

15         May it please the Court.  Samuel Lewis, of Cozen

16    O'Connor, on behalf of Northfield Technology, Ltd., the

17    assignee.  With me today are my colleagues, John Sullivan and

18    Kara Kapp.

19         THE COURT:  Good afternoon.

20         MR. SULLIVAN:  Good afternoon.

21         MR. SALLAH:  Your Honor, Jim Sallah, the receiver.

22         THE COURT:  Good afternoon.  All right.

23         MR. SALLAH:  Good afternoon, sir.

24         THE COURT:  We're here on the plaintiff's motion to

25    convert the temporary restraining order that was entered, I
```

1    believe last week, into a preliminary injunction.

2         So, Mr. Wites.

3         MR. WITES:  Your Honor, may I approach the podium?

4         THE COURT:  Yes.  And if you wish, you can take your

5    mask off, if you want, while you're speaking to me, if you

6    would prefer.  I leave it up to you.

7         MR. WITES:  I am vaccinated, and as you've probably

8    experienced with the mask, my glasses fog, so it makes it a

9    little bit easier.  I appreciate that.

10        Good afternoon again, Your Honor.  Again, I'm Marc

11   Wites along with David Silver.  All of the lawyers who are on

12   the phone are on the plaintiff's side, if you will, or working

13   with us in connection with the assignment of the judgment that

14   was entered in the underlying case and/or the receiver.

15        Mr. Vernon, pursuant to the Court's order, has received

16   notice of the hearing, as he has received notice of all of the

17   proceedings that have gone on over the past five years in this

18   action that we've provided to his last known email address, as

19   I'll get to in a few moments.

20        As we have concluded in the past, based on certain

21   things that have happened in the case, we are confident that

22   not only is he aware of the proceeding because he received

23   notice via email, but by actions that he has taken since the

24   filing of the motion for temporary restraining order, which we

25   now seek to convert into a preliminary injunction.

1          I digress for a minute, but Your Honor may remember

2    that it was back in 2016 when this case began, and the Court's

3    appointment of Mr. Sallah as the receiver, that within a day or

4    so of Mr. Sallah's appointment by the case, we were able to

5    determine that Mr. Vernon, who by that time had fled to China,

6    where we believe he still remains, logged into the servers of

7    Cryptsy, what is Project Investors, and shredded all of the

8    data that is there.

9          We have since determined, in connection with the

10   hearing that we're here on today, that subsequent to the filing

11   of emergency motion for temporary restraining order, that he

12   has continued to take some of the Bitcoin that is the subject

13   of the motion and the Court's amended final judgment, and has

14   now been employing additional measures to hide his identity and

15   whereabouts by doing a function called mixing, where he is

16   engaging in multiple small transactions, all at the same time,

17   all in the same amount, in order to co-mingle within certain

18   what they call wallets in the cryptocurrency world, which are

19   like accounts, both ill-begotten gains that were stolen from

20   the class members and the receivership estate of Cryptsy and,

21   perhaps, other cryptocurrency so he can clean the money, if you

22   will.

23         So that was a longer explanation of my argument and

24   proffer to the Court of why we are very confident that

25   Mr. Vernon is well aware of the proceeding today, the Court's

```
 1     orders that have been entered since we moved for the temporary

 2     restraining order and everything the Court has done in this

 3     case.

 4          Your Honor, we are here today, as you correctly noted,

 5     to ask the Court to convert the preliminary -- the temporary

 6     restraining order to a preliminary injunction.  We are prepared

 7     today, if the Court is so inclined, to offer testimony, if the

 8     Court would wish to take it from Mr. Sallah, the receiver.

 9     Although he is local here, within the state of Florida, and

10     actually even within the county, he did not come to court today

11     because although, as I understand it, he has been vaccinated,

12     his wife recently tested positive for COVID, and because of the

13     very recent exposure, he did not feel it was appropriate to

14     come inside the courthouse building today.

15          We also have our expert witness who is overseas

16     available, if the Court was so inclined, to testify about the

17     contents of his report, which we proffered, that is in the

18     record as well.

19          So it's really at the Court's discretion -- and

20     direction, I should say -- as to whether you are comfortable

21     with the plaintiff and the receiver relying on the papers

22     and/or if you wish to take testimony beyond the argument to be

23     provided by counsel.

24          THE COURT:  I'm comfortable relying on the expert

25     witness's affidavit that was submitted in connection with the
```

1   temporary restraining order since the defendant has not chosen

2   to appear and contest that evidence.  And I presume, if I were

3   to have him testify, he would basically tell me the same thing

4   that's in his affidavit, unless there's new information that --

5   that has not been presented already by way of sworn testimony.

6           MR. WITES:  The only thing that I would add as an

7   additional point of information, or, perhaps, even

8   clarification, is that the affidavit -- or declaration, to be

9   specific -- that was submitted in connection with the expert's

10   report was actually a declaration from Mr. Silver that

11   addressed how the report was obtained.  It's not a declaration

12   from the author of the report himself, so I wanted to make sure

13   the Court was aware of that part of the record.

14           THE COURT:  Well, then -- what I would like, then, is

15   for the expert to swear, on the record, that everything in his

16   report is true and accurate so that we have sworn evidence in

17   the record to support any further orders that might be entered.

18           As to Mr. Sallah, I don't know what you intend to

19   present from him, but, if it's not already in the record

20   through sworn testimony, affidavit, or declaration or

21   otherwise, then I would want to have his testimony presented on

22   the record to support the motion.

23           MR. WITES:  We would not intend to offer Mr. Sallah for

24   anything beyond what's in the record.  We simply felt that as

25   the nominal party, as the receiver, that it was appropriate for

```
 1    him to be present in the event that the Court desired to ask

 2    any questions of him.

 3          And I believe that Mr. Silver can arrange -- he may be

 4    doing it now -- for the expert witness to be able to either

 5    connect to the phone call and/or via a Zoom link, whatever it

 6    is -- is Your Honor's preference in terms of the mode of

 7    communication.

 8          THE COURT:  I don't have any objection to him just

 9    connecting to the phone conference that we've already

10    established, if he can do that, rather than have to create a

11    whole new Zoom connection.

12          MR. WITES:  Yes, Your Honor.

13          Well, while we're waiting for Mr. Silver to make sure

14    that he's called in -- and maybe he'll give us a sign, so to

15    speak, when the expert's ready, although I guess we'll here a

16    beep when he calls into the conference system -- it's certainly

17    my pleasure to give a brief overview of what's in the papers to

18    the Court.

