# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Civil Action No. 9:16-cv-80060-MARRA**

BRANDON LEIDEL, individually,
and on behalf of All others Similarly Situated,

      Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC., a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

      Defendants.
_____/

**ORDER GRANTING PLAINTIFF AND ASSIGNEE'S MOTION FOR ASSET FREEZE INJUNCTION AND ORDER TO TRANSFER THE STOLEN BITCOIN TO ASSIGNEE**

THIS MATTER is before the Court upon the motion of the Plaintiff Class, Plaintiff James D. Sallah, not individually, but solely in his capacity as the Court-Appointed Receiver for Project Investors, Inc. d/b/a Cryptsy (hereinafter "Receiver"), and Assignee North Field Technology Ltd. ("North Field") to convert the Temporary Restraining Order ("TRO") issued by this Court into a preliminary injunction ordering the freeze and transfer of the bitcoin ("BTC") and other forked digital assets subject to the Amended Final Default Judgment against Defendant PAUL VERNON ("Defendant Vernon"). BY THEIR MOTION, the Plaintiff Class, Receiver, and Assignee North Field seek an injunction:

(1) Freezing, as identified in the Amended Final Default Judgment, 11,825.1484 BTC stolen from the Plaintiff Class on July 29, 2014 and then held, as of the date of the July 29, 2014 theft, in the digital wallets identified in Tables 1 and 2 below (the "Stolen Bitcoin");

(2) Freezing, as identified in the Amended Final Judgment, all Stolen Bitcoin that has been moved into the Secondary Wallet Addresses identified in Table 3 below and in **Appendix "A"** attached to this Order;

(3) Freezing the forked digital assets associated with the Stolen Bitcoin, which includes Bitcoin Cash, Bitcoin Gold, Bitcoin Diamond, Super Bitcoin, Bitcoin2, Bitcoin Private, Bitcoin Dark, and Bitcoin SV in an amount equal to the amount of BTC in each of the wallets identified in the tables below, along with additional forked assets of Bitcore (BTX) in an amount equal to one-half the amount of BTC in the digital wallets identified in the tables below (the "Forked Digital Assets") (collectively, "Stolen Bitcoin and Forked Digital Assets"); and

(4) Transferring to a wallet address controlled by the holders of the Amended Final Default Judgment any and all Stolen Bitcoin and Forked Digital Assets subject to the Amended Final Default Judgment.

**Table 1**

| # | Original Wallet Addresses | Amount of Bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 18E3AWaadnUPQ1aMpfEoyTXN49NYAZzbpD | 1,000 BTC |
| 2 | 1DSxcqygQ69MxRc8oW94kQjWHzMb4BYsnG | 1,000 BTC |
| 3 | 1LwZYCt8dDhZDMd6uXGMwVsmWPXW9eX9Ww | 1,000 BTC |
| 4 | 13nAJw8jw7BiYKLnad9YGdPxybK9mgPkM6 | 1,000 BTC |
| 5 | 1DqCNwUffFTxULH8crehynw53TwrHnrv1c | 1,000 BTC |
| 6 | 1AWdxqABYiDxcY1sxzPzEotvjFjq8NUY8Z | 1,000 BTC |
| 7 | 18nb1NQCeoZLucMdrNdu2wb7jcyDvSgr3Y | 1,000 BTC |
| 8 | 13QxkdrhfeQ6aCF4TBWg8knQGBmiwL2rpV | 0.0961 BTC |
| 9 | 17nmFFPSANbPGgdtoEEuc6xbHoaP1n6ZBb | 1,000 BTC |

| 10 | 14nzbWNMPjmvwy96uuFVXtj6VgChJtHvU9 | 1,000 BTC |
|---|---|---|
| 11 | 1315LzDFcBLDBKgVAr4ZhCkcT5GXivpiuj | 1,000 BTC |
| 12 | 1KBy6MvcBb2qQRS5fQT92o2c5Dq2W6ygx4 | 1,325 BTC |
| | TOTAL | 11,325.0961 BTC |

**Table 2**

| # | Newly-Discovered Wallet Addresses | Amount of Bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 1BjRLELf3xX5Tz8c43H36nkmNwqnPuuVAv | 0.010265 BTC |
| 2 | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 100 BTC |
| 3 | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 100 BTC |
| 4 | 19TbZFeHjTx76yKnwGTqehTh1VLHLxx9km | 0.010659 BTC |
| 5 | 159m8sYcDJwPfJaVpLeKJitkQTiPKevnY4 | 100 BTC |
| 6 | 1JhoQ1Zs2EqjXh1GzjwtQethAbNG6bNGTW | 0.010021 BTC |
| 7 | 1AA8YJ2DeYr99BS1PrsFKWC1p9hXT28dup | 100 BTC |
| 8 | 1ABpMg9prfa6dtZqTqpcmN5cAsjj1Cx77V | 0.010393 BTC |
| 9 | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 100 BTC |
| 10 | 19mkygdiY9Ay7dL2LLmASZzi2bXEp9NwLj | 0.010981 BTC |
| | TOTAL | 500.052319 BTC |

