UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,            CASE NO. 9:16-cv-80060-KAM
and on behalf of All others Similarly Situated,

       Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC,
a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

       Defendants.
_____/

**PLAINTIFF AND ASSIGNEE'S MOTION FOR A PERMANENT ASSET FREEZE INJUNCTION AND ORDER TO TRANSFER THE STOLEN BITCOIN TO ASSIGNEE**

Plaintiff Brandon Leidel, individually and on behalf of all other similarly situated members of the Certified Class (the "Plaintiff Class"), and Assignee North Field Technology Ltd. ("North Field"), respectfully move for a permanent injunction ordering an asset freeze and transfer to Assignee of the 11,825.1484 bitcoin (the "Stolen Bitcoin") and all associated assets forked therefrom that were stolen on July 29, 2014 from customers of Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"). Prevailing legal authority supports the requested relief, which is warranted here because all of the elements for issuance of a permanent injunction are satisfied. In short, Plaintiff Class and North Field (collectively referred to herein as "Movants") simply seek to convert the existing amended final default judgment [ECF No. 157] into a permanent injunctive order which will facilitate enforcement of the judgment and collection of the stolen digital assets. In support of this Motion, Movants submit the accompanying Memorandum of Law.

## **MEMORANDUM OF LAW**

## FACTUAL BACKGROUND

### A. The Final Default Judgment

On July 27, 2017, the Court entered a Final Default Judgment against Defendant Paul Vernon ("Defendant Vernon") authorizing the Plaintiff Class to recover, among other things, the 11,325.0961 bitcoin stolen from Cryptsy customers on July 29, 2014 (the "Final Default Judgment") [ECF No. 123]. The Court's Final Default Judgment identified the number of stolen bitcoin (11,325.0961) ("Originally Identified Stolen Bitcoin") and the wallet addresses in which those stolen bitcoin were stored at the time. The Court's Final Default Judgment also declared that the 11,325.0961 bitcoin belongs to the Plaintiff Class.

### B. The Order Clarifying the Final Default Judgment and Approving Assignment Agreement

On September 18, 2020, the Court entered an Order clarifying that the Final Default Judgment extends to all of the forked assets associated with the 11,325.0961 Originally Identified Stolen Bitcoin (the "Original Forked Assets"). *See* Order Clarifying Final Default Judgment [ECF No. 142]. In the same Order, the Court also approved the terms and conditions of the Assignment Agreement, [ECF No. 139-1], pursuant to which the Plaintiff Class assigned all rights, title, and interest in Section 6 of the Final Default Judgment to North Field so that it could pursue collection of the Originally Identified Stolen Bitcoin on a contingency, non-recourse basis.

### C. The Temporary Restraining Order

On May 17, 2021, the Receiver for Cryptsy filed an emergency motion for a temporary restraining order ("TRO Motion"). [ECF No. 153]. The TRO Motion was based on the discovery of additional wallet addresses holding 500.052319 bitcoin stolen from Cryptsy that are property of the Plaintiff Class and properly subject to the Final Default Judgment against Defendant Vernon

(the "Newly Discovered Bitcoin"). In support of the requested temporary restraining order ("TRO"), the Receiver filed an expert report authored by Pawel Aleksander, Chief Information Officer and Co-Founder of Coinfirm. [ECF No. 153-1]. In that report, Mr. Aleksander explained how the 10 wallet addresses containing the Newly Discovered Bitcoin were traceable to Cryptsy and belonged to the Plaintiff Class. [ECF No. 153-1]. The Court entered an Order granting the TRO the same day. [ECF No. 154]. The Court issued an amended TRO the following day (the "Amended TRO"). [ECF No. 155]. In addition to temporarily restraining the Newly Discovered Bitcoin, the Amended TRO ordered Defendant Vernon to appear on May 26, 2021 for a hearing on whether the Court should enter a preliminary injunction as to, among other digital assets, the Newly Discovered Bitcoin.

In granting the TRO, the Court considered the following factors: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) whether the threatened injury to the movant outweighs the possible harm to the respondent; and (5) whether the injunctive relief would disserve the public interest. *See* [ECF No. 155]. The Court found all five factors weighed in favor of granting the TRO and Preliminary Injunction. *See* [ECF No. 155].

