UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,            CASE NO. 9:16-cv-80060-KAM
and on behalf of All others Similarly Situated,

         Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation,
PAUL VERNON, an individual,
LORIE ANN NETTLES, an individual,
RIDGEWOOD INVESTMENTS, INC,
a New Jersey corporation, and
KAUSHAL MAJMUDAR, individually,

         Defendants.
_____/

**ORDER GRANTING PLAINTIFF AND ASSIGNEE'S MOTION FOR ASSET FREEZE INJUNCTION AND ORDER TO TRANSFER THE STOLEN BITCOIN TO ASSIGNEE**

THIS MATTER is before the Court upon the motion of the Plaintiff Class and Assignee North Field Technology Ltd. ("North Field") for a permanent injunction ordering the freeze and transfer of the Bitcoin ("BTC") and other Forked Digital Assets subject to the Amended Final Judgment. BY THEIR MOTION, the Plaintiff Class and Assignee North Field seek an injunction:

(1) Freezing, as identified in the Amended Final Default Judgment, 11,825.1484 Bitcoin stolen from the Plaintiff Class on July 29, 2014 and then held, as of the date of the July 29, 2014 theft, in the digital wallets identified in Tables 1 and 2 below (the "Stolen Bitcoin");

(2) Freezing the forked digital assets associated with the Stolen Bitcoin, which includes Bitcoin Cash, Bitcoin Gold, Bitcoin Diamond, Super Bitcoin, Bitcoin2, Bitcoin Private, Bitcoin Dark, and Bitcoin SV in an amount equal to the amount of BTC in each of the

wallets identified in the tables below, along with additional forked assets of Bitcore (BTX) in an amount equal to one-half the amount of BTC in the digital wallets identified in the tables below (the "Forked Digital Assets") (collectively, "Stolen Bitcoin and Forked Digital Assets"); and

(3) Transferring any and all Stolen Bitcoin and Forked Digital Assets subject to the Amended Final Judgment to a wallet address controlled by Assignee North Field.

Table 1

| # | Original Wallet Addresses | Amount of Bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 18E3AWaadnUPQ1aMpfEoyTXN49NYAZzbpD | 1,000 BTC |
| 2 | 1DSxcqygQ69MxRc8oW94kQjWHzMb4BYsnG | 1,000 BTC |
| 3 | 1LwZYCt8dDhZDMd6uXGMwVsmWPXW9eX9Ww | 1,000 BTC |
| 4 | 13nAJw8jw7BiYKLnad9YGdPxybK9mgPkM6 | 1,000 BTC |
| 5 | 1DqCNwUffFTxULH8crehynw53TwrHnrv1c | 1,000 BTC |
| 6 | 1AWdxqABYiDxcY1sxzPzEotvjFjq8NUY8Z | 1,000 BTC |
| 7 | 18nb1NQCeoZLucMdrNdu2wb7jcyDvSgr3Y | 1,000 BTC |
| 8 | 13QxkdrhfeQ6aCF4TBWg8knQGBmiwL2rpV | 0.0961 BTC |
| 9 | 17nmFFPSANbPGgdtoEEuc6xbHoaP1n6ZBb | 1,000 BTC |
| 10 | 14nzbWNMPjmvwy96uuFVXtj6VgChJtHvU9 | 1,000 BTC |
| 11 | 1315LzDFcBLDBKgVAr4ZhCkcT5GXivpiuj | 1,000 BTC |
| 12 | 1KBy6MvcBb2qQRS5fQT92o2c5Dq2W6ygx4 | 1,325 BTC |
| | TOTAL | 11,325.0961 BTC |

