UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,
And on behalf of All others Similarly Situated,

        Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

        Defendants.
_____/

CASE NO. 9:16-cv-80060-KAM

## ASSIGNEE'S MOTION TO CLARIFY THE SCOPE OF THE AMENDED JUDGMENT AND PERMANENT INJUNCTION

North Field Technology Ltd. ("North Field" or "Assignee") respectfully submits this unopposed motion to clarify the Amended Final Default Judgment (the "Amended Judgment") [ECF No. 157] and the Order for Asset Freeze Injunction and to Transfer the Stolen Bitcoin to Assignee ("Permanent Injunction") [ECF No. 177].

On March 29, 2022, Defendant Paul Vernon ("Defendant Vernon") and/or his cohorts transferred all 11,325.0961 bitcoin originally identified in Table 1 of the Amended Judgment and Permanent Injunction to private secondary wallet addresses[1]. That wholesale transfer marked the beginning of what has now become an ongoing daily effort by Defendant Vernon to transfer the stolen bitcoins to successive secondary wallet addresses through smaller and smaller micro-transactions. These illicit transactions are happening every day now and, if not stopped, could allow Defendant Vernon to launder and hide or liquidate the stolen coins and complete his theft. Accordingly, North Field brings this motion to clarify the original intent of the Amended

---

[1] Secondary wallet addresses are all additional private wallet addresses beyond the original wallet addresses listed in Tables 1 and 2 of the Amended Judgment and Permanent Injunction.

Judgment and Permanent Injunction to apply to all such secondary wallet addresses (the "Clarification Motion" or "Motion"). North Field submits the accompanying Memorandum of Law in support of the Motion.

## **MEMORANDUM OF LAW**

### FACTUAL BACKGROUND

### A. The Final Default Judgment

On July 27, 2017, the Court entered a Final Default Judgment against Defendant Vernon authorizing the Plaintiff Class to recover, among other things, the 11,325.0961 bitcoin that Defendant Vernon stole from Cryptsy customers on July 29, 2014 (the "Final Default Judgment") [ECF No. 123]. The Court's Final Default Judgment identified the number of stolen bitcoin (11,325.0961) ("Originally Identified Stolen Bitcoin") and the wallet addresses in which those stolen bitcoin were stored at the time. The Court's Final Default Judgment also declared that the 11,325.0961 bitcoin belongs to the Plaintiff Class. [ECF No. 123].

### B. The Order Clarifying the Final Default Judgment and Approving Assignment Agreement

On September 18, 2020, the Court entered an Order clarifying that the Final Default Judgment extends to all of the forked assets associated with the 11,325.0961 Originally Identified Stolen Bitcoin (the "Original Forked Assets"). *See* Order Clarifying Final Default Judgment [ECF No. 142]. In the same Order, the Court also approved the terms and conditions of the Assignment Agreement, [ECF No. 139-1], pursuant to which the Plaintiff Class assigned all rights, title, and interest in Section 6 of the Final Default Judgment to North Field so that North Field could pursue collection of the Originally Identified Stolen Bitcoin on a contingency, non-recourse basis.

### C. The Temporary Restraining Order

On May 17, 2021, the Receiver for Cryptsy filed an emergency motion for a temporary restraining order ("TRO Motion"). [ECF No. 153]. The TRO Motion was filed after counsel for the Receiver discovered additional wallet addresses holding 500.052319 bitcoin stolen from Cryptsy that are property of the Plaintiff Class and properly subject to the Final Default Judgment against Defendant Vernon (the "Newly Discovered Bitcoin"). The Court entered an Order granting the TRO the same day. [ECF No. 154]. The Court issued an amended TRO the following day (the "Amended TRO"). [ECF No. 155]. In addition to temporarily restraining the Newly Discovered Bitcoin, the Amended TRO ordered Defendant Vernon to appear on May 26, 2021 for a hearing on whether the Court should enter a preliminary injunction as to, among other digital assets, the Newly Discovered Bitcoin.

### D. The Amended Final Default Judgment

On May 23, 2021, the Plaintiff Class moved to amend the clarified Final Default Judgment to include the Newly Discovered Bitcoin identified in the Amended TRO. [ECF No. 156]. On May 24, 2021, this Court granted the motion and issued an Amended Judgment, which added to the original Final Default Judgment the 500.052319 Newly Discovered Bitcoin identified in the Amended TRO and all associated forked assets ("the Newly Discovered Forked Assets"). [ECF No. 157]. Section 4(d)-(f) of the Amended Judgment declares that the 11,325.0961 Originally Identified Stolen Bitcoin and Original Forked Assets associated with this bitcoin are property of the Plaintiff Class. *Id.* Section 5 declares that the 500.052319 Newly Discovered Bitcoin and Newly Discovered Forked Assets are also "property of the Plaintiff Class." *Id.* Section 6 restates that the Amended Judgment includes all 11,825.1484 bitcoin ("the Stolen Bitcoin"), and the

