UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,
And on behalf of All others Similarly Situated,

CASE NO. 9:16-cv-80060-KAM

      Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

      Defendants.
_____/

**ASSIGNEE'S SUPPLEMENTAL MEMORANDUM IN RESPONSE TO THE COURT'S ORDER [ECF No. 203]**

      North Field Technology Ltd. ("North Field" or "Assignee") respectfully submits this supplemental memorandum to its December 27, 2022 Contempt Motion [ECF No. 200] ("Contempt Motion" or "Motion") against Ren Project ("Ren") for its intentional violation of the Order for Asset Freeze Injunction and to Transfer the Stolen Bitcoin to Assignee ("Permanent Injunction") [ECF No. 177]. North Field submits this supplemental memorandum in response to the Court's Order which states that "[t]he Motion ask for the Court to permit service via email" and requests "that North Field explain why service cannot be conducted in the ordinary course with respect to the issuance of the proposed order to show cause and the scheduling of a hearing on its motion." [ECF No. 203].

**INTRODUCTION**

      Service on Ren cannot be conducted in the ordinary course because Ren does not disclose in any publicly available documents or elsewhere the location of its headquarters, offices, registered agent, or any other information that would allow for service of process in the ordinary course. Ren, like many cryptocurrency exchanges, operates via the Internet with no fixed mailing

address or location. It conducts its business over Internet regularly using email. The only lead that exists as to Ren's whereabouts—other than its Singapore-based counsel—is Ren's LinkedIn page indicating that its headquarters are located in some undisclosed location in Singapore. Ren goes to great to lengths to conceal its true whereabouts and the location of the individuals who operate its business. As Singapore is not a member of the Hague convention, and Ren has concealed its address, thereby precluding ordinary service, alternative service is the best means reasonably calculated to provide notice of a court filing.

In fact, service by email on Ren's management may have already been effective in this case. Months ago, North Field emailed a copy of this Court's Permanent Injunction as to the *Cryptsy* Stolen Bitcoin to Ren's CEO (Taiyang Zhang) and Chief Technology Officer ("CTO") (Loong Wang). After service on Ren's CEO, Ren's attorney, Mr. Clarence Guo, contacted North Field, stating that Ren had engaged him to address the *Cryptsy* Stolen Bitcoin at issue in the Injunction. Since that time, North Field has had ongoing and successful email communications with Ren's attorney. Accordingly, on December 29, 2022, North Field used these very same email addresses to serve the Contempt Motion and accompanying papers on Ren's CEO, Mr. Zhang, and Ren's attorney, Mr. Guo. In both instance, the emails were not returned as undeliverable. In fact, Mr. Guo responded to North Field that he had received the Motion and accompanying papers.

The last month has been a rather tumultuous one for the crypto world. Hardly a day passes without some news of a company adversely impacted by the failure of a prominent (if not now infamous) exchange. At about the same time that the crypto world was turned upside down, Ren decided to change direction, taking the position that it was free to receive the Stolen Bitcoin and to disregard the Court's Permanent Injunction.

In this environment, in the interest of caution, while North Field has provided notice of the Motion to Ren's counsel, Mr. Guo, North Field sought in its motion papers to avoid any argument that Ren did not receive proper notice. Thus, North Field requested permission to serve Ren's CEO's known e-mail address, the only known means of service (other than service on its attorney) reasonably calculated to provide Ren with notice. This measure has been taken to help counteract Ren's very clear attempts to hide itself from ordinary service of court papers.

This is, most certainly, a belt-and-suspenders request to this Court because, on January 3, 2023, North Field effected service on Ren's counsel, Mr. Guo, by mailing him via Federal Express a copy of the Motion and supporting declarations at his law office in Singapore and North Field received a signed a receipt for the service. Declaration of Barry Boss In Support of Motion for Order to Show Cause ("Boss Decl."), ¶ 11 & Ex. 3-4.

Accordingly, North Field respectfully requested that the Court authorize service by email of Ren's CEO (in addition to the service on Ren's counsel).

