UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-80060-KAM

BRANDON LEIDEL, individually,
And on behalf of All others Similarly Situated,

        Plaintiffs,
v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

        Defendants.
_____/

**ORDER IMPOSING CONTEMPT**
**SANCTIONS AGAINST THE REN PROJECT**

THIS MATTER came before the Court on February 17, 2023 upon the Motion [ECF No. 200] of North Field Technology ("North Field"), to hold the Ren Project ("Ren") in contempt for its willful violation of the Court's Order for Asset Freeze Injunction and to Transfer the Stolen Bitcoin to Assignee [ECF No. 177] (the "Permanent Injunction"). Based on North Field's motion and supporting declarations, on January 11, 2023, this Court rendered an Order to Show Cause against Ren [ECF No. 205] (the "Order to Show Cause"). Under the Court's Order to Show Cause, the Court ordered Ren to appear for a hearing on February 17, 2023 to show good cause why it should not be held in contempt. Additionally, the Order to Show Cause directed Ren to submit opposition papers twenty-one (21) days prior to the February 17th hearing date. The Court, having reviewed the file, notes that Ren did not submit any opposition papers as ordered, and Ren did not appear for the February 17th hearing date as ordered. According, the Court being otherwise fully advised in the premises, hereby finds as follows:

**Findings of Fact**

On June 22, 2021, the Court entered the Permanent Injunction. The Permanent Injunction enjoined Defendant Vernon, and all persons in active concert or participation with him or his agents, servants, or who otherwise received notice of the Permanent Injunction, from directly or indirectly transferring the 11,825.11484 Bitcoin stolen from the Plaintiff Class on July 29, 2021 (the "Stolen Bitcoin"), which Stolen Bitcoin were specifically identified in the Amended Final Default Judgment [ECF No. 157] (the "Amended Judgment"). The Permanent Injunction also extended to Forked Asset.

Beginning on March 29, 2022, Defendant Vernon started moving the Stolen Bitcoin to private secondary wallet addresses.

On April 14, 2022, the Court entered an Order clarifying the Amended Judgment and Permanent Injunction (the "Clarification Order"), and making it clear that the Stolen Bitcoin and Forked Assets were subject to the Court's Amended Judgment and Permanent Injunction regardless of whether the Stolen Bitcoin and Forked Assets remained in the wallet addresses in the Amended Judgment or in any other Secondary Wallet.

Ren received notice of the Amended Judgment and Permanent Injunction on March 30, 2022. Two days after the Court entered the Clarification Order, on April 16, 2022, Ren received a copy of the Clarification Order. Ren also received additional notices on May 2, 2022 and August 30, 2022. However, the record demonstrates that Ren chose to ignore the various notices provided, including specifically, the Permanent Injunction and Clarification Order.

As of November 10, 2022, at least 685 BTC of the Stolen Bitcoin had been deposited with Ren in violation of the Permanent Injunction and Clarification Order. The Court also notes that

Ren, through counsel, communicated with North Field's counsel regarding the dispute, demonstrating its knowledge of the Court's orders.

In its Motion [ECF No. 200], North Field presented clear and convincing evidence that Ren received notice of the Permanent Injunction and Clarification Order, that Ren failed to comply with the Permanent Injunction and Clarification Order by receiving in excess of 685 BTC of the Stolen Bitcoin. The Court also finds that the Permanent Injunction and Clarification Order were sufficiently clear and unambiguous. Thus, the burden shifted to Ren to demonstrate that it diligently attempted to comply with the Permanent Injunction and Clarification Order, and the Court's Order to Show Cause was intended to give Ren an opportunity to demonstrate the same.

As of the February 16, 2023, 1 BTC had an approximate value of $24,914.60. Thus, the 685 BTC of the Stolen Bitcoin that Ren received has an approximate value of seventeen million sixty-six thousand five hundred and one dollars US (USD $17,066,501.00).

Ren was provided with a copy of the Court's Order to Show Cause. However, Ren did not submit any opposition papers, and Ren did not appear at the February 17th hearing to show good cause why it should not be held in contempt.

## Legal Conclusions

In light of these findings of fact above, the Court reaches the following legal conclusions:

"Contempt of court is the disregard of judicial authority." *Popular Bank of Florida v. Banco Popular de Puerto Rico,* 180 F.R.D. 461, 465 (S.D. Fla. 1998) (citation omitted). The Eleventh Circuit has recognized that federal courts have inherent authority to enforce its decrees, orders and judgments by holding violators of those decrees, orders, and judgments in contempt of court. *See, e.g.*, *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828-29 (11th Cir. 2010); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (federal "[c]ourts have inherent power to enforce compliance with their lawful orders through civil contempt"). "Frequently used in injunction actions,

civil contempt proceedings are useful methods for enforcing judicial orders." *Popular Bank of Florida*, 180 F.R.D. at 465.

