## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

---

BRANDON LEIDEL, individually,
And on behalf of All others Similarly Situated,

                Plaintiff,

                - v. -

PROJECT INVESTORS, INC., d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

                Defendants.

---

Case No. 9:16-cv-80060 (KAM)

Hon. Kenneth A. Marra

## DECLARATION OF KAREN R. KING IN SUPPORT OF NON-PARTY BINANCE HOLDINGS, LTD.'S OPPOSITION TO NORTH FIELD'S MOTION FOR AN ORDER TO SHOW CAUSE WHY CONTEMPT SANCTIONS SHOULD NOT BE IMPOSED AGAINST BINANCE

I, Karen R. King, being duly sworn, hereby declare under penalty of perjury that:

1.      I am a principal of Morvillo Abramowitz Grand Iason & Anello P.C. and counsel for non-party Binance Holdings, Ltd. ("Binance") in this action.

2.      Binance is a non-U.S. cryptocurrency exchange with no headquarters, offices, or operations in the United States. (ECF No. 213 at 18); *see also Miro v. Doe*, 22-80399, 2023 WL 2734374, at *1, *3 (S.D. Fla. March 31, 2023); *Guarini v. Doe*, No. 21-cv-81890, 2022 WL 20180341, at *3 (S.D. Fla. Apr. 5, 2022).

3.      None of the Original Wallet Addresses or the Newly Discovered Wallets used to perpetrate the June 2014 fraud at issue in this lawsuit were held on Binance's exchange.  Indeed, Binance did not exist in 2014.[1]

4.      On May 22, 2021, plaintiffs' counsel (the Silver Miller firm) allegedly sent a letter to various email addresses at Binance reporting the entry of a temporary restraining order in this action and asserting "upon information and belief, Mr. Vernon (individually or acting in concert with/through one of the people or entities cited in the Order) has an account(s) at your institution in which he holds assets that are subject to the Court's Order" and demanding a freeze of any such accounts.  (ECF No. 213-2, Ex. 1.).   The Silver Miller firm attached a 26-page spreadsheet with 533 transaction hashes[2] labeled "Binance" purportedly representing transactions from unknown sender accounts into unknown accounts at Binance during the period February 2021 through May 2021.

5.      During the 2021 and 2022 time period, the Silver Miller firm had multiple matters in which it requested a freeze of assets from Binance.  I was engaged by Binance to assist on these matters and had numerous communications with David Silver at the Silver Miller firm in which I conveyed that, for private plaintiffs requesting a freeze, Binance requires tracing information showing the assets transferred in the identified transactions originated from a victim's account or an account used by the perpetrator to defraud victims (here, the Original Wallets and Newly Discovered Wallets).  Although the Silver Miller firm provided such tracing for other matters, they did not provide any tracing for this matter.

---

[1] Binance was created in July of 2017. *See* https://www.binance.com/en/about (last visited July 27, 2023).

[2] A transaction hash is a unique sequence of letters or numbers that identify a specific transaction on a blockchain that serves as a record that the transaction has taken place.

6.       On March 30, 2022, counsel for North Field (the Cozen firm) emailed three different Binance e-mail addresses (Legal@ Binance.com, Corporate@Binance.com, and Support@Binance.Zendesk.com), requesting that "certain assets subject to the Amended Final Default Judgment that ha[d] been recently transferred to [Binance's] exchange" and "any and all assets originating from the wallet addresses listed in the Amended Final Default Judgment and Permanent Injunction should they hereafter make their way to [Binance's] exchange" be immediately frozen.  (ECF No. 213-2, Ex. 2).  The correspondence merely attached the prior court orders along with a list of 599 transaction hashes, many of which differed from the hashes allegedly provided by the Silver Miller firm 10 months earlier.  None of the correspondence included tracing to show that the assets originated from the Original Wallets and Newly Identified Wallets, or otherwise were part of the Stolen Bitcoin and Forked Digital Assets subject to the injunction.

7.       The Cozen firm claims to have sent repeated additional notices to Binance by email on April 4, 2022, April 8, 2022, April 20, 2022, April 22, 2022, and May 20, 2022.  (ECF No. 213-2 ¶¶ 8-16).  In addition to being generally confusing, none of the "notices" were properly served, none of the attached spreadsheets with hashes were the same, and none provided underlying tracing information.

