UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,            CASE NO. 9:16-cv-80060-KAM
And on behalf of All others Similarly Situated,

        Plaintiffs,
v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

        Defendants.
_____/

**NORTH FIELD'S REPLY TO**
**BINANCE'S RESPONSE TO THE ORDER TO SHOW CAUSE**

Binance's response to the order to show cause[1] is more remarkable for what it concedes than for what it argues. Binance concedes that:

- it was aware of and, in fact, received notice after notice of this Court's Temporary Restraining Order and Permanent Injunction. [Response, at 5].

- it was also aware of and received notice after notice of the transaction hashes identifying the location of the Class's Stolen Bitcoin in accounts on the Binance exchange. [*Id.*].

- it never abided by the Court's Orders—even though it could certainly have—to "immediately" freeze the accounts that it was notified held the Class's Stolen Bitcoin and turn over the identified Stolen Bitcoin to North Field. [*Id.* at 6-7].

- it instructed accountholders of the Stolen Bitcoin to move their assets off Binance's exchange *before* Binance froze their accounts, [*Id.* at 16], in what was an open, obvious, and intentional effort to flout and avoid this Court's Orders.

These concessions are remarkable and, more importantly, dispositive. Thus, contempt sanctions against Binance are plainly warranted.

**I.     An order of contempt against Binance is manifestly warranted.**

Binance concedes, as it must, that federal courts have inherent authority to enforce their orders by holding violators of those orders in contempt of court. *E.g.*, *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828-29 (11th Cir. 2010); *Citronelle- Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). Under this authority, "[t]he court has the power to impose coercive and compensatory sanctions." *Citronelle-Mobile Gathering*, 943 F.2d at 1304. North Field has already made the prima facie showing as to the first 3 elements required for the imposition of contempt sanctions. North Field has amply established, and Binance has not disputed, that: (1) the Permanent Injunction ("Injunction" or "Order") is clear and unambiguous; (2) Binance received actual notice of the Injunction; and (3) Binance has objectively failed to comply with the Injunction—to freeze and turn over to North Field 669.7 BTC. *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998) (citation omitted). As such, the burden has shifted to Binance to show that it made *all reasonable efforts* to comply.

---

[1] Citations to Binance's Opposition Brief [ECF No. 217] shall appear as "Response."

*Citronelle-Mobile Gathering*, 943 F.2d at 1301. Not only does Binance's Response fail to meet this burden, but Binance admits that instructed accountholders of the Stolen Bitcoin to move their assets off Binance's exchange *before* Binance froze their account—actions that intentionally evaded this Court's Order. Contempt sanctions against Binance are thus plainly warranted here.[2]

### A. Binance received actual notice of the Injunction & failed to comply with its terms.

North Field and the Class have shown that Binance *repeatedly* received actual notice of the Amended Final Default Judgment, Temporary Restraining Order, and Permanent Injunction. [Mot. at 12-14; Declaration of Kara Kapp In Support of the Contempt Motion, ECF No. 213-2, ¶¶ 2, 5, 7-22; August 21, 2023 Declaration of Jason Miller, ¶¶ 2-4 & Exs. A-C]. Binance does not contest that it received copies of the Order. Instead, Binance objects that the repeated copies of the Injunction were not delivered via formal service of process. [Response, at 5]. However, Binance cites to no legal authority that actual notice must be made by service of process, nor could it. The rule itself makes clear that personal service is not the only permissible form of actual notice, by providing that "actual notice [may be made] by personal service *or otherwise*[.]" Federal Rule of Civil Procedure 65(d)(2) (emphasis added). Indeed, courts have held that all that is required to establish notice in a contempt action is that the alleged contemnor had "'knowledge of the mere existence of the injunction; not its precise terms.'" *FTC v. Acquinity Interactive, LLC*, No. 14-60166-Civ-Scola, 2021 U.S. Dist. LEXIS 201525, at *11 (S.D. Fla. Sept. 29, 2021) (finding that non-party contemnor had actual notice based on evidence that the contemnor "saw it and was made aware of it" rather than any evidence of service of process); *Clairson Int'l Corp. v. Master Tool Co.*, No. 84-2861-CIV, 1986 U.S. Dist. LEXIS 29760, at *2 (S.D. Fla. Jan. 31, 1986); *accord Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979) ("Rule [65(d)] codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice"). By conceding that it received

---

[2] Binance has not disputed North Field's arguments establishing that Binance has been properly served with notice of the instant Motion, and this fact is therefore uncontested.

multiple copies of this Court's Orders, Binance has admitted that it was aware of the Injunction. [Mot. at 12-14].

