## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually,
and on behalf of All Others Similarly Situated,

                Plaintiff,

               - v. -

PROJECT INVESTORS, INC., d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

               Defendants.

Case No. 9:16-cv-80060 (KAM)

Hon. Kenneth A. Marra

## NON-PARTY BINANCE HOLDINGS LIMITED'S OPPOSITION TO NORTH FIELD'S MOTION FOR RECONSIDERATION OF THIS COURT'S <u>ORDER DENYING ITS MOTION FOR CONTEMPT SANCTIONS</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

   I.   Vernon's Underlying Fraud and the Court's Permanent Injunction .................................. 2

   II.   Despite BHL's Cooperation, North Field Moves for Contempt Sanctions ....................... 3

   III.   The Court's Denial of North Field's Motion for Contempt Sanctions ............................. 5

   IV.   BHL's November 2023 Plea Agreement ......................................................................... 6

ARGUMENT ........................................................................................................................ 7

   I.   North Field's "New Evidence" Does Not Impact the Court's Legal Analysis on
      General and Specific Jurisdiction ................................................................................... 8

   II.   North Field's "New Evidence" Does Not Impact the Court's Prior Findings Regarding
      Lack of Sanction Power and Lack of Contempt ............................................................. 9

   III.   There is No Basis for Jurisdictional Discovery ............................................................. 13

CONCLUSION .................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*ABI Jaoudi and Azar Trading Corp. v. Cigna Worldwide Ins. Co.*,
   2016 WL 3959078 (E.D. Pa. July 22, 2016) ............................................................................... 11

*Abreu v. Pfizer, Inc.*,
   2022 WL 2352443 (S.D. Fla. June 22, 2022) .............................................................................. 7

*Absolute Nevada, LLC v. Grand Majestic Riverboat Co.*,
   2020 WL 7480621 (S.D.N.Y. Dec. 18, 2020) ............................................................................ 11

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding
   (USA), Inc.*,
   747 F.3d 1262 (11th Cir. 2014) ................................................................................................... 7

*Aviv v. Brainard*,
   2018 WL 4927912 (S.D.N.Y. Oct. 11, 2018) ............................................................................ 11

*Chang v. JPMorgan Chase Bank, N.A.*,
   845 F.3d 1087 (11th Cir. 2017) ................................................................................................. 11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................................................................... 8

*E.A. Renfroe & Co. v. Moran*,
   338 F. App'x 836 (11th Cir. 2009*)* ............................................................................................ 9

*Eaton v. Dorchester Dev., Inc.*,
   692 F.2d 727 (11th Cir. 1982) ................................................................................................... 13

*F.T.C. v. Leshin*,
   618 F.3d 1221 (11th Cir. 2010) ................................................................................................. 11

*Fed. Trade Comm'n v. Acquinity Interactive, LLC*,
   2021 WL 4840585 (S.D. Fla. Sept. 29, 2021) .......................................................................... 10

*Gadasalli v. Bulasa*,
   2023 WL 3586424 (E.D. Tex. May 22, 2023) ..................................................................... 8, 13

*Guarini v. Doe*,
   634 F. Supp. 3d 1100 (S.D. Fla. 2022) ....................................................................................... 9

*Heissenberg v. Doe*,
   2021 WL 2621100 (S.D. Fla. June 24, 2021) ............................................................................. 9

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
 535 F. Supp. 3d 1299 (S.D. Fla. 2021) ...................................................................... 8

*JTR Entrs, LLC v. Columbian Emeralds*,
 697 F. App'x 976 (11th Cir. 2017) ........................................................................... 10

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*,
 2022 WL 845468 (S.D. Fla. Mar. 22, 2022) ............................................................ 7

*Miro v. Doe*,
 2023 WL 2734374 (S.D. Fla. Mar. 31, 2023) .......................................................... 9

*Monkton Ins. Srvs, Ltd v. Ritter*,
 768 F.3d 429 (5th Cir. 2014) .................................................................................. 13

*Peach.com, LLC v. Peachly, LLC*,
 2021 WL 7542983 (S.D. Fla. June 16, 2021) .......................................................... 14

