UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRANDON LEIDEL, individually and
on behalf of all others similarly situated,

CASE NO. 9:16-CV-80060-KAM

Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a
CRYPTSY, a Florida corporation, and
PAUL VERNON, an individual,

Defendants.
_____/

**REPLY MEMORANDUM SUPPORTING
NORTH FIELD'S MOTION FOR RECONSIDERATION**

North Field Technology Ltd. ("North Field"), pursuant to S.D.Fla.L.R. 7.1, respectfully submits this Reply Memorandum in support of its Motion for Reconsideration [ECF No. 231].

**I.     Introduction.**

In proceedings before this Court, Binance allowed this Court to believe that it had no operations in the United States and was not subject to personal jurisdiction in the U.S.  Indeed, it is now apparent, based on admissions in its Plea Agreement, that Binance allowed and encouraged this Court to believe what it knew to be false statements regarding personal jurisdiction.  Having been caught in a lie about its now-admitted jurisdictional contacts with the U.S., this Court should not accept Binance's representations—unsupported by admissible evidence—that it is not subject to personal jurisdiction.  With Binance's lies laid bare for the Court to see, Binance should be required this time to come forward with admissible evidence (including jurisdictional discovery) if it is going to try once again to persuade this Court that it is not subject to jurisdiction.

Likewise, now that Binance has admitted to willfully disregarding U.S. KYC procedures and failing to implement an effective AML program when operating its exchange, this Court

should disregard Binance's self-serving assertions that it did not engage in the same type of now-admitted improper activity to provide Vernon the vital assistance necessary to launder and hide the Plaintiff Class' Stolen Bitcoin in violation of this Court's injunction. Had Binance complied with KYC and AML requirements, it would not have been possible for Vernon and others to lauder illicit funds, including the Stolen Bitcoin referenced in this Court's Orders and Judgment, through Binance's exchange. As such, it strains credulity for Binance to claim that the admissions it made in the Plea Agreement have no bearing whatsoever on the issues that this Court considered in the contempt proceedings against Binance.

II. **This Court Should Disregard Binance's Unsupported Assertions Regarding Personal Jurisdiction.**

The Plea Agreement establishes that Binance is subject to jurisdiction throughout the U.S. Indeed, given the number of U.S. customers and volume of business that Binance has now admitted doing in the U.S., Binance is subject to personal jurisdiction in many districts, including this one. However, this reality is very different from the representations that Binance previously made to this Court. When responding to the Order to Show Cause [ECF No. 214], Binance was happy to parrot the same lie that it had already told other Judges in this District, namely, that Binance had "no headquarters, offices, or operations in the United States." *See* Binance Response to Order to Show Cause [ECF No. 217], at 3. Now that Binance has been caught in a lie regarding its extensive contacts with and operations in the U.S., this Court should disregard Binance's challenge to personal jurisdiction, particularly as that challenge is not supported by admissible evidence.[1]

---

[1] In the Plea Agreement, Binance "admit[ted], agree[d], and stipulate[d] that the factual allegations set forth in the Information and the Statement of Facts are true and correct…." *See* Plea Agreement [ECF No. 231-1], at pp. 11-12. Even if the Plea Agreement had omitted such language, "a guilty plea is an "admission that [Binance] committed the crime charged against [it]." *U.S. v. Green,* 873 F.3d 846, 865 (11th Cir. 2017), *citing Blohm v. Comm'r of Internal Revenue,* 994 F.2d 1542, 1554 (11th Cir. 1993). As such, the admissions in the Plea Agreement constitute evidence establishing that Binance is subject to jurisdiction. If Binance seeks to overcome that evidence, it must do so

In the Plea Agreement, Binance now admits that from "as early as August 2017 and continuing until at least October 2022, [Binance] operated as an [money transmitting business ("MTB")] and a money services business that ***did business wholly or in substantial part in the United States***, served a substantial number of U.S. customers, and processed billions of dollars' worth of cryptocurrency transactions for U.S. persons, most of which were on-platform trades." *See* Plea Agreement [ECF No. 231-1], at 7, ¶8a (emphasis added). In addition to admitting that it did business ***wholly or in substantial part in the United States***, Binance also admitted that its website was operated on a cloud computing platform based in the Western District of Washington, and that Binance's data was also stored there. *See* Plea Agreement Statement of Facts [ECF No. 231-2], ¶10. These facts are dramatically different from those which Binance presented to this Court in August, 2023.[2]

Given the number of customers and volume of transactions that Binance conducted with U.S. citizens, Binance cannot credibly deny the existence of its contacts with Florida.[3] Combined

---

by presenting its own evidence. *See, e.g., Internet Solutions Corp. v. Marhsall,* 557 F.3d 1293 (11th Cir. 2009) ("The defendant then must 'raise[], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'" (*quoting Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996)). However, Binance's Opposition fails to present *any* evidence, and the Declaration from Binance's counsel, filed previously, contains statements which Binance has now squarely contradicted in the Plea Agreement.