19          As Mr. Silver and I were remarking as we were waiting

20    for the hearing, and as the Court is aware, this is a 2016 case

21    number.  It's an old case, but old only to express the amount

22    of time since it was filed.  Not to suggest that a lot has not

23    been done because a lot has been done, and continues to be

24    done, in our efforts to attempt to recover the cryptocurrency

25    that Mr. Vernon took from members of the class when he shut
```

1    down his cryptocurrency exchange back in 2016.

2         Again, it's an aside, but, back at that time, when the

3    Cryptsy exchange was in existence, it's a shame that Mr. Vernon

4    didn't just do everything the right way because we all know

5    what's happened with cryptocurrency since then.  He could have

6    been a very, very wealthy man because he was as far along as

7    these big cryptocurrency exchanges that you read about in the

8    newspaper, or, of course, on the internet today, but, as we

9    know, at the end of 2015, he shut down the exchange.  He fled

10   for China, stealing tens of thousands of cryptocurrency coins,

11   and specifically, as ended up in this Court's judgment, 11,235

12   Bitcoin from the members of the class.

13        The Court appointed a receiver that assisted us in

14   marshalling assets of Mr. Vernon, and those of his colleagues,

15   which ultimately resulted in a class action settlement in the

16   Cryptsy case that happened, I believe, in 20 -- late 2016 or

17   2017.  That was followed by our continued efforts to recover

18   money for the class in a subsequent case that we filed, that

19   was before Your Honor, against Coinbase.  The allegation in

20   that case was that Mr. Vernon was using Coinbase, and that

21   Coinbase knew, or should have known, about Vernon's actions in

22   sending the cryptocurrency of the Cryptsy account holders to

23   Coinbase.  That resulted in a class action settlement through

24   which we were able to distribute additional monies to members

25   of the class.

1              In addition to that, the receiver and class counsel

2     filed a claw-back action against Mr. Vernon's girlfriend when

3     it was discovered in the past year or so that there was

4     cryptocurrency that could be traced back to Cryptsy at another

5     exchange.  We were able to, with the cooperation of that

6     exchange, as a result of the lawsuit that was filed here,

7     recover another approximately 800,000 U.S. dollars' worth of

8     cryptocurrency, and there is another motion pending before Your

9     Honor with a proposed order to give us permission to distribute

10    that money to the class members, who are also the equivalent of

11    the receivership estate.

12             We're here today on another issue that stems from the

13    Cryptsy tree, if you will, and that concerns the totality of

14    the cryptocurrency that Mr. Vernon stole from the account

15    holders at the time he shut down Cryptsy.  At that point in

16    time, it was our belief, based on the research that we had

17    done, based on -- and using the technology that was available

18    to us at that time -- that 11,325 Bitcoin that we believed were

19    held in what are called wallet addresses, similar to accounts,

20    that 11,325 Bitcoin could be traced back to Mr. Vernon's theft

21    from Cryptsy.  That became part of the judgment, or is the

22    judgment that was entered in this case, and it was our belief,

23    at that time, that that's all that there was.

24             But just like we have continued to pursue more

25    traditional actions to recover money for the class in the years

1    that have passed, we've also been monitoring the blog chain,

2    which is where in the electronic world, if you will,

3    cryptocurrency and Bitcoin resides, in an effort to follow

4    these Bitcoin and see if they are being moved.  Part of that

5    effort also included using some additional technology that

6    Mr. Silver can speak to in more detail, if the Court desires,

7    that enabled us to determine that there are an additional 500

8    Bitcoin in 10 additional wallet addresses that are all directly

9    traceable back to Cryptsy, and that is the subject matter of

10   the expert witness report that we have submitted in this case.

11           We then discovered that very small portions at a time

12   of this Bitcoin have been moved, or, to be more specific or

13   blunt, stolen by Mr. Vernon.  It's very difficult for us to

14   determine the totality of where all of these coins are going

15   because we can trace them to a certain point.  We can trace

16   them from the blog chain to a certain exchange like Coinbase,

17   the one that we would all be most familiar with, but, once

18   those coins, just like a dollar bill, go inside the exchange,

19   or, inside the bank, it's impossible for us, without the use of

20   subpoenas, to trace where those coins are going and to which

21   specific account holders' account those coins are going to, and

22   that is one of the bases for both the initial request for the

23   temporary restraining order and the motion that we most

24   recently filed to amend it and expand it slightly, just so that

25   the exchanges would have the comfort and the confidence to know

1   that they were acting in compliance with both the spirit and

2   the letter of the Court's order when they acted to freeze the

3   accounts that hold this cryptocurrency that's been traced back

4   to Cryptsy, and then they can, in connection with that account

5   holder, make a determination that we would, of course,

6   participate in to determine whether or not any specific account

7   that held any of this cryptocurrency was an innocent

8   third-party purchaser or whether or not it's something that can

9   be traced back to Mr. Vernon, or his girlfriend, or somebody he

10  might be working in connection with.

11       I had mentioned in the beginning of my presentation

12  that we have been able to determine a change in the activity

13  since the filing of the motion for temporary restraining order.

14  We brought with us, but did not file because we didn't want it

15  to be accessible to Mr. Vernon, who we also don't have any

16  reason to believe -- although he's aware of what appears on the

17  docket, we're not aware that he's ever ordered a transcript,

18  but we do have some records that we can show to you -- I'll be

19  happy to approach -- that show the transactions that have

20  occurred in very small increments of Bitcoin since the Court

21  entered the temporary restraining order, which was entered the

22  same day we filed the motion on May the 17th of 2021, and

23  that's the reason, again, why we're here to ask for the

24  temporary restraining order to be converted to a preliminary

25  injunction.

1           And, then, we do plan to file -- hopefully, by

2    tomorrow -- a motion for permanent injunction.  Of course, we

3    did file a motion to ask to continue -- continue today's

4    hearing.  It was not in any way intended to do anything other

5    than conserve resources of the Court and the party because we

6    didn't intend to wait a lengthy period of time to file the

7    motion for permanent injunction.  We understand and respect the

8    Court's ruling, that Your Honor felt there wasn't sufficient

9    cause to continue the hearing that had been noticed for today.

10   Of course, Mr. Vernon, for all we know, might have gotten on a

11   plane from China and traveled to be here today, but, again, I

12   didn't want the Court to think there was any other reason for

13   the request to continue the hearing.

14           So with all of that being said, you know, the Court is

15   required to consider and issue an order that addresses the

16   classic and traditional elements that one must satisfy as the

17   moving party for a temporary injunction, those being the

18   likelihood of irreparable harm, of the unavailability of an

19   adequate remedy of law, the substantial likelihood of success

20   on the merits, the injury --

21           MR. ALEKSANDER:  Hello?

22           MR. WITES:  Yes.  At this point, if it's okay with Your

23   Honor, since the expert has called in from overseas, perhaps

24   we'll have Mr. Silver, who's been working directly with the

25   expert, and who has submitted the affidavit to the Court,

 1   explain to the Court and, perhaps, the expert exactly what it

 2   is we need from him in the terms of limited testimony.  And if

 3   Your Honor either would like for us to proffer any other

 4   testimony from the expert, or if Your Honor with like to ask

 5   any other questions, certainly, he's available to do that.

 6           THE COURT:  All right.  Mr. Silver, why don't you

 7   introduce the witness to us, please, and we'll swear him in.

 8           MR. SILVER:  Thank you, Your Honor.  David Silver.  I

 9   also have been vaccinated.  I appreciate you allowing us to

10   speak without a mask.

11           On the phone is Mr. Pawel Aleksander of an analytics

12   company called Coinfirm.

13           Mr. Aleksander, can you hear me clearly?

14           MR. ALEKSANDER:  Yes.

15           MR. SILVER:  Great.  If we could swear him in.

16           (Plaintiff witness, PAWEL ALEKSANDER, duly sworn.)

17           THE COURTROOM DEPUTY:  Please state your name, for the

18   record, and spell your name.

19           THE WITNESS:  Pawel Aleksander, P-A-W-E-L,

20   A-L-E-K-S-A-N-D-E-R.

21                          DIRECT EXAMINATION

22   BY MR. SILVER:

23   Q.  Mr. Aleksander, can you please briefly describe what you do

24   at Coinfirm and what Coinfirm is?

25   A.  Sure.  I'm Chief Information Officer and co-founder of

1   Coinfirm.

2   Q.   Hold on, Pawel.  Pawel, hold on.  Pawel, one second.  You

3   need to speak very slowly.  There's a court reporter, and if

4   you would speak very slowly, she would appreciate it.

5   A.   Understood.

6       My name is Pawel Aleksander.  I'm a chief information

7   officer and co-founder of Coinfirm.  My role is about fraud

8   investigations, data science and product development.

9   Q.   Mr. Aleksander, can you give us a brief description of what

10  it is that you do at Coinfirm in relation to investigating

11  stolen Bitcoin?

12  A.   Yes.  So we provide the analytics which aims to trace the

13  product right from the point of they were stealing up to the

14  destination.

15  Q.   And in this particular case, Mr. Aleksander, were you

16  retained by the class of Brandon Leidel, in the matter of

17  Cryptsy, to do analytics on stolen Bitcoin?

18  A.   Yes, correct.

19  Q.   And as part of your investigation, did you write a report

20  that was submitted to this Court, dated May 14, 2021?

21  A.   Yes, correct.

22  Q.   Do you have a copy of that report in front of you?

23  A.   Yes, I do.

24  Q.   Do you have the copy that is stamped, document 153-1, by

25  any chance?  I believe that's the one we were looking at this

1   morning.

2   A.  Yes, correct.

3   Q.  Can you authentic that that's a copy of the report that you

4   provided, through Coinfirm, discussing your expert opinions in

5   the tracing of the stolen Bitcoin in this case?

6   A.  Yes, I confirm; it's a true copy.

7   Q.  As of May 14, 2021, do you stand by the accuracy of the

8   statements and opinions that you made in that report?

9   A.  Yes, correct, as of the date of the report.

10          MR. SILVER:  Your Honor, if you prefer, I'm happy to

11   walk through the analytics side with him, but --

12          THE COURT:  No.

13          MR. SILVER:  I'm happy to do whatever you like, Your

14   Honor.

15          THE COURT:  No, I don't need him to do that.  The

16   report speaks for itself.  I just wanted to make sure that we

17   had sworn testimony supporting the document that was submitted.

18          MR. SILVER:  If it's okay with Your Honor, I'll let

19   Mr. Aleksander go.

20          THE COURT:  Yes.  Thank you, Mr. Aleksander, for

21   assisting us.

22          THE WITNESS:  Thank you very much.  My pleasure.  Have

23   a great day.

24          MR. SILVER:  Thank you, Your Honor.

25          At this point, both Mr. Wites and I, we can answer any

1   questions, if you have any questions specifically about the

2   additional information that we've learned.  I'm happy to share

3   it with Your Honor.  If you want me to walk through an example,

4   for instance, of what's happened since you've granted the TRO,

5   I can provide that as illustration of the success of the TRO

6   and why we believe Mr. Vernon has not only notice and actual

7   knowledge of the TRO; he has done different behavior since the

8   TRO has been entered, which he believes will enhance stealing

9   the Bitcoin.

10          For instance, on May 23rd, I believe -- let me check if

11  the date's right.  On May 23rd, there was what I will call

12  usual behavior, since April of 2020, of the crypto movement.

13  There was typical behavior, meaning, he was moving the crypto

14  to different exchanges and whatnot.

15          After the TRO was entered on May 17th, for the first

16  time there were several transactions done simultaneously, on

17  May 23rd, that sent a larger chunk of the Bitcoin to the mixers

18  to allow him to launder the money.  He believes, probably, it's

19  an older technology, that the analytics team can't trace that.

20  Fortunately, he's wrong.  We're still able to trace that.

21          The issue that's come up right now is that the TRO is

22  -- that covers relates to Mr. Vernon and Mr. Vernon's

23  associates, but, what we've seen is, this TRO is successful

24  and, obviously, for that reason, we came -- we're here today to

25  get it converted into a preliminary injunction and, then, a

1    permanent injunction.  It allows us to trace the assets all

2    over the world.

3         Unfortunately, the largest chunk of this cryptocurrency

4    has been sent to an exchange overseas, who, if you believe

5    reports by Forbes, is currently under investigation by the

6    Department of Justice for money-laundering as it relates to

7    converting stolen Bitcoin.  We believe that the analytics,

8    which you have in front of you from the report of

9    Mr. Aleksander, confirms that, and we've actually sent that on

10   to the investigators who are investigating such things.

11        We have, over the last five years, worked very closely

12   with both the Department of Justice and the FBI, providing them

13   updated information about Mr. Vernon including up until the Liu

14   case.  That was one of the cases that was set off by

15   Mr. Sallah.  We worked directly with them, which actually

16   helped work with the exchange in the United States to help for

17   an expedited result.  In that case, it was both good for the

18   class and a successful validation of the new technologies we're

19   using to help collect the stolen cryptocurrency from the class.

20        THE COURT:  All right.  I don't know whether you or

21   Mr. Wites is going to answer this question, but the motion that

22   was filed yesterday, the emergency motion to modify the

23   temporary restraining order, is that motion going to be

24   resolved, essentially, if I enter the preliminary injunction?

25   Are you going to propose that whatever issue was -- you were

1    seeking relief on in the emergency motion that was filed

2    yesterday, will you -- will that, kind of, get resolved through

3    the issuance of the preliminary injunction, if I grant it?

4         MR. SILVER:  I feel Mr. Wites -- I'm comfortable

5    answering, if you want me to.

6         MR. WITES:  Go ahead.

7         MR. SILVER:  So, Your Honor, the issue that cropped up

8    is, when we issued the TRO, we issued several subpoenas to the

9    cryptocurrency exchanges that we were able to identify.

10   Effectively, what's come from that is, the cryptocurrency

11   exchanges read the TRO in a manner that they are not obligated

12   to freeze the accounts.

13        So we would ask -- what we did was, we added an

14   additional paragraph to be included in the preliminary

15   injunction which requires the exchanges, who are in receipt of

16   the stolen Bitcoin, from the identified addresses contained in

17   the temporary restraining order, and it will be contained in

18   the preliminary injunction.  We ask that you include that last

19   paragraph in the preliminary injunction.  That way, even if the

20   recipients of the stolen Bitcoin did not have knowledge, they

21   will have to provide proof, like anyone else in receipt of

22   stolen property, that they are a bona fide purchaser in good

23   faith, and what that allows this Court to do, and what that

24   allows the class to do, is to keep the investigation alive of

25   where the cryptocurrency goes.

1          I'm going to try, in 10 seconds or less, explain the

2    issue of crypto tracing that this becomes relevant with:

3          Just like a dollar bill, if you deposit a one-dollar

4    bill at a bank right now, and then you take out a subsequent

5    dollar bill from the bank, the dollar bill you put into the

6    bank gets mixed with a lot of other dollar bills.  When you

7    withdraw a dollar bill, the serial number on the dollar bill

8    you withdraw is different than the one you put in.

9          It's the same with the crypto analytics here.  We know,

10   and we have demonstrated -- and the exchanges, I don't believe,

11   object to the tracing of the crypto into the exchange.  But we,

12   the analytics team and the experts, we can't see, without the

13   information, what the bad guy does with the crypto once it's

14   put into the exchange and when he withdraws it.

15         So, for instance, here, we know exchange A received the

16   stolen Bitcoin.  Exchange A likely will tell us that stole --

17   the account that took the stolen Bitcoin withdrew a different

18   Bitcoin, and with that we will continue tracing -- assuming the

19   Bitcoin is not stolen at the U.S. exchange, we'll continue

20   tracing it down the line, and it's fairly easy then to see who

21   is a bona fide purchaser, in good faith, and who is not.  But

22   because the exchange reads the current version of the temporary

23   restraining order as to put the burden on the actual account

24   holder, they are refusing to restrain the address.

25         So we sent them a copy of the emergency -- emergency

```
 1    request to amend the restraining order, and they will, with a

 2    court order, restrain the accounts if they believe it applies

 3    to them as well as the account holder.  So that's why we did

 4    that yesterday.