3

Civil Action No. 9:16-cv-80060-MARRA

**Table 3**

| # | Secondary Wallet Addresses Containing Newly Discovered Assets | Newly-Discovered Wallet Addresses From Which Assets Originated | Date and Time of Transfer to Secondary Wallet Address (UTC) | Amount Traceable To Newly-Discovered Wallet Address |
|---|---|---|---|---|
| 1 | 18tTX9XCrxQL1wsssHE5Qppoh9VNyEJFB8 | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 2021-05-02 17:46 | 4.096 BTC |
| 2 | 1NpQ5uz2MC4cmLSDbmV58YiAarZUUJesG | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 2021-05-02 17:46 | 4.096 BTC |
| 3 | 1KxZc4L6sfWqnQPrPMZbsbhgQX1oqMhqnE | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 2021-05-02 17:46 | 4.096 BTC |
| 4 | 36eg2udC9bKb5JyvZktxJ6MnfS3xHadFai | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 2020-05-14 09:51 | 18.925531 BTC |
| 5 | 3NmP957MF3da9u5wtLYK591JKNeZpJwmxU | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 2020-05-14 10:41 | 11 BTC |
| 6 | 35VheJJNovHsTbJy2iScfqGxqtLR3Sdk3f | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 2020-05-18 06:49 | 16.325525 BTC |
| 7 | 36Ma8dY44xtM8sFKqpvKfb4A8TeXFFvchv | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 2020-04-05 14:15 | 14 BTC |
| 8 | 3EspfvBwtx2Wcg6y2pNX2T8rB599zURoop | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 2020-04-05 14:15 | 12 BTC |
| 9 | 3JpXuV2vAY35wyzvUoNCYHGS8TBJoSh5Ws | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 2020-04-05 14:15 | 11 BTC |
| 10 | 3PEHvQysjnnPLct9M3hUcwauWzTBhioyzN | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 2020-04-05 14:24 | 8.99987577 BTC |

Plaintiff provided notice of the TRO to Defendant Vernon through Defendant Vernon's last known e-mail address and through Defendant Vernon's ex-wife and her legal counsel. *See* Order Granting TRO [ECF No. 155]. The Court set a hearing pursuant to Federal Rule of Civil Procedure 65(b) for Defendant Vernon to appear and show good cause why the Court should not enter a preliminary injunction in this matter. *See id.*

On May 26, 2021, this Court held an evidentiary hearing regarding the preliminary injunction, at which the Plaintiff's expert witness, Pawel Aleksander, Chief Information Officer and Co-Founder of Coinfirm, appeared telephonically and testified before the Court. [ECF No. 163]. Receiver had previously submitted to the Court a report authored by Mr. Aleksander in support of the motion for a TRO. *See* Coinfirm Report [ECF Nos. 153, 153-1]. In that report, Mr. Aleksander explained how the 10 wallet addresses containing 500.052319 newly-discovered BTC were traceable directly to Cryptsy and were assets belonging to the Plaintiff Class. *See* Coinfirm Report [ECF No. 153-1, at 8]. The report further demonstrates that those assets recently began moving in what appears to be an attempt to liquidate the bitcoin that is property of the Plaintiff Class. *See* Coinfirm Report [ECF No. 153-1, at 9]. At the May 26, 2021 hearing, Mr. Aleksander testified that the statements and opinions made in that report were true and accurate. The Court finds Mr. Aleksander credible and that the report speaks for itself.

In considering a preliminary injunction, the Court must evaluate the following factors: (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether the plaintiff has suffered an irreparable injury; (3) the unavailability of an adequate remedy at law; (4) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (5) whether the public interest would or would not be disserved by the injunctive relief. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015). Each of these factors is met here.

First, the Plaintiff Class, Receiver, and Assignee North Field (collectively referred to herein as "Movants") have demonstrated a substantial likelihood of success on the merits of their claims against Defendant Vernon. Specifically, Movants obtained an initial Default Judgment against Defendant Vernon (the "Original Judgment") [ECF No. 123] and an Amended Final Default

Judgment against Defendant Vernon (the "Amended Final Default Judgment") [ECF No. 157]. As reflected in those judgments, Movants have prevailed on the merits in this action. The Amended Final Default Judgment was supported by the Expert Report of Pawel Aleksander, whose report demonstrated that the 500.052319 additional newly-discovered bitcoin were directly traceable to the Cryptsy exchange and are property belonging to the Plaintiff Class. *See* Motion to Amend Final Judgment [ECF Nos. 156, 156-2].