Specifically, the Court found that the Plaintiff Class had shown a strong likelihood of success on the merits because they already obtained a final judgment against Defendant Vernon and they had provided an expert report that traced the Newly Discovered Assets to Cryptsy. [ECF No. 155 at 2.] The Court further found a likelihood of irreparable harm to the Plaintiff Class because assets held in the Newly-Discovered Wallet Addresses recently began moving "in what appears to be an attempt to take and liquidate such bitcoin, which are property of the CRYPTSY Class." *Id.* The Court found that no remedy at law would be adequate to redress this harm,

concluding that "[w]ithout entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims." *Id.* at 3. The Court likewise found that the threatened injury to the Plaintiff Class outweighed any possible harm to Defendant Vernon: "[C]onsidering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it [was] imperative to freeze the [Newly Discovered Bitcoin] to maintain the *status quo* to avoid dissipation of the money illegally taken from [the] Plaintiff [Class]." *Id.* Finally, the Court found that injunctive relief would not harm the public interest. *Id.* The Court reasoned that the public interest "is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] . . . and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action." *Id.*

### D. The Amended Final Default Judgment

On May 23, 2021, the Plaintiff Class moved to amend the clarified Final Default Judgment to include the Newly Discovered Bitcoin identified in the Amended TRO. [ECF No. 156]. On May 24, 2021, this Court granted the motion and issued an Amended Final Default Judgment against Defendant Vernon ("Amended Final Default Judgment"), which added to the Final Default Judgment the 500.052319 Newly Discovered Bitcoin identified in the Amended TRO and all associated forked assets ("the Newly Discovered Forked Assets"). [ECF No. 157]. Section 4(d)-(f) of the Amended Final Default Judgment declares that the 11,325.0961 Originally Identified Stolen Bitcoin and Original Forked Assets associated with this bitcoin are property of the Plaintiff Class. *Id.* Section 5 declares that the 500.052319 Newly Discovered Bitcoin and Newly Discovered Forked Assets are also "property of the Plaintiff Class." *Id.* Section 6 restates that the Amended Final Default Judgment includes all 11,825.1484 bitcoin, and the Original Forked Assets

and the Newly Discovered Forked Assets (collectively, the "Stolen Bitcoin and Forked Digital Assets"). *Id.*

### E. The Preliminary Injunction

On May 26, 2021, the Court held an evidentiary hearing on whether to issue a preliminary injunction to restrain the Stolen Bitcoin and Forked Digital Assets, including the Newly Discovered Bitcoin. Despite having received notice of the hearing time and date, Defendant Vernon did not appear or file any response to Plaintiff's papers or the Court's Amended TRO. At the hearing, among other things, the expert witness for the Plaintiff Class, Mr. Aleksander, appeared telephonically and testified that the statements and opinions contained in his May 17, 2021 Report were true and accurate. *See* Preliminary Injunction Hearing [ECF No. 163]. After the hearing, on May 28, 2021, the Court issued an order granting the preliminary injunction, finding that all of the elements necessary to support a preliminary injunction had been met. [ECF No. 165].

In granting the Preliminary Injunction, the Court considered the following factors: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) whether the threatened injury to the movant outweighs the possible harm to the respondent; and (5) whether the injunctive relief would disserve the public interest. *Id.*

The Court found that the Plaintiff Class had shown a strong likelihood of success on the merits because they already obtained a final judgment against Defendant Vernon, which was supported by Mr. Aleksander's expert report, which "demonstrated that the 500.052319 additional newly-discovered bitcoin were directly traceable to the Cryptsy exchange and are property belonging to the Plaintiff Class." [ECF No. 165 at 5-6.] The Court found Mr. Aleksander credible and concluded that the Coinfirm report speaks for itself. *Id.* at 5. The Court further found a

5

likelihood of irreparable harm to the Plaintiff Class because assets held in the Newly-Discovered Wallet Addresses belong to the Plaintiff Class, Defendant Vernon has wrongly deprived them of these assets, and the assets recently began moving "in what appears to be an attempt to liquidate such bitcoin holdings, which are property of the Movants." *Id.* at 6. The Court found that no remedy at law would be adequate to redress this harm because Defendant Vernon currently has sole dominion and control over these assets, because "transactions on the Bitcoin blockchain are irreversible," and because of "the pseudonymous nature of those transactions[.]" *Id.* The Court also concluded that "the balance of hardships weighs decidedly in favor of granting injunctive relief" because Defendant Vernon has no right to claim possession or ownership of the Newly Discovered Bitcoin. *Id.* at 6-7. Further, the court relied upon the fact that the preliminary injunction permitted any bona fide purchaser to obtain a release from the scope of the injunction by providing proof of their status as a bona fide purchaser. *Id.* at 7. Finally, the Court found that injunctive relief would not harm the public interest. *Id.* It reasoned that the public interest "is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] . . . and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action." *Id.*