Table 2

| # | Newly-Discovered Wallet Addresses | Amount of Bitcoin stored in wallet address at time of theft |
|---|---|---|
| 1 | 1BjRLELf3xX5Tz8c43H36nkmNwqnPuuVAv | 0.010265 BTC |
| 2 | 12KBnNKkEdjcojNZ7ceBhDBJWhMZbtttgr | 100 BTC |
| 3 | 17QwFUD9awdi4JcncVrkxfDDBvEos8HU8H | 100 BTC |
| 4 | 19TbZFeHjTx76yKnwGTqehTh1VLHLxx9km | 0.010659 BTC |
| 5 | 159m8sYcDJwPfJaVpLeKJitkQTiPKevnY4 | 100 BTC |
| 6 | 1JhoQ1Zs2EqjXh1GzjwtQethAbNG6bNGTW | 0.010021 BTC |
| 7 | 1AA8YJ2DeYr99BS1PrsFKWC1p9hXT28dup | 100 BTC |
| 8 | 1ABpMg9prfa6dtZqTqpcmN5cAsjj1Cx77V | 0.010393 BTC |
| 9 | 15yRZyEyzwyNhCFBfqWBJDXsuJn9WJVhnJ | 100 BTC |
| 10 | 19mkygdiY9Ay7dL2LLmASZzi2bXEp9NwLj | 0.010981 BTC |
| | **TOTAL** | **500.052319 BTC** |

In considering a permanent injunction, the Court must evaluate the following factors: (1) whether the plaintiff has prevailed on the merits; (2) whether the plaintiff has suffered an irreparable injury; (3) the unavailability of an adequate remedy at law; (4) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (5) whether the public interest would or would not be disserved by the injunctive relief. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 n.16 (11th Cir. 2015).

HAVING REVIEWED THE MOTION AND SUPPORTING PAPERS and being otherwise fully advised in the premises, the Court hereby finds as follows:

First, the Plaintiff Class and Assignee North Field (collectively referred to herein as "Movants") have demonstrated that the Plaintiff Class has prevailed on the merits against Defendant Paul Vernon. Specifically, Movants obtained an initial default judgment against

3

Defendant Vernon (the "Original Judgment") [ECF No. 123] and an amended final judgment against Defendant Vernon (the "Amended Final Default Judgment") [ECF No. 157]. As reflected in these judgments, Movants have prevailed on the merits in this action.

Second, the Original Judgment and Amended Final Default Judgment [ECF Nos. 123, 157] establish that the Movants have been wrongfully deprived by Defendant Vernon of 11,825.1484 Stolen Bitcoin and the associated Forked Digital Assets. *See* [ECF Nos. 123, 157]. As demonstrated in the report of Pawel Aleksander, Chief Information Officer and Co-Founder of Coinfirm, portions of the 11,825.1484 Stolen Bitcoin have begun to move in what appears to be an attempt to liquidate such bitcoin holdings, which are property of the Movants. [ECF No. 153-1]. Therefore, the Court finds that the Movants have suffered an irreparable injury.

Third, remedies available at law are inadequate to compensate for this injury for several reasons. Defendant Vernon has no right to claim either possession or ownership of the Stolen Bitcoin and associated Forked Digital Assets, yet Defendant Vernon currently has sole dominion and control over these assets, and appears to have made efforts to liquidate these assets. Further, considering the speed with which cryptocurrency transactions are made, the fact that transactions on the Bitcoin blockchain are irreversible, as well as the pseudonymous nature of those transactions, remedies at law are inadequate to redress the harm to the Movants.

Fourth, the balance of hardships weighs decidedly in favor of granting injunctive relief. The actual and threatened injuries to the Movants outweigh any possible harm to Defendant Vernon because Defendant Vernon has no right to claim either possession or ownership of the Stolen Bitcoin and associated Forked Digital Assets. In contrast, the Plaintiff Class has suffered an irreparable injury—the wrongful deprivation of 11,825.1484 Stolen Bitcoin and Forked Digital Assets that belong to them. Defendant Vernon is wrongfully withholding these assets from the

Plaintiff Class. Further, the proposed injunctive relief adequately considers the rights of bona fide purchasers who may have purchased Stolen Bitcoin from Defendant Vernon. Under this Order, any bona fide purchaser will be able to obtain a release from the scope of the injunction for any qualifying assets presently owned or controlled by the affected purchaser upon proof that he/she/it qualifies as a bona fide purchaser in good faith.