3

Original Forked Assets and the Newly Discovered Forked Assets (collectively, the "Stolen Bitcoin and Forked Digital Assets"). *Id.*

### E. The Preliminary Injunction

On May 26, 2021, the Court held an evidentiary hearing on whether to issue a preliminary injunction to restrain the Stolen Bitcoin and Forked Digital Assets, including the Newly Discovered Bitcoin. Despite having received notice of the hearing time and date, Defendant Vernon did not appear or file any response to Plaintiff's papers or the Court's Amended TRO. At the hearing, among other things, the expert witness for the Plaintiff Class (Mr. Pawel Aleksander) appeared telephonically and testified that the statements and opinions contained in his May 17, 2021 Report were true and accurate. *See* Preliminary Injunction Hearing [ECF No. 163]. After the hearing, on May 28, 2021, the Court issued an order granting the preliminary injunction, finding that all of the elements necessary to support a preliminary injunction had been met. [ECF No. 165].

### F. The Order Approving the Second Amendment to the Assignment Agreement

On June 2, 2021, North Field and counsel for the Plaintiff Class moved to further clarify the terms of the Assignment Agreement to add to the assignment the additional 500.052319 Bitcoin and all associated forked assets encompassed in the Amended Judgment. [ECF No. 171]. As the original and first amended assignment encompassed all of the Bitcoin and associated forked assets included in the original judgment against Defendant Vernon, this motion sought to amend the assignment to be consistent with the Amended Judgment. The Court issued an order granting the motion to approve the second amendment to the Assignment Agreement on June 3, 2021. [ECF No. 172].

### G. The Permanent Injunction

On June 4, 2021, North Field and counsel for the Plaintiff Class moved for a permanent injunction ordering an asset freeze and transfer to Assignee of the Stolen Bitcoin and Forked Digital Assets that were stolen on July 29, 2014 from customers of Cryptsy. [ECF No. 173]. On June 22, 2021, this Court issued an order granting the motion for a permanent injunction (the "Permanent Injunction"). [ECF No. 177].

### H. Removal of YOA LTD from Scope of Permanent Injunction

On July 1, 2021, counsel for the Plaintiff Class moved to relieve from the scope of the Permanent Injunction a single wallet address into which a small amount of the Stolen Bitcoin had been transferred to a non-party, YOA LTD, which the Plaintiff Class believed may have been a bona fide purchaser. [ECF No. 180]. This motion was based on the fact that YOA LTD had represented itself to be a bona fide purchaser. The following day, the Court issued an order granting the motion. [ECF No. 181].

### I. Defendant Vernon Is Now Transferring and Attempting to Hide All of the Stolen Bitcoin

Defendant Vernon fled the country at or about the time this action was commenced and never appeared in this Action. He has made no effort to make the Plaintiff Class whole or return the Stolen Bitcoin and Forked Digital Assets. To the contrary, he had, until recently, continued to move and launder a certain subset of the stolen digital assets to fund his lifestyle while he hides from this Court and its Judgment.

Now, however, Defendant Vernon is in the midst of trying to launder and hide from this Court, the Plaintiff Class, and North Field **all of the Stolen Bitcoin and Forked Digital Assets**. He has transferred the entire corpus of the Stolen Bitcoin into secondary wallet addresses, and continues to move significant portions of the Stolen Bitcoin onto exchanges in an attempt to

liquidate these assets and walk away with them. *See* Exhibit 1, ¶¶ 7-10. Indeed, on March 29, 2022, Defendant Vernon in a single day moved the entirety of the 11,325.0961 Originally Identified Stolen Bitcoin—originally held in the wallet addresses listed in Table 1 of the Amended Judgment and Permanent Injunction—to private secondary wallet addresses. *Id.* ¶ 9. As a result, all of the Stolen Bitcoin and some of the Forked Digital Assets subject to the Amended Judgment and Permanent Injunction are now held in either private secondary wallet addresses or have been moved onto cryptocurrency exchanges. *See id.* The identities of the wallet addresses where the Stolen Bitcoin and Forked Digital Assets are being shifted are a constantly moving target because Defendant Vernon is actively moving these assets on a daily basis into new secondary wallet addresses and onto cryptocurrency exchanges. The fact that Defendant Vernon is actively moving and breaking up the 11,325.0961 Originally Identified Stolen Bitcoin on a daily basis demonstrates that he has the private keys to the wallets in Table 1 and is actively violating this Court's Permanent Injunction and Amended Judgment. This constitutes a significant potential threat to the Plaintiff Class's ability to recover the Stolen Bitcoin and Forked Digital Assets.