## FACTUAL BACKGROUND

### I. Ren has actively concealed its whereabouts and willfully received Stolen Bitcoin

During the course of this action, North Field attempted to provide Ren (and many other crypto exchanges) with notice of this Court's Orders. Providing such noticed proved to be a significant challenge, particularly since Ren has actively concealed its whereabouts. Ultimately, North Field's efforts to identify valid email addresses for Ren's CEO proved successful.

Originally, North Field sent copies of the Court's Orders to Ren's customer support email address, support@renproject.io. *See* Kapp Decl. [ECF No. 200-2] ¶ 4 & Exs. 1 & 2; ¶ 6 & Ex. 3. When Ren failed to respond to North Field's emails, North Field was able to obtain email addresses

3

for Ren's CEO (Taiyang Zhang) and Ren's Chief Technology Officer (Loong Wang) and then directly emailed them copies of the Court's Orders. *Id.* ¶ 7 & Ex. 4.

Those emails to the CEO and CTO may have worked to notify Ren because, on August 30, 2022, North Field received an email from Ren's counsel, Mr. Guo, who indicated he had "been engaged by the Ren foundation" in connection with its Ren's receipt of certain *Cryptsy* Stolen Bitcoin. *Id.* ¶ 8 & Ex. 5. Mr. Guo requested a complete list of the transactions involving *Cryptsy* Stolen Bitcoin, which North Field provided to him. By that time, a total of 338 BTC of the Stolen Bitcoin had been deposited on Ren's platform. *Id.* ¶ 8 & Exs. 5 & 6. On November 5, 2022, counsel for Ren replied and confirmed receipt of North Field's August 30, 2022 notice email. *Id.* ¶ 8. Instead, Ren continued to accept deposits of *Cryptsy* Stolen Bitcoin totaling 685 BTC.

## II. North Field Served This Motion on Ren's Co-Founders & Counsel Via Email & Mail

On November 30, 2022, counsel for North Field met and conferred via Zoom with Mr. Guo regarding Ren's willful violation of the Court's Orders and the contempt motion that North Field would prepare and file unless Ren took immediate steps to bring itself into compliance with the Court's Orders. Ultimately, North Field gave Ren's counsel, Mr. Guo, an opportunity to impress upon his client the nature of the Contempt Motion that would be forthcoming unless Ren was willing to address the Stolen Bitcoin received in violation of the Court's Orders.

On December 29, 2022, North Field provided Ren's counsel, Mr. Guo, with a copy of the Motion and its supporting attachments via email at his known email address, clarence.guo@jacquelaw.com. Boss. Decl. ¶ 9 & Ex. 1 The same day, on December 29, 2022, Mr. Guo replied, confirmed receipt of the email, and thanked counsel for North Field for providing him with a copy of the Motion.[1] *Id.*

---

[1] On December 29, 2022, North Field also served a copy of the Contempt Motion and supporting declarations on Ren's co-founders, including its CEO, Mr. Taiyang Zhang, at their known email

4

Furthermore, on January 3, 2023, North Field sent to Ren by mail a copy of the Motion and supporting declarations to Ren's counsel, Mr. Guo, at his law office in Singapore. *Id.* ¶ 11 & Ex. 3. On January 9, 2023, FedEx delivered the hard copies of the Motion and supporting materials to Mr. Guo's office, and Counsel to North Field received confirmation the same day that the mailed copy had been successfully delivered to and signed for by Mr. Guo's office. *Id.* ¶ 11 & Ex. 4.

## ARGUMENT

### I. Approving notice by email on Ren's CEO and CTO avoids any argument that Ren did not receive adequate notice

The notice requirement of the Due Process Clause of the Fourteenth Amendment is met where service is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *City Cab Co. of Orlando, Inc. v. All City Yellow Cab, Inc.*, 581 F. Supp. 2d 1197, 1199 (M.D. Fla. 2008) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)). Under these requirements of the Due Process Clause, mailing a contempt motion to counsel for a nonparty in a civil contempt proceeding can satisfy the Federal Rules of Civil Procedure. *Id.* at 1200; *accord* F.R.C.P. 5(b). North Field has satisfied that notice requirement here.