This authority extends to non-parties, both foreign and domestic, who are made aware of an injunction requiring them to take action or refrain from taking action and who, with knowledge of the injunction, continue to aid in its violation. Specifically, courts in the Eleventh Circuit have found personal jurisdiction over non-parties made aware of an injunction requiring them to take action or refrain from taking action and who, with knowledge of the injunction, have continued to aid in its violation. *See, e.g.*, *JTR Enters., LLC v. Colombian Emeralds*, 697 F. App'x 976, 988 (11th Cir. 2017) (unpublished) (affirming personal jurisdiction over non-party who lived outside the territorial jurisdiction of the forum state, concluding that the court had personal jurisdiction based on its inherent powers to issue sanctions); *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 971-72 (11th Cir. 2012) (concluding that the Delaware court that had issued order had personal jurisdiction over nonparty contemnors who lived outside territorial jurisdiction of Delaware to adjudicate compliance with order where the non-party had notice of the order and engaged in enjoined conduct that would frustrate the court's "ability to render a binding judgment" against the defendant); *E.A. Renfroe & Co. v. Moran*, 2007 U.S. Dist. LEXIS 118287, at *9 (N.D. Ala. Jan. 19, 2007) (finding jurisdiction over non-party residing outside the territorial jurisdiction of the court where non-party had actual notice of the court's order and aided and abetted in its violation).

Under the court's inherent contempt authority, "[t]he court has the power to impose coercive and compensatory sanctions." *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1304. These sanctions comport with due process as long as they are proportionate to the need to ensure compliance with the court's order. *Id.*

The sanction of civil contempt is appropriate for failure to comply with a valid court order where: (i) the order is clear and unambiguous, (ii) the alleged contemnor received actual notice of the order; (iii) clear and convincing proof is presented of the alleged contemnor's noncompliance, and

4

(iv) the alleged contemnor has not "diligently attempt[ed] to comply." *Popular Bank of Florida*, 180 F.R.D. at 465. The movant has the burden to make a prima facie showing as to the first three of these elements—that the order is clear and unambiguous, that the alleged contemnor received actual notice, and to present clear and convincing proof of the alleged contemnor's noncompliance. *See Citronelle-Mobile Gathering*, 943 F.2d at 1301. Once those three prima facie showings are made, the burden shifts to the alleged contemnor to produce evidence regarding the fourth element—the alleged contemnor bears the burden of proving that they made all reasonable efforts to comply. *Id.*

"District courts have broad discretion in fashioning civil contempt sanctions." *Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1519 (11th Cir.1990). "When imposing sanctions for civil contempt, a court has numerous options, among them: a coercive daily fine, a compensatory fine, attorneys' fees and expenses . . . and coercive incarceration." *Mesa v. Luis Garcia Land Service, Co.,* 218 F.Supp.3d 1375, 1380 (S.D. Fla. 2016) (internal quotation marks omitted). However, the "sanctions imposed for civil contempt to coerce compliance 'cannot be any greater than necessary to ensure such compliance' and may not be so excessive to be punitive in nature." *Id.*, quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991). Here, the Court determines that coercive sanctions in the form of a daily fine are appropriate to coerce Ren's compliance with the Court's Permanent Injunction and Clarification Order.

In light of the foregoing findings of fact and conclusions of law, the Court hereby

ORDERS AND ADJUDGES as follows:

1. The Court holds Ren in CIVIL CONTEMPT.

2. Ren is hereby ORDERED to immediately transfer to a digital wallet or account held by North Field the 685 BTC of the Stolen Bitcoin in its custody and/or its equivalent value in U.S. Dollars.

3.      In order to coerce Ren's compliance with the Court's orders, and in light of the significant value of the 685 BTC of Stolen Bitcoin that Ren has refused to turnover in compliance with the Court's orders, the Court hereby imposes a daily fine of $500.00 (roughly equivalent to 0.020 BTC) for every day following the entry of this Order that Ren fails to turn over the 685 BTC to North Field.  Ren shall pay the daily fine to North Field at the same time that it turns over the 685 BTC to North Field.

4.      Counsel for North Field shall serve a copy of this Order on Ren's CEO, Taiyang Zhang, at his work e-mail address, taiyang@renproject.io, and on counsel for Ren, Clarence Guo, at his work e-mail address, clarence.guo@jacquelaw.com, as expeditiously as possible.

5.      The Court reserves jurisdiction to enter further orders as may be necessary to coerce compliance and to address further efforts by Defendant Vernon, his associates, co-conspirators, and others acting in concert with him to secret and dispose of the Stolen Bitcoin and Forked Assets.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 17th day of February, 2023.

KENNETH A. MARRA
United States District Judge