8.       In July 2022, the Cozen firm directly emailed an in-house lawyer at Binance and requested a freeze of any account that received assets stolen by Paul Vernon, again, without providing any tracing information.  (ECF No. 213-2 ¶ 20).  Binance directed the communication to me, and I promptly contacted the Cozen firm and we scheduled a telephone conference for July 18, 2022.  An email chain with the Cozen firm reflecting that this call took place is attached as **Exhibit 1**.

3

9.      On the July 18 call, I conveyed that Binance reserved its defenses, including lack of personal jurisdiction and proper service, but was willing to voluntarily assist North Field with a freeze if tracing information was provided showing that the stolen assets originated from the Original Wallet Addresses or the Newly Discovered Wallets referenced in the injunction.  The Cozen firm thereafter sent an unwieldy 103-page Excel spreadsheet with over 4,500 transaction hashes-1,650 of which were labeled "Binance"-purportedly representing transactions from unknown sender accounts into unknown accounts at Binance, but *no* tracing linking any assets to the Original Wallet Addresses or Newly Discovered Wallets.  This email and its attachment are attached as **Exhibit 1**.

10.      In a follow-up phone call discussion on August 4, 2022, I conveyed to the Cozen firm that the Excel spreadsheet did not constitute tracing and Binance could not be expected to investigate thousands of transactions hashes for North Field.  In response, the Cozen firm agreed to focus on those transactions of 1 BTC or more (what the Cozen firm referred to as "non-dust" transactions) and to provide tracing that would link those "non-dust" transactions to the Original Wallet Addresses or the Newly Discovered Wallets used in the Cryptsy fraud.

11.      Notwithstanding the stated plan, Binance did not hear from the Cozen firm (or anyone else representing North Field or plaintiffs) for over eight months.  After this prolonged silence, on March 27, 2023, North Field emailed me, suddenly threatening to move for an order of contempt unless Binance confirmed within two days that it had frozen 618 BTC that was allegedly transferred through Binance's exchange.  This email attached another spreadsheet— this time with 2,793 transaction hashes labeled "Binance"—again without any tracing information.  This email and the attached spreadsheet are attached as **Exhibit 2**.

12.     I responded to the Cozen firm's March 27, 2023 email by reminding the Cozen lawyers that they had not provided the tracing information agreed upon eight months ago.  This email is attached as **Exhibit 3**.

13.     Nearly a month later, on April 21, 2023, the Cozen firm finally provided a list of select "non-dust" transactions, much of which were not on the spreadsheet from July 2022, as well as tracing information for only ten of the destination accounts (labeled "Top Ten") on the new spreadsheet.  This email and the attached spreadsheet of "non-dust" transactions list are attached as **Exhibit 4**.  The tracing reports for the "Top Ten" accounts, which were also transmitted in the same email, are attached as **Exhibits 5** through **14**.

14.     Binance reviewed the tracing information provided on April 21, 2023 and, as promised, promptly implemented a freeze on the individual customer accounts that had, at some point, received assets that could be traced back to the Original Wallet Addresses or Newly Discovered Wallets, even though those assets were no longer in the accounts.

15.     On May 2, 2023, on a conference call, I informed the Cozen firm of the freeze, explaining that seven of the ten accounts were individual customer accounts and had been frozen.  I further explained that the remaining three accounts belonged to merchant businesses or other cryptocurrency exchanges (and therefore Binance could not identify the underlying users who made the transactions at issue).  I further provided the names of those exchanges to North Field so that it could seek further information from them directly.

16.     On May 5, 2023, the Cozen firm requested the amount of assets contained within each of the seven frozen accounts.  I had a call with the Cozen firm later that day and disclosed the assets that remained in each of the accounts.  I also confirmed that none of the accounts had any BTC or Forked Digital Assets as defined in the Injunction and Clarifying Order.

17.     On May 16, 2023, North Field issued a subpoena to Binance seeking "all account information associated with [eight] wallet addresses and hashes" and "all communications to affected customers regarding the institution of the freeze in compliance with the Permanent Injunction."  A true and accurate copy of the subpoena is annexed hereto as **Exhibit 15**.  The Cozen firm asked if I was authorized to accept service of the subpoena and I said I was not. This exchange is reflected as part of the email chain attached as **Exhibit 16**.  To my knowledge, the subpoena was never properly served.

18.     The subpoena was objectionable to Binance for a variety of reasons including lack of jurisdiction, lack of service, burden, and relevance.  Nonetheless, on May 17, 2023, I offered to discuss a potential voluntary production of certain account information.  When no response was received from North Field, I followed up the following week, on May 24, and asked "Did you want to have a follow up discussion about voluntary production?"  This exchange is reflected as part of the email chain attached as **Exhibit 16**.