Similarly, Binance does not dispute that the Injunction required "cryptocurrency exchanges," including Binance, to "immediately" freeze all digital assets included within the Stolen Bitcoin that have been deposited with them, to "immediately" freeze all accounts associated with the deposit of Stolen Bitcoin on their exchange, to transfer these assets to North Field, and to refrain from "assisting in . . . any transaction in the Stolen Bitcoin . . . to any other individual or entity." [ECF No. 177, at 7-8, ¶ 4]. Binance does not dispute these plain facts, nor could it.

Finally, it is undisputed that Binance objectively failed to comply with the Order. [Mot. at 15]. Binance has not contested that Binance did not "immediately" freeze the Stolen Bitcoin upon receiving notice, "immediately . . . freeze all customer accounts related to the Stolen Bitcoin", and "take all steps necessary to transfer" the Stolen Bitcoin to North Field. [Mot. at 15; Kapp. Decl. ¶¶ 17, 24, 25]. That is *all* North Field and the Class must show for sanctions to be warranted.

**B. Binance concedes that it could have complied with the Court's Injunction.**

It is thus *Binance's burden* to show that it made *all reasonable efforts* to comply with the Injunction to avoid the imposition of these sanctions. *Citronelle-Mobile Gathering*, 943 F.2d at 1301. Binance failed to meet this burden. It is undisputed that upon receiving notice of the Injunction and receipt of Stolen Bitcoin, Binance did not "immediately" (i) freeze the Stolen Bitcoin; (ii) freeze the associated customer accounts; and (iii) transfer the Stolen Bitcoin to North Field. Indeed, Binance has *still* not turned over to North Field 669.7 BTC, the amount it received from the Class's Stolen Bitcoin, despite its knowledge that this is required under the Injunction.

It is also uncontested that Binance *could* have complied. Binance concedes that North Field provided it with transaction hashes for every single transaction in which Binance received Stolen Bitcoin, [Response, at 5], which is all that is required for Binance to locate (and thus freeze) the Stolen Bitcoin. [*Id.* at 3 n.4]. Moreover, Binance has shown that it *could* have frozen the associated

3

customer accounts. Indeed, Binance admits that it very belatedly froze one account, that of Fenying Tong. [*Id.* at 19]. Finally, Binance does not and cannot contest its ability to turn over these assets to North Field, as Binance sends digital assets in blockchain transactions as part of its core services. Thus, compliance was possible, and Binance has not shown otherwise.[3]

Binance next frivolously argues that *North Field* has failed to prove that the Stolen Bitcoin were in the Binance wallets identified by North Field's tracing reports at the time they were provided to Binance. [Response, at 19].[4] This argument flips the burden of proof on its head. It is not North Field's burden to show that Binance made good faith effort to comply, but rather *Binance's* burden. Moreover, Binance **alone** has access to such evidence. The tracing performed by North Field's expert, Coinfirm, stops once an asset hits Binance. [ECF. No. 213-1, at 2, ¶ 6]. Notably, Binance has provided no evidence that all of the 669.7 BTC had been moved out of the identified Binance destination wallets before Binance received first notice of these deposits.[5]

---

[3] Binance claims that "none of the attached spreadsheets with hashes were the same[.]" [Response, at 5]. If Binance is suggesting that the spreadsheets did not contain substantially the same transaction hashes from past deposits, it is wrong. Each updated spreadsheet was organized from most recent to oldest transaction and contained substantially the same prior transaction hashes, plus *additional identified deposits* with corresponding transaction hashes. Supplemental Declaration of Kara Kapp In Support of Contempt Motion ("Supp. Kapp Decl."), ¶¶ 4-12 & Exs. 31-40.

[4] In support of this argument, Binance cites to a declaration of its outside counsel, Karen King, who declares, *without foundation*, as to the transfers or withdrawals from Tong's account after August 2022. [ECF No. 217-1, ¶ 21]. North Field objects to Ms. King's foundation to testify as a witness to what amounts were in any Binance customer account at a given time.