*Reynolds v. Binance Holdings Ltd.*,
 481 F. Supp. 3d 997 (N.D. Cal. 2020) ..................................................................... 8

*Richter v. Wells Fargo Bank NA*,
 2015 WL 163086 (M.D. Fla. Jan. 13, 2015) ............................................................ 11

*Turner v. Costa Crociere S.P.A.*,
 2020 WL 9071486 (S.D. Fla. Aug. 23, 2020) .......................................................... 13

*Twitter, Inc. v. Taamneh*,
 598 U.S. 471 (2023) ................................................................................................. 11

*United States v. Robinson*,
 83 F.4th 868 (11th Cir. 2023) .................................................................................. 10

*Vogt v. Greenmarine Holding, LLC*,
 2002 WL 534542 (N.D. Ga. Feb. 20, 2002) ............................................................ 14

*Waddell v. Hendry Cnty. Sheriff's Office*,
 329 F. 3d 1300 (11th Cir. 2003) .............................................................................. 7

*Waite v. AII Acquisition Corp.*,
 2016 WL 2346768 (S.D. Fla. Mar. 10, 2016) .......................................................... 8

**Statutes**

Fla. Stat. § 48.193(1)(a)(1), (6) ...................................................................................... 9

**Rules**

Fed. R. Civ. P. 60(b) ........................................................................................... 2, 13

Fed. R. Civ. P. 65(d) ............................................................................. 6, 10, 11, 13, 14

Non-party Binance Holdings Limited ("BHL") respectfully submits this memorandum of law in opposition to North Field Technology Ltd.'s ("North Field") motion for reconsideration of this Court's Memorandum Order, dated September 14, 2023, denying North Field's motion for contempt sanctions (the "Order" (ECF No. 227)).

## PRELIMINARY STATEMENT[1]

Much like its underlying motion for sanctions, North Field again seeks an extraordinary remedy based purely on conjecture and insinuation.  BHL is a non-party that voluntarily assisted North Field, engaged in discussions, shared information, provided a freeze, and prepared a production responsive to North Field's requests.  Nothing in North Field's purported "new evidence" changes that record or comes close to supporting North Field's baseless assertion that BHL is working with Paul Vernon ("Vernon"), the actual defendant and bad actor here.

In its Order, this Court correctly rejected North Field's motion for sanctions because, for both jurisdictional purposes and the underlying merits, North Field failed to meet its high burden of establishing that BHL was aiding and abetting or acting in concert with Vernon.  North Field now seizes upon a plea agreement BHL entered into with the United States Department of Justice in November 2023 (the "Plea Agreement"), pointing to admissions that the Binance.com exchange had U.S. customers and that its anti-money laundering ("AML") and Know-Your-Customer ("KYC") programs were previously inadequate.  What is missing, however, is any connection between those statements and the facts of this case, much less the grounds on which this Court denied the prior motion.  Nothing in the Plea Agreement suggests BHL participated in Vernon's fraud (which occurred before BHL or the Binance.com exchange even existed), aided

---

[1] North Field's Motion for Reconsideration is cited to herein as "Recons. Mot. at __."  Terms previously defined in BHL's opposition to North Field's motion for contempt sanctions are adopted herein.  (ECF No. 217).

1

Vernon in violating this Court's injunction, or conducted business activity in Florida that gave rise to the injuries in this case.  Certainly, nothing in the Plea Agreement erases BHL's cooperation with North Field in providing information and freezes related to the injunction.

The motion for reconsideration is just another example of North Field's aggressive litigation strategy to capitalize on negative news, substituting speculation and noise in the absence of facts.  Because general statements about U.S. customers and previously weak compliance programs do not affect the legal analysis or the outcome on the underlying motion for sanctions, North Field falls far short of presenting one of the rare circumstances that would warrant reconsideration under Fed. R. Civ. P. 60(b).  Accordingly, its motion for reconsideration should be denied.

## FACTUAL BACKGROUND

The factual background is set forth in detail in the briefing on the original motion for contempt (*see* ECF No. 217), which is incorporated by reference.  Key events are summarized below.