[2] Binance's admissions in the Plea Agreement also contradict statements made in the Declaration [ECF No. 217-1] that Binance's counsel, Karen R. King, submitted to the Court. In support of Binance's Response to the Order to Show Cause [ECF No. 217], Ms. King declared under penalty of perjury that "Binance is a non-U.S. cryptocurrency exchange with **no … operations in the United States**." *See* Declaration of Karen R. King (ECF No. 217-1), ¶2 (emphasis added). Through its Plea Agreement, Binance has now admitted that it has operations in the United States.

[3] If Binance sincerely believed that it does not have and never had a sufficient number of Florida customers and/or volume of business with Florida residents to justify a court's exercise of personal jurisdiction over it, it could easily come forward with the evidence of such customers and transactions. Instead of coming forward with such evidence, it is telling that Binance opposes what should relatively narrow and inexpensive discovery, and doubles-down on the false statements in the Declaration previously submitted by its counsel. In light of the Plea Agreement—

with Binance's willful and now-admitted failures to adhere to U.S. KYC regulations and to implement AML procedures, Binance's exchange openly invited tortfeasors like Vernon to use Binance's exchange for the precise purposes that stripped the Plaintiff Class of the Stolen Bitcoin—laundering crypto assets.  Indeed, these same violations of U.S. law now make it impossible for Binance to plausibly represent that it never did business with Vernon and did not facilitate Vernon's transferring of the Plaintiff Class' Stolen Bitcoin through Binance's exchange.

In light of the knowingly false statements that Binance and its counsel presented to this Court previously, if Binance intends to mount a jurisdictional challenge, Binance should be required to come forward with jurisdictional discovery to allow the Court to ascertain the truth of Binance's jurisdictional challenge now that it has admitted to the Court that it does substantial business in the United States—an admission that undoubtedly includes significant jurisdictional contacts with Florida and this District.

### III. This Court Should Disregard Binance's Specious Assertions That It Did Not Participate In Vernon's Fraud Or Otherwise Cause Injury.

Now that Binance has admitted to willfully disregarding U.S. KYC procedures and failing to implement an effective AML program when operating its exchange, which was used to launder, *inter alia,* some of the Plaintiff Class' Stolen Bitcoin, Binance resorts to speciously arguing that "[n]othing in the Plea Agreement suggests [Binance]…aided Vernon in violating this Court's injunction…."  Such an argument is contrary to admissions that Binance made in the Plea Agreement. Indeed, had Binance not openly courted illegal laundering activities by criminals like Vernon, and instead, complied with U.S. KYC procedures and implemented an effective AML program for its exchange, Vernon would not have been able to launder the Stolen Bitcoin through

---

in which Binance admits to substantially different jurisdictional facts in the U.S.—such discovery is justified.

Binance's exchange. Thus, by willfully, openly and repeatedly violating U.S. law—something which Binance has now admitted in the Plea Agreement—Binance facilitated numerous illicit transactions through its exchange.

Binance has already admitted all of this. In particular, Binance admitted in the Plea Agreement that "its willful failure to implement an effective AML program" resulted in Binance processing "transactions by users who operated illicit mixing services and laundered the proceeds [of illicit activity]." *See* Plea Agreement Statement of Facts [ECF No. 231-2], ¶ 1. Indeed, "Binance did not collect full KYC information from a large share of its users until May 2022."[4] *Id.*, ¶51. These admissions, not made in Binance's previous filings before this Court, are directly relevant here. In this case, Vernon started laundering the Plaintiff Class' Stolen Bitcoin through Binance's exchange prior to May 2022, the very time when Binance admits in the Plea Agreement it was allowing its exchange to facilitate illicit transactions and money laundering. Indeed, Binance chose not to stop this unlawful conduct and, instead, take the steps that necessarily would have prevented Vernon's illicit transactions until *after* it received a substantial amount of the Plaintiff Class' Stolen Bitcoin and *after* it received notice from North Field of both this Court's Orders and that Binance had received, and was continuing to receive, Stolen Bitcoin.