 5         THE COURT:  All right.  So the answer to my question

 6    is, yes, the issuance of the preliminary injunction that you

 7    want me to enter will resolve the motion that was filed

 8    yesterday.

 9         MR. SILVER:  Yes.

10         THE COURT:  Okay.  Now, tell me why the the ultimate

11    recipient of the Bitcoin, who might be a bona fide purchaser of

12    that Bitcoin, why should that person have to be held up and

13    prove up the bona fide purchaser's -- his or her bona fide

14    purchaser's status as opposed to you proving that he or she is

15    not a bona fide purchaser.

16         MR. SILVER:  So, at the moment, I can prove they're in

17    possession of my stolen property just like any other stolen

18    property.  If they took the Lamborghini -- I drive a Toyota

19    Lexus.  If they took my Lexus off my driveway, I would go to

20    the police and say, I found the stolen Lexus; it's on my

21    neighbor's driveway.  My neighbor would have to prove how he

22    got my stolen Lexus.  It's a piece of property.  It's

23    identifiable.  It's transferrable.  We can prove that they're

24    in possession of stolen property.

25         They do have to provide some form of evidence that they
```

1  purchased it in good faith.  The technology, right now, does

2  not yet exist in -- if, for instance, I identified my neighbor

3  had the stolen Lexus, here I need the -- I need the

4  cryptocurrency exchange to tell me who it is, and the account,

5  before I can send a subpoena to them because I don't know who

6  they are until they get to the exchange.

7         So, here, that's why that's incredibly important.  And

8  unfortunately for the purchaser, even if they made the

9  purchase, it's going to be a purchase overseas.  Even if they

10  made it in good faith, the purchase is of stolen property that

11  is identifiable.

12         THE COURT:  All right.  And how -- and what happens in

13  the interim?  They purchase it, and then the exchange does not

14  deliver it to them, or -- I mean, what happens to the Bitcoin

15  if it now gets into the hands of -- and I don't know how this

16  works because people don't actually physically hold it, these

17  items, but do they get title to it, or is the title held up

18  pending investigation of whether they're good faith purchasers

19  or not?  How do these transactions resolve themselves?

20         MR. SILVER:  So what we've been doing in several

21  cases -- and several cases in the Southern District of Florida

22  and across the country with the TROs -- the TROs, once we

23  identify the specific stolen property, the cryptocurrency

24  exchanges, they, under -- because they're a money-service

25  businesses and money-service providers, they're obligated to do

1    enhanced due diligence and they restrain the accounts just like

2    a bank account.  They'll simply -- if you have $100,000 sitting

3    in your bank account -- or, as of today, two-and-half

4    Bitcoin -- they simply restrain it and say you need to now

5    provide enhanced due diligence -- which they're required to

6    under FinCEN as well as the Bank Secrecy Act, to do enhanced

7    due diligence -- and that gives us the time frame we need, once

8    we serve the subpoena, to also do our due diligence.

9         THE COURT:  All right.  So, again, I'm trying to put

10   myself in the position of one of these innocent third party,

11   bona fide purchasers who thinks he or she may have bought some

12   Bitcoin that they now own, and they're being told, wait a

13   minute, you may have bought some stolen Bitcoin.  They have

14   plans to do whatever, speculate with it or sell it, and now

15   they're held up, and they are -- they have to -- the market

16   might drop while they're having to prove that they're a bona

17   fide purchaser and they're out of luck.

18        MR. SILVER:  Unfortunately, at that point, once the

19   exchange receives note of this, the exchange -- just like a

20   bank account, there's no difference between this happening if

21   this was stolen money.  There's certain obligations under the

22   banks, which, in this instance, because the cryptocurrency

23   exchanges in the United States operate under FinCEN and the

24   Bank Secrecy Act, everyone has pretty much put to it a stop and

25   halt.  They have to prove just like anyone else.  And in this

1    instance, for instance, if I'm the bona fide purchaser in good

2    faith, instantaneously -- I mean, this is all within the last

3    couple of weeks.  And because it's the TRO, and your only

4    restraints for the last 10 days -- you would, in the last 10

5    days, have to show how you acquired this.  And we can go --

6    that rabbit hole gets pretty dicy because they will be

7    showing -- if you ask our experts, they'll be showing they

8    acquired it through a mixing service, which is illegal.

9         There are criminal charges in several United States

10   courthouses where they've charged the mixing services because

11   that's, effectively, money laundering, or, they're going to

12   show that they purchased it through a legitimate source, but

13   that takes -- you know, just like showing how you acquired a

14   car, that should take almost, in this day and age, no time

15   whatsoever.  This is not complicated.  They'll be able to show

16   the purchase and acquisition of, and if they show a purchase

17   and acquisition of, then, we're in a different spot.  The

18   restraining order simply allows us to do that discovery since

19   the TRO has been entered.

20        THE COURT:  So this is not something that's going to

21   hold them up for weeks or months?

22        MR. SILVER:  It's not something that's going to hold

23   them up for weeks or months.

24        THE COURT:  How about --

25        MR. SILVER:  And we will, as the attorneys, put out a

1    word -- we will -- immediately, upon receipt of the

2    information, we will go through the same process, and we will

3    come to the Court, and we will provide the information of

4    whether or not we believe that they should be released from the

5    restraining order.

6         THE COURT:  So it's not exactly like money in a bank

7    which is not going to -- unless you're doing, you know,

8    exchanging money or foreign currencies, one for another, the

9    value of your dollar in the bank isn't going to drop

10   precipitously from one day to the next, where this might.

11        MR. SILVER:  Whether -- it's an esoteric conversation

12   about whether or not cryptocurrency is an investment class,

13   but, yes, if you are investing in the early days of

14   cryptocurrency, which was 2014, then I would have agreed with

15   you; there was a tremendous valuation difference.

16   Statistically, over the last year or two, it has the -- how do

17   I say this -- over -- yes.  It is an investment class.  You are

18   investing in an unregulated asset class.  The fact that it goes

19   up or down, unfortunately for them, is both a benefit and a

20   burden at the moment.  They are holding stolen property, and,

21   under the law, you can't hold stolen property unless you can

22   validate the fact that you are a bona fide purchaser in good

23   faith.  If that takes them a day, a week, or a month, the fact

24   that it would take them a month is probably a bad sign for

25   them.

```
 1              MR. WITES:  Can I add something, perhaps, to the

 2    answer?  And David, please, amend or amplify if necessary.

 3              But I think that to address Your Honor's concerns,

 4    let's assume the order extends to John Doe, an account holder

 5    in a specific exchange.  Those exchanges already have some

 6    degree of due diligence on each customer.  They have, for

 7    example, a copy of a driver's license or a passport.  They have

 8    certain biographical information about where they reside.  They

 9    may also, for example, be an account holder that opened the

10    account at an exchange with, basically, a zero balance, and

11    then bought and sold the cryptocurrency only through that given

12    exchange.

13              My point is that -- I think, for a significant number

14    of people who might be impacted by the Court's order, which is

15    the Court's concern -- is that the determination of whether or

16    not they're a bona fide purchaser in good faith could be made

17    relatively quickly.  It will be a different situation if the

18    identification card or a passport indicates that the account

19    holder is really Paul Vernon, or Paul Vernon's girlfriend, or a

20    person who we believe, based on our investigation, has worked

21    with them or has some type of connection with them.

22              So while I think Your Honor's question is a very good

23    one -- what's going to happen if there's a bona fide purchaser

24    in good faith who gets held up, so-to-speak -- in other words,

25    their account is frozen unnecessarily, or for a prolonged
```

1    period of time -- we would have to admit, in good faith, that

2    there is some very small risk of that, but I think the odds are

3    unlikely, and I think the resolution of whether or not they're

4    a good-faith purchaser, for the vast majority of people

5    impacted, would be something that would be resolved very

6    quickly.

7           THE COURT:  All right.  Anything else?

8           MR. SILVER:  If I could just give color for -- as an

9    example, the Bittrex case that we have the motion for

10    distribution of right now, it was Paul Vernon's girlfriend --

11    I'm going to pronounce this wrong.  I think it's X-Y-U-X-Y-U,

12    Liu, L-I-U.  She would have been identified in this process,

13    but her name would not have been identified without doing the

14    due diligence.

15           And for, you know, doing the tracing analysis, I do

16    agree with Mr. Wites that this should -- is a very -- should

17    be, for 99.99 percent of the people, a very quick process.

18           THE COURT:  All right.  Anything else?

19           MR. WITES:  No, Your Honor.  I think we would otherwise

20    rely on the papers.

21           And I would just point out, since they're also here

22    somewhat virtually, on the phone -- but I didn't want it to go

23    without saying that we have on the phone with us the lawyers

24    from the Cozen firm, who have been and will continue to work on

25    this case, in general, and help us continue to investigate,

1   trace coins and pursue action, both in the U.S. and overseas,

2   as an effort to recover more money for the class, and I wanted

3   to just bring to the Court's attention that they're here with

4   us today, and that's why they're here.

5          THE COURT:  All right.  Well, I'm going to find that

6   the requirements for the entry of a preliminary injunction have

7   been met, and to the extent that the issue brought or raised by

8   the -- yesterday's emergency motion to modify the temporary

9   restraining order, I'm going to allow the limitation or the

10  restriction that you are seeking in that motion as part of the

11  preliminary injunction.

12         I'm going to find that in balancing the equities, that

13  the equities weigh in favor of granting the injunction and that

14  the risk of the public interest to the potential third party,

15  bona fide purchasers is minimal, and the greater public

16  interest is served by putting restrictions so that the stolen

17  Bitcoin can -- as much as the stolen Bitcoin can be recovered

18  is, in fact, recovered for the benefit of the class.

19         So if you could submit a proposed order to me, we'll

20  get it entered as soon as -- after I review it and make sure

21  I'm satisfied with it.  All right?

22         Anything else?

23         MR. WITES:  Your Honor, I know today's hearing wasn't

24  styled as a case-management conference, but, while we are here,

25  I wanted to just ask the Court if you have any questions for

1    Mr. Silver and I about the other pending motion in the case,

2    which is the motion to distribute the funds that were recovered

3    in the claw-back action against Ms. Liu because, if you did,

4    we're here.  We can certainly answer them.  I think we've put

5    everything that there is in the motion.

6          THE COURT:  No.  I was just waiting for the time for

7    responses, if there was going to be any objections from any

8    interested party to pass before I entered the order, so --

9          MR. WITES:  Yes.

10         THE COURT:  So that's the only reason.  And the reason

11    I didn't act on the emergency motion filed yesterday was

12    because I had these questions that I wanted to get answered.  I

13    knew you were coming in today, so I thought this was the best

14    time to deal with that rather than just sign off on that motion

15    when I had some concerns.

16         MR. WITES:  I didn't mean to suggest that the Court

17    hadn't acted quickly enough.  I know that even five years into

18    this case, cryptocurrency is still somewhat of a novel issue,

19    and in the event you had any questions, we just wanted to offer

20    them, that's all.

21         THE COURT:  All right.  Thank you, gentlemen.  And

22    every one on the phone, thank you as well.

23         I'll wait for your proposed order.  As I said, once I

24    review it, I'll enter it as soon as I can.

25         MR. WITES:  Thank you, Your Honor.