Second, the Original Judgment and Amended Final Default Judgment [ECF Nos. 123, 157] establish that the Movants have been wrongfully deprived by Defendant Vernon of 11,825.1484 Stolen Bitcoin and the associated Forked Digital Assets. [ECF Nos. 123, 157]. As demonstrated in Mr. Aleksander's report, portions of the 11,825.1484 Stolen Bitcoin have begun to move in what appears to be an attempt to liquidate such bitcoin holdings, which are property of the Movants. *See* Exhibit B of Motion to Amend Final Judgment [ECF No. 156-2]. The Court accordingly finds that the Movants have suffered an irreparable injury.

Third, remedies available at law are inadequate to compensate for this injury for several reasons. Defendant Vernon has no right to claim either possession or ownership of the Stolen Bitcoin and associated Forked Digital Assets, yet Defendant Vernon currently has sole dominion and control over these assets and appears to have made efforts to liquidate these assets. Further, considering the speed with which cryptocurrency transactions are made, the fact that transactions on the Bitcoin blockchain are irreversible, as well as the pseudonymous nature of those transactions, remedies at law are inadequate to redress the harm to the Movants.

Fourth, the balance of hardships weighs decidedly in favor of granting injunctive relief. The actual and threatened injuries to the Movants outweigh any possible harm to Defendant Vernon because Defendant Vernon has no right to claim either possession or ownership of the

Stolen Bitcoin and associated Forked Digital Assets. In contrast, the Plaintiff Class has suffered an irreparable injury—the wrongful deprivation of 11,825.1484 Stolen Bitcoin and Forked Digital Assets that belong to them. Defendant Vernon is wrongfully withholding those assets from the Plaintiff Class. The Court has also considered the rights of bona fide purchasers who may have purchased Stolen Bitcoin from Defendant Vernon. Under this Order, any bona fide purchaser will be able to obtain a release from the scope of this injunction for any qualifying assets presently owned or controlled by the affected purchaser upon proof that he/she/it qualifies as a bona fide purchaser in good faith. Therefore, the Court finds that the risk to potential third party bona fide purchasers is minimal and the greater public interest is served by protecting the corpus of the Stolen Bitcoin so that it can be recovered for the benefit of the Plaintiff Class.

Finally, a preliminary injunction would not disserve the public interest, but rather would further it. The public interest is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury). The public interest is also served by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action. An injunction here would thus serve the public interest by placing the Stolen Bitcoin and Forked Digital Assets in the hands of their rightful owners, as in *Jysk*. See *Jysk*, 810 F.3d at 780.

Further, the relief sought by the Movants is well supported by authority in this Circuit and across the country. The Eleventh Circuit has long recognized that district courts have the inherent power to freeze a defendant's assets to ensure the availability of equitable relief. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the district court had authority to freeze assets that could have been used to satisfy equitable relief sought);

*accord Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 979 F. Supp. 2d 1307, 1316 (S.D. Fla. 2013) (report and recommendation), *adopted by* 979 F. Supp. 2d 1307 (S.D. Fla. 2013) (recognizing that "[o]rders freezing assets and prohibiting transfers from . . . accounts are routine methods of enforcing injunctive relief, even if they are directed to third parties in possession of the funds"). Accordingly, when assets can be held or moved by third parties on behalf of a defendant, courts in this District routinely issue orders freezing and transferring assets to enforce equitable relief that extend to those third parties. *See, e.g.*, *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2021 U.S. Dist. LEXIS 2653, at *15-18 (S.D. Fla. Jan. 7, 2021) (granting injunction and asset freeze against defendants in digital asset fraud scheme); *FTC v. Dluca*, No. 18-cv-60379, 2018 U.S. Dist. LEXIS 192310 (S.D. Fla. Apr. 16, 2018) (granting injunction and asset freeze where defendants allegedly secured payments from customers under the false guise of earning income through purported cryptocurrency investments); *Gucci Am. Inc. v. 2005qihui8*, No. 15-cv-61649, 2015 U.S. Dist. LEXIS 180268, at *15-17 (S.D. Fla. Aug. 12, 2015) (granting preliminary injunction ordering third-party PayPal to freeze defendants' assets and divert those assets to a holding account for the trust of the court).