### F. Defendant Vernon's Continued Wrongdoing

Despite being served and receiving notice of the ongoing proceedings, Defendant Vernon has never appeared in these proceedings and has, in fact, fled the country to evade enforcement of any judgment. Since the Court issued its July 2017 Final Default Judgment, Defendant Vernon has made no effort to make the Plaintiff Class whole or return the Stolen Bitcoin and Forked Digital Assets. Moreover, as addressed in the Receiver's Motion for TRO and supporting papers,

Defendant Vernon has continued to move and launder certain of the stolen digital assets in an attempt to fund his lifestyle while he hides from this Court and the judgments against him. At present, nearly four years after entry of the Final Default Judgment, Defendant Vernon wrongfully possess the Stolen Bitcoin and Forked Digital Assets.

## ARGUMENT

### A. The Standard for a Permanent Injunction

In the Eleventh Circuit, permanent injunctive relief is warranted where: (1) the plaintiff has prevailed on the merits; (2) the plaintiff has suffered an irreparable injury; (3) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (4) an equitable remedy is warranted based on the balance of hardships between the plaintiff and defendant; and (5) the public interest would not be disserved by a permanent injunction. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 n.16 (11th Cir. 2015). All five of these elements are satisfied here.

### B. Movants Have Met the Standard for a Permanent Injunction

The Court's recent Amended Final Default Judgment, Defendant Vernon's continued wrongdoing, theft and laundering of the Stolen Bitcoin even after entry of the TRO, and some of the Court's key findings to support entry of the preliminary injunction now justify the Court's entry of a permanent injunction. The same factors that justified this Court's entry of the Amended TRO and Preliminary Injunction remain present and justify the Court's entry of a permanent injunction. First, the Plaintiff Class has now prevailed on the merits against Defendant Vernon, and the rights to the Stolen Bitcoin contained in the Amended Final Default Judgment have been assigned to North Field. [ECF Nos. 123, 157, 171, 172].

Second, the Movants have suffered an irreparable injury through the wrongful deprivation of their 11,825.1484 Stolen Bitcoin and the Forked Digital Assets. Defendant Vernon

7

misappropriated these digital assets from the Plaintiff Class. As demonstrated in Mr. Aleksander's report and testimony before the Court, Defendant Vernon continues his efforts to actively launder these assets in an effort to evade the judgments against him. *See* [ECF Nos. 123, 153-1, 157, 165]. These transactions could not have occurred without the involvement of third parties involved in processing these transactions.

Third, monetary damages and/or other remedies available at law are inadequate to compensate for this injury for several reasons. Defendant Vernon has not appeared in this matter, is in sole possession of the private keys to the Stolen Bitcoin and Forked Digital Assets, has not voluntarily made any efforts to make the Movants whole since this Court issued the Original Judgment on July 27, 2017, and appears to be actively laundering the Stolen Bitcoin to deprive the Plaintiff Class of the assets rightfully belonging to them. [ECF Nos. 94, at 10, 123, 153, at 2]. Further, given the speed with which cryptocurrency transactions are made, the fact that transactions on the Bitcoin blockchain are irreversible, and the pseudonymous nature of those transactions, remedies at law are plainly inadequate to redress the harm to the Movants.

Fourth, the balance of hardships weigh in favor of the Movants. The Stolen Bitcoin and Forked Digital Assets belong to the Plaintiff Class, Defendant Vernon has no right to claim either possession or ownership of these assets, and Defendant Vernon is wrongfully withholding those assets while actively trying to launder them so that the Plaintiff Class will be unable to locate and recover them. Further, the proposed injunctive relief adequately considers the rights of bona fide purchasers who may have purchased Stolen Bitcoin from Defendant Vernon. Under this Order, as with the preliminary injunction, any bona fide purchaser will be able to obtain a release from the

scope of the injunction for any qualifying assets presently owned or controlled by the affected purchaser upon proof that he/she/it qualifies as a bona fide purchaser in good faith.[1]

Fifth, as in *Jysk*, a permanent injunction would not disserve the public interest because it would place the Stolen Bitcoin and Forked Digital Assets "in the hands of their rightful owner[s]"—the Movants. *Jysk*, 810 F.3d at 780. Indeed, injunctive relief would further—rather than harm—the public interest because the public interest "is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury)[.]" [ECF No. 155, at 3]. The public interest is also served by "providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action." *Id.*

### C. The Permanent Injunction Is Narrowly Tailored

Movants have narrowly tailored the requested relief to the wallet addresses listed in Tables 1 and 2 below, which contain the originating wallet addresses for the Stolen Bitcoin listed in the Amended Final Default Judgment, as these assets are directly traceable to Cryptsy and belong to the Plaintiff Class.