Finally, a permanent injunction would not disserve the public interest, but rather would further it. The public interest is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury). The public interest is also served by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action. An injunction here would thus serve the public interest by placing the Stolen Bitcoin and Forked Digital Assets in the hands of their rightful owners, as in *Jysk*. *See Jysk*, 810 F.3d at 780.

Moreover, the relief sought by the Movants is well supported by authority in this Circuit. The Eleventh Circuit has long recognized that district courts have the inherent power to freeze a defendant's assets to ensure the availability of equitable relief. *See Levi Strauss & co v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the district court had authority to freeze assets that could have been used to satisfy equitable relief sought).

Courts in this District and elsewhere have extended such orders to digital assets, including cryptocurrencies. *See, e.g.*, *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2021 U.S. Dist. LEXIS 2653, at *15-18 (S.D. Fla. Jan. 7, 2021) (granting injunction and asset freeze against defendants in digital asset fraud scheme); *Lagemann v. Spence*, No. 1:18-cv-12218-GBD, Doc. 47 (S.D.N.Y. Feb. 11, 2019) (issuing injunction and asset freeze against defendants extending to "any cryptocurrency

wallet or cryptocurrency trading account" maintained by the defendant); *FTC v. Dluca*, No. 18-cv-60379, 2018 U.S. Dist. LEXIS 192310 (S.D. Fla. Apr. 16, 2018) (granting injunction and asset freeze where defendants allegedly secured payments from customers under the false guise of earning income through purported cryptocurrency investments).

Further, federal courts in this District and across the country routinely issue freeze and transfer orders that extend to third parties with custody or control over such assets. *See Gucci Am. Inc. v. 2005qihui8*, No. 15-cv-61649, Doc. 68 (S.D. Fla. Jan. 11, 2016) (granting amended default judgment and permanent injunction ordering PayPal to "transfer[] to Plaintiff ["[a]ll funds currently restrained"] in partial satisfaction of the monetary judgment"); *Malletier v. Aabagcn.com*, No. 13-61629-CIV, 2013 U.S. Dist. LEXIS 191881, at *19 (S.D. Fla. Dec. 9, 2013) (issuing permanent injunction including freeze of assets based on the court's determination that "Plaintiff ha[d] a good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained" and attaching freeze order against PayPal); *Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 979 F. Supp. 2d 1307, 1316 (S.D. Fla. 2013) (report and recommendation), *adopted by* 979 F. Supp. 2d 1307 (S.D. Fla. 2013) (recognizing that "[o]rders freezing assets and prohibiting transfers from . . . accounts are routine methods of enforcing injunctive relief, even if they are directed to third parties in possession of the funds"); *Tiffany (NJ), LLC v. 925jewelrymax.com*, No. 12-23518-CIV-SEITZ/SIMONTON, 2013 U.S. Dist. LEXIS 190948, at *20 (S.D. Fla. Mar. 28, 2013) (issuing permanent injunction transferring assets frozen by PayPal to plaintiff in partial satisfaction of judgment).[1] In this case, extending the order to third party payment processors is particularly

---

[1] *See also, e.g.*, *SEC v. Qin*, No. 20-cv-10849 (LGS), Doc. 27 at 3-4 (S.D.N.Y. Jan. 6, 2021) (ordering third-parties to freeze defendant's digital assets); *Amazon Content Servs. LLC v. Kiss Library*, No. 2:20-cv-01048, 2020 U.S. Dist. LEXIS 155676, at *9-11 (W.D. Wash. Aug. 27, 2020) (ordering payment processors, such as BitPay, PayPal and MasterCard, who receive notice of the order to locate defendants' accounts and not allow withdrawal or disposal of

appropriate because the Stolen Bitcoin has continued to move since this Court issued the Temporary Restraining Orders on May 17-18, 2021 [ECF Nos. 154, 155], and these transactions could not have occurred without the involvement—whether knowing or unknowing—of third parties involved in processing these transactions.