North Field has provided notice of the Permanent Injunction and of Defendant Vernon's recent movements to dozens of cryptocurrency exchanges.

## ARGUMENT

### A. The Standard for Clarification of a Court Order.

While not addressed in the Federal Rule of Civil Procedure, clarifying an order or judgment is firmly within the power of a federal court. *See generally Casequin v. CAT 5 Constr., Inc.*, No. 2:18-cv-588-JLB-MRM, 2021 U.S. Dist. LEXIS 196000, at *2 (M.D. Fla. Oct. 12, 2021) (granting motion for clarification of dispositive order and judgment and denying other relief sought). Indeed, motions for clarification "are generally recognized and allowed by federal courts.'" *Id.* Such a

motion does not fall under Federal Rules of Civil Procedure 59 and 60 where, as here, the motion for clarification merely asks the Court to clarify the scope of an order, rather than to alter or amend a judgment. *Id.*

Furthermore, "[a] district court has discretion to clarify the scope of an injunction." *Smagin v. Yegiazaryan*, No. CV-14-09764-RGK-PLA, 2020 U.S. Dist. LEXIS 60659, at *8 (C.D. Cal. Apr. 1, 2020); *accord N.A. Sales Co. v. Chapman Industries Corp.*, 736 F.2d 854, 858 (2d Cir. 1984) (affirming order clarifying scope of injunction); *Lado v. Wolf*, 497 F. Supp. 3d 914, 924 (S.D. Cal. 2020) (granting plaintiff's motion to clarify scope of injunction); *F.V. v. Jeppesen*, 477 F. Supp. 3d 1144, 1148 (D. Idaho 2020) (granting motion to clarify injunction). "By clarifying the scope of a previously issued injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *Smagin*, 2020 U.S. Dist. LEXIS 60659, at *8 (quoting *N.A. Sales Co., Inc.*, 736 F.2d at 858); *accord Lado*, 497 F. Supp. 3d at 924.

Clarification of the scope of the Amended Judgment and Permanent Injunction here is proper and necessary to ensure the proper protection of the Stolen Bitcoins and Forked Digital Assets from Defendant Vernon's ongoing and active theft and liquidation of those assets.

**B. Clarification of the Amended Judgment and Permanent Injunction Is Proper to Add Certainty to the Court's Orders.**

This Court has full discretion to clarify the scope of a dispositive order or injunctive relief. Exercising that discretion is proper here and will add certainty as North Field makes immediate efforts to enforce this Court's ordered relief while Defendant Vernon actively attempts to dissipate these assets.

In relevant part, the Amended Judgment "declares that the 11,325.0961 Bitcoin which were stolen from Cryptsy customers on July 29, 2014 and which, as of the date of the initial Final

7

Judgment, were stored in the cryptocurrency or digital wallet addresses identified in Table 1 below, are property of the Plaintiff Class and subject to and encompassed within this Amended Final Default Judgment[.]" [ECF No. 157, ¶ 4(d)]. The Amended Judgment further "adds and includes as property of the Plaintiff Class an additional 500.052319 Bitcoin that were stolen from Cryptsy customers on July 29, 2014[.]" [ECF No. 157, ¶ 5]. By its terms, the Amended Judgment plainly protects the Stolen Bitcoin and Forked Digital Assets as the property of the Plaintiff Class, not simply the original wallet addresses in which those assets were once stored.

In addition, in relevant part, the Permanent Injunction provides that:

Any persons, firms, corporations, or other entities, including digital asset trading platforms, cryptocurrency exchanges, payment processors, digital cryptocurrency wallet providers, developers, mining pools, miners, other parties involved in validating transactions on the Bitcoin network or the networks for the Forked Digital Assets encompassed by the Amended Final Default Judgment, and other parties receiving notice of this order . . . shall immediately:

a. **locate the Stolen Bitcoin and Forked Digital Assets**;

b. **freeze, or assist in or facilitate the freezing of, the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Tables 1 and 2 of this Order**, and (other than as Ordered in subsection (d) hereof) **refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets**;

c. freeze all customer accounts related to the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet addresses listed in Tables 1 or 2 of [this] Order, and (other than as Ordered in subsection (d) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets; and

d. take all steps necessary to transfer, assist in the transfer of, facilitate the transfer of, validate or assist in the validation of the transfer of the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account held by North Field.

[ECF No. 177, at 7-8, ¶ 4] (emphasis added).

Paragraph 4(a) explicitly requires all third-parties listed in Paragraph 4 to "locate the Stolen Bitcoin and Forked Digital Assets[,]" which, per the Court's Amended Judgment, are the "property of the Plaintiff Class[.]" *See* [ECF No. 157, ¶¶ 4(d), 5]. This property has since been assigned to North Field. [ECF Nos. 142, 172]. Thus, the Order plainly imposes an obligation on the third-parties listed in Paragraph 4 to identify the digital asset property itself, some of which had already begun moving through secondary wallet addresses at the time of the Order.