However, because Ren intentionally hides its whereabouts to insulate itself from outside contact as to court proceedings and any other matters, it has no known mailing address, and, to date, has only communicated through its counsel, Mr. Guo. Faced with this wall intentionally erected by Ren, North Field has no way of preventing Ren from later raising an argument that service on its counsel was in some way inadequate to alert it to the North Field's Motion. Thus,

---

addresses, taiyang@renproject.io and loong@renproject.io. Boss Decl. ¶ 10 & Ex. 2. Ren apparently, once again, received the emails because neither the email to Mr. Taiyang Zhang nor the email to Mr. Guo were returned as undeliverable. Only the email to Mr. Loong Wang was returned as undeliverable. *Id.* ¶ 10.

5

North Field respectfully asked that the Court to authorize, as an added measure, service upon Ren's CEO, Mr. Taiyang Zhang, via email. That method is reasonably calculated to give notice since it resulted in a response from Ren's attorney in the past (and will foreclose Ren's ability to claim that it had no notice by claiming or arguing that its attorney did not inform it about the Motion).

### A. The Amended Judgment and Permanent Injunction applies to Ren

The *City Cab Co. of Orlando* Court considered the sufficiency of notice received by a nonparty against whom a contempt proceeding was brought to enforce the court's injunctive relief. *Id.* It found that service by mail upon the nonparty's counsel was sufficient under Federal Rule of Civil Procedure 5(b). *Id.* The court reasoned that the injunction at issue included nonparties like the one before it by including "'the parties' officers, agents, servants, employees and attorneys' and 'other persons who are in active concert or participation with anyone' previously listed who receive actual notice of the injunction by personal service or otherwise." *Id.*

As in *City Cab*, the injunction at issue includes Ren by including "digital asset trading platforms, cryptocurrency exchanges" and "other parties receiving notice of this order" in control of the Class's assets, as Ren is just such a platform or exchange. [ECF No. 157, ¶ 4]. Specifically, the Permanent Injunction specifically names and extends to "digital asset trading platforms, cryptocurrency exchanges" and "other parties receiving notice of this order" in control of the Class's assets. In relevant part, the Permanent Injunction provides that:

> Any persons, firms, corporations, or other entities, including digital asset trading platforms, cryptocurrency exchanges, payment processors, digital cryptocurrency wallet providers, developers, mining pools, miners, other parties involved in validating transactions on the Bitcoin network or the networks for the Forked Digital Assets encompassed by the Amended Final Default Judgment, and other parties receiving notice of this order . . . shall immediately:
>
> a. locate the Stolen Bitcoin and Forked Digital Assets;
>
> b. freeze, or assist in or facilitate the freezing of, the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet address listed in Tables 1 and 2 of this

6

      Order, and (other than as Ordered in subsection (d) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets;

  c.  freeze all customer accounts related to the Stolen Bitcoin and Forked Digital Assets held in or transferred from any wallet addresses listed in Tables 1 or 2 of [this] Order, and (other than as Ordered in subsection (d) hereof) refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets; and

  d.  take all steps necessary to transfer, assist in the transfer of, facilitate the transfer of, validate or assist in the validation of the transfer of the Stolen Bitcoin and Forked Digital Assets to a digital wallet or account held by North Field.

[ECF No. 177, at 7-8, ¶ 4].

Paragraph 4(a) explicitly requires all third-parties listed in Paragraph 4 to "locate the Stolen Bitcoin and Forked Digital Assets[,]" which, per the Court's Amended Judgment, are the "property of the Plaintiff Class[.]" *See* [ECF No. 157, ¶¶ 4(d), 5]. Thus, the Order plainly imposes an obligation on the third-parties listed in Paragraph 4 to identify the digital asset property itself, some of which had already begun moving through secondary wallet addresses at the time of the Order.