19.     Ultimately, on June 1, 2023, Binance offered to make a "voluntary production (without waiver of any defense and subject to further discussions on terms of any such resolution)" of "Customer Information (including email, mobile number and registration time), Current Assets & Wallets, Order History (including price, quantity, time, and status of all orders), Deposit History (including source address and time), Withdrawal History (including destination address and time), and KYC-related information (ex: government issued identification and photo)."  This exchange is reflected as part of the email chain attached as **Exhibit 16**.

20.     In the same June 1, 2023 communication, I also responded to a question from the Cozen firm asking if Fengying Tong ("Tong") was the owner of one of the seven individual

accounts that had been frozen.[3]  I confirmed that one of the accounts belonged to Tong—

specifically, Top Trace 2 (1LfRxXHH93wBKnY3uPSpZGAFg2EJQtzRep)—but stated that

Binance would not comment on why any customer account had been frozen.  This

correspondence is reflected as part of the email chain attached as **Exhibit 16**.

21.     Contrary to the Cozen firm's baseless insinuations, there were no transfers or

withdrawals from Tong's account on or after the November 15, 2022 automated email attached

to North Field's motion.  Indeed, there were no transfers or withdrawals from the account after

August 2022.  Attached hereto as **Exhibit 17** is account information for Tong's account,

including current assets, wallets, order, deposit, and withdrawal history (all of which would have

been available to North Field had they waited to review the production agreed upon).[4]  Personal

financial information not relevant to this motion has been redacted from Exhibit 17.

22.     On June 5, 2023, the Cozen firm stated that it was "amenable" to a voluntary

production of the information offered—namely, "Customer Information (including email, mobile

number and registration time), Current Assets & Wallets, Order History (including price,

quantity, time, and status of all orders), Deposit History (including source address and time),

Withdrawal History (including destination address and time), and KYC-related information (ex:

---

[3] On May 30, 2023, the Cozen firm conveyed that it has been contacted by Fengying Tong who complained that his account had been frozen since November 2022.  I told the Cozen firm that I had provided the Cozen firm's contact information to Binance in case there were customer complaints arising from the recent freezes.  I promised to inquire about whether Fengying Tong was associated with any of the accounts under discussion with the Cozen firm.

[4] The transaction history for Tong's account also confirms that there was no Bitcoin in the account at the time North Field finally provided tracing to Binance in April 2023.  Indeed, North Field's tracing shows four transfers of Bitcoin into Tong's account on July 14, 2022, totaling 63.6 Bitcoin, that were traceable back to the Original Wallets and Newly Discovered Wallets. *See* **Exhibit 6**.  Those transfers were followed immediately by transfers of Bitcoin out of Tong's account on July 14, 2022, which emptied the account of all Bitcoin.  *Compare* **Exhibits 6 and 17.**

government issued identification and photo)." I responded the same day and said I would "work up a production cover letter for your review, the gist of which is that the production is voluntary, reserves Binance's rights, and that this is to resolve our disputes over the subpoena." This exchange is reflected as part of the email chain attached as **Exhibit 16**.

23.     Over the following ten days, I worked with Binance to gather the agreed upon information and prepare it for production. I provided the Cozen firm with status updates on June 9, 2023 and June 15, 2023. This correspondence is reflected as part of the email chain attached as **Exhibit 16**.

24.     On Friday, June 16, 2023, at 1:33pm, as promised, I shared a draft production cover letter with North Field's counsel, asking, "Can you take a look at the attached production letter and let me know if our understanding is accurate?" Four hours later, at 5:39pm, the Cozen firm sent an abrupt email, refusing to "forgo any further discovery requests to Binance in this litigation in exchange for receiving information for 8 addresses," complaining that "[w]e have waited more than two weeks for discovery from Binance", and declaring that "it appears we will need to pursue the formal route after all." I responded *6 minutes later* requesting clarification: "If we are agreeing to produce this information as a compromise, it would be unfair for you to then just follow up with more requests and threats. What more do you plan to seek from Binance? We cannot agree to anything without transparency from you." This exchange is reflected as part of the email chain attached as **Exhibit 16**.

25.     The Cozen firm did not respond, did not try to explain or resolve the issues, and did not initiate a pre-motion conference before filing the present motion for sanctions at 9:06pm the same day.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____

Karen R. King