[5] The *only* example Binance addresses is the account of Fengying Tong, [Response, at 19], as to which there is specific evidence of Binance's willful non-compliance. Whether the specific 63.6 BTC deposited to Tong's account had been moved before Binance received the spreadsheet with the corresponding transaction hashes, Binance could have (and was required to) freeze Tong's account "immediately" when it received the spreadsheet identifying the deposits made into his account on July 18, 2022, the date Binance admits it received notice. [*Id.* at 19]. Binance has not shown that there were no assets in this account at the time it received notice these deposits. Yet, Binance waited *four additional months* before freezing Tong's account, and indeed *encouraged* Tong to remove all of his remaining assets before it did so. [ECF No. 213-2, ¶ 29, Ex. 30]. This conduct willfully violated this Court's Order. Nor is such conduct aberrational for Binance. *See CFTC v. Zhao*, No. 1:23-cv-01887, Doc. 1, at 33-34, ¶¶ 105, 106 (N.D. Ill. Mar. 27, 2023).

### C. Binance not only failed to abide by this Court's Order, it intentionally flouted it.

Binance nonsensically argues that because it ignored the Injunction's order to "immediately" freeze the customer accounts associated with the Stolen Bitcoin upon notice of receipt of these assets, and its customers moved at least some of the Stolen Bitcoin off of Binance's exchange before Binance froze those accounts, *months* later, and *over a year after receiving actual notice* of the Injunction and of specific deposits on its exchange, it is absolved for its failure to abide by the Injunction. [Response, at 18]. This argument is absurd.

The Order required Binance to "immediately" freeze the Stolen Bitcoin and associated accounts upon receipt of notice. North Field undisputedly provided such notice, along with transaction hashes sufficient for Binance to locate and freeze the Stolen Bitcoin, beginning in May 2021. [Response, at 3-4, 5]. Binance concedes that it refused to "immediately" freeze these assets, doing nothing while arbitrarily demanding costly tracing visualizations.[6] [Response, at 18]. However, the Court's Order did not impose such a requirement. Thus, Binance's argument—that it could arbitrarily demand whatever additional proof it saw fit, at whatever cost, to avoid complying with the Order's instruction to immediately freeze the Stolen Bitcoin—is meritless. Had Binance complied with the Order's terms, by freezing the associated assets and accounts, any bona fide purchaser whose assets had been frozen would have had an opportunity to come before this Court and show that they had acquired the assets in good faith, or that the assets did not belong to the Class. As this Court has done before, it would have authorized the release of funds upon submission of adequate proof. [*See* ECF No. 176]. Thus, Binance had no legitimate basis for arbitrarily demanding additional evidence as a condition for complying with the Court's Order.

### II.     The Injunction Plainly and Validly Applies to Binance.

Because Binance has not made all reasonable efforts to comply, it raises a smoke-and-mirrors defense to excuse its violation, claiming that the Injunction cannot apply to it under Rule

---

[6] On information and belief, Binance uses Chainalysis and other tracing firms, and thus could have obtained the additional "proof" that it demanded from North Field. Nor was such proof required.

5

65(d). [Response, at 9-10, 17]. While acknowledging that Rule 65(d) binds not only the parties, *but also*, *inter alia*, all "other persons who are in active concert or participation with" the parties or their agents. [*Id.* at 17]. Binance wrongly argues that it does not fall within the scope of Rule 65(d), and thus "does not fall under the scope of the . . . injunction." [*Id.*] This argument is wrong.

First, the plain language of the Injunction expressly applies to "[a]ny persons, firms, corporations, or other entities, including digital asset trading platforms, cryptocurrency exchanges, payment processors, [and] digital cryptocurrency wallet providers . . . receiving notice of this Order by electronic mail[.]" [ECF No. 177, at 7, ¶ 4]. Binance indisputably qualifies as a "cryptocurrency exchange[]" and "digital asset trading platform" that received actual notice by electronic mail. Therefore, Binance plainly falls within the scope of the Injunction.

Second, Binance falls within the categories of non-parties contemplated under Rule 65(d), which, as Binance concedes, includes "other persons … in active concert or participation with" the parties or their agents. The Eleventh Circuit has long held that district courts have the inherent power to order non-party financial intermediaries to freeze a defendant's assets to ensure the availability of equitable relief. *See SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734-35 (11th Cir. 2005) (affirming district court authority to freeze assets that could have been used to satisfy equitable relief). That is precisely what the Injunction requires. [ECF No. 177, at 5].