### I.    Vernon's Underlying Fraud and the Court's Permanent Injunction

This action arose out of a multi-million-dollar fraud perpetrated in June 2014 by Vernon, who ran a cryptocurrency exchange known as Cryptsy and stole the digital assets of Cryptsy's users.  (ECF No. 94 ¶¶ 1-7, 19-36).  Vernon's fraud had no connection to BHL.  Indeed, the Binance.com exchange did not even exist at the time.[2]

On January 13, 2016, Plaintiffs Brandon Leidel and Michael Wilson commenced this class action lawsuit in an attempt to recover their stolen assets.  (ECF No. 1).  A default

---

[2] The Binance.com exchange was created in July of 2017.  *See* https://www.binance.com/en/about (last visited January 16, 2024).

judgment was entered against Vernon in July 2017, authorizing the recovery of 11,325.0961 Bitcoin that Vernon stole from Cryptsy customers using twelve wallet addresses ("Original Wallet Addresses").  (ECF No. 123).

Three years later, in September 2020, plaintiffs assigned the judgment to North Field to pursue collection efforts on a "contingency, non-recourse basis."  (ECF Nos. 139, 142).

On May 18, 2021, the Court issued a Temporary Restraining Order freezing the twelve Original Wallet Addresses and ten additional wallets ("Newly Discovered Wallets") with respect to the stolen Bitcoin.  (ECF No. 155).  The Temporary Restraining Order was replaced with a Permanent Injunction on June 22, 2021, enjoining Vernon and "all persons in active concert or participation" with him from directly or indirectly transferring "Stolen Bitcoin and Forked Digital Assets" that were originally held in the Original or Newly Discovered Wallet Addresses. (ECF No. 177).  None of the Original or Newly Discovered Wallet Addresses were on the Binance.com exchange.

## II.    Despite BHL's Cooperation, North Field Moves for Contempt Sanctions

Starting in May of 2021, the Cozen firm, on behalf of North Field, sent notices of the Amended Final Default Judgment, Temporary Restraining Order, and/or Permanent Injunction to various general Binance.com email addresses, baldly asserting that assets subject to the judgment were "recently transferred to [Binance.com's] exchange" and any assets originating from the wallet addresses listed that make their way to the Binance.com exchange should be immediately frozen.  (ECF No. 213-2, Ex. 2.).  Attached to each correspondence were spreadsheets with thousands of transaction hashes[3] for transfers from unidentified wallet address (*i.e.*, not the

---

[3] A transaction hash is a unique sequence of letters or numbers that identify a specific transaction on a blockchain that serves as a record that the transaction has taken place.

Original or Newly Discovered Wallet Addresses in the Court's orders) to wallet addresses on the Binance.com exchange.  (ECF. No. 213-2, Ex. 2).  Moreover, the spreadsheets on each subsequent notice contained different transaction hashes and wallet addresses, and none of the materials included tracing information linking the transaction hashes to funds originating from the Original or Newly Discovered Wallet Addresses.  (*Id.*; ECF No. 213-2 ¶¶ 8-16).

In July 2022, the Cozen firm reached out to an in-house lawyer at Binance.com, and that led BHL to engage outside counsel, who immediately began discussions with the Cozen firm to request additional information in connection with the requests, while reserving BHL's objections and defenses with respect to the demands.  In particular, BHL's counsel made clear that it needed tracing information from the wallets in the Injunction to the accounts on the Binance.com exchange for which North Field was requesting a freeze.  (ECF 217-1 ("King Decl.") ¶ 9).  The Cozen firm agreed in August 2022 to provide the tracing information, but it did not actually follow through with any information for *eight months*.  It finally provided tracing information for only ten accounts on the Binance.com exchange (many of which were not identified in prior correspondence).  (King Decl. ¶ 13).

On May 2, 2023, counsel for BHL informed the Cozen firm that it had frozen seven of the ten accounts for which tracing was provided and explained that the remaining three accounts were not individual customer accounts, but rather belonged to merchant businesses or other cryptocurrency exchanges (and therefore BHL could not identify the underlying users who made the transactions at issue).  (King Decl. ¶ 15).  BHL further provided the names of those exchanges to the Cozen firm so that it could seek further information from them directly.  (King Decl. ¶ 15).  With respect to the seven frozen accounts, BHL also voluntarily disclosed the assets

that remained in each of the accounts and noted that the frozen assets did not include the stolen Bitcoin identified in the Injunction.  (King Decl. ¶ 16).