---

[4] In its Opposition, Binance absurdly asserts that it "and the Binance.com exchange were not even in existence at the time" when Vernon originally stole the Stolen Bitcoin from Cryptsy customers. *See* Binance Opposition, at 13. Whether Binance existed at the time of Vernon's original theft is irrelevant. Following Vernon's theft, the Stolen Bitcoin remained in the wallet addresses identified in this Court's Judgment for nearly eight (8) years. Vernon did not attempt to launder the Stolen Bitcoin until March 29, 2022, which according to the Plea Agreement, was at a time when Binance not only existed, but was willfully violating U.S. KYC and AML regulations and facilitating illicit transactions, including money laundering. But for Binance's willingness to facilitate illicit transactions, Vernon would not have been able to launder the Stolen Bitcoin through Binance's exchange.

Having disregarded its legal obligations, and having now openly admitted in the Plea Agreement to failing to obtain and maintain evidence of its customers, this Court should no longer accept Binance's self-serving assertion that there is "no evidence that [Binance] acted in concert with Vernon." *See* Binance Opposition [ECF No. 234], at 7. Rather, in its Plea Agreement, Binance has now admitted that it did not collect the information that it was legally obligated to collect regarding the parties to transactions on its exchange, and thus, courted and openly facilitated a wide range of illicit transactions for which it has no records. Against this background—which Binance admitted in the Plea Agreement—Binance's assertions regarding acting in concert with Vernon should be seen for what they are, namely, an attempt to benefit from the Binance's illicit conduct.

Importantly, Binance readily admits—as it must—that North Field gave Binance transaction information that identified the Stolen Bitcoin that was deposited onto Binance's exchange. Had Binance chosen to stop its illegal activities and instead act on this information, it might very well have stymied Vernon's efforts to launder the Stolen Bitcoin through Binance's exchange. Likewise, had Binance chosen to properly require KYC information consistent with U.S. law, Binance would have been able to ascertain the identity of the Binance customers–both Vernon and those working in concert with him—who illegally laundered Stolen Bitcoin through Binance's exchange. Instead, Binance openly encouraged and allowed the illegal laundering. When the Court considers what might have been possible had Binance complied with U.S. KYC and AML law that it has now admitted to violating, Binance's denials vis-à-vis Vernon and the Plaintiff Class' Stolen Bitcoin are really a criminal exercise of plausible deniability, one in which Binance openly and knowingly facilitated the illicit transactions while at the same time shrugging its shoulders and claiming to not know whose illicit transactions it had facilitated.

Having now admitted to openly facilitating numerous illicit transactions throughout the United States, including Vernon's laundering of Stolen Bitcoin, it strains credulity for Binance to suggest that it did nothing to aid Vernon in the violation of this Court's Orders or that it should not be held accountable for its illegal actions. By entering into the Plea Agreement, Binance necessarily admitted that it facilitated illicit transactions on its exchange, including the illicit transactions involving Vernon and the Stolen Bitcoin. But for Binance's willful and illicit conduct, Vernon and those acting in concert with him would not have been able to use Binance's exchange to launder the Stolen Bitcoin.

IV. **Binance's Admitted Criminal Conduct Made It Possible For Vernon To Launder The Stolen Bitcoin, And Binance Profited From Its Violation Of This Court's Orders.**

Binance is now an admitted criminal. Yet, here, it attempts to portray itself simply as a financial institution facing "conclusory claims of inaction," *see* Binance Opposition [ECF No. 234], at 11, and it asserts based on that false portrayal that it cannot be held in contempt for such inaction. However, it is now apparent from the Plea Agreement that Binance was far more complicit in the illegal transactions that it facilitated, and, consistent with that strategy, that it profited from illegal transactions that could not be conducted on other exchanges. Combined with the admission that Binance received notice of the Court's Orders as early as 2021, the admissions in the Plea Agreement establish that Binance, through its illegally-operated exchange, aided and abetted Vernon's laundering of the Stolen Bitcoin. Indeed, without Binance's exchange, and without its willful and repeated violations of the KYC and AML regulations, there would have been no way for Vernon to transfer the Stolen Bitcoin to Binance's exchange (and to the accounts of Binance customers), and no way for Binance and its customers to further transfer the laundered Stolen Bitcoin.

"[A] non-party to the injunction or order may be found in contempt for violating the terms thereof if it had actual notice of the prohibited conduct." *Blanco GmbH+Co. KG v. Vlanco Industries, LLC,* 992 F.Supp.2d 1225, 1245 (S.D. Fla. 2014) (*citing* Fed.R.Civ.P. 65(d)(2)(C) and *Marshak v. Treadwell,* 595 F.3d 478, 486-88 (3d Cir. 2009)). Likewise, the "focus of a court's inquiry in civil contempt proceedings is not the subjective intent of the alleged contemnors; rather, it is whether their conduct objectively complied with the terms of the Order." *Blanco,* 992 F.Supp.2d at 1245 (*citing Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990)). Ultimately, the "alleged contemnors must do more than merely assert that they did not violate the order; they must introduce evidence to support their claim." *Id.* (citing *Chanel, Inc. v. Krispin,* 2010 WL 4822737, at *3 (S.D. Fla. 2010)).