```
1              MR. SILVER:  Thank you, Your Honor.

2              THE COURT:  Thank you.  Have a nice afternoon.

3              MR. SULLIVAN:  Thank you for you time today, Judge.

4              THE COURT:  Thank you.

5              MR. SALLAH:  Thank you, Your Honor.

6              THE COURT:  Bye-bye.

7              (Court recessed at 2:47 p.m.)

8                        C E R T I F I C A T E

9

10

11         I hereby certify that the foregoing is an

12   accurate transcription of the proceedings in the

13   above-entitled matter.

14              This hearing occurred during the COVID-19 pandemic

15   and is therefore subject to the technological limitations of

16   reporting remotely.

17

18

19   DATE:  May 27, 2021      /s/Ilona Lupowitz
                              ILONA LUPOWITZ, CRR, RPR, RMR
20                            Official Court Reporter
                              United States District Court
21                            400 North Miami Avenue, 8th Floor
                              Miami, Florida 33128
22                            (305) 523-5634

23

24

25
```

## $

**$100,000** [1] - 24:2

## /

**/s/Ilona** [1] - 31:19

## 1

**1** [1] - 1:8
**10** [4] - 12:8, 21:1, 25:4
**11,235** [1] - 10:11
**11,325** [2] - 11:18, 11:20
**11780** [1] - 1:18
**14** [2] - 16:20, 17:7
**15** [1] - 3:4
**153-1** [1] - 16:24
**16-80060-CIV-MARRA** [1] - 4:3
**16-CV-80060-KAM** [1] - 1:2
**17th** [2] - 13:22, 18:15

## 2

**20** [1] - 10:16
**200** [1] - 2:4
**2014** [1] - 26:14
**2015** [1] - 10:9
**2016** [4] - 6:2, 9:20, 10:1, 10:16
**2017** [1] - 10:17
**2020** [1] - 18:12
**2021** [5] - 1:5, 13:22, 16:20, 17:7, 31:19
**2255** [1] - 2:6
**23rd** [3] - 18:10, 18:11, 18:17
**26** [1] - 1:5
**27** [1] - 31:19
**2:05** [1] - 1:6
**2:47** [2] - 1:6, 31:7

## 3

**300-E** [1] - 2:6
**3000** [1] - 2:4
**305** [2] - 1:23, 31:22
**33064** [2] - 1:16, 1:18
**33128** [2] - 1:23, 31:21
**33131** [1] - 2:4
**33431** [1] - 2:7

## 4

**400** [2] - 1:22, 31:21
**4400** [1] - 1:15

## 5

**500** [1] - 12:7
**523-5634** [2] - 1:23, 31:22

## 8

**800,000** [1] - 11:7
**8th** [2] - 1:22, 31:21

## 9

**99.99** [1] - 28:17

## A

**A-L-E-K-S-A-N-D-E-R** [1] - 15:20
**able** [8] - 6:4, 9:4, 10:24, 11:5, 13:12, 18:20, 20:9, 25:15
**above-entitled** [1] - 31:13
**accessible** [1] - 13:15
**account** [18] - 10:22, 11:14, 12:21, 13:4, 13:6, 21:17, 21:23, 22:3, 23:4, 24:2, 24:3, 24:20, 27:4, 27:9, 27:10, 27:18, 27:25
**accounts** [6] - 6:19, 11:19, 13:3, 20:12, 22:2, 24:1
**accuracy** [1] - 17:7
**accurate** [2] - 8:16, 31:12
**acquired** [3] - 25:5, 25:8, 25:13
**acquisition** [2] - 25:16, 25:17
**Act** [2] - 24:6, 24:24
**act** [1] - 30:11
**acted** [2] - 13:2, 30:17
**acting** [1] - 13:1
**action** [6] - 5:18, 10:15, 10:23, 11:2, 29:1, 30:3
**actions** [3] - 5:23, 10:21, 11:25
**activity** [1] - 13:12
**actual** [2] - 18:6, 21:23
**add** [2] - 8:6, 27:1
**added** [1] - 20:13
**addition** [1] - 11:1
**additional** [8] - 6:14, 8:7, 10:24, 12:5, 12:7, 12:8, 18:2, 20:14
**address** [3] - 5:18, 21:24, 27:3
**addressed** [1] - 8:11
**addresses** [4] - 11:19, 12:8, 14:15, 20:16
**adequate** [1] - 14:19
**admit** [1] - 28:1
**affidavit** [5] - 7:25, 8:4, 8:8,

8:20, 14:25
**afternoon** [9] - 4:5, 4:9, 4:10, 4:19, 4:20, 4:22, 4:23, 5:10, 31:2
**age** [1] - 25:14
**agree** [1] - 28:16
**agreed** [1] - 26:14
**ahead** [1] - 20:6
**aims** [1] - 16:12
**al** [2] - 1:7, 4:3
**Aleksander** [10] - 15:11, 15:13, 15:19, 15:23, 16:6, 16:9, 16:15, 17:19, 17:20, 19:9
**ALEKSANDER** [4] - 3:3, 14:21, 15:14, 15:16
**alive** [1] - 20:24
**allegation** [1] - 10:19
**allow** [2] - 18:18, 29:9
**allowing** [1] - 15:9
**allows** [4] - 19:1, 20:23, 20:24, 25:18
**almost** [1] - 25:14
**amend** [3] - 12:24, 22:1, 27:2
**amended** [1] - 6:13
**amount** [2] - 6:17, 9:21
**amplify** [1] - 27:2
**analysis** [1] - 28:15
**analytics** [8] - 15:11, 16:12, 16:17, 17:11, 18:19, 19:7, 21:9, 21:12
**answer** [5] - 17:25, 19:21, 22:5, 27:2, 30:4
**answered** [1] - 30:12
**answering** [1] - 20:5
**appear** [1] - 8:2
**appearances** [2] - 4:4, 4:12
**APPEARANCES** [1] - 1:12
**Appearances** [1] - 2:1
**appearing** [1] - 4:11
**applies** [1] - 22:2
**appointed** [1] - 10:13
**appointment** [2] - 6:3, 6:4
**appreciate** [3] - 5:9, 15:9, 16:4
**approach** [2] - 5:3, 13:19
**appropriate** [2] - 7:13, 8:25
**April** [1] - 18:12
**argument** [2] - 6:23, 7:22
**arrange** [1] - 9:3
**aside** [1] - 10:2
**asset** [1] - 26:18
**assets** [2] - 10:14, 19:1
**assignee** [1] - 4:17
**assignment** [1] - 5:13
**assisted** [1] - 10:13
**assisting** [1] - 17:21
**associates** [1] - 18:23

**assume** [1] - 27:4
**assuming** [1] - 21:18
**ASTARITA** [1] - 2:6
**attempt** [1] - 9:24
**attention** [1] - 29:3
**attorneys** [1] - 25:25
**authentic** [1] - 17:3
**author** [1] - 8:12
**available** [3] - 7:16, 11:17, 15:5
**Avenue** [2] - 1:22, 31:21
**aware** [6] - 5:22, 6:25, 8:13, 9:20, 13:16, 13:17

## B

**bad** [2] - 21:13, 26:24
**balance** [1] - 27:10
**balancing** [1] - 29:12
**bank** [9] - 12:19, 21:4, 21:5, 21:6, 24:2, 24:3, 24:20, 26:6, 26:9
**Bank** [2] - 24:6, 24:24
**banks** [1] - 24:22
**based** [4] - 5:20, 11:16, 11:17, 27:20
**bases** [1] - 12:22
**BEACH** [1] - 1:2
**Beach** [1] - 1:4
**became** [1] - 11:21
**becomes** [1] - 21:2
**beep** [1] - 9:16
**BEFORE** [1] - 1:11
**began** [1] - 6:2
**beginning** [1] - 13:11
**begotten** [1] - 6:19
**behalf** [2] - 4:7, 4:16
**behavior** [3] - 18:7, 18:12, 18:13
**belief** [2] - 11:16, 11:22
**believes** [2] - 18:8, 18:18
**benefit** [2] - 26:19, 29:18
**best** [1] - 30:13
**between** [1] - 24:20
**beyond** [2] - 7:22, 8:24
**big** [1] - 10:7
**bill** [7] - 12:18, 21:3, 21:4, 21:5, 21:7
**bills** [1] - 21:6
**biographical** [1] - 27:8
**Biscayne** [1] - 2:4
**bit** [1] - 5:9
**Bitcoin** [29] - 6:12, 10:12, 11:18, 11:20, 12:3, 12:4, 12:8, 12:12, 13:20, 16:11, 16:17, 17:5, 18:9, 18:17, 19:7, 20:16, 20:20, 21:16, 21:17, 21:18, 21:19, 22:11, 22:12, 23:14, 24:4, 24:12, 24:13, 29:17

2

**Bittrex** [1] - 28:9
**blog** [2] - 12:1, 12:16
**blunt** [1] - 12:13
**Boca** [1] - 2:7
**bona** [13] - 20:22, 21:21, 22:11, 22:13, 22:15, 24:11, 24:16, 25:1, 26:22, 27:16, 27:23, 29:15
**bought** [3] - 24:11, 24:13, 27:11
**Boulevard** [1] - 2:4
**BRANDON** [1] - 1:4
**Brandon** [2] - 4:7, 16:16
**brief** [2] - 9:17, 16:9
**briefly** [1] - 15:23
**bring** [1] - 29:3
**brought** [2] - 13:14, 29:7
**building** [1] - 7:14
**burden** [2] - 21:23, 26:20
**businesses** [1] - 23:25
**BY** [3] - 1:19, 3:4, 15:22
**bye** [2] - 31:6
**bye-bye** [1] - 31:6

## C

**car** [1] - 25:14
**card** [1] - 27:18
**case** [23] - 4:2, 4:3, 5:14, 5:21, 6:2, 6:4, 7:3, 9:20, 9:21, 10:16, 10:18, 10:20, 11:22, 12:10, 16:15, 17:5, 19:14, 19:17, 28:9, 28:25, 29:24, 30:1, 30:18
**CASE** [1] - 1:2
**case-management** [1] - 29:24
**cases** [3] - 19:14, 23:21
**certain** [6] - 5:20, 6:17, 12:15, 12:16, 24:21, 27:8
**certainly** [3] - 9:16, 15:5, 30:4
**certified** [1] - 4:8
**certify** [1] - 31:11
**chain** [2] - 12:1, 12:16
**chance** [1] - 16:25
**change** [1] - 13:12
**charged** [1] - 25:10
**charges** [1] - 25:9
**check** [1] - 18:10
**Chief** [1] - 15:25
**chief** [1] - 16:6
**China** [3] - 6:5, 10:10, 14:11
**chosen** [1] - 8:1
**chunk** [2] - 18:17, 19:3
**clarification** [1] - 8:8
**class** [20] - 4:8, 6:20, 9:25, 10:12, 10:15, 10:18, 10:23, 10:25, 11:1, 11:10, 11:25,

16:16, 19:18, 19:19, 20:24, 26:12, 26:17, 26:18, 29:2, 29:18