Federal courts across the country likewise routinely issue freeze and transfer orders that extend to third parties with custody or control over such assets. *SEC v. Stefan Qin*, No. 20-cv-10849 (LGS), Doc. 27, p.3-4 (S.D.N.Y. Jan. 6, 2021) (ordering third-parties to freeze defendant's crypto assets); *Amazon Content Servs. LLC v. Kiss Library*, No. 2:20-cv-01048, 2020 U.S. Dist. LEXIS 155676, at *9-11 (W.D. Wash. Aug. 27, 2020) (ordering payment processors, such as BitPay, PayPal and MasterCard, who receive notice of the order to locate defendants' accounts and not allow transfer, withdrawal or disposal of the assets); *SEC v. Blockvest*, No. 18-cv-2287, 2018 U.S. Dist. LEXIS 179424 (S.D. Cal. Oct. 5, 2018) (*ex parte* ruling in SEC enforcement action

freezing defendants' digital assets at financial institutions and coin exchanges and ordering third-parties to hold and not transfer those assets) (set out in order at Docket # 6).

Therefore, HAVING REVIEWED THE MOTION AND SUPPORTING PAPERS and being otherwise fully advised in the premises, **the Court hereby ORDERS AND ADJUDGES**:

1. The motion to convert the Temporary Restraining Order issued by this Court into a preliminary injunction is **GRANTED**.

2. Defendant Vernon, and all persons in active concert or participation with him or his agents, servants or who otherwise having notice of this Order, are permanently enjoined from directly or indirectly transferring the Stolen Bitcoin and Forked Digital Assets other than to a digital wallet or account designated by the holders of the Amended Final Default Judgment.

3. Defendant Vernon, and all persons in active concert or participation with him having notice of this Order, shall within seven (7) days of the entry of this Order transfer the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account designated by the holders of the Amended Final Default Judgment.

4. Any persons, firms, corporations, or other entities, including but not limited to digital asset trading platforms, cryptocurrency exchanges, payment processors, digital cryptocurrency wallet providers, developers, mining pools, other parties involved in validating transactions on the Bitcoin network, and other parties receiving notice of this Order shall immediately:

    a. locate the Stolen Bitcoin and Forked Digital Assets;

    b. freeze, or assist in or facilitate the freezing of, the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Table 1, 2, or 3 or **Appendix "A"** attached to this Order, and (other than as Ordered in subsection (c)

      hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets;

   c. freeze all customer accounts related to the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Table 1, 2, or 3 or **Appendix "A"** attached to this Order, and (other than as Ordered in subsection (c) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction involving customer accounts possessing the Stolen Bitcoin and Forked Digital Assets; and

   d. take all steps necessary to transfer, assist in the transfer of, facilitate the transfer of, validate or assist in the validation of the transfer of the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account designated by the holders of the Amended Final Default Judgment.

     5. In addition to the foregoing, and notwithstanding any language herein that may be duplicative or to the contrary, each cryptocurrency exchange at which any Secondary Wallet Address is maintained shall, upon receiving notice of this Order, immediately freeze each Secondary Wallet Address and customer account related thereto and provide the Wallet Address owner/accountholder a copy of this Order. The freeze shall stay in effect for the duration of this Order, or for as long as this Court shall extend the Order by modification or by entry of preliminary or permanent injunctive relief. Should either the cryptocurrency exchange or any affected Wallet Address owner/accountholder wish to be relieved of the restrictions set forth herein, he/she/it may

apply to this Court in writing for relief from the Order and shall serve a copy of his/her/its request for relief upon all counsel and parties of record in this matter.

6. The freeze shall stay in effect for the duration of this Order.

7. Should any affected Wallet Address owner/accountholder or cryptocurrency exchange wish to be relieved of the restrictions set forth herein, he/she/it may apply to this Court in writing for relief from the Order and shall serve a copy of his/her/its request for relief upon all counsel and parties of record in this matter.

8. The Court reserves jurisdiction to enter further orders that are proper to aid in the execution of the Amended Final Default Judgment and to otherwise facilitate the efforts of or taken on behalf of the Plaintiff Class, the Receiver, and Assignee North Field to recover the assets subject to the Amended Final Default Judgment.

9. The Plaintiff class shall post a bond in the amount of $3,000.00 to act as security for any damages that may be incurred by any party to this action if it is determined that this preliminary injunction was wrongfully issued.  If Plaintiffs already posted this amount as security for the issuance of the temporary restraining order, that security shall be deemed to satisfy this requirement.  The requirement of security shall be fulfilled within 5 days of the entry of this order.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 28th day of May, 2021.

KENNETH A. MARRA
United States District Judge