---

[1] In fact, after the issuance of the preliminary injunction, Movants were contacted by a Polish citizen who claimed to be a bona fide purchaser of his coins but had his wallet frozen as a result of the injunction. Movants immediately responded to that individual and, upon good cause being demonstrated by that non-party claimant, filed a motion with the court to release that individual's wallet address from the scope of the preliminary injunction.

Table 1

| # | Original Wallet Addresses | Amount of bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 18E3AWaadnUPQ1aMpfEoyTXN49NYAZzbpD | 1,000 BTC |
| 2 | 1DSxcqygQ69MxRc8oW94kQjWHzMb4BYsnG | 1,000 BTC |
| 3 | 1LwZYCt8dDhZDMd6uXGMwVsmWPXW9eX9Ww | 1,000 BTC |
| 4 | 13nAJw8jw7BiYKLnad9YGdPxybK9mgPkM6 | 1,000 BTC |
| 5 | 1DqCNwUffFTxULH8crehynw53TwrHnrv1c | 1,000 BTC |
| 6 | 1AWdxqABYiDxcY1sxzPzEotvjFjq8NUY8Z | 1,000 BTC |
| 7 | 18nb1NQCeoZLucMdrNdu2wb7jcyDvSgr3Y | 1,000 BTC |
| 8 | 13QxkdrhfeQ6aCF4TBWg8knQGBmiwL2rpV | 0.0961 BTC |
| 9 | 17nmFFPSANbPGgdtoEEuc6xbHoaP1n6ZBb | 1,000 BTC |
| 10 | 14nzbWNMPjmvwy96uuFVXtj6VgChJtHvU9 | 1,000 BTC |
| 11 | 1315LzDFcBLDBKgVAr4ZhCkcT5GXivpiuj | 1,000 BTC |
| 12 | 1KBy6MvcBb2qQRS5fQT92o2c5Dq2W6ygx4 | 1,325 BTC |
| | TOTAL | 11,325.0961 BTC |

Table 2

| # | Newly-Discovered Wallet Addresses | Amount of bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 1BjRLELf3xX5Tz8c43H36nkmNwqnPuuVAv | 0.010265 BTC |
| 2 | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 100 BTC |
| 3 | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 100 BTC |
| 4 | 19TbZFeHjTx76yKnwGTqehTh1VLHLxx9km | 0.010659 BTC |
| 5 | 159m8sYcDJwPfJaVpLeKJitkQTiPKevnY4 | 100 BTC |
| 6 | 1JhoQ1Zs2EqjXh1GzjwtQethAbNG6bNGTW | 0.010021 BTC |
| 7 | 1AA8YJ2DeYr99BS1PrsFKWC1p9hXT28dup | 100 BTC |
| 8 | 1ABpMg9prfa6dtZqTqpcmN5cAsjj1Cx77V | 0.010393 BTC |
| 9 | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 100 BTC |
| 10 | 19mkygdiY9Ay7dL2LLmASZzi2bXEp9NwLj | 0.010981 BTC |
| | TOTAL | 500.052319 BTC |

### D. The Court Has the Power to Freeze and Order the Transfer of the Stolen Assets, Even Including Assets in the Custody or Control of a Third-Party

Eleventh Circuit precedent supports ordering the proposed permanent injunction. The Eleventh Circuit has long held that district courts have the inherent power to freeze a defendant's assets to ensure the availability of equitable relief. *See Levi Strauss & co v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the district court had authority to freeze assets that could have been used to satisfy equitable relief sought). This Court has accordingly recognized that "[o]rders freezing assets and prohibiting transfers from . . . accounts are routine methods of enforcing injunctive relief, even if they are directed to third parties in possession of the funds." *Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 979 F. Supp. 2d 1307, 1316 (S.D. Fla. 2013) (report and recommendation), *adopted by* 979 F. Supp. 2d 1307 (S.D. Fla. 2013); *see also Malletier v. Aabagcn.com*, No. 13-61629-CIV, 2013 U.S. Dist. LEXIS 191881, at *19 (S.D. Fla. Dec. 9, 2013) (issuing permanent injunction including freeze of assets based on the court's determination that "Plaintiff ha[d] a good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained" and attaching freeze order against PayPal); *Tiffany (NJ), LLC v. 925jewelrymax.com*, No. 12-23518-CIV-SEITZ/SIMONTON, 2013 U.S. Dist. LEXIS 190948, at *20 (S.D. Fla. Mar. 28, 2013) (issuing permanent injunction transferring assets frozen by PayPal to plaintiff in partial satisfaction of judgment).