Therefore, HAVING REVIEWED THE MOTION AND SUPPORTING PAPERS and being otherwise fully advised in the premises, the Court hereby ORDERS AND ADJUDGES:

1. The motion (DE 173) is GRANTED.

2. Defendant Vernon, and all persons in active concert or participation with him or his agents, servants or who otherwise having notice of this Order, are permanently enjoined from directly or indirectly transferring the Stolen Bitcoin and Forked Digital Assets that were originally held in the wallet addresses identified in Tables 1 and 2 other than to a digital wallet or account held by North Field.

3. Defendant Vernon, and all persons in active concert or participation with him having notice of this Order, shall immediately (within seven (7) days of the entry of this Order) transfer the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account held by North Field.

4. Any persons, firms, corporations, or other entities, including digital asset trading platforms, cryptocurrency exchanges, payment processors, digital cryptocurrency wallet providers, developers, mining pools, miners, other parties involved in validating transactions on the Bitcoin network or the networks for the Forked Digital Assets encompassed by the Amended Final Default Judgment, and other parties receiving notice of this Order by electronic mail, mail

---

the assets); *Volkswagen AG v. Unincorporated Ass'ns*, No. 1:17-cv-1413, 2018 U.S. Dist. LEXIS 149536 (E.D. Va. July 13, 2018) (recommending issuance of permanent injunctive relief transferring assets frozen by PayPal to plaintiff), *adopted as to properly served defendant by* No. 1:17-cv-113, Doc. 74 (E.D. Va. August 30, 2018).

via postal service or mail carrier, private or other courier service including an overnight carrier service, facsimile transmissions, personal delivery, personal service, or other method sufficient to give the entities listed in this paragraph notice of this Order, shall immediately:

    a. locate the Stolen Bitcoin and Forked Digital Assets;

    b. freeze, or assist in or facilitate the freezing of, the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Tables 1 and 2 of this Order, and (other than as Ordered in subsection (d) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets;

    c. freeze all customer accounts related to the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet addresses listed in Tables 1 or 2 of the this Order, and (other than as Ordered in subsection (d) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets; and

    d. take all steps necessary to transfer, assist in the transfer of, facilitate the transfer of, validate or assist in the validation of the transfer of the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account held by North Field.

5. The freeze shall stay in effect for the duration of this Order.

6. Should any affected cryptocurrency exchange or Wallet Address owner/accountholder wish to be relieved of the restrictions set forth herein, he/she/it may apply to

this Court in writing for relief from the Order and shall serve a copy of his/her/its request for relief upon all counsel and parties of record in this matter.

7. Service to Defendant Vernon at his last known e-mail address and via Defendant Vernon's ex-wife and her counsel, who the Plaintiff Class believe to be in contact with Defendant Vernon, is deemed sufficient notice to him under Federal Rule of Civil Procedure 65. It shall not be necessary for Defendant Vernon to sign any form of acknowledgement of service.

8. Violation of this Permanent Injunction shall expose Defendant Vernon and all other persons bound by this Permanent Injunction to all applicable penalties, including contempt of Court.

9. The Court reserves jurisdiction to enter further orders that are proper to aid in the execution of the Amended Final Default Judgment, including further injunctions extending to secondary wallet addresses containing the Stolen Bitcoin and/or Forked Digital Assets, and to otherwise facilitate the efforts of or taken on behalf of Plaintiff Class, the Receiver, and Assignee North Field to recover the assets subject to the Amended Final Default Judgment.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 22nd day of June, 2021.

KENNETH A. MARRA
United States District Judge