Paragraph 4(b) orders "the Stolen Bitcoin and Forked Digital Assets **held in or transferred from** any wallet address listed in Tables 1 and 2 of this Order" to be frozen. *Id.* (emphasis added). This language refers directly to the Stolen Bitcoin and Forked Digital Assets, which is the property of the Plaintiff Class. Paragraph 4(b) goes on to order third-parties to "refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets[.]" This language requires these entities and individuals to refrain from facilitating any transfer of the Stolen Bitcoin and Forked Digital Assets. Thus, the Court's orders focus on protection and preservation of the Stolen Bitcoin and Forked Digital Assets themselves, not merely the original locations that at one point in time housed those stolen assets.

Digital assets, including bitcoin, are by design portable assets. Indeed, as of March 29, 2022, Defendant Vernon and/or his associates or co-conspirators swiftly moved the entirety of the Stolen Bitcoin originally held in the wallet addresses identified in Tables 1 and 2 of the Amended Judgment and Permanent Injunction into secondary wallet addresses. *See* Exhibit 1. Accordingly, to have any force, the Amended Judgment and Permanent Injunction must necessarily and in the

ordinary course be read as applying to the Stolen Bitcoin and Forked Digital Assets themselves, regardless of where they are presently located or may in the future be moved or transferred.[2]

WHEREFORE, North Field respectfully requests that this Court clarify that:

1. The Amended Judgment by its terms awards the 11,825.1484 Stolen Bitcoin and Forked Digital Assets to the Plaintiff Class, irrespective of in which digital wallet addresses those assets are presently held, and specifically regardless of whether they are presently held in the original wallet addresses listed in Tables 1 and 2 or have since been transferred into new wallet addresses.

2. The reference to "the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Tables 1 and 2 of this Order" in Paragraph 4 of the Permanent Injunction

    (i) refers to the Stolen Bitcoin and Forked Digital Assets themselves, rather than to the originating wallet addresses listed in Tables 1 and 2, and

---

[2] In the process of attempting to informally resolve third party YOA LTD's objections to the asset freeze that had been placed on its account, in June 2021 YOA LTD represented that it was a bona fide purchaser for value. In response to that email, counsel for the Plaintiff Class agreed to remove YOA LTD from the scope of injunctive relief based on its proclaimed status as a bona fide purchaser. In so doing, counsel for the Plaintiff Class stated that the permanent injunction does not include secondary addresses like those at issue in the Court's preliminary injunction. It is of course true that the Permanent Injunction is not *limited to* the *specific* secondary wallet addresses attached to the preliminary injunction, and counsel for Plaintiff was correct in so observing. However, the clarification sought above would benefit the Plaintiff Class and assignee North Field by eliminating any potential confusion this statement could otherwise cause. Both North Field and the Plaintiff Class understand the Permanent Injunction to necessarily apply to any secondary wallet addresses into which the Stolen Bitcoin and Forked Digital Assets are transferred, because the Amended Judgment awards the Stolen Bitcoin and Forked Digital Assets to the Plaintiff Class as property belonging to it. Furthermore, the injunctive relief, by its terms, protects that *property* awarded to the Plaintiff Class, rather than the addresses where this movable property was illicitly and transitorily stored.

(ii) applies to the Stolen Bitcoin and Forked Digital Assets, and to any digital wallet addresses in which those stolen assets are held, be they the original wallet addresses listed in Tables 1 and 2 or any subsequent wallet addresses to which they are transferred.

Dated: April 8, 2022

Respectfully submitted,

By:       *s/Samuel A. Lewis*
     Samuel A. Lewis / Fla. Bar No. 55360
     E-mail: slewis@cozen.com
     COZEN O'CONNOR
     Southeast Financial Center
     200 South Biscayne Blvd., Suite 3000
     Miami, Florida 33131
     Phone: 305-704-5940

     John Sullivan
     E-mail: jsullivan@cozen.com
     COZEN O'CONNOR
     3 World Trade Center
     175 Greenwich Street, 55th Fl
     New York, NY 10007
     Phone: 212-453-3729
     *Admitted Pro Hac Vice*

     - and -

     L. Barrett Boss
     E-mail: bboss@cozen.com
     Jonathan Grossman
     E-mail: jgrossman@cozen.com
     Kara L. Kapp
     E-mail: kkapp@cozen.com
     COZEN O'CONNOR
     1200 19th Street NW, 3rd Floor
     Washington, D.C. 20036
     Phone: 202-912-4818

     **Counsel for North Field Tech**