Paragraph 4(b) orders "the Stolen Bitcoin and Forked Digital Assets **held in or transferred from** any wallet address listed in Tables 1 and 2 of this Order" to be frozen. *Id.* (emphasis added). This language refers directly to the Stolen Bitcoin and Forked Digital Assets, which is the property of the Plaintiff Class. Paragraph 4(b) goes on to order third-parties to "refrain from transferring, disbursing, assigning, dissipating, disposing of, validating, or participating in or assisting in the validation of, any transaction in the Stolen Bitcoin and Forked Digital Assets[.]" *Id.* This language requires these entities and individuals, including Ren, to refrain from facilitating any transfer of the Stolen Bitcoin and Forked Digital Assets, to freeze the assets that have been deposited with their exchanges, and to transfer them to North Field.

Moreover, in the Clarification Order, the Court confirmed the same, making clear "that all subparts of Paragraph 4 of the Permanent Injunction apply not only to the original wallet addresses listed in Tables 1 and 2 but also to any and all subsequent wallet addresses into which the Stolen Bitcoin and Forked Digital Assets have been or are in the future transferred." [ECF No. 193]. Thus, the Amended Judgment and Permanent Injunction plainly and unambiguously apply to the Stolen Bitcoin that has been deposited onto Ren's platform through secondary wallet addresses, and require Ren to locate, freeze, and transfer the Stolen Bitcoin in its possession to North Field.

B. **North Field served Ren's counsel in compliance with Rule 5(b)**

In finding that the nonparty had been adequately served with notice, the *City Cab* Court further reasoned that as a nonparty bound by the injunction, under Federal Rule of Civil Procedure 71, "the procedure for enforcing [the injunction] is the same as it would be for enforcing it against [any defendant]." 581 F. Supp. 2d at 1200 (citing F.R.C.P. 71). Accordingly, it reasoned that Federal Rule of Civil Procedure 5 applied, including Rule 5(b). *Id.* Under Rule 5(b), if the alleged contemnor is "represented by an attorney," pleadings filed after the original complaint and other motions may, and indeed must, be served upon their counsel. F.R.C.P. 5(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."); *see also City Cab*, 581 F. Supp. 2d at 1200. Under F.R.C.P. 5, "[s]ervice is considered complete upon mailing." *City Cab*, 581 F. Supp. 2d at 1200; *accord* F.R.C.P. 5(b)(2)(C).

North Field complied with Rule 5(b) by serving notice upon counsel for Ren by mail and by email. On December 29, 2022, North Field provided Ren's counsel, Mr. Guo, with a copy of the Motion and supporting declarations by sending it to his email address, clarence.guo@jacquelaw.com. Boss Decl. ¶ 9 & Ex. 1. Mr. Guo acknowledged receipt and actual notice of the Motion on December 30, 2022. *Id.* On January 3, 2023, North Field mailed a hard

8

copy of the Motion and supporting declarations to Ren's counsel, Mr. Guo, at his office in Singapore. *Id.* ¶ 11 & Ex. 3. On January 9, 2023, counsel for North Field received confirmation that the Motion and supporting documents had been successfully delivered. *Id.* ¶ 11 & Ex. 4. Accordingly, the service via mail effectuated upon Ren's counsel suffices under Rule 5(b).

### C. Service via email on Ren's CEO avoids any argument that Ren did not receive notice

Notwithstanding valid service on Ren through its counsel, North Field is concerned that Ren may later claim that it never received notice, notwithstanding that Ren directed Mr. Guo to represent it in response to North Field's service of the Court's Orders. Because Ren has no known mailing address, Boss Decl. ¶ 8, the only known means for providing notice to Ren's CEO directly is through email. Thus, North Field respectfully asks that as an additional measure, the Court authorize under Rule 4(f)(3) service upon Ren's CEO, Mr. Taiyang Zhang, at his known email address, taiyang@renproject.io. North Field respectfully suggests that email is the best means reasonably calculated to give notice to Ren's CEO, and to avoid an argument later about whether Ren's counsel advised it of the Motion.