Binance does not dispute that "[o]rders freezing assets and prohibiting transfers from ... accounts are routine methods of enforcing injunctive relief, even if they are directed to third parties in possession of the funds." *Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 979 F. Supp. 2d 1307, 1316 (S.D. Fla. 2013) (report and recommendation), *adopted by* 979 F. Supp. 2d 1307 (S.D. Fla. 2013); *see also* [ECF No. 177, at 5-6] (citing cases). As this Court recognized in its Injunction, "[c]ourts in this District and elsewhere have extended such [asset freeze] orders to digital assets, including cryptocurrencies." [ECF No. 177, at 5-6] (see cases cited). Nor is that authority toothless under Rule 65(d), as Binance would have this Court believe. Rather, binding

precedent establishes that the court has inherent authority and jurisdiction under Rule 65(d) to hold such non-parties, foreign and domestic, in contempt of an injunction as long as the non-parties are made aware of an injunction and they, with knowledge of the injunction, aid in its violation.[7]

Binance next incorrectly claims that for a non-party "to be bound by an injunction under Rule 65(d)(2)(C), the [non-party] need to have played an essential role in knowingly assisting the party to the injunction carry out the prohibited acts." *Acquinity Interactive*, 2021 U.S. Dist. LEXIS 201525, at *12. [Response, at 18].[8] As this Court already found in extending the Injunction to third-party exchanges like Binance: "In this case, extending the order to third party payment processors is particularly appropriate because the Stolen Bitcoin has continued to move since this Court issued the Temporary Restraining Orders on May 17-18, 2021 . . . , and these transactions *could not have occurred without* the involvement—whether knowing or unknowing—of third parties involved in processing these transactions." [ECF No. 177, at 6-7] (emphasis added). Binance's role as a cryptocurrency exchange is precisely the sort of "essential role" contemplated by Rule 65(d). Therefore, the Injunction plainly applies to Binance.

---

[7] *See, e.g.*, *JTR Enters., LLC v. Colombian Emeralds*, 697 Fed. App'x 976, 988 (11th Cir. 2017) (affirming personal jurisdiction over non-party who lived outside the forum based on inherent sanction powers); *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 971-72 (11th Cir. 2012) (holding that Delaware court that had issued order had personal jurisdiction over nonparty contemnors who lived outside Delaware to adjudicate compliance with order where non-party had notice of order and engaged in enjoined conduct that would frustrate court's "ability to render a binding judgment"); *Acquinity Interactive*, 2021 U.S. Dist. LEXIS 201525, at *11-14 (holding non-party to injunction, Levison, in contempt); *Blanco GmbH + Co. KG v. Vlanco Indus. LLC*, 992 F. Supp. 2d 1225, 1245, 1250 (S.D. Fla. Dec. 12, 2013), *aff'd by* 620 Fed App'x 718 (11th Cir. 2015) (affirming order holding non-party, Johnson, in contempt for violation of injunction based on circumstantial evidence that he acted in concert with defendants to evade injunction).

[8] Binance claims, without basis, that a higher, inapplicable standard of "substantial assistance" must be met. [Response, at 15]. Binance is wrong. Indeed, none of the 3 cases Binance cites for this proposition arise under Rule 65(d). *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (reversing dismissal of complaint alleging aiding and abetting fraud); *Richter v. Wells Fargo Bank, N.A.*, No. 2:11-cv-695-FtM-29DNF, 2015 U.S. Dist. LEXIS 3796 (M.D. Fla. Jan. 13, 2015) (granting summary judgment on allegations of aiding and abetting conversion); *Hines v. FiServ, Inc.*, No. 08-cv-2569, 2010 U.S. Dist. LEXIS 39896, 2010 WL 1249838, at *4 (M.D. Fla. Mar. 25, 2010) (motion to dismiss complaint alleging aiding and abetting breach of fiduciary duty). Therefore, they are inapposite.