On May 16, 2023, North Field issued a subpoena to BHL seeking additional information. (King Decl. ¶ 17).  Despite the subpoena's various infirmities, including lack of personal jurisdiction, improper service, burden, and overbreadth, counsel for BHL offered to discuss a voluntary production of account records with North Field's counsel.  (King Decl. ¶ 18).  The Cozen firm failed to reply for several days, and discussions took place only after BHL's counsel reached out to follow up.  (King Decl. ¶ 18).  An agreement was reached on June 5, 2023, for BHL to produce operation logs for the seven frozen accounts that would show "Customer Information (including email, mobile number and registration time), Current Assets & Wallets, Order History (including price, quantity, time, and status of all orders), Deposit History (including source address and time), Withdrawal History (including destination address and time), and KYC-related information (ex: government issued identification and photo)."  (King Decl. ¶¶ 19, 22).  Less than two weeks later, on June 16, 2023, as BHL was preparing that production, and without any notice or conference, North Field filed a motion for contempt sanctions, purportedly because BHL was taking too long to gather the documents and because North Field did not like the draft production cover letter that was circulated for comment.  (ECF No. 213).  The motion for contempt sanctions was fully briefed and argued on August 29, 2023. (ECF No. 224).

### III.    The Court's Denial of North Field's Motion for Contempt Sanctions

On September 14, 2023, the Court issued its Order denying North Field's motion for contempt sanctions.  (Order).  In its Order, the Court found that it did "not have personal jurisdiction over Binance unless it c[ould] be asserted through the Court's sanction power" due to BHL's lack of minimum contacts with Florida.  (Order at 4).  It further found that North Field

failed to establish alternative personal jurisdiction under Federal Rule of Civil Procedure 65(d) because "[North Field's] allegations [were] insufficient to show that Binance acted in concert with Vernon." (Order at 4 n.3 ("There is no evidence in this record showing that Binance was actively participating with Vernon to hide or divert stolen bitcoin from North Field.")). For the same reasons, irrespective of the jurisdiction issue, the Court held that there was "insufficient evidence to support a finding that Binance's conduct rose to the level of contemptable conduct." (Order at 6). Indeed, the record showed that "Binance made a good faith effort to work with and assist North Field in its efforts to collect the stolen bitcoin." (Order at 6).

### IV.    BHL's November 2023 Plea Agreement

On November 21, 2023, BHL entered into a Plea Agreement with the United States Department of Justice in *United States v. Binance Holdings Limited*, No. 23 Cr. 178 (RAJ), in the U.S. District Court for the Western District of Washington. (Recons. Mot., Ex. 1). The Statement of Facts attached to the Plea Agreement includes admissions by BHL that it "operated a cryptocurrency exchange wholly or in substantial part in the United States by serving a substantial number of U.S. users," including users in the Western District of Washington (Recons. Mot., Ex. 2 ¶¶ 1, 27) and failed to implement an effective AML program from approximately August 2017 until October 2022 (Recons. Mot., Ex. 2 ¶ 80). Nothing in the Plea Agreement discusses any Binance.com exchange operations in Florida, any connection between BHL and Vernon, or any connection between BHL and the fraud or the injunction in this matter. Nevertheless, much like its prior attempts to make use of negative press and unrelated court cases against BHL, North Field filed the instant motion on December 22, 2023, arguing that the Plea Agreement constitutes "new evidence" justifying reconsideration of the Court's September Order.

## ARGUMENT

It is well settled that reconsideration of a prior court decision is an "extraordinary remedy to be employed sparingly," and the burden is on the movant to "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21 Civ. 20862 (BB), 2022 WL 845468, at *2 (S.D. Fla. Mar. 22, 2022) (internal quotation marks and citations omitted). No such circumstances exist here because none of the key facts or law have changed. BHL is still a Cayman Islands-incorporated non-party, and there is no evidence that BHL was acting in concert with Vernon or that it actively and intentionally participated in helping Vernon hide assets. Furthermore, the record continues to show that BHL made a good faith effort to work with and assist North Field in this matter, only to be met with baseless and burdensome motion practice.