Binance's attempt to portray itself as an inactive financial institution misses the mark. First, Binance, through its now-admitted active operation of an unlawful exchange operating in violation of U.S. law, facilitated Vernon's laundering of the Stolen Bitcoin, and Binance's account holders assistance in that laundering scheme. Additionally, Binance admitted failing to freeze any of the accounts that received Stolen Bitcoin until long after it had received notice from North Field (and after Binance's account holders were notified and were able to dispose of the funds received). Thus, Binance was in a position to comply with the Court's Orders, but instead, decided to continue its unlawful operations and to facilitate for profit illicit transactions in violation of the Court's Order (Binance received transaction fees when Vernon sent the Stolen Bitcoin into Binance's exchange, and Binance received additional transaction fees when its account holders transferred the Stolen Bitcoin back out of the exchange). Thus, Binance cannot credibly claim that it was simply inactive and, therefore, not in contempt of this Court's Orders. Second, setting aside that Binance's participation was not inactive but instead an unlawful business plan, "courts have held

8

that inaction can form the basis of aiding and abetting liability if rises to the level of providing substantial assistance." *See, e.g., In re Palm Beach Finance Partners, LP,* 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013). By providing the facilities noted above, and by facilitating illicit transactions, which it has now admitted to doing, Binance provided "substantial assistance" to Vernon and the other Binance account holders to laundered the Stolen Bitcoin.[5]

Ultimately, Binance does not deny that it was in a position to freeze Stolen Bitcoin that had been deposited into accounts on Binance's exchange. Binance's admissions in the Plea Agreement now eliminate any doubt as to why Binance facilitated Vernon's laundering of Stolen Bitcoin, and why Binance refused to freeze the Stolen Bitcoin deposited on its exchange despite receiving notice of the accounts and this Court's Orders. Facilitating illegal transactions was part of Binance's business plan. Were it not for Binance's actions supporting Vernon and those Binance account holders assisting Vernon, the Plaintiff Class would have been in a position to recover Stolen Bitcoin deposited onto Binance's exchange.

**V.     Conclusion.**

For these reasons, and those set forth in North Field's Motion for Reconsideration [ECF No. 231], North Field respectfully requests that the Court reconsider the Order Denying Contempt and/or order Binance to come forward with jurisdictional discovery so that the Court

---

[5] It should not be lost on this Court that Binance has admitted receiving notice of this Court's Orders and details of the Binance accounts that received Stolen Bitcoin. Ultimately, Binance decided not to comply with this Court's Orders for the same reason that Binance decided to willfully violate U.S. KYC and AML requirements: compliance with the law prevented Binance from profiting off the illicit transactions that it facilitated. As Binance admitted in the Plea Agreement, its primary motivation for operating an illegal virtual currency exchange was "gain market share and profit as quickly as possible." *See* Plea Agreement Statement of Facts [ECF No. 231-2], ¶ 21.

9

may satisfy itself that personal jurisdiction exists as part of its reconsideration of the Order Denying Contempt.

Respectfully submitted,

By: s/ Samuel A. Lewis
Samuel A. Lewis / Fla. Bar No. 55360
E-mail:  slewis@cozen.com
COZEN O'CONNOR
Southeast Financial Center
200 South Biscayne Blvd., Suite 3000
Miami, Florida 33131
Phone:  305-704-5940

John Sullivan
E-mail:  jsullivan@cozen.com
COZEN O'CONNOR
3 World Trade Center
175 Greenwich Street, 55th Fl
New York, NY 10007
Phone: 212-453-3729
*Admitted Pro Hac Vice*

L. Barrett Boss
E-mail:  bboss@cozen.com
Jonathan Grossman
E-mail:  jgrossman@cozen.com
Kara L. Kapp
E-mail:  kkapp@cozen.com
COZEN O'CONNOR
1200 19th Street NW, 3rd Floor
Washington, D.C. 20036
Phone:  202-912-4818

***Counsel for North Field***

**WITES & ROGERS**
MARC A. WITES
Florida Bar No. 24783
E-mail: mwites@witeslaw.com
4400 N. Federal Highway
Lighthouse Point, Florida 33064
Telephone: (954) 933-4400

**SILVER MILLER**
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@SilverMillerLaw.com
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:       (954) 516-6000

*Class Counsel*