**classic** [1] - 14:16
**claw** [2] - 11:2, 30:3
**claw-back** [2] - 11:2, 30:3
**clean** [1] - 6:21
**clearly** [1] - 15:13
**closely** [1] - 19:11
**co** [3] - 6:17, 15:25, 16:7
**co-founder** [2] - 15:25, 16:7
**co-mingle** [1] - 6:17
**Coinbase** [5] - 10:19, 10:20, 10:21, 10:23, 12:16
**Coinfirm** [7] - 15:12, 15:24, 16:1, 16:7, 16:10, 17:4
**coins** [6] - 10:10, 12:14, 12:18, 12:20, 12:21, 29:1
**colleagues** [2] - 4:17, 10:14
**collect** [1] - 19:19
**color** [1] - 28:8
**comfort** [1] - 12:25
**comfortable** [3] - 7:20, 7:24, 20:4
**coming** [1] - 30:13
**communication** [1] - 9:7
**company** [1] - 15:12
**compliance** [1] - 13:1
**complicated** [1] - 25:15
**concern** [1] - 27:15
**concerns** [3] - 11:13, 27:3, 30:15
**concluded** [1] - 5:20
**conference** [3] - 9:9, 9:16, 29:24
**confidence** [1] - 12:25
**confident** [2] - 5:21, 6:24
**confirm** [1] - 17:6
**confirms** [1] - 19:9
**connect** [1] - 9:5
**connecting** [1] - 9:9
**connection** [8] - 5:13, 6:9, 7:25, 8:9, 9:11, 13:4, 13:10, 27:21
**conserve** [1] - 14:5
**consider** [1] - 14:15
**contained** [2] - 20:16, 20:17
**contents** [1] - 7:17
**contest** [1] - 8:2
**continue** [8] - 14:3, 14:9, 14:13, 21:18, 21:19, 28:24, 28:25
**continued** [3] - 6:12, 10:17, 11:24
**continues** [1] - 9:23
**conversation** [1] - 26:11
**convert** [3] - 4:25, 5:25, 7:5
**converted** [2] - 13:24,

18:25
**converting** [1] - 19:7
**cooperation** [1] - 11:5
**copy** [6] - 16:22, 16:24, 17:3, 17:6, 21:25, 27:7
**correct** [4] - 16:18, 16:21, 17:2, 17:9
**correctly** [1] - 7:4
**counsel** [3] - 4:4, 7:23, 11:1
**country** [1] - 23:22
**county** [1] - 7:10
**couple** [1] - 25:3
**course** [4] - 10:8, 13:5, 14:2, 14:10
**Court** [29] - 1:21, 1:21, 4:1, 4:15, 6:24, 7:2, 7:5, 7:7, 7:8, 7:16, 8:13, 9:1, 9:18, 9:20, 10:13, 12:6, 13:20, 14:5, 14:12, 14:14, 14:25, 15:1, 16:20, 20:23, 26:3, 29:25, 30:16, 31:20, 31:20
**COURT** [32] - 1:1, 4:2, 4:9, 4:11, 4:19, 4:22, 4:24, 5:4, 7:24, 8:14, 9:8, 15:6, 17:12, 17:15, 17:20, 19:20, 22:5, 22:10, 23:12, 24:9, 25:20, 25:24, 26:6, 28:7, 28:18, 29:5, 30:6, 30:10, 30:21, 31:2, 31:4, 31:6
**court** [4] - 7:10, 16:3, 22:2, 31:7
**Court's** [11] - 5:15, 6:2, 6:13, 6:25, 7:19, 10:11, 13:2, 14:8, 27:14, 27:15, 29:3
**courthouse** [1] - 7:14
**courthouses** [1] - 25:10
**COURTROOM** [1] - 15:17
**covers** [1] - 18:22
**COVID** [1] - 7:12
**COVID-19** [1] - 31:14
**COX** [1] - 2:6
**Cozen** [2] - 4:15, 28:24
**COZEN** [1] - 2:3
**create** [1] - 9:10
**criminal** [1] - 25:9
**cropped** [1] - 20:7
**CRR** [2] - 1:20, 31:19
**crypto** [6] - 18:12, 18:13, 21:2, 21:9, 21:11, 21:13
**cryptocurrency** [26] - 6:18, 6:21, 9:24, 10:1, 10:5, 10:7, 10:10, 10:22, 11:4, 11:8, 11:14, 12:3, 13:3, 13:7, 19:3, 19:19, 20:9, 20:10, 20:25, 23:4, 23:23, 24:22, 26:12, 26:14, 27:11, 30:18
**Cryptsy** [12] - 6:7, 6:20, 10:3, 10:16, 10:22, 11:4, 11:13, 11:15, 11:21, 12:9, 13:4, 16:17

**currencies** [1] - 26:8
**current** [1] - 21:22
**customer** [1] - 27:6

## D

**data** [2] - 6:8, 16:8
**DATE** [1] - 31:19
**date** [1] - 17:9
**date's** [1] - 18:11
**dated** [1] - 16:20
**David** [4] - 4:6, 5:11, 15:8, 27:2
**DAVID** [1] - 1:17
**days** [3] - 25:4, 25:5, 26:13
**deal** [1] - 30:14
**declaration** [4] - 8:8, 8:10, 8:11, 8:20
**defendant** [1] - 8:1
**Defendants** [1] - 1:8
**degree** [1] - 27:6
**deliver** [1] - 23:14
**demonstrated** [1] - 21:10
**Department** [2] - 19:6, 19:12
**deposit** [1] - 21:3
**DEPUTY** [1] - 15:17
**describe** [1] - 15:23
**description** [1] - 16:9
**desired** [1] - 9:1
**desires** [1] - 12:6
**destination** [1] - 16:14
**detail** [1] - 12:6
**determination** [2] - 13:5, 27:15
**determine** [5] - 6:5, 12:7, 12:14, 13:6, 13:12
**determined** [1] - 6:9
**development** [1] - 16:8
**dicy** [1] - 25:6
**difference** [2] - 24:20, 26:15
**different** [6] - 18:7, 18:14, 21:8, 21:17, 25:17, 27:17
**difficult** [1] - 12:13
**digress** [1] - 6:1
**diligence** [6] - 24:1, 24:5, 24:7, 24:8, 27:6, 28:14
**DIRECT** [2] - 3:4, 15:21
**direction** [1] - 7:20
**directly** [3] - 12:8, 14:24, 19:15
**discovered** [2] - 11:3, 12:11
**discovery** [1] - 25:18
**discretion** [1] - 7:19
**discussing** [1] - 17:4
**distribute** [3] - 10:24, 11:9, 30:2

distribution [1] - 28:10
DISTRICT [3] - 1:1, 1:1, 1:11
District [3] - 1:21, 23:21, 31:20
DIVISION [1] - 1:2
docket [1] - 13:17
document [2] - 16:24, 17:17
Doe [1] - 27:4
dollar [9] - 12:18, 21:3, 21:5, 21:6, 21:7, 26:9
dollars' [1] - 11:7
done [7] - 7:2, 9:23, 9:24, 11:17, 18:7, 18:16
down [5] - 10:1, 10:9, 11:15, 21:20, 26:19
drive [1] - 22:18
driver's [1] - 27:7
driveway [2] - 22:19, 22:21
drop [2] - 24:16, 26:9
due [6] - 24:1, 24:5, 24:7, 24:8, 27:6, 28:14
duly [1] - 15:16
during [1] - 31:14

**E**

early [1] - 26:13
easier [1] - 5:9
easy [1] - 21:20
effectively [2] - 20:10, 25:11
effort [3] - 12:3, 12:5, 29:2
efforts [2] - 9:24, 10:17
either [2] - 9:4, 15:3
electronic [1] - 12:2
elements [1] - 14:16
email [2] - 5:18, 5:23
emergency [7] - 6:11, 19:22, 20:1, 21:25, 29:8, 30:11
employing [1] - 6:14
enabled [1] - 12:7
end [1] - 10:9
ended [1] - 10:11
engaging [1] - 6:16
enhance [1] - 18:8
enhanced [3] - 24:1, 24:5, 24:6
enter [3] - 19:24, 22:7, 30:24
entered [12] - 4:25, 5:14, 7:1, 8:17, 11:22, 13:21, 18:8, 18:15, 25:19, 29:20, 30:8
entitled [1] - 31:13
entry [1] - 29:6
equities [2] - 29:12, 29:13
equivalent [1] - 11:10
esoteric [1] - 26:11

ESQ [6] - 1:14, 1:17, 2:2, 2:2, 2:3, 2:5
essentially [1] - 19:24
established [1] - 9:10
estate [2] - 6:20, 11:11
et [2] - 1:7, 4:3
event [2] - 9:1, 30:19
evidence [3] - 8:2, 8:16, 22:25
exactly [2] - 15:1, 26:6
EXAMINATION [2] - 3:4, 15:21
example [4] - 18:3, 27:7, 27:9, 28:9
exchange [23] - 10:1, 10:3, 10:9, 11:5, 11:6, 12:16, 12:18, 19:4, 19:16, 21:11, 21:14, 21:15, 21:16, 21:19, 21:22, 23:4, 23:6, 23:13, 24:19, 27:5, 27:10, 27:12
exchanges [10] - 10:7, 12:25, 18:14, 20:9, 20:11, 20:15, 21:10, 23:24, 24:23, 27:5
exchanging [1] - 26:8
exist [1] - 23:2
existence [1] - 10:3
expand [1] - 12:24
expedited [1] - 19:17
experienced [1] - 5:8
expert [10] - 7:15, 7:24, 8:15, 9:4, 12:10, 14:23, 14:25, 15:1, 15:4, 17:4
expert's [2] - 8:9, 9:15
experts [2] - 21:12, 25:7
explain [2] - 15:1, 21:1
explanation [1] - 6:23
exposure [1] - 7:13
express [1] - 9:21
extends [1] - 27:4
extent [1] - 29:7

**F**

fact [4] - 26:18, 26:22, 26:23, 29:18
fairly [1] - 21:20
faith [11] - 20:23, 21:21, 23:1, 23:10, 23:18, 25:2, 26:23, 27:16, 27:24, 28:1, 28:4
familiar [1] - 12:17