Indeed, this Court, on multiple occasions, has extended asset freeze orders to freezing digital assets, including cryptocurrencies. *See, e.g.*, *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2021 U.S. Dist. LEXIS 2653, at *15-18 (S.D. Fla. Jan. 7, 2021) (granting injunction and asset freeze against defendants in digital asset fraud scheme); *FTC v. Dluca*, No. 18-cv-60379, 2018 U.S. Dist.

LEXIS 192310 (S.D. Fla. Apr. 16, 2018) (granting injunction and asset freeze where defendants allegedly secured payments from customers under the false guise of earning income through purported cryptocurrency investments); *see also SEC v. Qin*, No. 1:20-cv-10849 (LGS), Doc. 27, at 3-4 (S.D.N.Y. Jan. 6, 2021) (ordering third-parties to freeze defendant's digital assets); *Lagemann v. Spence*, No. 1:18-cv-12218-GBD, Doc. 47 (S.D.N.Y. Feb. 11, 2019) (issuing injunction and asset freeze against defendants extending to "any cryptocurrency wallet or cryptocurrency trading account" maintained by the defendant).

Further, federal courts routinely issue freeze and transfer permanent injunction orders that extend to third parties with custody or control over such assets. *See, e.g.*, *Volkswagen AG v. Unincorporated Ass'ns*, No. 1:17-cv-1413, 2018 U.S. Dist. LEXIS 149536 (E.D. Va. July 13, 2018) (recommending issuance of permanent injunctive relief transferring assets frozen by PayPal to plaintiff), *adopted as to properly served defendant by* No. 1:17-cv-113, Doc. 74 (E.D. Va. August 30, 2018); *Gucci Am. Inc. v. 2005qihui8*, No. 15-cv-61649, Doc. 68 (S.D. Fla. Jan. 11, 2016) (granting amended default judgment and permanent injunction ordering PayPal to "transfer[] to Plaintiff ["[a]ll funds currently restrained"] in partial satisfaction of the monetary judgment"); *see also Amazon Content Servs. LLC v. Kiss Library*, No. 2:20-cv-01048, 2020 U.S. Dist. LEXIS 155676, at *9-11 (W.D. Wash. Aug. 27, 2020) (ordering payment processors, such as BitPay, PayPal and MasterCard, who receive notice of the order to locate defendants' accounts and not allow withdrawal or disposal of the assets).

## CONCLUSION

Based on the foregoing, Movants respectfully request that this Court enter an Order granting a permanent injunction freezing the 11,825.1484 Stolen Bitcoin, the Original Forked Assets, and the Newly Discovered Forked Assets and requiring those in possession of such assets

to transfer all such assets to a wallet controlled by North Field as Assignee of the Stolen Bitcoin and Forked Digital Assets subject to the Amended Final Default Judgment.

Respectfully submitted,

By: *s/David C. Silver*
David C. Silver / Fla. Bar No. 572764
E-mail:  DSilver@SilverMillerLaw.com
Jason S. Miller / Fla. Bar No. 72206
E-mail:  JMiller@SilverMillerLaw.com
SILVER MILLER
11780 W. Sample Road
Coral Springs, Florida 33065
Phone:  954-516-6000

- and -

Marc A. Wites / Fla. Bar No. 24783
E-mail:  mwites@wklawyers.com
WITES LAW FIRM, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Phone:  954-933-4400

**Counsel for Plaintiff Class**

By: *s/Samuel A. Lewis*
Samuel A. Lewis / Fla. Bar No. 55360
E-mail:  slewis@cozen.com
COZEN O'CONNOR
Southeast Financial Center
200 South Biscayne Blvd., Suite 3000
Miami, Florida 33131
Phone:  305-704-5940

 - and -

L. Barrett Boss
E-mail:  bboss@cozen.com
John Sullivan
E-mail: jsullivan@cozen.com
Jonathan Grossman
E-mail:  jgrossman@cozen.com
Kara L. Kapp
E-mail:  kkapp@cozen.com
COZEN O'CONNOR
1200 19th Street NW, 3rd Floor
Washington, D.C. 20036
Phone:  202-912-480

**Counsel for North Field Tech**