Federal Rule of Civil Procedure 4(h)(2) allows for service on a foreign corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f), for its part, authorizes service "(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice [or] . . . (3) by other means not prohibited by international agreement, as the court orders."

The court has broad discretion to grant such relief, and it is not necessary for the serving party to attempt service by the methods enumerated in Rule 4(f)(2), including diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3). *Prewitt*

9

*Enters., Inc. v. The Org. of Petrol. Exporting Countries,* 353 F.3d 916, 921 (11th Cir. 2003); *Rio Props. Inc.*, 284 F.3d at 1014-15; *North Face Apparel Corp. v. Aothenorthface.com*, No. 19-cv-60952-UNGARO/HUNT, 2019 U.S. Dist. LEXIS 226109, at *2 (S.D. Fla. Apr. 30, 2019); *Kipu Sys. LLC v. Zencharts, LLC*, No. 17-24733-Civ-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 232063, at *4 (S.D. Fla. Mar. 29, 2018). Indeed, "[n]o such requirement is found in the Rule's text, implied by it structure, or even hinted at in the advisory committee notes." *Rio Props., Inc.*, 294 F.3d at 1015. Rule 4(f)(3)'s court-directed service "is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* Relief under Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief.'" *Id.* (internal citation omitted). Rather, "[i]t is merely one means among several which enables service of process on an international defendant." *Id.*; *accord North Face Apparel Corp.*, 2019 U.S. Dist. LEXIS 226109, at *3.

Under Rule 4(f)(3), authorizing service by ordinary mail, delivery to counsel for the entity, and by email are all valid forms of service under Rule 4(f)(3) and are all constitutionally reasonable. *Rio Props., Inc.*, 294 F.3d at 1016-17. In *Rio Properties*, the Ninth Circuit reasoned that "[i]f any method of communication is reasonably calculated to provide [the defendant] with notice, surely it is email—the method of communication which [the defendant] utilizes and prefers." *Id.* at 1018. Further, as the *Rio Properties* Court observed, "when faced with an international ebusiness scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Id.*

Further, in determining whether email service on foreign entities comports with due process, courts within the Eleventh Circuit "consider whether such alternative service "is the 'most likely means of communication to reach' the foreign entity or individual to be served." *Al-Saadi v. Annchery Fajas USA, Inc.*, No. 20-23937-CIV-COOKE/DAMIAN, 2022 U.S. Dist. LEXIS

10

55768, at *5 (S.D. Fla. Mar. 25, 2022) (citation omitted). Indeed, "where the party seeking to serve . . . by email has demonstrated that the foreign entity has used the particular email address to conduct business or engage in communications relevant to the matters at issue in the lawsuit, service by way of the email address is most likely to provide notice to the foreign entity and, therefore, comport with due process." *Id.*; *In re Int'l Telemedia Assocs.,* 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."); *North Face Apparel Corp.*, 2019 U.S. Dist. LEXIS 226109, at *6 ("The Court concludes that e-mail service and Internet posting are indeed the most likely means of communication to reach Defendants, who operate via the Internet and rely on electronic communications for the operation of their businesses."); *accord Price v. Knauf Gips KG*, No. 8:21-cv-2788-CEH-AAS, 2021 U.S. Dist. LEXIS 243969, at *1-2 (M.D. Fla. Dec. 22, 2021) (authorizing service on foreign entity's counsel by email under FRCP 4(f)(3)).