### III. The Court has jurisdiction over Binance under Rule 65(d).

Binance's argument that the Court has no jurisdiction over it is meritless. [Response, at 11]. As the Eleventh Circuit has recognized, as to the enforcement of a court's orders, district courts have personal jurisdiction under Rule 65(d) over "nonparties who engage in enjoined conduct" and those nonparties "can be sanctioned when their conduct would frustrate the court's 'ability to render a binding judgment.'" *Alderwoods Grp*, 682 F.3d at 971; *accord ClearOne Communs., Inc. v. Bowers*, 651 F.3d 1200, 1215-16 (10th Cir. 2011); *HPC US Fund 1, L.P. v. Wood*, No. 13-61825-CIV-ROSENBERG/BRANNON, 2014 U.S. Dist. LEXIS 188941, at *10-11 & n.5 (S.D. Fla. Sept. 5, 2014) ("[t]he geographic scope of the Court's contempt powers over third parties extends beyond geographic boundaries of the Court. Where a non-party is shown to be in violation of an injunction, that non-party submits to personal jurisdiction of the issuing court.").

Courts have "broad discretion" to order nonparties in possession of funds belonging to a party to freeze those assets, and "[o]rders freezing assets and prohibiting transfers from …accounts are *routine* methods of enforcing injunctive relief, even if they are *directed to third parties* in possession of the funds." *Developers Sur. & Indem. Co.*, 979 F. Supp. 2d at 1316 (citing cases).

Binance wrongly argues that personal jurisdiction over nonparties under Rule 65(d) is "limited to circumstances when the nonparty is acting as an agent to one of the parties to the litigation[,]" and/or a party's attorneys. [Response, at 13]. This argument is specious, as Rule 65(d) explicitly provides that an "order granting an injunction" may bind various non-parties, not limited to the parties' "agents," but rather reaching: "[i] the parties to the action, [ii] their officers, [iii] agents, [iv] servants, [v] employees, [vi] attorneys, *and* [vii] *those persons in active concert or participation with them*" who receive actual notice of the order. Rule 65(d) (emphasis added).

Furthermore, as Rule 65(d) explicitly contemplates, Eleventh Circuit courts have upheld exercises of Rule 65(d) jurisdiction over non-parties, regardless of whether they were "agents" of a party to the litigation, as long as the non-party acted in concert with the defendant to violate the

court's injunction. *See FTC v. Leshin*, 618 F.3d 1221, 1235 (11th Cir. 2010) ("[a]n order [for injunctive relief] binds those 'who receive actual notice of it,' including the parties, [and their] … agents, … *as well as* '*other persons* who are in active concert or participation with [them.]'") (affirming contempt finding against non-party that was not agent or attorney of a party).[9]

In *Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375 (S.D. Fla. 2016), the court held a non-party witness, who was neither an attorney for nor an authorized agent of any party to the litigation, in contempt for his failure to comply with the court's order directed to that non-party. Likewise, in *Acquinity Interactive*, 2021 U.S. Dist. LEXIS 201525, at *11-14, the court held a non-party to an injunction, Levison, in contempt based on his actual knowledge of the injunction and that he played an "essential role" in assisting the defendant to violate that injunction. Similarly, in *Blanco GmbH + Co. KG v. Vlanco Indus. LLC*, 992 F. Supp. 2d 1225, 1250 (S.D. Fla. Dec. 12, 2013), *aff'd by* 620 Fed App'x 718 (11th Cir. 2015), the court held a non-party, Robert Johnson, in contempt for acting in concert with the defendants to evade an injunction. As the court in *Blanco* explained, "a non-party to the injunction or order may be found in contempt for violating the terms thereof if it had actual notice of the prohibited conduct." *Id.* at 1245.[10]

---

[9] Binance cites 4 inapposite cases in which other district courts found no personal jurisdiction over Binance. [Response, at 11]. None of these cases arose under Rule 65(d) (they arose under Rule 12(b)(2) on a motion to dismiss a complaint). As Binance concedes, the personal jurisdiction standard applicable on a Rule 12(b)(2) motion is different than that under Rule 65(d). [*Id.* at 13].