North Field's motion reduces to the conclusory assertions that (1) having U.S.-based customers equates to personal jurisdiction in Florida for any case, and (2) having insufficient KYC or AML procedures equates to knowingly and intentionally aiding and abetting Vernon. (Recons. Mot. at 9-11). These arguments are impermissibly speculative, illogical, inconsistent with the law, and fail to meet the high burden for new evidence to justify reconsideration. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 (11th Cir. 2014) (upholding district court's denial of motion for reconsideration because "newly discovered evidence … was not material evidence nor evidence that would have probably changed the outcome of the district court's decision" (citing *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F. 3d 1300, 1309 (11th Cir. 2003))); *Abreu v. Pfizer, Inc.*, No. 21 Civ. 62122 (JG), 2022 WL 2352443, at *4 (S.D. Fla. June 22, 2022), *report and recommendation adopted*, No. 21 Civ. 62122 (FAM), 2022 WL 3372104 (S.D. Fla. Aug. 16,

2022) ("If a party is relying on . . . the availability of new evidence, then that new development must be relevant to the issues on which the matter was initially decided.").

North Field did not satisfy its heavy burden on its underlying motion for sanctions, and it does not satisfy its heavy burden to justify reconsideration of the Court's denial of that motion.

## I.     North Field's "New Evidence" Does Not Impact the Court's Legal Analysis on General and Specific Jurisdiction

North Field is no closer to establishing general or specific jurisdiction than it was in its prior briefing. There is no dispute that BHL is neither incorporated nor has its principal place of business in Florida. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd*., 535 F. Supp. 3d 1299, 1305 (S.D. Fla. 2021), *aff'd*, 43 F.4th 1303 (11th Cir. 2022) ("A corporation's place of incorporation and its principal place of business are generally the only 'limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014))). Nor does North Field's "new evidence" of BHL's contacts, operations, and/or customers in the U.S. or Washington state establish that BHL is "at home" in Florida for purposes of general jurisdiction. *See Waite v. AII Acquisition Corp.*, No. 15 Civ. 62359 (BB), 2016 WL 2346768, at *6 (S.D. Fla. Mar. 10, 2016), *aff'd sub nom. Waite v. All Acquisition Corp*., 901 F.3d 1307 (11th Cir. 2018) ("The Eleventh Circuit has made clear that sales and marketing efforts, even together with holdings and operations in Florida, are insufficient to render a nonresident company at home in Florida."); *Gadasalli v. Bulasa*, No. 4:22 Civ. 249 (ALM), 2023 WL 3586424, at *5-6 (E.D. Tex. May 22, 2023) (noting that it was undisputed that "Binance is a foreign corporation, incorporated in the Cayman Islands" and that customers' ability to use "third-party VPNs" to access Binance did not subject it to jurisdiction in Texas); *Reynolds v. Binance Holdings Ltd*., 481 F. Supp. 3d 997, 1003-04 (N.D. Cal. 2020) (finding that allegations about serving U.S. customers "do not illustrate that Binance has the

8

requisite affiliations with California to be essentially at home in the state and subject to general jurisdiction in it").

The same holds true with respect to specific jurisdiction. North Field still fails to establish that BHL had business in Florida that gave rise to the injury at issue in the litigation. Fla. Stat. § 48.193(1)(a)(1), (6); *see also* Recons. Mot. at 10. Nothing in the Plea Agreement speaks to Binance.com's operations or conduct in the state of Florida, much less conduct in Florida that is linked to the specific harm in this case. North Field's argument that general contact with the U.S. is sufficient to presume contact in Florida, and that inadequate compliance policies is sufficient to presume causation for injuries from the fraud committed by Vernon, is absurd, unprecedented, and contrary to well-established law on jurisdiction. *See Guarini v. Doe*, 634 F. Supp. 3d 1100, 1105-06 (S.D. Fla. 2022) (finding no specific jurisdiction where plaintiff failed to allege that defendant engaged in conduct in Florida at all, let alone conduct linked to the injury at issue); *Miro v. Doe*, No. 22 Civ. 80399 (RS), 2023 WL 2734374, at *4 (S.D. Fla. Mar. 31, 2023) (same); *Heissenberg v. Doe,* No. 21 Civ. 80716 (BER), 2021 WL 2621100, at *3 (S.D. Fla. June 24, 2021) (finding no specific jurisdiction over non-party Coinbase platform simply because bitcoin stolen from Florida plaintiff landed, after several transfers, into a Coinbase account outside of Florida).