far [1] - 10:6
favor [1] - 29:13
FBI [1] - 19:12
Federal [1] - 1:15
felt [2] - 8:24, 14:8
few [1] - 5:19
fide [13] - 20:22, 21:21, 22:11, 22:13, 22:15, 24:11,

24:17, 25:1, 26:22, 27:16, 27:23, 29:15
file [4] - 13:14, 14:1, 14:3, 14:6
filed [10] - 9:22, 10:18, 11:2, 11:6, 12:24, 13:22, 19:22, 20:1, 22:7, 30:11
filing [3] - 5:24, 6:10, 13:13
final [1] - 6:13
FinCEN [2] - 24:6, 24:23
Firm [1] - 4:6
FIRM [1] - 1:15
firm [1] - 28:24
first [1] - 18:15
five [3] - 5:17, 19:11, 30:17
fled [2] - 6:5, 10:9
Floor [1] - 1:22, 31:21
FLORIDA [1] - 1:1
Florida [9] - 1:4, 1:16, 1:18, 1:23, 2:4, 2:7, 7:9, 23:21, 31:21
fog [1] - 5:8
follow [1] - 12:3
followed [1] - 10:17
FOR [3] - 1:14, 2:2, 2:5
Forbes [1] - 19:5
foregoing [1] - 31:11
foreign [1] - 26:8
form [1] - 22:25
fortunately [1] - 18:20
founder [2] - 15:25, 16:7
frame [1] - 24:7
fraud [1] - 16:7
freeze [3] - 13:2, 20:12
front [1] - 16:22, 19:8
frozen [1] - 27:25
function [1] - 6:15
funds [1] - 30:2

**G**

gains [1] - 6:19
general [1] - 28:25
gentlemen [1] - 30:21
girlfriend [4] - 11:2, 13:9, 27:19, 28:10
given [1] - 27:11
Glades [1] - 2:6
glasses [1] - 5:8
good-faith [1] - 28:4
grant [1] - 20:3
granted [1] - 18:4
granting [1] - 29:13
great [2] - 15:15, 17:23
greater [1] - 29:15
guess [1] - 9:15
guy [1] - 21:13

**H**

half [1] - 24:3
halt [1] - 24:25
hands [1] - 23:15
happy [4] - 13:19, 17:10, 17:13, 18:2
harm [1] - 14:18
hear [1] - 15:13
HEARING [1] - 1:10
hearing [6] - 5:16, 6:10, 9:20, 14:4, 14:9, 14:13, 29:23, 31:14
held [6] - 11:19, 13:7, 22:12, 23:17, 24:15, 27:24
hello [1] - 14:21
help [3] - 9:16, 19:19, 28:25
helped [1] - 19:16
hereby [1] - 31:11
hide [1] - 6:14
Highway [1] - 1:15
himself [1] - 8:12
hold [7] - 13:3, 16:2, 23:16, 25:21, 25:22, 26:21
holder [6] - 13:5, 21:24, 22:3, 27:4, 27:9, 27:19
holders [2] - 10:22, 11:15
holders' [1] - 12:21
holding [1] - 26:20
hole [1] - 25:6
Honor [27] - 4:5, 4:10, 4:14, 4:21, 5:3, 5:10, 6:1, 7:4, 9:12, 10:19, 11:9, 14:8, 14:23, 15:3, 15:4, 15:8, 17:10, 17:14, 17:18, 17:24, 18:3, 20:7, 28:19, 29:23, 30:25, 31:1, 31:5
Honor's [3] - 9:6, 27:3, 27:22
HONORABLE [1] - 1:11
hopefully [1] - 14:1

**I**

identifiable [2] - 22:23, 23:11
identification [1] - 27:18
identified [4] - 20:16, 23:2, 28:12, 28:13
identify [2] - 20:9, 23:23
identity [1] - 6:14
ill [1] - 6:19
ill-begotten [1] - 6:19
illegal [1] - 25:8
illustration [1] - 18:5
ILONA [1] - 1:20, 31:19
immediately [1] - 26:1
impacted [2] - 27:14, 28:5
important [1] - 23:7

4

impossible [1] - 12:19
INC [1] - 1:7
Inc [1] - 4:3
inclined [2] - 7:7, 7:16
include [1] - 20:18
included [2] - 12:5, 20:14
including [1] - 19:13
incredibly [1] - 23:7
increments [1] - 13:20
indicates [1] - 27:18
individuals [1] - 4:11
Information [1] - 15:25
information [9] - 8:4, 8:7, 16:6, 18:2, 19:13, 21:13, 26:2, 26:3, 27:8
initial [1] - 12:22
injunction [18] - 5:1, 5:25, 7:6, 13:25, 14:2, 14:7, 14:17, 18:25, 19:1, 19:24, 20:3, 20:15, 20:18, 20:19, 22:6, 29:6, 29:11, 29:13
INJUNCTION [1] - 1:10
injury [1] - 14:20
innocent [2] - 13:7, 24:10
inside [3] - 7:14, 12:18, 12:19
instance [7] - 18:4, 18:10, 21:15, 23:2, 24:22, 25:1
instantaneously [1] - 25:2
intend [3] - 8:18, 8:23, 14:6
intended [1] - 14:4
interest [2] - 29:14, 29:16
interested [1] - 30:8
interim [1] - 23:13
internet [1] - 10:8
introduce [1] - 15:7
investigate [1] - 28:25
investigating [2] - 16:10, 19:10
investigation [5] - 16:19, 19:5, 20:24, 23:18, 27:20
investigations [1] - 16:8
investigators [1] - 19:10
investing [2] - 26:13, 26:18
investment [2] - 26:12, 26:17
INVESTORS [1] - 1:7
Investors [2] - 4:3, 6:7
irreparable [1] - 14:18
issuance [2] - 20:3, 22:6
issue [8] - 11:12, 14:15, 18:21, 19:25, 20:7, 21:2, 29:7, 30:18
issued [2] - 20:8
items [1] - 23:17
itself [1] - 17:16

**J**

JAMES [1] - 2:5
James [1] - 4:8
Jim [1] - 4:21
JINYAO [1] - 1:4
JOHN [1] - 2:2
John [2] - 4:17, 27:4
Judge [1] - 31:3
JUDGE [1] - 1:11
judgment [5] - 5:13, 6:13, 10:11, 11:21, 11:22
Justice [2] - 19:6, 19:12

**K**

Kapp [1] - 4:18
KAPP [1] - 2:3
Kara [1] - 4:18
KARA [1] - 2:3
keep [1] - 20:24
KENNETH [1] - 1:11
kind [1] - 20:2
knowledge [2] - 18:7, 20:20
known [2] - 5:18, 10:21

**L**

L-I-U [1] - 28:12
Lamborghini [1] - 22:18
larger [1] - 18:17
largest [1] - 19:3
last [8] - 5:1, 5:18, 19:11, 20:18, 25:2, 25:4, 26:16
late [1] - 10:16
launder [1] - 18:18
laundering [2] - 19:6, 25:11
LAW [1] - 1:15
Law [1] - 4:6
law [2] - 14:19, 26:21
lawsuit [1] - 11:6
lawyers [2] - 5:11, 28:23
learned [1] - 18:2
leave [1] - 5:6
legitimate [1] - 25:12
LEIDEL [1] - 1:4
Leidel [2] - 4:7, 16:16
lengthy [1] - 14:6
less [1] - 21:1
letter [1] - 13:2
LEWIS [2] - 2:2, 4:14
Lewis [1] - 4:15
Lexus [5] - 22:19, 22:20, 22:22, 23:3
license [1] - 27:7
Lighthouse [2] - 1:16, 1:18
likelihood [2] - 14:18, 14:19
likely [1] - 21:16

limitation [1] - 29:9
limitations [1] - 31:15
limited [1] - 15:2
line [1] - 21:20
link [1] - 9:5
Liu [4] - 4:2, 19:13, 28:12, 30:3
LIU [1] - 1:4
LLC [1] - 2:6
local [1] - 7:9
logged [1] - 6:6
looking [1] - 16:25
Ltd [1] - 4:16
luck [1] - 24:17
Lupowitz [1] - 31:19
LUPOWITZ [2] - 1:20, 31:19

**M**

majority [1] - 28:4
man [1] - 10:6
management [1] - 29:24
manner [1] - 20:11
MARC [1] - 1:14
Marc [2] - 4:5, 5:10
market [1] - 24:15
MARRA [1] - 1:11
marshalling [1] - 10:14
mask [3] - 5:5, 5:8, 15:10
matter [2] - 12:9, 16:16, 31:13
mean [3] - 23:14, 25:2, 30:16
meaning [1] - 18:13
measures [1] - 6:14
members [5] - 6:20, 9:25, 10:12, 10:24, 11:10
mentioned [1] - 13:11
merits [1] - 14:20
met [1] - 29:7
Miami [5] - 1:22, 1:23, 2:4, 31:21, 31:21
MICHAEL [1] - 1:4
might [7] - 8:17, 13:10, 14:10, 22:11, 24:16, 26:10, 27:14
Miller [1] - 4:7
MILLER [1] - 1:17
mingle [1] - 6:17
minimal [1] - 29:15
minute [2] - 6:1, 24:13
mixed [1] - 21:6
mixers [1] - 18:17
mixing [3] - 6:15, 25:8, 25:10
mode [1] - 9:6
modify [2] - 19:22, 29:8
moment [2] - 22:16, 26:20
moments [1] - 5:19

money [13] - 6:21, 10:18, 11:10, 11:25, 18:18, 19:6, 23:24, 23:25, 24:21, 25:11, 26:6, 26:8, 29:2
money-laundering [1] - 19:6
money-service [2] - 23:24, 23:25
monies [1] - 10:24
monitoring [1] - 12:1
month [2] - 26:23, 26:24
months [2] - 25:21, 25:23
morning [1] - 17:1
most [2] - 12:17, 12:23
motion [25] - 4:24, 5:24, 6:11, 6:13, 8:22, 11:8, 12:23, 13:13, 13:22, 14:2, 14:3, 14:7, 19:21, 19:22, 19:23, 20:1, 22:7, 28:9, 29:8, 29:10, 30:1, 30:2, 30:5, 30:11, 30:14
moved [3] - 7:1, 12:4, 12:12
movement [1] - 18:12
moving [2] - 14:17, 18:13
MR [42] - 3:4, 4:5, 4:10, 4:14, 4:20, 4:21, 4:23, 5:3, 5:7, 8:6, 8:23, 9:12, 14:21, 14:22, 15:8, 15:14, 15:15, 15:22, 17:10, 17:13, 17:18, 17:24, 20:4, 20:6, 20:7, 22:9, 22:16, 23:20, 24:18, 25:22, 25:25, 26:11, 27:1, 28:8, 28:19, 29:23, 30:9, 30:16, 30:25, 31:1, 31:3, 31:5
multiple [1] - 6:16
must [1] - 14:16

**N**

name [4] - 15:17, 15:18, 16:6, 28:13
necessary [1] - 27:2
need [7] - 15:2, 16:3, 17:15, 23:3, 24:4, 24:7
neighbor [2] - 22:21, 23:2
neighbor's [1] - 22:21
new [3] - 8:4, 9:11, 19:18
newspaper [1] - 10:8
next [1] - 26:10
nice [1] - 31:2
NO [1] - 1:2