Here, as in *Rio Properties*, *Al-Saadi*, and *North Face Apparel Corp.*, service via email is plainly constitutionally reasonable and reasonably calculated to apprise Ren of the pendency of this contempt proceeding. To begin, Singapore is not a signatory to the Hague Convention, and this means of service is not prohibited under law in Singapore, where Ren claims to have its headquarters. *See In re One Apus Container Ship Incident on Nov. 30, 2022*, No. 22 Md. 3023, 2022 U.S. Dist. LEXIS 217757, at *34-35 (S.D.N.Y. Dec. 2, 2022) (concluding that Singapore law permits service by email); *see also Assef v. Doe 1-10*, No. 15 Civ. 1960 (MEJ), 2016 U.S. Dist. LEXIS 41597, at *9-10 (N.D. Cal. Mar. 28, 2016) (permitting service by email to Singapore); Hague Conference on Private International

11

Law's list of signatories, accessible at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

In addition, on Ren's terms of use, email is the method of communication it utilizes and prefers to interface with users and partners. Kapp Decl. ¶ 4 & Ex. 1. Indeed, email is the primary manner through which North Field has communicated with Ren, and which prompted Ren's counsel, Mr. Guo, to begin discussions in an effort to resolve Ren's receipt of *Cryptsy* Stolen Bitcoin. Boss Decl. ¶ 3. Further, Ren has provided no physical address upon which it may be served. *Id.* ¶ 8; Kapp Decl. ¶¶ 4-8. Moreover, notice of the Amended Final Default Judgment, Permanent Injunction, and Contempt Motion have all been served on Ren's CEO at his company email, taiyang@renproject.io and on his counsel, Mr. Guo, at clarence.guo@jacquelaw.com. Notably, Mr. Guo confirmed receipt and actual notice of (i) the Amended Final Default Judgment and Permanent Injunction and (ii) the Contempt Motion. *See* Kapp Decl. ¶ 8; Boss. Decl. ¶ 9 & Ex. 1.

Finally, courts have further held that where the service emails "were not returned as undeliverable," service to those email addresses was proper and constitutionally acceptable. *North Face Apparel Corp.*, 2019 U.S. Dist. LEXIS 226109, at *7; *North Face Apparel Corp. v. 4usedtrailers.com*, No. 18-61329, 2018 U.S. Dist. LEXIS 238453, at *6 (S.D. Fla. June 25, 2018) (holding that service by email was proper when plaintiff showed that the defendants were "likely reached" by emails that were "were not returned as undeliverable"). Here, service via email is constitutionally reasonable as notice of the Amended Final Default Judgment, Permanent Injunction, and Contempt Motion have all been served on Ren's CEO at his company email, taiyang@renproject.io without any undeliverable message. Boss. Decl. ¶ 10. Thus, the Court and North Field have reason to believe that Ren's CEO will actually receive what is sent to him via

email. Accordingly, the belt-and-suspenders approach—service upon Ren by email on Ren's CEO as well as service by mail and email on its counsel—is constitutionally reasonable in this case.

## CONCLUSION

North Field Technology Ltd., assignee of the Plaintiff Class for the purposes of collecting on the Court's Amended Final Default Judgment, respectfully requests that this Court enter an order (i) authorizing as a method reasonably calculated to give notice, service upon Ren's CEO, Mr. Taiyang Zhang, at his known email address, taiyang@renproject.io, and (ii) authorizing electronic service for all future proceedings upon Ren's CEO at taiyang@renproject.io and upon Ren's counsel at clarence.guo@jacquelaw.com.

Dated: January 10, 2023

Respectfully submitted,

By:      s/Samuel A. Lewis
    Samuel A. Lewis / Fla. Bar No. 55360
    E-mail:  slewis@cozen.com
    COZEN O'CONNOR
    Southeast Financial Center
    200 South Biscayne Blvd., Suite 3000
    Miami, Florida 33131
    Phone:  305-704-5940

    John Sullivan
    E-mail:  jsullivan@cozen.com
    COZEN O'CONNOR
    3 World Trade Center
    175 Greenwich Street, 55th Fl
    New York, NY 10007
    Phone: 212-453-3729
    *Admitted Pro Hac Vice*

    - and -

    L. Barrett Boss
    E-mail:  bboss@cozen.com

Jonathan Grossman
E-mail: jgrossman@cozen.com
Kara L. Kapp
E-mail: kkapp@cozen.com
COZEN O'CONNOR
1200 19th Street NW, 3rd Floor
Washington, D.C. 20036
Phone: 202-912-4818

***Counsel for North Field Tech***