[10] In its opening brief, North Field also cited to *E.A. Renfroe & Co. v. Moran*, No. 06-AR-1752-S, 2007 U.S. Dist. LEXIS 118287, at *9 (N.D. Ala. Jan. 19, 2007), regarding the court's jurisdiction over non-parties under Rule 65(d). Binance incorrectly argues that this opinion was reversed. [Response, at 14 n.10]. The order subject to review in *E.A. Renfroe & Co. v. Moran*, 338 Fed. App'x 836 (11th Cir. 2008), was not the 2007 order cited by North Field, but a subsequent order issued in June 2008. The question of whether the court had personal jurisdiction over the non-party alleged contemnor was not at issue in the 2008 appeal in *Moran*, and the Eleventh Circuit did not disturb the *Moran* court's January 2007 personal jurisdiction holding. Moreover, Binance's reliance upon *Moran* is misplaced. In *Moran*, the 2008 order was reversed because the defendants did not have possession of the materials at issue, and thus, could not have taken any action in contravention of the injunction. *Id.* at 839-40. Thus, *Moran* stands in stark contrast to the instant case, where Vernon and his associates have taken extensive action in violation of the Injunction, including depositing significant quantities of the Stolen Bitcoin on Binance's exchange. Binance has acted "in concert with" them by refusing to freeze the Stolen Bitcoin and by advising at least

9

Courts have "often found individuals or entities in civil contempt when they fail to turn funds over to a receiver or fail to freeze assets in violation of court orders." *CFTC v. Forex Liquidity LLC*, No. SACV 07-01437, 2009 U.S. Dist. LEXIS 76318, at *13-14 (C.D. Cal. July 23, 2009); *FTC v. Productive Mtkg. Inc.*, 136 F. Supp. 2d 1096, 1106-08 (C.D. Cal. 2001) (holding nonparty in contempt for failing to turn over defendants' assets in violation of asset-freeze order). Binance is just such an entity. It had ample notice of its obligation to immediately freeze and turn over to North Field all of the Stolen Bitcoin it received. It received notice of all of the transaction hashes necessary to locate the Stolen Bitcoin, freeze it immediately, freeze the associated accounts, and transfer it to North Field. Yet, to date it has not transferred a single BTC to North Field. Moreover, it knowingly instructed one of the accountholders of the Stolen Bitcoin to move their assets off Binance's exchange before Binance froze their accounts. Kapp. Decl. ¶ 29 & Ex. 30.[11]

### IV. North Field and the Class have acted in good faith.

Finally, Binance seeks to distract this Court with a false narrative that *North Field* acted in "bad faith", [Response, at 10, 16-17], when nothing could be further from the truth. Binance conveniently ignores that it attempted to condition its provision of KYC information for 8 accounts that received Stolen Bitcoin on terms that had never been discussed, including the requirement that North Field not seek any further information or relief from Binance. *See* Supp. Kapp Decl., ¶¶ 12-21. Such conditions smack of extreme bad faith considering that Tong came forward at the same time with evidence of Binance's willful violation of the Court's Orders. [*Id.*] For all of these reasons, an order of contempt against Binance is manifestly warranted.

---

one, if not more, of its customers in possession of the Stolen Bitcoin to remove all remaining assets from their account before Binance froze the associated accounts. [ECF No. 213-2, ¶ 29 & Ex. 30].
[11] Binance engages in revisionist history, speciously suggesting that the email sent to Tong was not prompted by this action. [Response, at 16]. However, Binance instructed customers like Tong to contact North Field because the accounts were frozen or disabled *as a result of* the Injunction. Binance's counsel confirmed that was why Tong was instructed to contact North Field's counsel. [ECF No. 213-2, ¶ 29; ECF No. 217-1, ¶ 20 & n.3]. Binance was in a position to freeze accounts that received Stolen Bitcoin, and yet, advised at least one, if not more, of its customers in possession of Stolen Bitcoin to remove their remaining assets before Binance froze their accounts.

Respectfully submitted,

By:    *s/Samuel A. Lewis*
     Samuel A. Lewis / Fla. Bar No. 55360
     E-mail:  slewis@cozen.com
     COZEN O'CONNOR
     Southeast Financial Center
     200 South Biscayne Blvd., Suite 3000
     Miami, Florida 33131
     Phone:  305-704-5940

     John Sullivan
     E-mail:  jsullivan@cozen.com
     COZEN O'CONNOR
     3 World Trade Center
     175 Greenwich Street, 55th Fl
     New York, NY 10007
     Phone: 212-453-3729
     *Admitted Pro Hac Vice*

     L. Barrett Boss
     E-mail:  bboss@cozen.com
     Jonathan Grossman
     E-mail:  jgrossman@cozen.com
     Kara L. Kapp
     E-mail:  kkapp@cozen.com
     COZEN O'CONNOR
     1200 19th Street NW, 3rd Floor
     Washington, D.C. 20036
     Phone:  202-912-4818

     **Counsel for North Field Tech**