There is no basis to reconsider this Court's prior decision with respect to general or specific jurisdiction.

## II.     North Field's "New Evidence" Does Not Impact the Court's Prior Findings Regarding Lack of Sanction Power and Lack of Contempt

The heart of the contempt motion below—both for alternative jurisdiction under Rule 65(d) and on the merits—centered on whether North Field met its high burden of establishing that BHL aided and abetted Vernon in violating the injunction. *See E.A. Renfroe & Co. v. Moran*, 338 F. App'x 836, 838-40 (11th Cir. 2009*)* (An exercise of the Court's inherent power to

hold a non-party in contempt requires a showing that the non-party was acting in concert with a party that falls within the Court's jurisdiction to violate the Court's order.).  As to both, the Court assessed the record and correctly held that "not only [was] there a lack of evidence connecting Binance to Vernon, but … Binance made a good faith effort to work with and assist North Field in its efforts to collect the stolen bitcoin."  (Order at 6; *see also* Order at 4 n.3 (finding North Field's allegations "insufficient to show that Binance acted in concert with Vernon")).  Nothing in the Plea Agreement changes that analysis.

North Field's argument that "by failing to employ KYC or AML measures," BHL "knowingly and intentionally aid[ed] and abet[ed] all bad actors" and was "aware that it was an open door to illicit actors, which necessarily included Vernon" (Recons. Mot. at 9-10) is absurd and fails to meet the exacting standard for sanctioning a non-party—*i.e.*, evidence that the non-party that is "in active concert" with or "aiding and abetting" the enjoined party (here, Vernon).[4] *See Fed. Trade Comm'n v. Acquinity Interactive, LLC*, 14 Civ. 60166 (RNS), 2021 WL 4840585, at *4 (S.D. Fla. Sept. 29, 2021) (noting Rule 65(d) requires a showing that the non-party "played an essential role in knowingly assisting the party to the injunction carry out the prohibited act" (internal quotation marks omitted)).  The only cases where a non-party has been found to satisfy this aiding-and-abetting standard involve an agency or partnership relationship— a fact not present here.  *See, e.g.*, *id.*; *JTR Entrs, LLC v. Columbian Emeralds*, 697 F. App'x 976,

---

[4] The terms "in active concert" and "aiding and abetting" are functionally the same for purposes of the Rule 65(d) analysis, as evidenced by the Court and North Field's interchangeable use of the terms.  Indeed, the Eleventh Circuit has stated that "both Rule 65 and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction: The first category is comprised of parties who aid and abet the party bound by the injunction in carrying out prohibited acts, and the second category, captured under the general rubric of 'privity,' includes nonparty successors in interest and nonparties otherwise legally identified with the enjoined party."  *United States v. Robinson*, 83 F.4th 868, 881 (11th Cir. 2023) (internal quotation marks omitted and alterations adopted).

980, 986-87 (11th Cir. 2017) ; *F.T.C. v. Leshin*, 618 F.3d 1221, 1235-36 (11th Cir. 2010);

*Absolute Nevada, LLC v. Grand Majestic Riverboat Co.*, No. 19 Civ. 11479 (PKC), 2020 WL

7480621, at \*1-2 (S.D.N.Y. Dec. 18, 2020); *Aviv v. Brainard*, No. 18 Civ. 5088 (PKC), 2018

WL 4927912, at \*1-2 (S.D.N.Y. Oct. 11, 2018); *ABI Jaoudi and Azar Trading Corp. v. Cigna*

*Worldwide Ins. Co.*, No. 91 Civ. 6785 (PSD), 2016 WL 3959078, at \*1, \*7-8 (E.D. Pa. July 22,

2016).