nominal [1] - 8:25
North [3] - 1:15, 1:22, 31:21
Northfield [1] - 4:16
note [1] - 24:19
noted [1] - 7:4
notice [4] - 5:16, 5:23, 18:6
noticed [1] - 14:9
novel [1] - 30:18
number [4] - 4:3, 9:21,

21:7, 27:13

# O

**O'CONNOR** [1] - 2:3
**O'Connor** [1] - 4:16
**object** [1] - 21:11
**objection** [1] - 9:8
**objections** [1] - 30:7
**obligated** [2] - 20:11, 23:25
**obligations** [1] - 24:21
**obtained** [1] - 8:11
**obviously** [1] - 18:24
**occurred** [2] - 13:20, 31:14
**odds** [1] - 28:2
**OF** [1] - 1:1
**offer** [3] - 7:7, 8:23, 30:19
**Officer** [1] - 15:25
**officer** [1] - 16:7
**official** [1] - 1:21
**Official** [1] - 31:20
**old** [2] - 9:21
**older** [1] - 18:19
**once** [5] - 12:17, 21:13, 23:22, 24:7, 24:18, 30:23
**one** [13] - 12:17, 12:22, 14:16, 16:2, 16:25, 19:14, 21:3, 21:8, 24:10, 26:8, 26:10, 27:23, 30:22
**one-dollar** [1] - 21:3
**opened** [1] - 27:9
**operate** [1] - 24:23
**opinions** [2] - 17:4, 17:8
**opposed** [1] - 22:14
**Order** [1] - 4:1
**order** [28] - 4:25, 5:15, 5:24, 6:11, 6:17, 7:2, 7:6, 8:1, 11:9, 12:23, 13:2, 13:13, 13:21, 13:24, 14:15, 19:23, 20:17, 21:23, 22:1, 22:2, 25:18, 26:5, 27:4, 27:14, 29:9, 29:19, 30:8, 30:23
**ordered** [1] - 13:17
**orders** [2] - 7:1, 8:17
**otherwise** [2] - 8:21, 28:19
**overseas** [5] - 7:15, 14:23, 19:4, 23:9, 29:1
**overview** [1] - 9:17
**own** [1] - 24:12

# P

**p.m** [3] - 1:6, 31:7
**PAGE** [1] - 3:2
**Pages** [1] - 1:8
**PALM** [1] - 1:2
**Palm** [1] - 1:4
**pandemic** [1] - 31:14
**papers** [3] - 7:21, 9:17, 28:20

**paragraph** [2] - 20:14, 20:19
**part** [5] - 8:13, 11:21, 12:4, 16:19, 29:10
**participate** [1] - 13:6
**particular** [1] - 16:15
**party** [7] - 8:25, 13:8, 14:5, 14:17, 24:10, 29:14, 30:8
**pass** [1] - 30:8
**passed** [1] - 12:1
**passport** [2] - 27:7, 27:18
**past** [3] - 5:17, 5:20, 11:3
**Paul** [3] - 27:19, 28:10
**Pawel** [6] - 15:11, 15:19, 16:2, 16:6
**PAWEL** [3] - 3:3, 15:16, 15:19
**pending** [3] - 11:8, 23:18, 30:1
**people** [4] - 23:16, 27:14, 28:4, 28:17
**percent** [1] - 28:17
**perhaps** [5] - 6:21, 8:7, 14:23, 15:1, 27:1
**period** [2] - 14:6, 28:1
**permanent** [3] - 14:2, 14:7, 19:1
**permission** [1] - 11:9
**person** [2] - 22:12, 27:20
**phone** [8] - 4:12, 5:12, 9:5, 9:9, 15:11, 28:22, 28:23, 30:22
**physically** [1] - 23:16
**piece** [1] - 22:22
**Plaintiff** [2] - 4:7, 15:16
**plaintiff** [1] - 7:21
**plaintiff's** [2] - 4:24, 5:12
**Plaintiffs** [1] - 1:5
**PLAINTIFFS** [2] - 1:14, 2:2
**plan** [1] - 14:1
**plane** [1] - 14:11
**plans** [1] - 24:14
**pleasure** [2] - 9:17, 17:22
**podium** [1] - 5:3
**Point** [2] - 1:16, 1:18
**point** [9] - 8:7, 11:15, 12:15, 14:22, 16:13, 17:25, 24:18, 27:13, 28:21
**police** [1] - 22:20
**portions** [1] - 12:11
**position** [1] - 24:10
**positive** [1] - 7:12
**possession** [2] - 22:17, 22:24
**potential** [1] - 29:14
**precipitously** [1] - 26:10
**prefer** [2] - 5:6, 17:10
**preference** [1] - 9:6
**preliminary** [14] - 5:1, 5:25,

7:5, 7:6, 13:24, 18:25, 19:24, 20:3, 20:14, 20:18, 20:19, 22:6, 29:6, 29:11
**PRELIMINARY** [1] - 1:10
**prepared** [1] - 7:6
**present** [2] - 8:19, 9:1
**presentation** [1] - 13:11
**presented** [2] - 8:5, 8:21
**presume** [1] - 8:2
**pretty** [2] - 24:24, 25:6
**proceeding** [2] - 5:22, 6:25
**proceedings** [2] - 5:17, 31:12
**process** [3] - 26:2, 28:12, 28:17
**product** [2] - 16:8, 16:13
**proffer** [2] - 6:24, 15:3
**proffered** [1] - 7:17
**Project** [1] - 6:7
**PROJECT** [1] - 1:7
**project** [1] - 4:2
**prolonged** [1] - 27:25
**pronounce** [1] - 28:11
**proof** [1] - 20:21
**property** [9] - 20:22, 22:17, 22:18, 22:22, 22:24, 23:10, 23:23, 26:20, 26:21
**propose** [1] - 19:25
**proposed** [3] - 11:9, 29:19, 30:23
**prove** [6] - 22:13, 22:16, 22:21, 22:23, 24:16, 24:25
**provide** [6] - 16:12, 18:5, 20:21, 22:25, 24:5, 26:3
**provided** [3] - 5:18, 7:23, 17:4
**providers** [1] - 23:25
**providing** [1] - 19:12
**proving** [1] - 22:14
**public** [2] - 29:14, 29:15
**purchase** [6] - 23:9, 23:10, 23:13, 25:16
**purchased** [2] - 23:1, 25:12
**purchaser** [12] - 13:8, 20:22, 21:21, 22:11, 22:15, 23:8, 24:17, 25:1, 26:22, 27:16, 27:23, 28:4
**purchaser's** [2] - 22:13, 22:14
**purchasers** [3] - 23:18, 24:11, 29:15
**pursuant** [1] - 5:15
**pursue** [2] - 11:24, 29:1
**put** [8] - 21:5, 21:8, 21:14, 21:23, 24:9, 24:24, 25:25, 30:4
**putting** [1] - 29:16

# Q

**questions** [7] - 9:2, 15:5, 18:1, 29:25, 30:12, 30:19
**quick** [1] - 28:17
**quickly** [3] - 27:17, 28:6, 30:17

# R

**rabbit** [1] - 25:6
**raised** [1] - 29:7
**rather** [2] - 9:10, 30:14
**Raton** [1] - 2:7
**read** [2] - 10:7, 20:11
**reads** [1] - 21:22
**ready** [1] - 9:15
**really** [2] - 7:19, 27:19
**reason** [6] - 13:16, 13:23, 14:12, 18:24, 30:10
**receipt** [3] - 20:15, 20:21, 26:1
**received** [4] - 5:15, 5:16, 5:22, 21:15
**RECEIVER** [1] - 2:5
**receiver** [9] - 4:8, 4:21, 5:14, 6:3, 7:8, 7:21, 8:25, 10:13, 11:1
**receivership** [2] - 6:20, 11:11
**receives** [1] - 24:19
**recent** [1] - 7:13
**recently** [2] - 7:12, 12:24
**recessed** [1] - 31:7
**recipient** [1] - 22:11
**recipients** [1] - 20:20
**record** [9] - 4:12, 7:18, 8:13, 8:15, 8:17, 8:19, 8:22, 8:24, 15:18
**records** [1] - 13:18
**recover** [5] - 9:24, 10:17, 11:7, 11:25, 29:2
**recovered** [3] - 29:17, 29:18, 30:2
**refusing** [1] - 21:24
**relates** [2] - 18:22, 19:6
**relation** [1] - 16:10
**relatively** [1] - 27:17
**released** [1] - 26:4
**relevant** [1] - 21:2
**relief** [1] - 20:1
**rely** [1] - 28:20
**relying** [2] - 7:21, 7:24
**remains** [1] - 6:6
**remarking** [1] - 9:19
**remedy** [1] - 14:19
**remember** [1] - 6:1
**remotely** [1] - 31:16
**report** [13] - 7:17, 8:10,

8:11, 8:12, 8:16, 12:10,
16:19, 16:22, 17:3, 17:8,
17:9, 17:16, 19:8
**REPORTED** [1] - 1:19
**reporter** [1] - 16:3
**Reporter** [2] - 1:21, 31:20
**reporting** [1] - 31:16
**reports** [1] - 19:5
**request** [3] - 12:22, 14:13,
22:1
**required** [2] - 14:15, 24:5
**requirements** [1] - 29:6
**requires** [1] - 20:15
**research** [1] - 11:16
**reside** [1] - 27:8
**resides** [1] - 12:3
**resolution** [1] - 28:3
**resolve** [2] - 22:7, 23:19
**resolved** [3] - 19:24, 20:2,
28:5
**resources** [1] - 14:5
**respect** [1] - 14:7
**responses** [1] - 30:7
**restrain** [4] - 21:24, 22:2,
24:1, 24:4
**restraining** [17] - 4:25,
5:24, 6:11, 7:2, 7:6, 8:1,
12:23, 13:13, 13:21, 13:24,
19:23, 20:17, 21:23, 22:1,
25:18, 26:5, 29:9
**restraints** [1] - 25:4
**restriction** [1] - 29:10
**restrictions** [1] - 29:16
**result** [2] - 11:6, 19:17
**resulted** [2] - 10:15, 10:23
**retained** [1] - 16:16
**review** [2] - 29:20, 30:24
**risk** [2] - 28:2, 29:14
**RMR** [2] - 1:20, 31:19
**Road** [2] - 1:18, 2:6
**role** [1] - 16:7
**RPR** [2] - 1:20, 31:19
**ruling** [1] - 14:8

## S

**Sallah** [7] - 4:8, 4:21, 6:3,
7:8, 8:18, 8:23, 19:15
**SALLAH** [5] - 2:5, 2:6, 4:21,
4:23, 31:5