      As this Court has already held, conclusory claims of inaction on the part of financial

institutions do not establish conscious, contemptable conduct for purposes of Rule 65(d). (Order

at 4, n. 3 (citing *Richter v. Wells Fargo Bank NA*, No. 2:11 Civ. 695-FTM-29 (JES), 2015 WL

163086, at \*4 (M.D. Fla. Jan. 13, 2015) (dismissing aiding and abetting claims against bank for

failing to freeze assets of an individual who stole from the plaintiff because such "inaction would

not support a determination that [the bank] provided substantial assistance for the conversion"));

*see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023) ("The point of aiding and abetting is

to impose liability on those who ***consciously and culpably*** participated in the tort at issue," and

"the more attenuated the nexus [between the defendant's acts and the aiding and abetting claim],

the more courts should demand that plaintiffs show culpable participation through intentional aid

that substantially furthered the tort.") (emphasis added); *Chang v. JPMorgan Chase Bank, N.A.*,

845 F.3d 1087, 1098 (11th Cir. 2017) (inaction does not constitute substantial assistance unless

there is a separate fiduciary duty owed to the plaintiff). Indeed, dozens of financial institutions

have admitted in plea agreements and regulatory settlements to inadequate compliance

programs;[5] but this does not suddenly render them aiders and abettors of any bad actor whose stolen funds might ultimately pass through or land in an account that is held at those institutions.

In short, this Court's conclusion that "[t]here is no evidence in this record showing that Binance was actively participating with Vernon to hide or divert stolen bitcoin from North Field" (Order at 4 n.3) continues to accurately describe the record before it.

Similarly, nothing in the Plea Agreement justifies reconsideration of this Court's finding that "Binance made a good faith effort to work with and assist North Field in its efforts to collect the stolen bitcoin." (Order at 6). North Field does not, and cannot, dispute that BHL was actively engaged in communications about its requests, explained the information Binance.com needed, instituted a freeze as soon as it received the requested information, and was in the process of voluntarily producing account records for the frozen accounts, notwithstanding its (valid) objections and defenses as to service and jurisdiction. The record continues to reflect reasonable,

---

[5] *See*, *e.g.*, Order to Cease and Desist and Order of Assessment of a Civil Money Penalty Issued Upon Consent (Deutsche Bank) (July 13, 2023), https://www.federalreserve.gov/newsevents/pressreleases/files/enf20230719a1.pdf; Press Release, United States Department of Justice, Danske Bank Pleads Guilty to Fraud on U.S. Banks in Multi-Billion Dollar Scheme to Access the U.S. Financial System  (Dec. 13, 2022), https://www.justice.gov/opa/pr/danske-bank-pleads-guilty-fraud-us-banks-multi-billion-dollar-scheme-access-us-financial; Press Release, Office of the Comptroller of the Currency, OCC Assesses $400 Million Civil Money Penalty Against Citibank (Oct. 7, 2020), https://www.occ.gov/news-issuances/news-releases/2020/nr-occ-2020-132.html; Press Release, United States Department of Justice, Standard Chartered Bank Admits to Illegally Processing Transactions in Violation of Iranian Sanctions and Agrees to Pay More Than $1 Billion (Apr. 9, 2019), https://www.justice.gov/opa/pr/standard-chartered-bank-admits-illegally-processing-transactions-violation-iranian-sanctions; Press Release, Office of the Comptroller of the Currency, OCC Issues Cease and Desist Order Against MUFG Bank, Ltd., for Violating the Bank Secrecy Act (Feb. 22, 2019), https://www.occ.gov/news-issuances/news-releases/2019/nr-occ-2019-20.html; Societe Generale SA Consent Order Under New York Banking Law §§ 39 and 44, N.Y. State Dep't of Fin. Srvs. (Nov. 19, 2018), https://www.dfs.ny.gov/system/files/documents/2019/01/ea181119_bsa_aml.pdf; Standard Chartered Bank, New York Branch, Consent Order Under New York Banking Law §§ 39 and 44, N.Y. State Dep't of Fin. Servs. (Aug, 19, 2014), https://www.dfs.ny.gov/system/files/documents/2020/04/ea140819_standard_chartered.pdf.

cooperative conduct rather than contemptable behavior sufficient to justify the extraordinary relief of sanctions against a nonparty.  (*See, e.g.*, King Decl. ¶¶ 5, 8-16, 18-24).