**Sallah's** [1] - 6:4
**Sample** [1] - 1:18
**Samuel** [1] - 4:15
**SAMUEL** [1] - 2:2
**satisfied** [1] - 29:21
**satisfy** [1] - 14:16
**science** [1] - 16:8
**second** [1] - 16:2
**seconds** [1] - 21:1

**Secrecy** [2] - 24:6, 24:24
**see** [3] - 12:4, 21:12, 21:20
**seek** [1] - 5:25
**seeking** [2] - 20:1, 29:10
**sell** [1] - 24:14
**send** [1] - 23:5
**sending** [1] - 10:22
**sent** [4] - 18:17, 19:4, 19:9,
21:25
**serial** [1] - 21:7
**serve** [1] - 24:8
**served** [1] - 29:16
**servers** [1] - 6:6
**service** [3] - 23:24, 23:25,
25:8
**services** [1] - 25:10
**set** [1] - 19:14
**settlement** [2] - 10:15,
10:23
**several** [5] - 18:16, 20:8,
23:20, 23:21, 25:9
**shame** [1] - 10:3
**share** [1] - 18:2
**show** [3] - 13:18, 13:19,
25:5, 25:12, 25:15, 25:16
**showing** [3] - 25:7, 25:13
**shredded** [1] - 6:7
**shut** [3] - 9:25, 10:9, 11:15
**side** [2] - 5:12, 17:11
**sign** [3] - 9:14, 26:24, 30:14
**significant** [1] - 27:13
**SILVER** [22] - 1:17, 1:17,
3:4, 4:10, 15:8, 15:15, 15:22,
17:10, 17:13, 17:18, 17:24,
20:4, 20:7, 22:9, 22:16,
23:20, 24:18, 25:22, 25:25,
26:11, 28:8, 31:1
**Silver** [12] - 4:6, 5:11, 8:10,
9:3, 9:13, 9:19, 12:6, 14:24,
15:6, 15:8, 30:1
**similar** [1] - 11:19
**simply** [4] - 8:24, 24:2,
24:4, 25:18
**simultaneously** [1] - 18:16
**sitting** [1] - 24:2
**situation** [1] - 27:17
**slightly** [1] - 12:24
**slowly** [2] - 16:3, 16:4
**small** [4] - 6:16, 12:11,
13:20, 28:2
**so-to-speak** [1] - 27:24
**sold** [1] - 27:11
**somewhat** [2] - 28:22,
30:18
**soon** [2] - 29:20, 30:24
**source** [1] - 25:12
**Southern** [1] - 23:21
**SOUTHERN** [1] - 1:1
**speaking** [1] - 5:5

**speaks** [1] - 17:16
**specific** [6] - 8:9, 12:12,
12:21, 13:6, 23:23, 27:5
**specifically** [2] - 10:11,
18:1
**speculate** [1] - 24:14
**spell** [1] - 15:18
**spirit** [1] - 13:1
**spot** [1] - 25:17
**stamped** [1] - 16:24
**stand** [1] - 17:7
**state** [4] - 4:4, 4:12, 7:9,
15:17
**statements** [1] - 17:8
**STATES** [2] - 1:1, 1:11
**States** [5] - 1:21, 19:16,
24:23, 25:9, 31:20
**statistically** [1] - 26:16
**status** [1] - 22:14
**stealing** [3] - 10:10, 16:13,
18:8
**stems** [1] - 11:12
**STENOGRAPHICALLY** [1]
- 1:19
**still** [3] - 6:6, 18:20, 30:18
**stole** [2] - 11:14, 21:16
**stolen** [27] - 6:19, 12:13,
16:11, 16:17, 17:5, 19:7,
19:19, 20:16, 20:20, 20:22,
21:16, 21:17, 21:19, 22:17,
22:20, 22:22, 22:24, 23:3,
23:10, 23:23, 24:13, 24:21,
26:20, 26:21, 29:16, 29:17
**stop** [1] - 24:24
**styled** [1] - 29:24
**subject** [3] - 6:12, 12:9,
31:15
**submit** [1] - 29:19
**submitted** [6] - 7:25, 8:9,
12:10, 14:25, 16:20, 17:17
**subpoena** [2] - 23:5, 24:8
**subpoenas** [2] - 12:20,
20:8
**subsequent** [3] - 6:10,
10:18, 21:4
**substantial** [1] - 14:19
**success** [2] - 14:19, 18:5
**successful** [2] - 18:23,
19:18
**sufficient** [1] - 14:8
**suggest** [2] - 9:22, 30:16
**Suite** [2] - 2:4, 2:6
**Sullivan** [1] - 4:17
**SULLIVAN** [3] - 2:2, 4:20,
31:3
**support** [2] - 8:17, 8:22
**supporting** [1] - 17:17
**swear** [3] - 8:15, 15:7,
15:15

**sworn** [5] - 8:5, 8:16, 8:20,
15:16, 17:17
**system** [1] - 9:16

## T

**team** [2] - 18:19, 21:12
**technological** [1] - 31:15
**technologies** [1] - 19:18
**technology** [4] - 11:17,
12:5, 18:19, 23:1
**Technology** [1] - 4:16
**teleconference** [1] - 2:1
**temporary** [15] - 4:25, 5:24,
6:11, 7:1, 7:5, 8:1, 12:23,
13:13, 13:21, 13:24, 14:17,
19:23, 20:17, 21:22, 29:8
**tens** [1] - 10:10
**terms** [2] - 9:6, 15:2
**tested** [1] - 7:12
**testify** [2] - 7:16, 8:3
**testimony** [8] - 7:7, 7:22,
8:5, 8:20, 8:21, 15:2, 15:4,
17:17
**THE** [38] - 1:11, 1:14, 2:2,
2:5, 4:2, 4:9, 4:11, 4:19,
4:22, 4:24, 5:4, 7:24, 8:14,
9:8, 15:6, 15:17, 15:19,
17:12, 17:15, 17:20, 17:22,
19:20, 22:5, 22:10, 23:12,
24:9, 25:20, 25:24, 26:6,
28:7, 28:18, 29:5, 30:6,
30:10, 30:21, 31:2, 31:4,
31:6
**theft** [1] - 11:20
**themselves** [1] - 23:19
**therefore** [1] - 31:15
**they've** [1] - 25:10
**thinks** [1] - 24:11
**third** [3] - 13:8, 24:10,
29:14
**third-party** [1] - 13:8
**thousands** [1] - 10:10
**title** [2] - 23:17
**today** [16] - 4:17, 6:10,
6:25, 7:4, 7:7, 7:10, 7:14,
10:8, 11:12, 14:9, 14:11,
18:24, 24:3, 29:4, 30:13,
31:3
**today's** [2] - 14:3, 29:23
**tomorrow** [1] - 14:2
**took** [4] - 9:25, 21:17,
22:18, 22:19
**totality** [2] - 11:13, 12:14
**Toyota** [1] - 22:18
**trace** [8] - 12:15, 12:20,
16:12, 18:19, 18:20, 19:1,
29:1
**traceable** [1] - 12:9
**traced** [4] - 11:4, 11:20,

13:3, 13:9

tracing [6] - 17:5, 21:2, 21:11, 21:18, 21:20, 28:15

traditional [2] - 11:25, 14:16

transactions [4] - 6:16, 13:19, 18:16, 23:19

transcript [1] - 13:17

transcription [1] - 31:12

transferrable [1] - 22:23

traveled [1] - 14:11

tree [1] - 11:13

tremendous [1] - 26:15

TRO [11] - 18:4, 18:5, 18:7, 18:8, 18:15, 18:21, 18:23, 20:8, 20:11, 25:3, 25:19

TROs [2] - 23:22

true [2] - 8:16, 17:6

try [1] - 21:1

trying [1] - 24:9

two [2] - 24:3, 26:16

two-and-half [1] - 24:3

type [1] - 27:21

typical [1] - 18:13

## U

U.S [3] - 11:7, 21:19, 29:1

ultimate [1] - 22:10

ultimately [1] - 10:15

unavailability [1] - 14:18

under [6] - 19:5, 23:24, 24:6, 24:21, 24:23, 26:21

underlying [1] - 5:14

understood [1] - 16:5

unfortunately [4] - 19:3, 23:8, 24:18, 26:19

united [1] - 1:21

UNITED [2] - 1:1, 1:11

United [4] - 19:16, 24:23, 25:9, 31:20

unless [3] - 8:4, 26:7, 26:21

unlikely [1] - 28:3

unnecessarily [1] - 27:25

unregulated [1] - 26:18

up [14] - 5:6, 10:11, 16:13, 18:21, 19:13, 20:7, 22:12, 22:13, 23:17, 24:15, 25:21, 25:23, 26:19, 27:24

updated [1] - 19:13

usual [1] - 18:12

## V

vaccinated [3] - 5:7, 7:11, 15:9

validate [1] - 26:22

validation [1] - 19:18

valuation [1] - 26:15

value [1] - 26:9

vast [1] - 28:4

Vernon [16] - 5:15, 6:5, 6:25, 9:25, 10:3, 10:14, 10:20, 11:14, 12:13, 13:9, 13:15, 14:10, 18:6, 18:22, 19:13, 27:19

Vernon's [6] - 10:21, 11:2, 11:20, 18:22, 27:19, 28:10

version [1] - 21:22

via [3] - 2:1, 5:23, 9:5

virtually [1] - 28:22

vs [1] - 1:6

## W

wait [3] - 14:6, 24:12, 30:23

waiting [3] - 9:13, 9:19, 30:6

walk [2] - 17:11, 18:3

wallet [2] - 11:19, 12:8

wallets [1] - 6:18

wealthy [1] - 10:6

week [2] - 5:1, 26:23

weeks [3] - 25:3, 25:21, 25:23

weigh [1] - 29:13

WEST [1] - 1:2

West [1] - 1:4

whatnot [1] - 18:14

whatsoever [1] - 25:15

whereabouts [1] - 6:15

whole [1] - 9:11

wife [1] - 7:12

WILSON [1] - 1:4

wish [3] - 5:4, 7:8, 7:22

WITES [16] - 1:14, 1:15, 4:5, 5:3, 5:7, 8:6, 8:23, 9:12, 14:22, 20:6, 27:1, 28:19, 29:23, 30:9, 30:16, 30:25

Wites [8] - 4:5, 4:6, 5:2, 5:11, 17:25, 19:21, 20:4, 28:16

withdraw [2] - 21:7, 21:8

withdraws [1] - 21:14

withdrew [1] - 21:17

witness [5] - 7:15, 9:4, 12:10, 15:7, 15:16

WITNESS [3] - 3:2, 15:19, 17:22

witness's [1] - 7:25

word [1] - 26:1

words [1] - 27:24

works [1] - 23:16

world [3] - 6:18, 12:2, 19:2

worth [1] - 11:7

write [1] - 16:19

## X

XYUXYU [1] - 28:11

## Y

year [2] - 11:3, 26:16

years [4] - 5:17, 11:25, 19:11, 30:17

yesterday [5] - 19:22, 20:2, 22:4, 22:8, 30:11

yesterday's [1] - 29:8

## Z

zero [1] - 27:10

Zoom [2] - 9:5, 9:11