Because the Plea Agreement has zero relevance to the ultimate issue in North Field's motion for sanctions—whether North Field has demonstrated that BHL is aiding and abetting, or acting in concert with, Vernon—North Field fails to establish the rare circumstance where reconsideration under Rule 60(b) is appropriate.

### III.     There is No Basis for Jurisdictional Discovery

Finally, North Field seeks the alternative remedy of jurisdictional discovery.  As discussed above, the undisputed facts—that BHL is neither incorporated nor has its principal place of business in Florida and BHL and the Binance.com exchange were not even in existence at the time of Vernon's fraud—resolve the threshold jurisdiction inquiry.  North Field has provided no legitimate basis for imposing the burdens of jurisdictional discovery on non-party BHL in an effort to draft them into this litigation.  Indeed, North Field's assertion that BHL may have evidence of the existence of Florida customers (Recons. Mot. at 11) misses the mark because the mere existence of Florida customers does not establish general or specific jurisdiction for this case (*see supra* Section I).

The Eleventh Circuit has long held that jurisdictional discovery is not proper where there is no disputed issue that prevents the court from resolving the jurisdictional inquiry in the early stages of litigation.  *See Turner v. Costa Crociere S.P.A.,* No. 20 Civ. 21481 (KMM), 2020 WL 9071486, at *2 (S.D. Fla. Aug. 23, 2020) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 n.7 (11th Cir. 1982)).  Here, the Court could—and did—resolve the jurisdictional issues as to in personam *and* alternative jurisdiction under Rule 65(d) in its Order.  (Order at 4-6).  Nothing North Field has set forth in the instant motion provides a basis to disturb those findings. *See Gadasalli*, 2023 WL 3586424, at *8 (quoting *Monkton Ins. Srvs, Ltd v. Ritter*, 768 F.3d 429,

434 (5th Cir. 2014) (citations omitted)) (to successfully proceed with a request for jurisdictional discovery, a party must raise "'significant facts' that would change the outcome of [its] motion"); *Peach.com, LLC v. Peachly, LLC*, No. 21 Civ. 20636 (EGT) 2021 WL 7542983, at *2 (S.D. Fla. June 16, 2021) (citing *Vogt v. Greenmarine Holding, LLC*, No. 1:01 Civ. 0311 (JOF), 2002 WL 534542, at *7 (N.D. Ga. Feb. 20, 2002) (denying jurisdictional discovery because evidence the plaintiff "anticipated being able to adduce in the discovery process" would "still have failed to make out a prima facie case of personal jurisdiction")).

It is no surprise that North Field has failed to cite a single case in which a court granted jurisdictional discovery in the context of a motion for contempt sanctions.  As North Field itself contended at the Court's August 29, 2023 show cause hearing, the outcome of a traditional jurisdictional analysis proves far less material to resolving actions like these, where the Court must find that the non-party aided and abetted the defendant (which would also satisfy Rule 65(d)) in any event.  (ECF No. 226 at 4, 6).

North Field's attempt to prolong this matter and further burden BHL with jurisdictional discovery should be denied.

14

**CONCLUSION**

For the reasons discussed above and in BHL's opposition memorandum on the motion for contempt sanctions, BHL respectfully requests that this Court deny North Field's motion in full.

Dated: January 19, 2024

Respectfully submitted,

By: */s/* Henry P. Bell

**BELL ROSQUETE REYES, PLLC**
Henry P. Bell
999 Ponce De Leon Blvd.
Suite 1120
Coral Gables, Florida 33134
Tel:  305-570-1610
hbell@brresq.com

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.**
Karen R. King (*pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
kking@maglaw.com

*Counsel for Defendant Binance Holdings Limited*

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on this 19th day of January 2024, a copy of the foregoing was filed electronically by using the CM/ECF system, and that notification of this filing is to be provided to all counsel of record who have registered to receive notices from the court under the CM/ECF system.

<u>*/s/ Henry P. Bell*</u>
Henry P. Bell, Esq.
Fl. Bar No. 090689